No. 2023-2120

# United States Court of Appeals
# For the Federal Circuit

**LARRY GOLDEN,**

*Appellant,*

v.

**SAMSUNG ELECTRONICS AMERICA, INC.,**

*Appellee.*

Appeal from the United States District Court for the Northern
District of California in Case No. 3:23-cv-00048-WHO

## BRIEF OF APPELLEE

Richard L. Rainey
Jay I. Alexander
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
(202) 662-6000

Additional Counsel on
 Signature Page

*Counsel for Appellee*

# REPRESENTATIVE CLAIM AT ISSUE

## U.S. Patent No. 10,163,287, Claim 5

5. A monitoring device, comprising:

at least one central processing unit (CPU);

at least one temperature sensor in communication with the at least one CPU for monitoring temperature;

at least one motion sensor in communication with the at least one CPU;

at least one viewing screen for monitoring in communication with the at least one CPU;

at least one global positioning system (GPS) connection in communication with the at least one CPU;

at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU;

at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU;

at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device;

at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device;

at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device;

at least one sensor for chemical, biological, or human detection in communication with the at least one CPU;

one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents;

at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU; and

at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 2023-2120

**Short Case Caption** Golden v. Samsung Electronics America, Inc.

**Filing Party/Entity** Samsung Electronics America, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: September 13, 2023      Signature:      */s/ Richard L. Rainey*

                              Name:            Richard L. Rainey

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Electronics America, Inc. | | Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

iii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐     Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

iv

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................... 1

PRELIMINARY STATEMENT ............................................................... 3

COUNTER-STATEMENT OF THE ISSUES ........................................... 4

COUNTER-STATEMENT OF THE CASE ............................................... 5

I.      Mr. Golden's Asserted Patents ........................................................ 5

II.     Mr. Golden's Ongoing Patent Litigation Campaign ........................ 7

      A.      Mr. Golden's Actions In The Court of Federal Claims ........... 8

      B.      Golden's Actions In The District of South Carolina ............. 13

      C.      Golden's Actions In The Northern District of California ..... 18

III.    The Case Presently on Appeal ...................................................... 22

SUMMARY OF ARGUMENT ................................................................ 29

STANDARD OF REVIEW .................................................................... 30

ARGUMENT ....................................................................................... 31

I.      Mr. Golden's Infringement Claims Against Samsung Are
        Barred By Issue Preclusion And The *Kessler* Doctrine ................. 31

      A.      Mr. Golden's Claims Are Barred By Issue Preclusion ......... 32

            1.      The Infringement Issue Is The Same .......................... 33

            2.      Infringement Was Actually Litigated And
                Decided By The Court Of Federal Claims And By
                This Court On Appeal ................................................. 36

            3.      A Valid And Final Judgment Was Issued As A
                Result Of the Court of Federal Claims Case .............. 42

4. The Infringement Determination Was Essential To The Court Of Claims Judgment ............................ 42

B. Mr. Golden's Infringement Claims Are Barred By the *Kessler* Doctrine .................................................................... 43

II. Mr. Golden's Complaint Fails To State A Claim Upon Which Relief Can Be Granted ................................................................... 47

A. Mr. Golden Was Required To Plead Facts That Plausibly Give Rise To An Entitlement To Relief ............... 48

B. Mr. Golden's Complaint Alleges No More Than A "Sheer Possibility" Of Infringement .................................... 49

III. None Of Mr. Golden's Additional Arguments Has Merit ............. 53

CONCLUSION ........................................................................... 55

CERTIFICATE OF COMPLIANCE ......................................................... 56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) .................................................................. *passim*

*Askan v. FARO Technologies, Inc.,*
      No. 2022-2117, 2023 WL 4101351 (Fed. Cir. Jun 21, 2023) .............. 46

*B & B Hardware, Inc. v. Hargis Industries, Inc.,*
      575 U.S. 138 (2015) ............................................................... 35, 36, 45

*Bell Atl. Corp. v. Twombly,*
      550 U.S. 544 (2007) .................................................................. *passim*

*Bot M8 LLC v. Sony Corp. of Am.,*
      4 F.4th 1342 (Fed. Cir. 2021) .......................................... 48, 49, 51, 52

*Brain Life, LLC v. Elekta Inc.,*
      746 F.3d 1045 (Fed. Cir. 2014) ............................................ 44, 45, 46

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,*
      287 F.3d 1108 (Fed. Cir. 2002) ........................................................ 52

*In re Freeman,*
      30 F.3d 1459 (Fed. Cir. 1994) .......................................................... 39

*Golden v. Apple, Inc.,*
      819 F.App'x 930 (Fed. Cir. 2020) ................................................ 14, 15

*Golden v. Apple Inc.,*
      No. 2022-1229, 2022 WL 4103285
      (Fed. Cir. Sept. 8, 2022) .................................................. 17, 18, 19, 53

*Golden v. Apple Inc.*,
No. 2023-1161, 2023 WL 3400595
(Fed. Cir. May 12, 2023) ....................................................... 19

*Golden v. Apple Inc.*,
No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022) ................... 15

*Golden v. Apple Inc.*,
No. 6:19-cv-02557, 2020 WL 415896 (D.S.C. Jan. 27, 2020).... 1, 13, 14

*Golden v. Apple Inc.*,
No. 6:20-cv-02270, 2021 WL 4260782
(D.S.C. Sept. 20, 2021) ........................................................ 15

*Golden v. Apple Inc.*,
No. 6:20-cv-04353, 2021 WL 5074739
(D.S.C. Nov. 2, 2021) ................................................... 2, 15, 16

*Golden v. Google LLC*,
No. 4:22-cv-05246, 2023 WL 5154513
(N.D. Cal. Aug. 10, 2023) ................................................... 2, 21

*Golden v. Google LLC*,
No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804
(D.S.C. Nov. 2, 2021) ................................................... *passim*

*Golden v. Intel Corp.*,
No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) ............... 20

*Golden v. Intel Corp.*,
No. 5:22-cv-03828, 2022 WL 17735388
(N.D. Cal. Nov. 22, 2022) .............................................. 2, 19, 20

*Golden v. Qualcomm Inc.*,
No. 2023-1818 (Fed. Cir.) .................................................... 22

*Golden v. Qualcomm Inc.*,
No. 4:22-cv-03283, 2023 WL 2530857
(N.D. Cal. Mar. 15, 2023) .................................................. 2, 22

iv

*Golden v. United States,*
    955 F.3d 981 (Fed. Cir. 2020) ............................................ 13

*Golden v. United States,*
    No. 13-307C, 156 Fed. Cl. 623 (2021) ........................................ *passim*

*Golden v. United States,*
    No. 13-307C, 2021 WL 3238860 (Fed. Cl. Jul 29, 2021) ............... 9, 37

*Golden v. United States,*
    No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sep. 8, 2022) ....... *passim*

*High Tech Med. Instrumentation, Inc. v. New Image Indus.,*
    49 F.3d 1551 (Fed. Cir. 1995) ............................................ 52

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.,*
    714 F.3d 1277 (Fed. Cir. 2013) ............................................ 30

*Kessler v. Eldred,*
    206 U.S. 285 (1907) ..................................................... *passim*

*MGA, Inc. v. General Motors Corp.,*
    827 F.2d 729 (Fed. Cir. 1987) ............................................ 43

*Nalco Co. v. Chem-Mod, LLC,*
    883 F.3d 1337 (Fed. Cir. 2018) ............................................ 48

*Nichols & Co. v. United States,*
    586 F.2d 826 (C.C.P.A. 1978) ............................................ 40

*Ohio Willow Wood Co. v. Alps South, LLC,*
    735 F.3d 1333 (Fed. Cir. 2013) ..................................... 36, 45

*In re Personal Web Techs. LLC,*
    961 F.3d 1365 (Fed. Cir. 2020) ............................... 44, 45, 46

*Po Kee Wong v. U.S. Solicitor General,*
    839 F. Supp. 2d 130 (D.D.C. 2012) ..................................... 42

*SpeedTrack, Inc. v. Office Depot, Inc.,*
    791 F.3d 1317 (Fed. Cir. 2015) ............................................ 44

*SynQor, Inc v. Vicor Corp.*,
   988 F.3d 1341 (Fed. Cir. 2021) ................................................... 36, 45

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ............................................................ 51

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011) ............................................................ 52

*Uniloc. Janjua v. Neufeld*,
   933 F.3d 1061 (9th Cir. 2019) ..................................................... 32, 41

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
   52 F.4th 1340 (Fed. Cir. 2022) ..................................................... 32, 41

*VirnetX Inc. v. Apple Inc.*,
   792 F.App'x 796 (Fed. Cir. 2019) ................................................. 39, 40

*Zoltek Corp. v. United States*,
   672 F.3d 1309 (Fed. Cir. 2012) ............................................................ 43

## Statutes

28 U.S.C. §1498(a) ................................................................... 8, 42, 43

## Other Authorities

Fed. Cir. Rule 30(e)(1) ..................................................................... 5

Fed. R. Civ. Proc 12(b)(6) .................................................... 30, 47, 48

RCFC Patent Rule 4 .............................................................. 12, 33, 37, 39

RCFC Rule 41(b) ............................................................................. 10

vi

**STATEMENT OF RELATED CASES**

There are no other appeals in or from the same civil action or proceeding in the lower court that were previously before this or any other appellate court.

Additionally, there are no cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in this appeal.

The Appellant, Larry Golden, has filed numerous other suits alleging largely identical claims against a variety of defendants. With the exception of *Golden v United States*, discussed below, these cases do not bear directly on the outcome of this appeal. They are related in that Mr. Golden claims infringement of the same patents under similar theories. All of these cases have been dismissed, including:

- *Golden v. United States*, No. 13-307C, 156 Fed. Cl. 623 (2021), *affirmed Golden v. United States*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sep. 8, 2022).

- *Golden v. Apple Inc.*, No. 6:19-cv-02557, 2020 WL 415896 (D.S.C. Jan. 27, 2020), *affirmed Golden v. Apple, Inc.*, No. 2020-1508, 819 F. App'x 930, 931 (Fed. Cir. 2020).

- *Golden v. Apple Inc.*, No. 6:20-cv-04353, 2021 WL 5074739 (D.S.C. Nov. 2, 2021), *affirmed Golden v. Apple Inc.*, No. 2022-1267, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022).

- *Golden v. Google, LLC*, No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804 (D.S.C. Nov. 2, 2021), *vacated and remanded on single issue sub nom. Golden v. Apple Inc.*, No. 2022-1267, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022).

- *Golden v. Apple, Inc.*, No. 3:22-cv-04152 (N.D. Cal. Filed Jul 12, 2022), *Slip Op.* (N.D. Cal. Oct 20, 2022) (Appx1520–Appx1521), *affirmed Golden v. Apple, Inc.*, No. 2023-1161, 2023 WL 3400595 (Fed. Cir. May 12, 2023).

- *Golden v. Intel Corp.*, No. 5:22-cv-03828, 2022 WL 17735388 (N.D. Cal. Nov. 22, 2022), *affirmed Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023).

- *Golden v. Qualcomm Inc.*, No. 4:22-cv-03283, 2023 WL 2530857 (N.D. Cal. Mar. 15, 2023), *appeal pending, Golden v. Qualcomm Inc.*, No. 2023-1818 (Fed. Cir.).

- *Golden v. Google LLC*, No. 4:22-cv-05246, 2023 WL 5154513, at *1 (N.D. Cal. Aug. 10, 2023) (dismissed without prejudice).

**PRELIMINARY STATEMENT**

This is at least Mr. Golden's eleventh lawsuit, filed over the last ten years, in his ongoing effort to enforce patents directed to the detection of chemical, biological and radiological hazards and the implementation of security measures, for the stated purpose of combatting terrorism. The problem is that Mr. Golden has proceeded against commercially available retail products such as, in this case, Samsung smartphones. These accused products do not perform certain claimed functions such as detecting chemical, biological or radiological substances and Mr. Golden makes no allegation that any such product has ever been modified to have these capabilities. It is little wonder that, in any of his cases in the past ten years, Mr. Golden has been unable to plausibly allege that any accused product meets all of the limitations of his claims.

Thus, Mr. Golden's complaints have been repeatedly dismissed by three different trial courts. Those dismissals have been upheld on appeal to this Court on multiple occasions. Now, Mr. Golden comes to this Court yet again, seeking to revive claims that were dismissed on issue preclusion, the *Kessler* doctrine, and for failure to state a claim. Given that Mr. Golden's present complaint contains no new information that

departs materially from his previous complaints, the result in this case should be no different than in those prior cases

## COUNTER-STATEMENT OF THE ISSUES

The issues for appeal are:

1.     Whether the district court correctly dismissed the complaint based on issue preclusion and the *Kessler* doctrine where Mr. Golden asserted the same patents against the same smartphone products previously adjudicated to be non-infringing by the Court of Federal Claims and affirmed by this Court, as well as certain newer smartphones that are indistinguishable from the originally adjudicated products in any way relevant to infringement.

2.     Whether the district court also correctly dismissed the complaint for failure to state a claim where the complaint failed to include well-pleaded facts that could plausibly support a finding that the accused smartphones made, used and sold by Samsung contain each and every limitation of the asserted claims, or that Samsung induced or contributed to infringement by another party.

# COUNTER-STATEMENT OF THE CASE

## I.  Mr. **Golden's Asserted Patents**

Mr. Golden has asserted three patents against Samsung in the U.S. District Court for the Northern District of California: United States Patent Nos. 9,096,189, 9,589,439, and 10,163,287 (collectively, the "Asserted Patents"). (Appx98, Appx13–Appx96).[1] The Asserted Patents share the same specification and are each titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System." According to their shared specification, the Asserted Patents address "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." (Appx86 at 1:40–45, Appx87 at 3:16–22; Appx57 at 1:47–52, Appx58 at 3:25–30; Appx30 at 1:57–63, Appx31 at 3:35–41). The system includes "detectors that sample

---

[1] References in this brief to "Appx" are references to pages of the Appellee's Appendix, filed concurrently herewith pursuant to Fed. Cir. Rule 30(e)(1).

for chemical, biological and radiological compounds, agents and elements" and can be connected to "surveillance towers scanning detector cases disposed at seaport docks, freight depots and rail terminals for monitoring containers being prepared for shipment or sitting on docks for long periods of time." (Appx70 at Abstract; Appx40 at Abstract; Appx13 at Abstract).

Fig. 1 of the Asserted Patents discloses an embodiment of a "multi sensor detection and disabling lock system 10 for preventing terrorist activity by monitoring, detecting, and securing those critical areas; sites, and facilities vulnerable to terrorist activity." (Appx33 at 7:27–30). A



"detector case 12" having a top 22, sides 26, external connections for power and communications 32, 34, 36 and indicator lights 44, includes within a plurality of compartments containing detectors 46 "adapted for and set up to sample for a specific agent or compound (biological, chemical, or radiological)." (Appx33 at 8:1–37). Detector cases 12 can be deployed, for

6

example, proximate to shipping containers 14 as shown in Fig. 5. (Appx33



**Fig. 5**

at 8:1–6). The detectors communicate with a mechanical lock disabler 56 or biometric lock disabler 62 via a CPU such that a locking mechanism on, *e.g.*, each shipping container, can be disabled upon detection of an undesired agent or compound. (Appx33–Appx34 at 8:59–9:34).

Mr. Golden's Complaint in this case alleges that Samsung's smartphones sold to retail consumers, including the Galaxy S8, S8+, Note 8, S7, S7 Edge, Galaxy S21 5G, S21+ 5G, Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, and S20 Ultra ("the Accused Products"), directly infringe, or induce or contribute to the infringement of, the three Asserted Patents. (Appx100 ¶9, Appx106–Appx108 ¶¶30–41).

## II. Mr. Golden's Ongoing Patent Litigation Campaign

Over the last ten years, Mr. Golden has pursued litigation based on the Asserted Patents and related patents in the same patent family

against multiple parties, including Samsung and Apple, in three different trial courts, and has made multiple appearances in this Court.

## A.    Mr. Golden's Actions In The Court of Federal Claims

In May 2013, Mr. Golden filed an informal complaint pursuant to 28 U.S.C. §1498(a) in the U.S. Court of Federal Claims ("CFC"), alleging that the federal government had made unauthorized use of U.S. Reissue Patent No. RE43,990[2] and seeking $90 billion in damages. (Appx156–Appx166). Over the next eight years, Mr. Golden repeatedly amended his complaint in response to the government's sufficiency objections and to include assertions of additional patent claims against additional devices manufactured by third parties, allegedly at the government's behest. *Golden v. United States*, No. 2022-1196, 2022 WL 4103287, *1 (Fed. Cir. Sep. 8, 2022). Golden's Sixth Amended Complaint against the government accused products of several of the government's purported contractors, including Samsung and Apple, of infringing claim 1 of the '189 patent, claims 22–23 of the '439 patent, and claims 4–6 of the '287 patent. (Appx168—177, Appx261–Appx326 (Exhibit 7 to Sixth Amended

---

[2] RE43,990 is a reissue of U.S. Patent 7,636,033, a great-great grandparent of the earliest Asserted Patent.

Complaint)). Mr. Golden then filed original and later, "Corrected" Preliminary Infringement Contentions, pursuant to orders from the court. *Golden*, 2022 WL 4103287 at *1; *see also Golden v. United States*, No. 13-307C, 2021 WL 3238860 (Fed. Cl. Jul 29, 2021). (Appx328–Appx1017). As identified in those contentions, the Samsung products accused of infringement comprised the Galaxy S8, Galaxy Note 8, Galaxy S9, S10, S20 and S21 smartphones (the same as accused in this case) as well as Samsung's Gear S3 Classic, Galaxy Watch Active 2 and Galaxy Watch 3. The claims asserted in the contentions included claims 1–9 of the '189 patent, claims 13–23 of the '439 patent, and claims 4–6 of the '287 patent. (Appx329, Appx346–Appx1000).

The government moved to strike the corrected contentions because they did not remedy deficiencies identified in the original preliminary contentions. In particular, Golden's original infringement contentions had not identified any components in the accused devices that comprised the claimed sensor or locking features. *Golden v. United States*, 156 Fed. Cl. 623, 627 (2021). The court granted the government's motion and dismissed the Sixth Amended Complaint pursuant to Court of Federal

Claims Rule RCFC 41(b)[3] because the Corrected Infringement Contentions likewise failed to credibly allege the presence of any hazardous material detectors or sensors, or locking mechanism, in the accused smartphones and smartwatches, as required by the claims. *Id.* at 628–631. For example, claim 5 of the '287 patent requires a "sensor" and a "detector" both of which are "in communication with the at least one CPU." Mr. Golden contended that the CPU in the accused Apple and Samsung devices when connected to "field devices" that allegedly comprised sensors, met both of these limitations:

---

[3] RCFC Rule 41(b) provides:

> **(b)Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion or the defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b)and any dismissal not under this rule—except one for lack of jurisdiction or failure to join a party under RCFC 19—operates as an adjudication on the merits.

| | |
|---|---|
| at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | **Plaintiff believes the Defendant and third-party contractor; Samsung Electronics' is infringing Plaintiff's claim limitation under the "doctrine of equivalents". ("substantially the same function in substantially the same way to obtain the same result", quoting Winans v. Denmead, 15 How. 330, 344 (1854))**<br><br>The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs). To operate, the CPU "reads" input data from connected field devices through the use of its input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in functioning of your devices.<br><br>All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as smartphones, tablets, and navigational devices. |
| one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | **Plaintiff believes the Defendant and third-party contractor; Samsung Electronics' is infringing Plaintiff's claim limitation under the "doctrine of equivalents". ("substantially the same function in substantially the same way to obtain the same result", quoting Winans v. Denmead, 15 How. 330, 344 (1854))**<br><br>The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs). To operate, the CPU "reads" input data from connected field devices through the use of its input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in functioning of your devices.<br><br>All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as smartphones, tablets, and navigational devices. |

(Appx553). However, Mr. Golden did not allege that these "field sensors" were a component of the infringing smartphones and the CFC understood Mr. Golden to be contending that the CPUs themselves met the "sensor" and "detector" limitations, which was insufficient. *Golden v. United States*, 156 Fed. Cl. at 629-30.

Summarizing the situation at the conclusion of its opinion, the court explained:

> [Mr. Golden] has had eight years to come up with a plausible theory of infringement against the United States and the third parties whose products he alleges were made at the behest of the government. Mr. Golden has amended his

complaint six times in response to the government's objections to the shortcomings in his pleadings. As we warned earlier, failure to produce a sufficiently detailed claim chart would cause the court to assume that it cannot be done. That has happened. Enough time and resources have been expended by the court and the Department of Justice dealing with these allegations.

*Id.* at 632. More particularly, the court determined that Golden's infringement contentions underlying his Sixth Amended Complaint "illustrate the painfully obvious problem with plaintiff's case: he has not, and at this point in the litigation we must presume cannot, credibly allege what component of the accused Apple, or Samsung . . . , devices infringe literally, or is even equivalent to, hazard detectors or sensors claimed in his patents." *Id.* at 629. *See also id.* at 631 (Golden's "corrected contentions fail to identify where in the accused devices a locking mechanism is present."). The court also found that "[t]he remaining limitations of the claim chart are almost entirely deficient as well." *Id.* at 631.

This Court affirmed the dismissal of Golden's CFC Complaint with prejudice. *Golden v. United States*, 2022 WL 4103287, at *1–2 (holding that "[d]espite having eight years to develop his case and two chances to provide infringement contentions compliant with Patent Rule 4, Mr.

Golden failed to identify in the accused products at least two key elements claimed in his patents: the sensor and locking limitations.").

While Mr. Golden's first suit in the Court of Federal Claims was pending, he filed a second suit in that court, alleging a "Fifth Amendment Taking" claim against the government of property including the Patents-in-Suit. (Appx1018–Appx1071). The court dismissed that suit because the claim was duplicative of the Section 1498 action and also because the complaint failed to state a claim to the extent it made allegations beyond the duplicative allegations of patent infringement. (Appx1072–Appx1076). This Court again affirmed. *Golden v. United States*, 955 F.3d 981, 990 (Fed. Cir. 2020).

## B. Golden's Actions In The District of South Carolina

In parallel with the cases in the Court of Federal Claims, Mr. Golden filed a case in the U.S. District Court for the District of South Carolina, alleging that sixteen defendants, including Samsung and Apple, infringed the same Asserted Patents as in this case, as well as additional related patents. (Appx1077–Appx1330). The district court dismissed the complaint without prejudice because it was duplicative of the Court of Federal Claims action. *Golden v. Apple Inc.*, No. 6:19-cv-

02557, 2020 WL 415896 (D.S.C. Jan. 27, 2020). The court acknowledged that, although the defendant parties were not identical in the actions, "the filings make clear that the Defendants are third-party actors for the Government's alleged infringing actions. Accordingly, the Court finds this action should be dismissed as duplicative because Plaintiff is alleging that the Defendants are infringing on the same patents in the same manner as asserted in [the Court of Claims action]." *Id. at* \*2.

This Court affirmed on the separate ground that Golden's complaint "contain[ed] only conclusory formulaic recitations of the elements of patent infringement as to each defendant" and "nowhere point[ed] us to any nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold by any defendant." *Golden v. Apple, Inc.*, 819 F.App'x 930, 931 (Fed. Cir. 2020). This Court noted that the complaint did refer to "claim charts" and found, after a review of those charts, that they "present[ed] a dizzying array of disorganized assertions over several hundred pages, disingenuously using the words of the claims to generally describe cryptically identified structures." *Id.* The complaint thus failed to comply with the *Twombly* and *Iqbal* requirements to plead "enough facts to raise a reasonable expectation that discovery will reveal

14

that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted).

Mr. Golden then filed an antitrust case against seven defendants in South Carolina, including Samsung and Apple. (Appx1331–Appx1413). The district court dismissed the complaint without prejudice because "*inter alia* Plaintiff's antitrust claims [were] premised on unsuccessful patent infringements claims that have been adjudicated." *Golden v. Apple Inc.*, No. 6:20-cv-02270, 2021 WL 4260782, at *2 (D.S.C. Sept. 20, 2021). The Fourth Circuit affirmed. *Golden v. Apple Inc.*, No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022).

Mr. Golden filed a third case in South Carolina, alleging again that sixteen defendants, including Samsung and Apple, infringed the same patents (including the Asserted Patents) as in the first South Carolina patent infringement complaint. (Appx1414–Appx1448). This time, the district court dismissed the complaint without prejudice because "[i]n light of the vague conclusory allegations in the complaint in this action, and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous." *Golden v. Apple Inc.*, No. 6:20-cv-04353, 2021 WL 5074739,

at *2 (D.S.C. Nov. 2, 2021). Specifically, the court found that Mr. Golden had "failed to include factual allegations beyond the identities of the defendants, reference to the alleged infringing devices, and the alleged infringed-upon patents" and that "simply naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the 'plausibility' standard set forth in [*Iqbal*]." *Id.*

Less than three weeks after filing the just-described multiple-defendant case, Golden filed a separate case (his fourth in South Carolina) asserting the same three Asserted Patents as in this case against Google. (Appx1449–Appx1479). The Google complaint included a "Claim Chart" purporting to map three of the asserted claims onto the Google Pixel 5 smartphone. (Appx1471–Appx1478). The district court summarily dismissed the complaint as frivolous, viewing it as an attempt to re-litigate the claims Golden had previously lost. *Golden v. Google, LLC*, No. 6:21-cv-00244, 2021 WL 5083804 (D.S.C. Nov. 2, 2021). In particular, the court found that the allegations in Mr. Golden's claim chart was indistinguishable from the "dizzying array of disorganized assertions" identified by this Court in claim charts referenced in the first complaint filed in South Carolina. *Id.* at *2.

The appeals from the third and fourth South Carolina cases were consolidated in this Court. In the third case (against multiple defendants), this Court affirmed the dismissal, noting that "the docketed complaint is nothing more than a list of patent claims and accused products." *Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022). In the fourth case (against Google), this Court vacated the district court's dismissal based on frivolousness because Mr. Golden had included in his complaint a claim chart allegedly mapping three asserted claims onto an accused Google Pixel 5 smartphone. The Court found that the district court was mistaken in believing that these claim charts were indistinguishable from claim charts this Court had previously considered. *Id.* Because the claim chart in the complaint against Google "attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner," this Court concluded that "the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart." *Id.* The Court remanded to the district court for further proceedings, but made clear that its decision went only to the district court's summary dismissal based on

frivolousness and was not a judgment as to whether the complaint complied with *Twombly* and *Iqbal*. The opinion expressly noted that "[o]ur decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous." *Id.*

## C. Golden's Actions In The Northern District of California

Rather than proceeding further in South Carolina, Mr. Golden next chose to file several lawsuits in the Northern District of California.

Mr. Golden filed a complaint against Apple alleging antitrust violations as well as infringement of the Asserted Patents and related patents by Apple's smartphones. (Appx1480–Appx1519). The district court dismissed the complaint without leave to amend. (Appx1520–Appx1521). The court noted that "[t]he claims asserted in the complaint are frivolous" and that "[e]ven if they were not frivolous, Golden's patent infringement claims against Apple are barred by issue preclusion because they have been fully litigated and decided" in Golden's original suit against the United States in the Court of Federal Claims. *Id.* The court further noted that "Golden has been pressing these frivolous claims

(or some variation thereof) for nearly 10 years in multiple jurisdictions" and that "[t]his is the rare case where dismissal without leave to amend is appropriate at the outset." *Id.*

This Court affirmed on appeal, holding that the district court had "properly dismissed the complaint as frivolous." *Golden v. Apple Inc.*, No. 2023-1161, 2023 WL 3400595, at *2 (Fed. Cir. May 12, 2023). The Court observed that the claims in the case at bar "mirror[ed]" the claims in the prior dismissed cases and that the "allegations lack an arguable basis in law or fact and are nothing more than another attempt by Mr. Golden to circumvent prior dismissals in other jurisdictions." *Id.*

Mr. Golden also filed suit against Intel alleging antitrust violations and "contributory infringement" of the Asserted Patents and related patents by Intel's CPUs. (Appx1525–Appx1561). The district court dismissed the complaint because the infringement claims were "conclusory and contain[ed] formulaic recitations of the elements of asserted claims. It is nearly impossible to tell which patents he alleges are being infringed and how." *Golden v. Intel Corp.*, No. 5:22-cv-03828, 2022 WL 17735388, at *2 (N.D. Cal. Nov. 22, 2022). Referring to the previous South Carolina litigation, the court noted, "[a]s has been the

case in past litigation, Golden has failed to include factual allegations beyond the identities of the defendants, reference to the alleged infringing devices, and the alleged infringed-upon patents. *Id.* (internal quotations omitted). The court dismissed the antitrust claims for lack of standing. *Id.* at *3–4.

This Court affirmed. As to the patent counts, the Court observed that "Mr. Golden's complaint is deficient. It does not even make conclusory allegations of infringement, much less allegations to satisfy the *Iqbal* standard. Like Mr. Golden's complaint in one of the earlier consolidated Apple cases (No. 22-1229), Mr. Golden's complaint here provides nothing more than a list of patent claims and accused products manufactured by the defendant for each asserted patent. Indeed, his claim charts omit key language from the identified claims that would be essential for proving infringement." *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948, at *2 (Fed. Cir. May 5, 2023) (internal quotations and citations omitted).

Mr. Golden next filed a complaint for patent infringement against Google, alleging infringement of the three Asserted Patents against Google smartphones. (Appx1565–Appx1595). The district court

20

dismissed the complaint, finding that "Plaintiff's claims, as pled, only allege that Google's devices infringe the patents in issue if the end user downloads a particular application," and that Mr. Golden's "claim chart makes it clear that Defendant's products purportedly infringe because of the characteristics of the [third-party] application." *Golden v. Google LLC*, No. 22-CV-05246-HSG, 2023 WL 5154513, at *3–4 (N.D. Cal. Aug. 10, 2023). The district court granted Mr. Golden leave to amend after concluding that "[t]he Court cannot say at this stage that amendment necessarily would be futile, and so follows the standard course of granting leave for Plaintiff to amend to correct the identified deficiencies, if he can truthfully do so." *Id.* at *4. Mr. Golden filed his amended complaint on August 23, 2023. *See Golden v. Google LLC*, No. 22-CV-05246 (N.D. Cal. Aug. 23, 2023), ECF No. 42.

Mr. Golden also filed suit against Qualcomm, alleging antitrust violations and "contributory infringement." (Appx1613–Appx1650). The district court dismissed the complaint. As to the patent counts, the court held that Golden had "fail[ed] to include factual allegations beyond the identities of the defendant, reference to the alleged infringing devices, and the alleged infringed-upon patents. The complaint lists two

illustrative claims, without explaining what product made by Qualcomm supposedly infringes, or how." *Golden v. Qualcomm Inc.*, No. 22-cv-3283, 2023 WL 2530857, at *3 (N.D. Cal. Mar. 15, 2023) (internal quotations and citations omitted). The court also held that Golden had "fail[ed] to adequately plead contributory or induced infringement. As for contributory infringement, Plaintiff fails to plead any of the elements of that offense: (1) selling a device capable of infringing the patent, which is not suitable for substantial non-infringing use; (2) with knowledge that the infringing device was especially adapted for use in an infringement of such patent; and (3) actual infringement by another." *Id*. The case is currently on appeal to this Court. *See Golden v. Qualcomm Inc.*, No. 2023-1818 (Fed. Cir.).

## III.  The Case Presently on Appeal

Mr. Golden's fifth complaint in the Northern District California was against Samsung and underlies the case subject to this appeal. (Appx97–Appx129). The complaint accuses Samsung of directly infringing, and inducing or contributing to the infringement of, claims 1–3 of the '189 patent, claims 13–15 and 23 of the '439 patent, and claims 4–6 of the '287 patent by virtue of its manufacture and sale of the smartphones listed as

Accused Products in the complaint. (Appx100 ¶9, Appx106–Appx108 ¶¶31, 35, 39).

The complaint includes a claim chart that appears to be an attempt to map limitations of three asserted claims onto the Samsung Galaxy S21 Smartphone, as well as a Google Pixel 5 Smartphone, which is not a Samsung product. With respect to certain claim limitations—including limitations directed to chemical and biological sensors, and certain communications capabilities—the claim chart in the complaint does not identify any element or functionality in the accused Samsung smartphone. Instead, the claim chart identifies the "Android Team Awareness Kit, ATAK (built on the Android operating system)":

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Claim 5 of the '287 Patent | Claim 23 of the '439 Patent | Claim 1 of the '189 Patent |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile communication product, capable of wired or wireless communication therebetween... |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

(Appx119, Appx121–Appx122).

The complaint explains that the ATAK is a software application that was developed by the U.S. military that could be deployed on a device such as a smartphone:

> Initially created in 2010 by the Air Force Research Laboratory: Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK)*. ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat - on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. As of 2020, ATAK has a growing base of 250,000 military and civilian users across numerous public safety agencies and US partner nations, and has seen the addition of 15 United States Department of Defense programs.

(Appx112 ¶55). However, Golden does not allege that Samsung makes, uses or sells ATAK, or makes, uses or sells any devices with ATAK installed, or that Samsung causes or encourages the ATAK application to be installed on any Samsung device.

The complaint goes on to allege that, "in addition or [as] an alternative to the ATAK," the smartphone's camera or other sensors could be used as a detector for radiological, chemical or biological

25

substances, as required by some of the claims. (Appx123–Appx127). The only support offered for these allegations are citations to two internet articles that describe how, in theory, a camera or an additional hardware sensor "could" operate as such a detector. (Appx125; Appx1714–Appx1721). No allegations are made in the complaint that Samsung actually deployed such a camera, or any other sensor for detecting radiological, chemical or biological substances in its smartphones, or that Samsung encouraged others to do so.

Samsung moved to dismiss the complaint because it substantially overlaps the claims that were finally adjudicated in the Court of Federal Claims litigation. The Court of Federal Claims case had included assertions of the same three Asserted Patents here against the Samsung Galaxy S8, Galaxy Note 8, Galaxy S9, S10, S20 and S21 smartphones. The present complaint also adds allegations against the newer Galaxy S21+ 5G, Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, and S20 Ultra smartphones, but makes no attempt to identify any different or additional allegedly infringing components or functionalities in the newer phones.

In its motion to dismiss, Samsung argued that Golden's claims were barred by the doctrine of issue preclusion and the *Kessler* doctrine, which prevents repeated harassment by a patentee over a product that has been adjudged as non-infringing. Samsung also argued that the complaint failed to state a claim for either direct or indirect infringement because the complaint failed to contain any plausible allegations that the products made, used and sold by Samsung meet all of the claim limitations or that Samsung induces or contributes to any direct infringement by another party. Samsung argued that statements in the complaint to the effect that a Samsung smartphone could conceivably be modified to operate in an allegedly infringing manner, without additional plausible factual allegations that such modifications were actually made, were insufficient to meet the pleading standards of *Twombly* and *Iqbal*. (Appx130–Appx151). Golden cross-moved for summary judgment of infringement. (Appx1683–Appx1713).

The district court granted Samsung's motion for dismissal and denied Golden's cross-motion. (Appx1–Appx5). The court noted that:

> Golden was given a full opportunity to litigate his claims regarding Samsung's products in his Federal Court of Claims case. His complaint was dismissed with prejudice, and that

27

dismissal was affirmed by the Federal Circuit. Traditional principles of preclusion apply to that decision and the *Kessler* doctrine bars Golden's attempt to sweep in newer Samsung products under the identical theories of infringement rejected by the Federal Court of Claims and affirmed by the Federal Circuit.

(Appx4) (citation omitted). Specifically with regard to the *Kessler* doctrine, the court noted that Golden "did not attempt to distinguish the infringing functionalities of the newer Samsung products from those at issue in the case dismissed by the Federal Court of Claims and affirmed by the Federal Circuit." (Appx4 at n.7).

In addition, the district court held that "[e]ven if preclusion did not apply – and it does – this case must be dismissed for failure to plausibly allege infringement … The allegations that [Golden's] patents cover the identified functionalities included in Samsung's products are wholly unsupported and implausible on their face. Similarly broad and unspecific assertions of infringement against Apple, Intel, and Qualcomm have been dismissed without leave to amend by judges in this District." (Appx4–Appx5).

This appeal followed.

# SUMMARY OF ARGUMENT

The district court correctly dismissed the complaint based on issue preclusion. The infringement issue raised in this case is the same as that involved in the prior Court of Federal Claims action, and affects both the smartphones actually accused of infringement as well as the newer smartphones named in the current complaint; the infringement issue was actually litigated; the infringement issue was determined by a valid and final judgment; and the infringement determination was essential to the prior judgment. To the extent any question exists as to whether any of the four issue preclusion factors apply, the *Kessler* doctrine independently bars the present suit because this case is the paradigm of the situation in which the *Kessler* doctrine was intended to apply: repeated, harassing lawsuits against the same products already adjudicated as non-infringing (and including newer products indistinguishable for purposes of infringement from those previously adjudicated).

The district court also correctly dismissed the complaint for failure to state a claim because Mr. Golden's complaint fails to plausibly allege the presence in the accused smartphones of all of the limitations required

by the asserted claims. At most, drawing all reasonable inferences in Mr. Golden's favor, the complaint alleges that Samsung *indirectly* infringes because the accused smartphones *could* be modified to include the missing limitations. However, the complaint nowhere alleges that any accused smartphone has actually been so modified, whether by Samsung or by any other party. Indeed, Mr. Golden has not disputed in the district court, and does not dispute in this appeal, that the complaint fails to plausibly allege any indirect infringement. Under this Court's settled precedent, Mr. Golden's complaint is fatally deficient and was rightly dismissed.

## STANDARD OF REVIEW

This Court applies the law of the regional circuit when reviewing a motion to dismiss. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). The Ninth Circuit reviews a challenge to a district court's dismissal under FRCP 12(b)(6) *de novo*. *Id.*

# ARGUMENT

The district court correctly dismissed the complaint on two grounds. *First*, the Court of Federal Claims made a final adjudication, affirmed by this Court, that Samsung's Galaxy S8, Galaxy Note 8, Galaxy S9, S10, S20, and S21 smartphones do not infringe the Asserted Patents and the complaint makes no attempt to distinguish the newer S21+ 5G, Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, and S20 Ultra smartphones. Issue preclusion and the *Kessler* doctrine thus prevent Mr. Golden from continuing to press the same infringement claims against the same products in this case. *Second*, the complaint fails to plausibly allege that any of the accused smartphones made, used or sold by Samsung contain the detection and communications limitations present in the asserted claims, or that Samsung caused or encouraged others to include that functionality in any Samsung smartphone. The complaint thus fails to state a claim upon which relief can be granted.

## I.    Mr. Golden's Infringement Claims Against Samsung Are Barred By Issue Preclusion And The *Kessler* Doctrine

The district court held that "Golden was given a full opportunity to litigate his claims regarding Samsung's products in his Federal Court of

Claims case. His complaint was dismissed with prejudice, and that dismissal was affirmed by the Federal Circuit. Traditional principles of preclusion apply to that decision and the *Kessler* doctrine bars Golden's attempt to sweep in newer Samsung products under the identical theories of infringement rejected by the Federal Court of Claims and affirmed by the Federal Circuit. This case is barred by issue preclusion." (Appx4). That decision was correct on both grounds.

## A.    Mr. Golden's Claims Are Barred By Issue Preclusion

For issue preclusion to apply, "(1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1346 (Fed. Cir. 2022).[4] All four

---

[4] Some ambiguity exists in this Court's precedent as to whether Federal Circuit or Regional Circuit law governs issue preclusion in patent cases. *Uniloc*, 52 F4th at 1346 n.3. However, the elements of issue preclusion applied in the Ninth Circuit are essentially the same as those applied in *Uniloc*. *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) ("For issue preclusion to apply, four conditions must be met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and

factors are satisfied here. None of Mr. Golden's arguments appear to directly address these factors. *See* Golden Corr. Br. at 4-7.

### 1. The Infringement Issue Is The Same

The infringement issue in this case—whether the accused Samsung smartphones meet the claim limitations of the Asserted Patents—was the same as raised and decided in the Court of Federal Claims case. Mr. Golden's Sixth Amended Complaint in the CFC case, which included claim charts attached as an exhibit, asserted that devices made by Samsung for the United States government infringed at least claims 4–6 of the '287 patent, claims 22–23 of the '439 patent and claim 1 of the '189 patent. (Appx168–Appx169 ¶5, Appx175 ¶12, Appx261, Appx284–Appx292). Following orders from the court relating to his compliance with the CFC's requirement to clearly identify his patent contentions under the CFC's Patent Rule 4,[5] Mr. Golden submitted original and later,

---

decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.") (internal quotations omitted).

[5] **RCFC Patent Rule 4: Preliminary Disclosure of Infringement Contentions:**

Corrected Infringement Contentions that asserted infringement by Samsung's Galaxy S8, Galaxy Note 8, Galaxy S9, S10, S20 and S21 smartphones as well as Samsung's Gear S3 Classic, Galaxy Watch Active 2 and Galaxy Watch 3. The claims asserted in the corrected contentions included claims 1–9 of the '189 patent, claims 13–23 of the '439 patent, and claims 4–6 of the '287 patent. (Appx346–Appx1000).

In this case, Mr. Golden's complaint asserts that Samsung infringes at least claims 1–3 of the '189 patent, claims 13–15 & 23 of the '439

---

Within 56 days after the filing of the answer, the plaintiff must serve on the defendant and any defendant-intervenors a Preliminary Disclosure of Infringement Contentions that includes the following information: (a) the claim in each product, process, or method of each patent at issue that is allegedly infringed by each opposing party; (b) for each asserted claim, each product, process, or method that allegedly infringes the identified claim. This identification must include the name and model number, if known, of the accused product, process, or method; (c) a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known; (d) whether each element of each identified claim is alleged to be literally present or present under the doctrine of equivalents in the accused product, process, or method; and (e) for each patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled and whether the patentee is relying on the filing date or an earlier conception date as the priority date.

patent, and claims 4–6 of the '287 patent. The accused infringing products are Samsung's Galaxy S8, S8+, Note 8, S7, S7 Edge, Galaxy S21 5G, S21+ 5G, Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, and S20 Ultra smartphones. (Appx100 ¶9, Appx106–Appx108 ¶¶30–41). The only differences between this case and the CFC case are that Golden has added accusations against newer smartphones (S21+ 5G, Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, and S20 Ultra) that were not on the market at the time of his CFC complaint, and he now does not appear to assert claims against Samsung Watch products. However, the complaint in this case makes no effort to draw any distinction between the structure or functions of the original and newer accused smartphones and the complaint contains no infringement allegations that differ among any of these devices.

Thus, for purposes of issue preclusion, the current complaint raises the same infringement dispute that was decided in the Court of Federal Claims litigation because the infringement issue as between the older Samsung smartphones and the newer smartphones is at least "essentially the same." *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 157 (2015) (trademark defendant could not escape

preclusive effect of prior judgment of infringement "simply by adding an immaterial feature to its mark"). An "issue" for purposes of issue preclusion "must be understood broadly enough 'to prevent repetitious litigation of what is essentially the same dispute.'" *Id.* (quoting *Restatement (Second) of Judgments* §27, Comment c, at 252–253); *Accord SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1353 (Fed. Cir. 2021) (this factor satisfied if "*essentially* the same dispute" is at issue in the prior and current cases) (quoting *B&B* and adding emphasis); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the issues that were litigated that determines whether collateral estoppel should apply.").

### 2. Infringement Was Actually Litigated And Decided By The Court Of Federal Claims And By This Court On Appeal

Mr. Golden's infringement claims were fully and fairly, and actually, litigated at the CFC in the context of whether he could sufficiently advance a colorable case of infringement under that court's patent rules. The government first moved to dismiss the case due to Mr. Golden's deficient infringement contentions, on the basis that, for

example, Mr. Golden failed to identify "biological, chemical, or radiological sensors/detectors" that are required by the asserted claims. *Golden v. United States*, 2021 WL 3238860, at *4. The Court of Federal Claims held that Mr. Golden had failed to identify the claimed sensor (in some claims), or the claimed locking feature (in other claims), and therefore he had failed to identify a required element of each claim. *Id.* at *6. The court allowed Mr. Golden to amend his contentions, rather than dismiss them outright, but the court cautioned Mr. Golden that if he "fail[ed] to file a claims chart which complies with Rule 4 [of the Court's Patent Rules], the court will assume that it cannot be done and that the complaint should be dismissed." *Id.* at *7.

Mr. Golden filed corrected contentions in response. The government moved to strike the corrected contentions and again to dismiss the complaint. The government argued that Mr. Golden's corrected contentions were still deficient because they again failed to specifically identify the claimed hazardous material sensors in any of the accused products and again did not identify in any of the accused devices how the unlocking function is performed in response to the detection of a hazard. *Golden v. United States*, 156 Fed. Cl. at 627–28. The Court of Federal

Claims evaluated those corrected contentions, and found that they failed adequately to identify the presence of all of the claim limitations in the accused products, including the accused Samsung smartphones. *Id.* at 627–32. The court thus granted this motion, holding that "plaintiff's corrected preliminary infringement contentions are irreparably deficient and must be struck." *Id.* at 632.

The court explained that Mr. Golden had had "eight years to come up with a plausible theory of infringement against the United States and the third parties [including Samsung] whose products he alleges were made at the behest of the government." *Id.* The court noted further that Mr. Golden had "amended his complaint six times in response to the government's objections to the shortcomings in his pleadings." *Id.* The court had warned Mr. Golden that "failure to produce a sufficiently detailed claim chart would cause the court to assume that it cannot be done." *Id.* According to the court: "That has happened." *Id.* This Court affirmed the dismissal. *Golden v. United States*, 2022 WL 4103287, at \*2.

The CFC's holding that Mr. Golden is unable to produce infringement contentions that map each claim element onto the accused devices, including the accused devices of Samsung, was an adjudication

of non-infringement. The issue was actually litigated, and fully and fairly so. Mr. Golden was given the opportunity to file six complaints over a span of eight years in response to the government's objections pointing out the deficiencies in each complaint. Mr. Golden also was given two opportunities, again guided by the government's statement of its objections, to comply with the CFC's pretrial disclosure rules, which required, *inter alia*, "a chart identifying where each element of each asserted claim is found within each accused product." RCFC Patent Rule 4(c).

"The requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it." *In re Freeman*, 30 F.3d 1459, 1466 (Fed. Cir. 1994). It is not necessary that an issue proceed all the way to trial to be "actually litigated." The "general rule" is that "preclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way." *VirnetX Inc. v. Apple Inc.*, 792 F.App'x 796, 803 (Fed. Cir. 2019) (quoting 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §4419 (3d. ed.) (Wright and Miller)). Here, the Court of Federal Claims decided the

parties' actively litigated, eight-year dispute over whether Mr. Golden's ability to "produc[e] a sufficiently detailed claim chart … cannot be done." The court ruled against Mr. Golden on that issue. *Golden v. United States*, 156 Fed. Cl. at 632.

Issue preclusion serves "important" interests, one of which "is the judicial system's interest in avoiding duplication caused by an earlier bypassing of a present and adequate opportunity for conclusive resolution after fully prepared development of the issue." *VirnetX*, 792 F. App'x at 804 (finding actual litigation and applying issue preclusion to issue framed by the pleadings and developed during the case, but not raised at trial). Another is the reliance interests of opposing parties: "once an issue has been framed, the opposing party has a right to rely on the expectation that it will be resolved conclusively in that action." *Id.* (citing Wright and Miller §4419). *Accord Nichols & Co. v. United States*, 586 F.2d 826, 829 (C.C.P.A. 1978) ("an issue is actually litigated for purposes of collateral estoppel even though the determination is based on a failure of proof.").

Here, the issue of whether the accused Samsung smartphone products infringe the Asserted Patents was the core of what was litigated

in the context of Mr. Golden's compliance with the CFC's rules pertaining to infringement contentions. Considerable effort was expended by the government and the CFC in litigating that issue over the course of eight years. And, as shown in detail above, the CFC case was just one of many in which a number of parties and courts have had to expend resources defending against similar allegations of infringement by Mr. Golden. In none of those cases has Mr. Golden successfully shown that he has a plausible case for infringement. That should not surprise, given that Mr. Golden is asserting patents directed to specialized antiterrorism equipment against common, retail smartphone products.

The facts here thus compel the conclusion that the "actually litigated" prong of issue preclusion is met. To the extent the Ninth's Circuit's requirement that there have been "a full and fair opportunity to litigate the issue" is considered a separate and additional requirement to those set forth in *Uniloc*, 52 F.4th at 1346-1347, *see Janjua*, 933 F.3d at 1065, that requirement also has been met.

### 3. A Valid And Final Judgment Was Issued As A Result Of the Court of Federal Claims Case

The issue of infringement by the accused Samsung smartphones was necessarily at the center of the parties' litigation over Mr. Golden's compliance with the CFC's requirements for adequate infringement contentions. No dispute can exist that this issue was decided by the CFC's final judgment dismissing the complaint with prejudice, *Golden v. United States*, 156 Fed. Cl. at 627–32, and affirmed by this Court on appeal. *Golden v. United States*, 2022 WL 4103287, at *2. That dismissal operated as "an adjudication on the merits" under the CFC's rules, RCFC 41(b), and is a valid basis for a preclusive ruling. *See, e.g., Po Kee Wong v. U.S. Solicitor General,* 839 F. Supp. 2d 130, 136–37 (D.D.C. 2012), *aff'd*, No. 12-5102, 2012 WL 3791302 (D.C. Cir. Aug. 8, 2012) (holding that Court of Federal Claims judgment is valid basis for res judicata).

### 4. The Infringement Determination Was Essential To The Court Of Claims Judgment

The elements of a claim under 28 U.S.C §1498(a) are an "(1) invention claimed in a United States patent; (2) is used or manufactured by or for the United States, *meaning each limitation is present in the accused product or process*; and (3) the United States has no license or

would be liable for direct infringement of the patent right for such use or manufacture if the United States was a private party." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1319 (Fed. Cir. 2012) (emphasis added; internal quotations omitted). Thus, the CFC's determination that Mr. Golden had failed to state plausible infringement claims against Samsung's (and other manufacturer's) products because he could not allege that these products meet all of the claim limitations was necessary and essential to adjudicating Mr. Golden's Section 1498(a) claim based on Samsung's products.

\* \* \* \*

Because each of the factors for issue preclusion are met, the district court's dismissal on that basis should be affirmed.

## B.   Mr. Golden's Infringement Claims Are Barred By the *Kessler* Doctrine

The district court's dismissal should be affirmed on a second, independent basis grounded in what has become known as the "*Kessler* doctrine."[6] The *Kessler* doctrine is distinct from issue preclusion. This Court has applied the *Kessler* doctrine since early in its history, *MGA,*

---

[6] *See Kessler v. Eldred*, 206 U.S. 285 (1907).

*Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987), and has continued to apply it where circumstances warrant. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058 (Fed. Cir. 2014); *In re Personal Web Techs. LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020), *cert denied sub nom. Personal Web Techs., LLC v. Patreon, Inc.*, 142 S.Ct. 2707 (2022).

The doctrine prevents a plaintiff who has lost an adjudication of patent infringement from making repeated and harassing claims against the same or different parties based on essentially those same allegations of infringement. For example, the *Kessler* doctrine prevents a plaintiff from filing multiple infringement suits against customers of a product if the product has already been adjudged non-infringing in a suit against the manufacturer. *Brain Life*, 746 F.3d at 1055–56. The *Kessler* doctrine "grants a limited trade right that attaches to the product—to a particular thing—as an article of lawful commerce." *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1327 (Fed. Cir. 2015) (internal quotations omitted). The right "attaches to the noninfringing product" and is "designed to protect the unencumbered sale of that product." *Id*. Mr. Golden misstates the law when he argues that the *Kessler* doctrine does

not apply to Samsung because his prior suit was against the government. *See* Golden Corr. Br. at 11–14.

The *Kessler* doctrine is broader than issue preclusion. Unlike issue preclusion, the doctrine does not require that the issue of non-infringement be "actually litigated." *In re Personal Web Techs.*, 961 F.3d at 1379. A dismissal of a patent infringement case with prejudice operates as a "an adjudication of non-liability for infringement for purposes of invoking the *Kessler* doctrine." *Id.*

In addition, in previous opinions this Court has questioned the propriety of applying issue preclusion to allegations against newer products that could not have been litigated in the prior suit, even though similarities with previously-litigated products "may mean that certain questions regarding infringement … effectively may be foregone conclusions." *Brain Life*, 746 F.3d at 1055 (holding that infringement assertions against new product were not barred by issue preclusion).[7] However, the *Kessler* Doctrine operates to "fill[] the gap" that may be left open if issue preclusion is found to not technically apply, and thus

---

[7] The *BrainLife* court did not discuss the *B & B Hardware*, *SynQor*, *Ohio Willow Wood* line of precedent cited *supra.*

"allow[s] an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Id*. at 1056; *In re Personal Web Techs.*, 961 F.3d at 1377 (*Kessler* doctrine fills the "temporal gap" left by other preclusion doctrines and "bar[s] claims against 'conduct that the parties reasonably should expect to continue without change.'") (quoting 18 Wright & Miller 4409 & n.34)). Thus, this Court recently held that the *Kessler* doctrine applies where "the products in the prior and current litigations are essentially the same." *Askan v. FARO Technologies, Inc.*, No. 2022-2117, 2023 WL 4101351, at *4 (Fed. Cir. Jun 21, 2023).

The policy and purpose underlying the *Kessler* doctrine—to prevent repeated harassment by a plaintiff that interferes with the development and sale of products that have been the subject of an unsuccessful infringement lawsuit, *In re Personal Web Techs.*, 961 F.3d at 1376—apply with full force here. Mr. Golden asserted in the Court of Claims that Samsung's smartphone products allegedly supplied to the government infringed his patents. That suit ended in a final adjudication of non-infringement. Mr. Golden now continues his campaign with this lawsuit against Samsung over the same patents and the same products (adding

46

newer products that are indistinguishable for purposes of infringement). This situation is the paradigmatic example of repeated harassing lawsuits raising the same infringement issue that should be stopped by the *Kessler* doctrine. The district court correctly did so here and this Court should affirm on this basis, in addition to issue preclusion.

## II. Mr. Golden's Complaint Fails To State A Claim Upon Which Relief Can Be Granted

The district court also correctly dismissed Mr. Golden's complaint because it fails adequately to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6). The fundamental flaw in Mr. Golden's complaint is that the facts he pleads, drawing all reasonable inferences in his favor, lead at most only to the conclusion that the accused Samsung retail smartphones *could in theory* be modified to contain infringing components or functionality. However, nowhere does he plead facts—because he cannot—giving rise to any reasonable inference that the accused smartphones *do contain* infringing components or functionality, or that Samsung encourages or causes others to make the modifications necessary to create infringement.

## A. Mr. Golden Was Required To Plead Facts That Plausibly Give Rise To An Entitlement To Relief

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A plaintiff "need not 'prove its case at the pleading stage.'" *Bot M8 LLC*, 4 F.4th at 1352 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 566 U.S. at 678). Thus, "a plausible claim must do more than merely allege

entitlement to relief; it must support the grounds for that entitlement with sufficient factual content. *Id*.

## B. Mr. Golden's Complaint Alleges No More Than A "Sheer Possibility" Of Infringement

In this case, Mr. Golden's complaint asserts no more than a "sheer possibility" that Samsung's retail smartphones *could* be modified to allegedly infringe, but the complaint does not—because it cannot—plausibly allege that Samsung's retail smartphones *are* so modified. As recounted above, the complaint sets forth that a number of asserted claim elements are met by inclusion of the "Android Team Awareness Kit, ATAK (built on the Android operating system)" which is a software application that was developed by the U.S. military that could be deployed on a device such as a smartphone. (Appx119–Appx122, Appx112 ¶55). Elsewhere in his complaint. Mr. Golden alleges that the smartphones' camera, and perhaps other sensors, could be used as the claimed sensing devices. (Appx123–Appx127).

In particular, Mr. Golden's complaint includes a claim chart that asserts infringement of a representative claim from each of the three Asserted Patents (claim 5 of the '287 patent, claim 23 of the '439 patent,

claim 1 of the '189 patent). Each of these asserted claims includes limitations drawn to sensors for detecting certain chemical, biological, radiological or explosive substances, or certain communications capabilities. (Appx119–Appx122). As satisfying each of these claim limitations, the claim chart identifies only the ATAK software. However, the complaint contains no allegations that the ATAK software is included in the accused retail smartphones or that Samsung causes or encourages others to include such software in its smartphones. The situation here is thus indistinguishable from that in the Court of Federal Claims case, where, for example, Mr. Golden failed to identify the presence of the claimed "sensor" or "detector" in the accused smartphones.

The allegations contained elsewhere in the complaint regarding use of the smartphones' camera as a sensor to detect chemical, biological, radiological or explosive substances, or other sensors, are not mentioned in the claim chart. These allegations are supported only by citations to two articles found on the internet. The first article is dated in May 2010 and entitled "Cell Phone Sensors for Toxins Developed at UC San Diego." (Appx1714–Appx1718). The article states that "tiny sensors tucked into cell phones could map airborne toxins in real time" and describes a

research project at the University of California San Diego to develop "a tiny silicon chip" that "if embedded in [a] cellphone … could map the location and extent of hazards like gas leaks or the deliberate release of a toxin." *Id*. The second article is dated in April 2015 and is entitled "These New Smartphone Cameras Could Tell You What An Object Is Made Of." (Appx1720–Appx1721). The article describes work by Israeli engineers on "a device that could transform smartphone cameras into hyperspectral sensors, capable of detecting the chemical ingredients of an object or fluid simply by analysing a photo or video of it." (Appx1720).

Importantly, however, Mr. Golden's complaint nowhere plausibly alleges that any of the accused Samsung smartphones actually have been modified to include the technology described in these articles, by Samsung or by any other party. Even giving the benefit of the doubt to Mr. Golden that Samsung's accused phones could be modified to include either the ATAK software or the technology described in the internet articles, this Court has repeatedly held that an allegation "that a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)

(citation omitted); *see also Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380 (Fed. Cir. 2011) (rejecting infringement claim where accused product is "merely capable of being modified in a manner that infringes the claims of a patent"); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117–18 (Fed. Cir. 2002); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim."). Similarly, the complaint also alleges that Samsung's accused Galaxy devices could be modified to contain "biosensors," but fails to allege that any actual products—much less Samsung's accused products—use such "biosensors" or that they even exist. (Appx126–Appx127).

The district court thus correctly dismissed Mr. Golden's complaint because it does no more than assert that Samsung's accused products "could" be modified to infringe; that is, it asserts no more than a "sheer possibility" of infringement. *Bot M8 LLC*, 4 F.4th at 1352.

Mr. Golden's reliance on this Court's vacatur in the *Google* case originating in South Carolina is misplaced. *See* Golden Corr. Br. at 14-

52

22. This Court made crystal clear in the *Google* case that its decision went only to the district court's summary dismissal based on frivolousness and was not a judgment as to whether the complaint complies with *Twombly* and *Iqbal*. *Golden v. Apple Inc.*, 2022 WL 4103285 at *2 ("Our decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment. We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."). Mr. Golden's further arguments relating to the ATAK software and other matters do not address the fundamental deficiencies in his complaint just discussed. *See* Golden Corr. Br. at 22-30.

This Court should thus affirm the district court's dismissal on the additional ground that the complaint fails to state a claim upon which relief can be granted.

## III.   None Of Mr. Golden's Additional Arguments Has Merit

Mr. Golden makes a number of additional arguments in his brief; none of these has merit. Mr. Golden argues that the district court erred in dismissing the complaint "for pleading facts that are inconsistent with the requirements of its claims," apparently interpreting the court's

judgment as one based on an inadequate written description. Golden Corr. Br. at 9–10. The district court's decision was not based on the adequacy of the written description in the Asserted Patents.

Mr. Golden appears to argue that the district court erred by failing to compare the accused Samsung smartphones with the exemplary Google Pixel phone in his claim charts. Golden Corr. Br. at 27. This appears to be another facet of his argument that this Court's decision in the *Google* case indicates that his complaint should be found adequate in this case. That is not correct for the reasons argued above.

Mr. Golden also makes additional miscellaneous allegations regarding the purported opinion of experts and his racial identity. Golden Corr. Br. at 28–30. None of these arguments are relevant to the issues before the Court.

## CONCLUSION

The District Court's dismissal with prejudice should be affirmed.

Dated: September 13, 2023          Respectfully submitted,


*/s/ Richard L. Rainey*
Richard L. Rainey
Jay I. Alexander
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
 (202) 662-6000

Robert T. Haslam
Hyun S. Byun
Michael R. Morey
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
(650) 632-4700

Brian G. Bieluch
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

*Counsel for Appellee Samsung
Electronics America, Inc.*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal

Circuit Rule 32(a).

2.     The brief contains 9,785 words, excluding the parts of the brief

exempted by Federal Rule of Appellate Procedure 32(f) and Federal

Circuit Rule 32(b).

3.     This brief complies with the typeface requirements of Federal

Rule of Appellate Procedure 32(a)(5) and the type style requirements of

Federal Rule of Appellate Procedure 32(a)(6).

4.     This brief has been prepared in a proportionally spaced typeface

using Microsoft Office Word in 14-point Times New Roman font.


*/s/ Richard L. Rainey*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

| | |
|---|---|
| **Case Number** | 2023-2120 |
| **Short Case Caption** | Golden v. Samsung Electronics America, Inc. |

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 09/13/2023

by ☑ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Larry Golden | 740 Woodruff Road #1102, Greenville, SC 29607 Lgolden5605@charter.net |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 09/13/2023

Signature: /s/ Richard L. Rainey

Name: Richard L. Rainey