Volume I, Pages Appx1 to Appx326

No. 2023-2120

# United States Court of Appeals
# For the Federal Circuit

**LARRY GOLDEN,**

*Appellant,*

v.

**SAMSUNG ELECTRONICS AMERICA, INC.,**

*Appellee.*

Appeal from the United States District Court for the Northern District of California in Case No. 3:23-cv-00048-WHO

## CORRECTED APPELLEE'S APPENDIX

Richard L. Rainey
Jay I. Alexander
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
(202) 662-6000

*Counsel for Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## No. 2023-2120

## CORRECTED APPELLEE'S APPENDIX INDEX

Defendant-Appellee Samsung Electronics America, Inc. submits this Appendix under Federal Circuit Rule 30(e)(1). The appellant, Mr. Golden, is unrepresented and the appendix he filed with his opening brief is inadequate.

| Date | Docket No. for Case No. 23-cv-00048-WHO | Document Description | Appx. Page Nos. |
|---|---|---|---|
| | | **Volume I** | |
| 06/08/2023 | 36 | Order Granting Defendant's Motion to Dismiss and Denying Plaintiff's Cross-Motion to Dismiss and For Summary Judgment | Appx1–5 |
| N/A | N/A | District Court Docket Sheet for *Golden v. Samsung Electronics America, Inc.*, N.D. Cal. 3:23-cv-00048-WHO (accessed 09/01/2023) | Appx6–11 |
| 06/08/2023 | 37 | Judgment In a Civil Case | Appx12 |
| 12/25/2018 | N/A | U.S. Patent 10,163,287 | Appx13–39 |
| 03/07/2017 | N/A | U.S. Patent 9,589,439 | Appx40–69 |
| 08/04/2015 | N/A | U.S. Patent 9,096,189 | Appx70–96 |
| 01/05/2023 | 1 | Complaint for Patent Infringement | Appx97–129 |
| 02/21/2023 | 7 | Notice of Motion and | Appx130–151 |

| | | | |
|---|---|---|---|
| | | Memorandum of Points and Authorities in Support of Motion to Dismiss | |
| 02/21/2023 | 9.1 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibit 1 | Appx155–166 |
| 02/21/2023 | 9.2 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibit 2 | Appx167–177, Appx261–326 |
| **Volume II** | | | |
| 02/21/2023 | 9.3 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibits 3–9 | Appx328–1113 |
| **Volume III** | | | |
| 02/21/2023 | 9.3 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibits 3–9 | Appx1114–1479 |
| **Volume IV** | | | |
| 02/21/2023 | 9.3 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibit 10 | Appx1480–1519 |
| 02/21/2023 | 9.4 | Declaration of Michael R. Morey in Support of Request for Judicial in Support of Motion to Dismiss, Exhibits 11–18 | Appx1520–1521, Appx1525–1561, Appx1565–1595, Appx1613–1650 |
| 02/28/2023 | 20 | Plaintiff's Response to Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment | Appx1683–1713 |

| 04/26/2023 | 21.1 | Declaration of Michael R. Morey in Support of Defendant's Reply in Support of Motion to Dismiss and Opposition to Plaintiff's Cross-Motion for Summary Judgment | Appx1714–1721 |
|---|---|---|---|

Dated:  September 27, 2023      Respectfully submitted,

*/s/ Richard Rainey*
Richard L. Rainey
Jay I. Alexander
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
 (202) 662-6000

Robert T. Haslam
Hyun S. Byun
Michael R. Morey
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
(650) 632-4700

Brian G. Bieluch
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

*Counsel for Appellee Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, the foregoing was filed with the Court using the Court's electronic case filing system, which will send notification to all registered users.

/s/ Richard Rainey
Richard L. Rainey

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>           Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>           Defendant. | Case No.  23-cv-00048-WHO<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS AND DENYING<br>PLAINTIFF'S CROSS-MOTION TO<br>DISMISS AND FOR SUMMARY<br>JUDGMENT**<br><br>Re: Dkt. Nos. 7, 20 |

Defendant's Samsung Electronics America, Inc.'s (Samsung) motion to dismiss with prejudice (Dkt. No. 7) is GRANTED.  Plaintiff's cross-motion for summary judgment (Dkt. No. 20) is DENIED.[1]

Plaintiff Larry Golden has been pursuing patent infringement claims asserting his "family of patents" for over ten years in multiple jurisdictions. The patents at issue here and in each of these other cases concern "systems for locking, unlocking, or disabling a lock upon the detection of chemical, radiological, or biological hazards."  *See, e.g., Golden v. Apple Inc*., No. 2023-1161, 2023 WL 3400595, at *1 (identifying multiple actions dismissed with prejudice concerning the same patent families filed in the District of South Carolina and Northern District of California); *see also Golden v. United States*, 156 Fed. Cl. 623, 625 (2021), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022) (Federal Court of Claims dismissing Golden's patent infringement claims that assert his "family of patents concerning a device for detecting chemical, radiological, and biological hazards" brought against the United States, through the Department of

---

[1] I find these mattes suitable for determination on the papers and the June 14, 2023 hearing and Case Management Conference are VACATED.  Civ. L.R. 7-1(b).

1   Homeland Security, alleging that the government "caused cell phone manufacturers" including

2   Samsung "to produce devices that infringe on one or more of his patents.").[2]

3       The patent claims in each of his cases, with one exception, have been dismissed with

4   prejudice for failure to state a claim.  *See, e.g., Golden v. Apple Inc.*, No. 2023-1161, 2023 WL

5   3400595 (Fed. Cir. May 12, 2023) (affirming Hon. Vince Chhabria's dismissal with prejudice of

6   Golden's patent infringement claims as frivolous and barred by issue preclusion because "they

7   have been fully litigated and decided"); *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948

8   (Fed. Cir. May 5, 2023) (affirming Hon. Nathanial Cousins' dismissal with prejudice of Golden's

9   patent infringement claims for failure to state a claim); *see also Golden v. Qualcomm, Inc.*, No.

10   22-CV-03283-HSG, 2023 WL 2530857, at *3 (N.D. Cal. Mar. 15, 2023) (same).

11       In the most recent decision from this District, in a case Golden himself admits is related to

12   this one,[3] the Hon. Haywood S. Gilliam reviewed Golden's complaint asserting patent

13   infringement against Qualcomm, Inc. (under the '287, '439 and '189 Patents asserted here) and

14   dismissed the patent infringement claims with prejudice for failure to adequately or plausibly

15   plead patent infringement.  *Golden v. Qualcomm, Inc.*, No. 22-CV-03283-HSG, 2023 WL

16   2530857 (N.D. Cal. Mar. 15, 2023).  Similarly, Judge Chhabria dismissed Golden's claims of

17   willful patent infringement against Apple, Inc. that attempted to broadly claim that his patents

18   (including the patents asserted here) covered a range of technologies in smartphones including:

19   CPUs, temperature sensors; cameras; connectivity protocols; biometric authentications; and

20   remote access. *See* Dkt. No. 29 in Case No. 22cv-04152-VC ("The motion to dismiss is granted.

21   The claims asserted in the complaint are frivolous. Even if they were not frivolous, Golden's

22

23   _____

24   [2] The patents at issue here are United States Patent Nos. 9,096,189 (the "'189 patent"), 9,589,439
    (the "'439 patent"), and 10,163,287 (the "'287 patent").  The patents have the same specification,
25   are each titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System," and address
    "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological
26   detector unit with a disabling locking system for protecting products that can be grouped into
    several product groupings, from terrorist activity, and also for preventing unauthorized access to
27   and tampering with the storage and transport of ordnance and weapons." *See, e.g.*, '189 patent at
    1:40-45, 3:16-22.

28   [3] *See* Civil Cover Sheet, Dkt. 1-1, identifying Case No. 22-cv-03283-HSG.

United States District Court
Northern District of California

1  patent infringement claims against Apple are barred by issue preclusion because they have been

2  fully litigated and decided. *See Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021), *aff'd*,

3  *Golden v. United States*, No. 13-cv-00307, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022).").  That

4  dismissal was recently affirmed by the Federal Circuit.  Golden v. Apple Inc., No. 2023-1161,

5  2023 WL 3400595 (Fed. Cir. May 12, 2023).  The patent infringement assertions in the Apple

6  case – broad and unspecific claims that Apple's smartphones infringed his patents – are materially

7  similar to the allegations Golden makes against Samsung here.  C*ompare* Complaint in 22-cv-

8  04152-VC ¶ 85 *with* Complaint in 23-cv-00048-WHO ¶¶ 61-63.[4]

9           Samsung moves to dismiss this case, arguing that the patent infringement claims asserted

10  against it are barred by issue preclusion and the *Kessler* doctrine[5] because Golden asserted the

11  exact same patent infringement claims against Samsung's customer (the United States) over

12  Samsung's products and lost.  *See Golden v. United States*, No. 2022-1196, 2022 WL 4103287, at

13  *2 (Fed. Cir. Sept. 8, 2022) (affirming Court of Claims dismissal of suit against the United States

14  based on Samsung and other cellphone manufacturers' infringement of Golden's patents).

15  Samsung also argues that the complaint should be dismissed as frivolous, given the failure to

16  allege how Samsung's products satisfy identified, key limitations in the asserted patents for direct

17  infringement and the failure to allege facts regarding induced or contributory infringement.  *See*

18  *generally* Motion to Dismiss, Dkt. No. 7.

19           Golden opposes dismissal and cross-moves for summary judgment, arguing that because

20  he never got to litigate the infringement claims against Samsung on the merits in his Federal Court

21  of Claims case against the federal government (as the Federal Court of Claims dismissed for

22

23  _____

24  [4] Golden objects Samsung's filing of Statements of Recent Decisions, pointing to the Federal
     Circuit affirmance of Judges Cousins' and Chhabria's dismissals, and the recent opinion of Judge

25  Gilliam in Case No. 22-cv-03283. *See* Dkt. Nos. 30, 32 (arguing noticing the recent decisions is
     unduly prejudicial to Golden under Federal Rule of Evidence 403).  The objections are overruled.

26  [5] The *Kessler* doctrine is "separate and distinct" from claim or issue preclusion, and "fills the gap"
     left by those doctrines "allowing an adjudged non-infringer to avoid repeated harassment for

27  continuing its business as usual post-final judgment in a patent action" by providing protection
     from suits where the challenged devices "in the first and second suits are 'essentially the same,'

28  the 'new' product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing
     party or its privies." *See Brain Life, LLC v. Elekta Inc*., 746 F.3d 1045, 1056 (Fed. Cir. 2014).

1   failure to plausibly allege infringement), he should be allowed to litigate his claims here.  He also

2   argues that the allegations his Complaint here mirror those made against Google in a case where

3   the Federal Circuit reversed the District Court of South Carolina's summary dismissal for failure

4   to adequately plead infringement.  *See* Opposition, Dkt. No. 20, at 5-19 (relying on *Golden v.*

5   *Apple Inc*., No. 2022-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022).

6        Golden was given a full opportunity to litigate his claims *regarding Samsung's products* in

7   his Federal Court of Claims case.  His complaint was dismissed with prejudice, and that dismissal

8   was affirmed by the Federal Circuit.  *See generally Golden v. United States*, 2022 WL 4103287.[6]

9   Traditional principles of preclusion apply to that decision and the *Kessler* doctrine bars Golden's

10  attempt to sweep in newer Samsung products under the identical theories of infringement rejected

11  by the Federal Court of Claims and affirmed by the Federal Circuit.[7]  This case is barred by issue

12  preclusion.

13       Even if preclusion did not apply – and it does – this case must be dismissed for failure to

14  plausibly allege infringement.  Golden asserts that his "Multi Sensor Detection, Stall to Stop and

15  Lock Disabling System" patents were infringed by: (i) "CPU's Samsung uses with its

16  Smartphones"; (ii) Samsung's use of Global Position System (GPS) and web browsers; (iii)

17  Samsung's use of camera lenses; (iv) Samsung's use of biometric data to unlock phones; and (v)

18  Samsung's use of remote unlocking technology.  *See generally* Complaint ¶ 61 & pgs. 19-26; *see*

19  *also id*. pgs. 27-31.  The allegations that his patents cover the identified functionalities included in

20  Samsung's products are wholly unsupported and implausible on their face.

21       Similarly broad and unspecific assertions of infringement against Apple, Intel, and

22  Qualcomm have been dismissed without leave to amend by judges in this District.  *See, e.g.,*

23  *Golden v. Intel Corp*., No. 22-CV-03828-NC, 2022 WL 17735388, at *2 (N.D. Cal. Nov. 22,

24

25  _____

26  [6]  That the Federal Circuit reversed dismissal of another case where Samsung's patents were not at issue, and sent it back to the trial court to allow Golden another opportunity to plead his claims, is not relevant to preclusion under traditional principles or under the *Kessler* doctrine in this case.

27  [7]  Golden did not address the *Kessler* doctrine in his opposition and did not attempt to distinguish

28  the infringing functionalities of the newer Samsung products from those at issue in the case dismissed by the Federal Court of Claims and affirmed by the Federal Circuit.

1  2022), *aff'd*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) (dismissing with

2  prejudice because "allegations against Intel are conclusory and contain formulaic recitations of the

3  elements of asserted claims. It is nearly impossible to tell which patents he alleges are being

4  infringed and how. As has been the case in past litigation, Golden has 'failed to include factual

5  allegations beyond the identities of the defendants, reference to the alleged infringing devices, and

6  the alleged infringed-upon patents.'" (quoting *Golden v. Intel Corp.*, No. 22-CV-03828-NC, 2022

7  WL 17735388, at *2 (N.D. Cal. Nov. 22, 2022), *aff'd*, No. 2023-1257, 2023 WL 3262948 (Fed.

8  Cir. May 5, 2023)).  The same result is appropriate here.

9       Plaintiff's cross-motion for summary judgment is DENIED.  Samsung's motion to dismiss

10  the complaint without leave to amend is GRANTED.  This case is DISMISSED with prejudice.

11       **IT IS SO ORDERED.**

12  Dated: June 8, 2023

13

14

15  William H. Orrick
    United States District Judge

16

ADRMOP,APPEAL,CLOSED,ProS

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:23-cv-00048-WHO

| | |
|---|---|
| Golden v. Samsung Electronics America, Inc. | Date Filed: 01/05/2023 |
| Assigned to: Judge William H. Orrick | Date Terminated: 06/08/2023 |
| Case in other court: U.S. Court of Appeals for the Federal Circuit, 23-02120 | Jury Demand: None |
| | Nature of Suit: 830 Patent |
| Cause: 35:145 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Larry Golden**                              represented by **Larry Golden**
740 Woodruff Road
#1102
Greenville, SC 29607
(864)288-5605
Email: atpg-tech@charter.net
PRO SE

V.

**Defendant**

**Samsung Electronics America, Inc.**        represented by **Robert T. Haslam , III**
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square
Ste 10th Floor
Palo Alto, CA 94306
650-632-4702
Fax: 650-632-4802
Email: rhaslam@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian G. Bieluch**
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
424-332-4798
Email: bbieluch@cov.com
*ATTORNEY TO BE NOTICED*

**Hyun Sik Byun**
Covington and Burling LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112

650-632-4707
Email: hbyun@cov.com
*ATTORNEY TO BE NOTICED*

**Michael Robert Morey**
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
650-632-4731
Email: mmorey@cov.com
*ATTORNEY TO BE NOTICED*

**Richard L Rainey**
Covington and Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
202-662-6000
Fax: (202) 662-6291
Email: rrainey@cov.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/05/2023 | 1 | COMPLAINT against Samsung Electronics America, Inc. (Filing fee $ 402.). Filed by Larry Golden. (Attachments: # 1 Civil Cover Sheet, # 2 Fee, # 3 Exhibit) (kmg, COURT STAFF) (Filed on 1/5/2023) (Entered: 01/06/2023) |
| 01/05/2023 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 4/4/2023. Initial Case Management Conference set for 4/11/2023 02:00 PM in San Francisco, Courtroom 02, 17th Floor. (kmg, COURT STAFF) (Filed on 1/5/2023)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br><br> **(Entered: 01/06/2023)** |
| 01/06/2023 | 3 | Summons Issued as to Samsung Electronics America, Inc.. (kmg, COURT STAFF) (Filed on 1/6/2023) (Entered: 01/06/2023) |
| 02/06/2023 | 4 | CERTIFICATE OF SERVICE by Larry Golden re 2 Initial Case Management Scheduling Order with ADR Deadlines, 1 Complaint (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 2/6/2023) (Entered: 02/06/2023) |
| 02/21/2023 | 5 | NOTICE of Appearance by Hyun Sik Byun *on behalf of Samsung Electronics America, Inc.* (Byun, Hyun) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 6 | NOTICE of Appearance by Michael Robert Morey *on behalf of Samsung Electronics America, Inc.* (Morey, Michael) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 7 | MOTION to Dismiss filed by Samsung Electronics America, Inc.. Motion Hearing set for 3/29/2023 02:00 PM in San Francisco, Courtroom 02, 17th Floor before Judge William H. Orrick. Responses due by 3/7/2023. Replies due by 3/14/2023. (Attachments: # 1 Proposed Order)(Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |

| | | |
|---|---|---|
| 02/21/2023 | 8 | Request for Judicial Notice re 7 MOTION to Dismiss filed bySamsung Electronics America, Inc.. (Attachments: # 1 Proposed Order)(Related document(s) 7 ) (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 9 | Declaration of Michael R. Morey in Support of 8 Request for Judicial Notice *Supporting Motion to Dismiss* filed bySamsung Electronics America, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3 through 10, # 4 Exhibit 11 through 18)(Related document(s) 8 ) (Morey, Michael) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 10 | Certificate of Interested Entities by Samsung Electronics America, Inc. identifying Corporate Parent Samsung Electronics Co. Ltd. for Samsung Electronics America, Inc.. (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 11 | Corporate Disclosure Statement by Samsung Electronics America, Inc. identifying Corporate Parent Samsung Electronics Co., Ltd. for Samsung Electronics America, Inc.. (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 12 | CERTIFICATE OF SERVICE by Samsung Electronics America, Inc. re 9 Declaration in Support, 8 Request for Judicial Notice, 5 Notice of Appearance, 11 Certificate of Interested Entities, 7 MOTION to Dismiss , 6 Notice of Appearance, 10 Certificate of Interested Entities (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 13 | MOTION for leave to appear in Pro Hac Vice *for Richard Rainey* ( Filing fee $ 317, receipt number BCANDC-18008036.) filed by Samsung Electronics America, Inc.. (Attachments: # 1 Certificate of Good Standing)(Rainey, Richard) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 14 | CERTIFICATE OF SERVICE by Samsung Electronics America, Inc. re 9 Declaration in Support, 8 Request for Judicial Notice, 5 Notice of Appearance, 11 Certificate of Interested Entities, 7 MOTION to Dismiss , 6 Notice of Appearance, 10 Certificate of Interested Entities *(AMENDED CERTIFICATE OF SERVICE)* (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/21/2023 | 15 | CERTIFICATE OF SERVICE by Samsung Electronics America, Inc. re 13 MOTION for leave to appear in Pro Hac Vice *for Richard Rainey* ( Filing fee $ 317, receipt number BCANDC-18008036.) (Haslam, Robert) (Filed on 2/21/2023) (Entered: 02/21/2023) |
| 02/23/2023 | 16 | CLERKS NOTICE SETTING ZOOM HEARING - Motion Hearing as to 7 MOTION to Dismiss and Case Management Conference reset for 4/26/2023 02:00 PM. This proceeding will be held via Zoom webinar. <br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who <br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. <br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. <br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 2/23/2023) (Entered: 02/23/2023) |
| 02/24/2023 | 17 | NOTICE of Pendency of Other Action Involving Same Patent by Samsung Electronics America, Inc. (Haslam, Robert) (Filed on 2/24/2023) (Entered: 02/24/2023) |

| 02/24/2023 | 18 | NOTICE of Appearance by Brian G. Bieluch *for Samsung Electronics America, Inc.* (Bieluch, Brian) (Filed on 2/24/2023) (Entered: 02/24/2023) |
|---|---|---|
| 02/24/2023 | 19 | **Order by Judge William H. Orrick granting 13 Motion for Pro Hac Vice by Richard Rainey. (jmd, COURT STAFF) (Filed on 2/24/2023) (Entered: 02/24/2023)** |
| 02/28/2023 | 20 | Response to Motion to Dismiss and Cross MOTION for Summary Judgment filed by Larry Golden. Responses due by 3/14/2023. Replies due by 3/21/2023. (Attachments: # 1 Exhibit)(hdj, COURT STAFF) (Filed on 2/28/2023) (Entered: 03/01/2023) |
| 03/14/2023 | 21 | REPLY (re 7 MOTION to Dismiss ) *and Opposition to Dkt 20 Cross MOTION for Summary Judgment* filed bySamsung Electronics America, Inc.. (Attachments: # 1 Declaration of Michael R. Morey with Exhibits A, B)(Haslam, Robert) (Filed on 3/14/2023) (Entered: 03/14/2023) |
| 03/16/2023 | 22 | Reply in Support re 20 MOTION for Summary Judgment filed byLarry Golden. (Attachments: # 1 Envelope)(Related document(s) 20 ) (hdj, COURT STAFF) (Filed on 3/16/2023) (Entered: 03/17/2023) |
| 03/29/2023 | 23 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed bySamsung Electronics America, Inc.. (Attachments: # 1 Exhibit A)(Related document(s) 7 ) (Haslam, Robert) (Filed on 3/29/2023) (Entered: 03/29/2023) |
| 03/29/2023 | 24 | MOTION TO CHANGE TIME OF INITIAL CASE MANAGEMENT CONFERENCE PURSUANT TO CIVIL LOCAL RULE 6-3 filed by Samsung Electronics America, Inc.. Responses due by 4/12/2023. Replies due by 4/19/2023. (Attachments: # 1 Declaration of Michael R. Morey, # 2 Exhibit A-E, # 3 Proposed Order)(Haslam, Robert) (Filed on 3/29/2023) (Entered: 03/29/2023) |
| 03/30/2023 | 28 | Plaintiff's Supplemental Authority in Support of Plaintiff's Motion for Summary Judgment re 20 Response to Motion to Dismiss and Cross MOTION for Summary Judgment filed by Larry Golden. filed by Larry Golden. (Attachments: # 1 Envelope)(Related document(s) 20 ) (wsn, COURT STAFF) (Filed on 3/30/2023) (Entered: 04/04/2023) |
| 04/03/2023 | 25 | **ORDER GRANTING MOTION TO RESCHEDULE CASE MANAGEMENT CONFERENCE by Judge William H. Orrick granting 24 Motion. Case Management Statement due by 6/6/2023. Further Case Management Conference set for 6/13/2023 02:00 PM via Videoconference Only. (jmd, COURT STAFF) (Filed on 4/3/2023) (Entered: 04/03/2023)** |
| 04/03/2023 | 26 | CLERKS NOTICE RESETTING ZOOM HEARING as to Case Management Conference and hearing as to 20 MOTION for Summary Judgment and 7 MOTION to Dismiss RESET for 6/14/2023 02:00 PM before Judge William H. Orrick. This proceeding will be held via Zoom webinar. **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. **Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 4/3/2023) (Entered: 04/03/2023) |

| 04/03/2023 | 27 | CASE MANAGEMENT STATEMENT filed by Larry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 4/3/2023) (Entered: 04/04/2023) |
|---|---|---|
| 05/09/2023 | 29 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed bySamsung Electronics America, Inc.. (Attachments: # 1 Exhibit A)(Related document(s) 7 ) (Haslam, Robert) (Filed on 5/9/2023) (Entered: 05/09/2023) |
| 05/12/2023 | 30 | OBJECTIONS to re 29 Statement of Recent Decision by Larry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 5/12/2023) (Entered: 05/12/2023) |
| 05/15/2023 | 31 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed bySamsung Electronics America, Inc.. (Attachments: # 1 Exhibit A)(Related document(s) 7 ) (Haslam, Robert) (Filed on 5/15/2023) (Entered: 05/15/2023) |
| 05/18/2023 | 32 | OBJECTIONS re 31 Statement of Recent Decision by Larry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 5/18/2023) (Entered: 05/18/2023) |
| 05/24/2023 | 33 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Byun, Hyun) (Filed on 5/24/2023) (Entered: 05/24/2023) |
| 06/05/2023 | 34 | CASE MANAGEMENT STATEMENT filed by Samsung Electronics America, Inc.. (Attachments: # 1 Affidavit of Hyun Byun, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C) (Haslam, Robert) (Filed on 6/5/2023) (Entered: 06/05/2023) |
| 06/07/2023 | 35 | **SUPPLEMENT TO PLAINTIFF'S CASE MANAGEMENT STATEMENT (kmg, COURT STAFF) (Filed on 6/7/2023)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Additional attachment(s) added on 6/8/2023: # 1 Envelope) (kmg, COURT STAFF). (Entered: 06/08/2023)** |
| 06/08/2023 | 36 | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS CROSS-MOTION TO DISMISS AND FOR SUMMARY JUDGMENT. Signed by Judge William H. Orrick on 06/08/2023. (jmd, COURT STAFF) (Filed on 6/8/2023)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 06/08/2023)** |
| 06/08/2023 | 37 | JUDGMENT IN A CIVIL CASE. (jmd, COURT STAFF) (Filed on 6/8/2023) <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> (Entered: 06/08/2023) |
| 06/13/2023 | 38 | MOTION for Reconsideration re 37 Clerk's Judgment, 36 Order Dismissing Case, filed by Larry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 6/13/2023) (Entered: 06/13/2023) |
| 06/15/2023 | 39 | **ORDER DENYING 38 MOTION FOR RECONSIDERATION by Judge William H. Orrick. (jmd, COURT STAFF) (Filed on 6/15/2023)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 06/15/2023)** |
| 06/22/2023 | 40 | NOTICE OF APPEAL to the Federal Circuit as to 36 Order Dismissing Case, by Larry Golden -fee paid #311164960. Appeal Record due by 7/24/2023. (Attachments: # 1 Envelope, # 2 receipt)(hdj, COURT STAFF) (Filed on 6/22/2023) **No. 2023-2120** Modified on 7/7/2023 (wsn, COURT STAFF). (Entered: 06/23/2023) |

| 06/23/2023 | | Transmission of Notice of Appeal and Docket Sheet to the Federal Circuit Court of Appeals as to 40 Notice of Appeal to the Federal Circuit. Filing fee $ 455-311164960 Appeal Record due by 7/24/2023. (hdj, COURT STAFF) (Filed on 6/23/2023) (Entered: 06/23/2023) |
|---|---|---|
| 07/07/2023 | 41 | USCA Case Number **2023-2120** U.S. Court of Appeals for the Federal Circuit for 40 Notice of Appeal to the Federal Circuit, filed by Larry Golden. (wsn, COURT STAFF) (Filed on 7/7/2023) (Entered: 07/07/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/01/2023 12:52:07 | | |
| **PACER Login:** | cb091600 | **Client Code:** | 031179.00201.09457 |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00048-WHO |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    LARRY GOLDEN,                        Case No.  23-cv-00048-WHO

              Plaintiff,
8
                                          **JUDGMENT IN A CIVIL CASE**
9         v.
                                          Re: Dkt. No. 36
10   SAMSUNG ELECTRONICS AMERICA,
     INC.,
11
              Defendant.
12

13         Pursuant to the Court's Order Granting Defendant's Motion to Dismiss and Denying

14   Plaintiff's Cross-Motion to Dismiss and for Summary Judgment, judgment is accordingly entered.

15   Dated: June 8, 2023                          Mark B. Busby, Clerk

16                                         By: Jean M. Davis, Deputy Clerk

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California



US010163287B2

(12) **United States Patent**
Golden

(10) **Patent No.:** **US 10,163,287 B2**
(45) **Date of Patent:** **Dec. 25, 2018**

(54) **MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM**

(71) Applicant: **Larry Golden**, Greenville, SC (US)

(72) Inventor: **Larry Golden**, Greenville, SC (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/530,839**

(22) Filed: **Mar. 6, 2017**

(65) **Prior Publication Data**

US 2017/0186259 A1 Jun. 29, 2017

**Related U.S. Application Data**

(60) Continuation of application No. 14/806,988, filed on Jul. 23, 2015, now Pat. No. 9,589,439, which is a continuation of application No. 14/021,693, filed on Sep. 9, 2013, now Pat. No. 9,096,189, which is a continuation of application No. 13/288,065, filed on Nov. 3, 2011, now Pat. No. 8,531,280, which is a
(Continued)

(51) **Int. Cl.**
| | |
|---|---|
| *G08B 27/00* | (2006.01) |
| *G07C 9/00* | (2006.01) |
| *B60R 25/24* | (2013.01) |
| *B60R 25/04* | (2013.01) |

(52) **U.S. Cl.**
CPC .......... *G07C 9/00174* (2013.01); *B60R 25/04* (2013.01); *B60R 25/24* (2013.01); *G07C 9/00007* (2013.01); *G07C 9/00563* (2013.01)

(58) **Field of Classification Search**
CPC .. G07C 9/00; G07C 9/00007; G07C 9/00174; G07C 9/00309; G07C 9/00388; G07C

9/00563; G08B 27/00; G08B 27/005; G08B 27/006; B60R 25/018; B60R 25/04; B60R 25/10; B50R 25/102
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,385,469 A | 5/1983 | Scheuerpflug et al. |
| 4,544,267 A | 10/1985 | Schiller |

(Continued)

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and dated Jan. 13, 2012, pp. 1-34, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (34 pages).

(Continued)

*Primary Examiner* — Van Trieu

(57) **ABSTRACT**

A multi sensor detection and disabling lock system includes detector cases for holding interchangeable detectors that sample for chemical, biological and radiological compounds, agents and elements, with each detector case disposed in or upon the monitored product. The detector case transmits detection information to a monitoring computer terminal and transmits a signal to a lock disabler engaged to the product to lock or disable the product's lock thereby preventing untrained, unauthorized and unequipped individuals from gaining access and entry to the product, and also preventing further contamination of the area. The detection system can be interconnected to surveillance towers scanning detector cases disposed at seaport docks, freight depots and rail terminals for monitoring containers being prepared for shipment or sitting on docks for long periods of time.

**6 Claims, 13 Drawing Sheets**



## Related U.S. Application Data

division of application No. 12/802,001, filed on May 27, 2010, now Pat. No. 8,334,761, which is a continuation of application No. 12/657,356, filed on Jan. 20, 2010, now Pat. No. 8,106,752, which is a continuation of application No. 12/155,573, filed on Jun. 6, 2008, now Pat. No. 7,636,033, which is a continuation-in-part of application No. 11/397,118, filed on Apr. 5, 2006, now Pat. No. 7,385,497.

(56)        **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,586,441 | A | 5/1986 | Zekich |
| 4,792,226 | A | 12/1988 | Fishbine et al. |
| 5,222,152 | A | 6/1993 | Fishbine et al. |
| 5,223,844 | A | 6/1993 | Mansell et al. |
| 5,233,404 | A | 8/1993 | Lougheed et al. |
| 5,557,254 | A | 9/1996 | Johnson et al. |
| 5,682,133 | A | 10/1997 | Johnson et al. |
| 5,766,956 | A | 6/1998 | Groger et al. |
| 5,938,706 | A | 8/1999 | Feldman |
| 5,959,529 | A | 9/1999 | Kail |
| 5,963,657 | A | 10/1999 | Bowker et al. |
| 5,986,543 | A | 11/1999 | Johnson |
| 5,990,785 | A | 11/1999 | Suda |
| 6,049,269 | A | 4/2000 | Byrd et al. |
| 6,078,265 | A | 6/2000 | Bonder et al. |
| 6,262,656 | B1 | 7/2001 | Byrd et al. |
| 6,271,745 | B1 | 8/2001 | Anzai et al. |
| 6,374,652 | B1 | 4/2002 | Hwang |
| 6,411,887 | B1 | 6/2002 | Martens et al. |
| 6,470,260 | B2 | 10/2002 | Martens et al. |
| 6,542,076 | B1 | 4/2003 | Joao |
| 6,542,077 | B2 | 4/2003 | Joao |
| 6,588,635 | B2 | 7/2003 | Vor Keller et al. |
| 6,610,977 | B2 | 8/2003 | Megerle |
| 6,613,571 | B2 | 9/2003 | Cordery et al. |
| 6,628,813 | B2 | 9/2003 | Scott et al. |
| 6,647,328 | B2 | 10/2003 | Walker |
| 6,738,697 | B2 | 5/2004 | Breed |
| 6,923,509 | B1 | 8/2005 | Barnett |
| 6,980,092 | B2 | 12/2005 | Turnbull et al. |
| 6,988,026 | B2 | 1/2006 | Breed et al. |
| 7,005,982 | B1 | 2/2006 | Frank |
| 7,034,677 | B2 | 4/2006 | Steinthal et al. |
| 7,034,683 | B2 | 4/2006 | Ghazarian |
| 7,103,460 | B1 | 9/2006 | Breed |
| 7,116,798 | B1 | 10/2006 | Chawla |
| 7,148,484 | B2 | 12/2006 | Craig et al. |
| 7,171,312 | B2 | 1/2007 | Steinthal et al. |
| 7,184,117 | B2 | 2/2007 | Breed et al. |
| 7,243,945 | B2 | 7/2007 | Breed et al. |
| 7,339,469 | B2 | 3/2008 | Braun |
| 7,346,439 | B2 | 3/2008 | Bodin |
| 7,350,608 | B2 * | 4/2008 | Fernandez .......... B60L 1/00 180/65.1 |
| 7,385,497 | B2 | 6/2008 | Golden |
| 7,397,363 | B2 | 7/2008 | Joao |
| 7,636,033 | B2 | 12/2009 | Golden |
| 7,647,180 | B2 | 1/2010 | Breed |
| 7,844,505 | B1 | 11/2010 | Arneson et al. |
| 7,868,912 | B2 | 1/2011 | Venetianer et al. |
| 7,872,575 | B2 | 1/2011 | Tabe |
| 7,880,767 | B2 | 2/2011 | Chinigo |
| 7,961,094 | B2 | 6/2011 | Breed |
| 8,120,459 | B2 * | 2/2012 | Kwak .............. G07C 9/00309 340/5.2 |
| 8,274,377 | B2 | 9/2012 | Smith et al. |
| 8,531,521 | B2 | 9/2013 | Romanowich |
| 8,564,661 | B2 | 10/2013 | Lipton et al. |
| 2002/0145666 | A1 | 10/2002 | Scaman |
| 2003/0063004 | A1 | 4/2003 | Anthony et al. |
| 2003/0137426 | A1 | 7/2003 | Anthony et al. |
| 2003/0179073 | A1 * | 9/2003 | Ghazarian ............. E05B 47/00 340/5.6 |

| | | | |
|---|---|---|---|
| 2003/0206102 | A1 | 11/2003 | Joao |
| 2004/0107028 | A1 | 6/2004 | Catalano |
| 2004/0222092 | A1 | 11/2004 | Musho |
| 2005/0195069 | A1 | 9/2005 | Dunand |
| 2006/0164239 | A1 | 7/2006 | Loda |
| 2006/0176169 | A1 | 8/2006 | Doolin et al. |
| 2006/0181413 | A1 | 8/2006 | Mostov |
| 2006/0250235 | A1 | 11/2006 | Astrin |
| 2007/0093200 | A1 * | 4/2007 | Dobosz .............. H04B 7/18565 455/3.02 |
| 2007/0171042 | A1 | 7/2007 | Metes et al. |
| 2007/0257774 | A1 * | 11/2007 | Stumpert ............... G06Q 10/08 340/7.1 |
| 2008/0045156 | A1 | 2/2008 | Sakhpara |
| 2008/0122595 | A1 | 5/2008 | Yamamichi et al. |
| 2008/0234907 | A1 | 9/2008 | Labuhn et al. |
| 2010/0159983 | A1 | 5/2010 | Golden |
| 2011/0178655 | A1 | 6/2011 | Golden |

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and dated Dec. 2, 2011, pp. 1-27, publisher United States and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (27 pages).

United States Patent and Trademark Office; Office Action, Office Action from U.S. Appl. No. 13/065,837; copyright and dated Nov. 1, 2011, pp. 1-18, publisher United States Patent and Trademark Office, Alexandria, Virgina, USA; U.S. Appl. No. 13/288,065 (18 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 11/397,118; dated Nov. 14, 2007; Alexandria, Virgina, USA; pp. 1-12; U.S. Appl. No. 13/288,065 (12 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/155,573; dated Apr. 9, 2009; Alexandria, Virgina, USA; pp. 1-7; U.S. Appl. No. 13/288,065 (7 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/155,573; dated Jul. 30, 2009; Alexandria, Virgina, USA; pp. 1-9; U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. Appl. No. 12/155,573; dated Oct. 28, 2009; Alexandria, Virgina, USA; pp. 1-5; U.S. Appl. No. 13/288,065 (5 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/657,356; dated Jul. 12, 2010; Alexandria, Virgina, USA; pp. 1-14; U.S. Appl. No. 13/288,065 (14 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. Appl. No. 12/657,356; dated Mar. 10, 2011; Alexandria, Virginia, USA; pp. 1-4; U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 13/065,837; dated Jul. 18, 2011; Alexandria, Virginia, USA, pp. 1-9; U.S. Appl. No. 13/288,065 (9 pages).

A newspaper article of Mr. Melvin Sullivan and his family that references the date, Mar. 5, 2001, U.S. Appl. No. 13/288,065.

A letter of response Mr. Sullivan received from Pfeiffer & Gantt, PA, dated Sep. 16, 2002, U.S. Appl. No. 13/288,065.

A "Certificate of Existance" Bright Idea Inventor, LLC. Nov. 6, 2002, U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Congressman from Maryland, Elijah E. Cummings, dated Dec. 16, 2002; U.S. Appl. No. 13/288,065.

A newspaper article of Mr. Melvin Sullivan and Mr. Larry Golden, dated Feb. 27-Mar. 5, 2003; U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated May 21, 2003; U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Office of the Vice President, Dick Cheney, dated Jun. 3, 2003; U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated Oct. 1, 2003; U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Lindsey O. Graham, dated Oct. 21, 2003; U.S. Appl. No. 13/288,065.

(56)        **References Cited**

OTHER PUBLICATIONS

A letter sent to the President of the United States George W Bush, the President's Cabinet, the United States Senate and the Congressional Black Caucus, dated May 23, 2005; U.S. Appl. No. 13/288,065.

On Nov. 17, 2005, an "Inventor's Office Record of Invention", was filed in my name (Golden) at "The Law Office of David P. Gaudio,P.C.; the Inventors Network."; U.S. Appl. No. 13/288,065.

On Aug. 23, 2005, the "Disclosure Document Registration"; U.S. Appl. No. 13/288,065.

On Apr. 5, 2006, the "Patent Application" was filed in my name (Golden) at the United Staets Patent & Trademark Office in Washington, D.C.; U.S. Appl. No. 13/288,065.

On Jun. 6, 2008, the "Continuance-In-Part, (CIP) Application" was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; U.S. Appl. No. 13/288,065.

On Jan. 20, 2010, a "Continuation Application" (U.S. Appl. No. 12/657,356) was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; U.S. Appl. No. 13/288,065.

Reissue of U.S. Pat. No. 7,636,033,"Swear Back"; in accordance to Title 37—Code of Federal Regulations Patents, Trademarks, and Copyrights; Apr. 8, 2011; U.S. Appl. No. 13/288,065.

Reissue of U.S. Pat. No. 7,636,033; "Swearback-History of Work"; Apr. 8, 2011; U.S. Appl. No. 13/288,065.

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001, dated Apr. 14, 2011, 2011; Alexandria, Virginia, USA; pp. 1-16; U.S. Appl. No. 13/288,065 (16 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; dated May 27, 2011; Alexandria, Virginia, USA; pp. 1-14, U.S. Appl. No. 13/288,065 (14 pages).

United States Department of Homeland Security: Petition for Inter Partes Review of U.S. Pat. No. Re. 43,990 Under 35 U.S.C. §312 and 37 C.F.R. §42.104; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-57; U.S. Appl. No. 14/806,988 (57 pages).

United States Department of Homeland Security; Declaration of Dr. Sriram Vishwanath; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington D.C., USA; pp. 1-44; U.S. Appl. No. 14/806,988 (44 pages).

Richard R Brooks and S.S. Iyengar; Multi-Sensor Fusion Fundamentals and Applications with Software; published 1998; Copyright Prentice Hall PTR; Upper Saddle River, New Jersey, USA; pp. 1-20; copy enclosed (20 pages), U.S. Appl. No. 14/806,988 (20 pages).

Ramanarayanan Viswanathan and Pramod K Varshney; Distributed Detection with Multiple Sensors: Part I—Fundamentals; Proceedings of the IEEE; Jan. 1, 1997; pp. 1-11; vol. 85; No. 1; Southern Illinois University Carbondale OpenSIUC: Illinois. USA; pp. 1-11; U.S. Appl. No. 14/806,988 (11 pages).

Blum; Distributed Detection with Multiple Sensors: Part II—Advanced Topics: Proceedings of the IEEE; Jan. 1, 1997; pp. 1-16; vol. 85, No. 1; Southern Illinois University Carbondale OpenSIUC; Illinois, USA; U.S. Appl. No. 14/806,988 (16 pages).

Victor Lesser; Distributed Sensor Networks a Multragent Perspective; 2003; pp. 1, 2, 5, 6322, 26, 27, 36, 275, 320: copyright 2003 Kluwer Academic Publishers; AH Dordrecht, The Netherlands; U.S. Appl. No. 14/806,988 (10 pages).

Samuel Blackman and Robert Popoli; Design and Analysis of Modern Tracking Systems; 1999; pp. 1, 2, 6, 472; copyright 1999 Artech House; Norwood, Massachusetts, USA; U.S. Appl. No. 14/806,988 (4 pages).

Jean-Francois Chamberland; Decentralized Detection in Sensor Networks; 2003; pp. 407-416 IEEE Transactions on Signal Processing; vol. 51, No. 2; Urbana, Illinois, USA; U.S. Appl. No. 14/806,988 (10 pages).

Oleg Kachirski and Ratan Guha; Effective Intrusion Detection Using Multiple Sensors in Wireless Ad Hoc Networks; pp. 1-8; Proceedings of the 36.sup.th Hawaii International Conference on System Sciences; copyright 2003; Orlando, Florida. USA; U.S. Appl. No. 14/806,988 (8 pages).

Lawrence A Klein; Sensor and Data Fusion a Tool for Information Assessment and Decision Making; 2004; pp. 1-4, 6, 81, 87-89; copyright 2004 The Society of Photo-Optical Instrumentation Engineers; Publisher is SPIE—the International Society for Optical Engineering; Bellingham, Waehington, USA; U.S. Appl. No. 14/806,988.

Dale Ferriere and Khrystyna Pysareva and Andrzej Rucinski; Using Technology to Bridge Maritime Security Gaps; Aug. 1, 2005; Sea Technology; pp. 1-6; copyright Compass Publications, Inc. Jan. 2009; Portsmouth, New Hampshire. USA; U.S. Appl. No. 14/806,988 (6 pages).

Corie Lok; Cargo Security; MII Technology Review; Jun. 2004; No. 107; pp. 74-75; publisher is Massachusetts institute of Technology; Cambridge, Massachusetts, USA; USPASN14/806988 (2 pages).

Thomas C Chen; RFID and Sensor-based Container Content Visibility and Seaport Security Monitoring system; Proceedings of SPIE, vol. 5778; pp. 151-159; Mar. 28, 2005; Publisher is SPIE—the International Society for Optical Engineering; Bellingham, Washington, USA; USPASN14/806988 (10 pages).

United States Department of Homeland Security; The University of Texas at Austin College of Engineering Standard Resume of Sriram Vishwanath; CaseIPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-21; USPASN14/806988 (21 pages).

Operating Agreement of Bright Idea Inventor, LLC received from Pfeiffer & Gantt, PA, dated Nov. 13, 2002; U.S. Appl. No. 13/288,065.

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; dated Oct. 20, 2011; Alexandria, Virginia, USA; pp. 1-5; parent U.S. Appl. No. 13/288,065 (5 pages); U.S. Appl. No. 13/288,065 (5 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 12/802,001; copyright and dated Dec. 12, 2011, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA, parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 12/802,001; copyright and dated Mar. 26, 2012, pp. 1-12, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (12 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and dated Feb. 22, 2012, pp. 1-38, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (38 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and dated Feb. 22, 2012, pp. 1-25, publisher United States Patent and Trademark office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (25 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and dated Aug. 24, 2012, pp. 1-4, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and dated Nov. 28, 2012, pp. 1-11, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 13/288,065 (11 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and dated Apr. 16, 2013, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virgina, USA; U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and dated Apr. 20, 2015, pp. 1-20, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 14/021,693 (20 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and dated Jan.

(56)       **References Cited**

OTHER PUBLICATIONS

20, 2015, pp. 1-17, publisher United States Patent and Trademark Office, Alexandria, Virgina, USA; U.S. Appl. No. 14/021,693 (17 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and dated Sep. 5, 2014, pp. 1-12, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; U.S. Appl. No. 14/021,693 (12 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/806,988; copyright and dated Jul. 5, 2015, pp. 1-5, publisher United States Patent and Trademark Office, Alexandria, Virgina, USA; parent U.S. Appl. No. 14/806,988 (5 pages).

United States Patent and Trademark Office; Notice of Allowance from U.S. Appl. No. 14/806,988; dated Jan. 3, 2017; Alexandria, Virgina, USA; pp. 1-8; U.S. Appl. No. 14/806,988 (8 pages).

United States Patent and Trademark Office; Notice of Allowance from U.S. Appl. No. 14/021,693; dated Jun. 19, 2015; Alexandria, Virginia, USA; pp. 1-8; U.S. Appl. No. 14/021,693 (8 pages).

United States Patent and Trademark Office; Notice of Allowance from U.S. Appl. No. 13/288,065; dated May 24, 2013; Alexandria, Virgina, USA; pp. 1-8; U.S. Appl. No. 13/288,065 (8 pages).

* cited by examiner



Fig. 1

Fig. 2



**Fig. 3a**



**Fig. 3b**



**Fig. 4**



**Fig. 5**



Fig. 6

Fig. 7



**Fig. 8**



**Fig. 9**



**Fig. 10**



**Fig. 11**



Fig. 12

Fig. 13



**Fig. 14**

**Fig. 15**



**Fig. 16**



Fig. 17



**Fig. 18**



**Fig. 19**

1

# MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM

## CROSS REFERENCE TO RELATED APPLICATION

This application is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 14/806,988 title "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Jul. 23, 2015 that issued on Mar. 7, 2017 as U.S. Pat. No. 9,589,439, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. Pat. No. 9,589,439 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 14/021,693 title "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Sep. 9, 2013 that issued on Aug. 4, 2015 as U.S. Pat. No. 9,096,189, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. Pat. No. 9,096,189 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 13/288,065 title "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Nov. 3, 2011 that issued on Sep. 10, 2013 as U.S. Pat. No. 8,531,280, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. patent application Ser. No. 13/288,065 that will issue as U.S. Pat. No. 8,531,280 is a divisional application and claims the filing date and benefit of U.S. patent application Ser. No. 12/802,001 title "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on May 27, 2010, that issued on Dec. 18, 2012 as U.S. Pat. No. 8,334,761, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. Pat. No. 8,334,761 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 12/657,356 title "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Jan. 20, 2010 that issued on Jan. 31, 2012 as U.S. Pat. No. 8,106,752 the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. Pat. No. 8,106,752 is a continuation of and claims priority to U.S. Pat. No. 7,636,033. U.S. Pat. No. 7,636,033 is a continuation-in-part of and claims priority to U.S. Pat. No. 7,385,497. U.S. patent application Ser. No. 13/288,065 that will issue as U.S. Pat. No. 8,531,280 also claims the filing date and benefit of and incorporates the entire contents of U.S. patent application Ser. No. 12/657, 356, now U.S. Pat. No. 8,106,752 herein by reference for all purposes. The present application also claims the filing date and benefit of and incorporates the entire contents of U.S. Pat. Nos. 9,096,189; 8,531,280; 8,334,761; 8,106,752; 7,636,033; and 7,385,497 by reference herein in their entireties for all purposes.

## FIELD OF THE INVENTION

The present invention pertains to anti-terrorist detection and prevention systems, and more particularly pertains to a disabling lock mechanism combined with a chemical/biological/radiological detection system for use with products grouped together by similar characteristics in order to prevent unauthorized entry, contamination and terrorist activity.

## BACKGROUND

Terrorist activity is a continuous, daily, worldwide threat to the stability, prosperity, security and peace within nations

2

and between and among nations. Its danger lies in its arbitrary destructiveness as much as in its unpredictability, and the constant threat of terrorist activity compels measures and actions that cause strain and contention in free, democratic societies as security concerns and civil liberty concerns must be balanced so that both public safety and civil liberties are maintained. Safety and security concerns can be addressed through numerous proactive steps and measures, many of which cause only minimal interference with and disruption of the daily routines of work, travel, commerce and entertainment. However, because modern industrial societies afford almost limitless places, locations, and opportunities for terrorist activities, no safety measure or security protocol will be foolproof, but many security measures, systems and protocols can be implemented that greatly minimize specific threats through fingerprint identification procedures, chemical, biological, and radiological hazard detections, bomb and explosive detection, and controlling the access to everything from shipping containers to school lockers. Thus, the prior art discloses a wide range of security measures and systems.

For example, the Fishbine et al. patent (U.S. Pat. No. 4,792,226) discloses an optical fingerprinting system that includes an optics/processor unit, a video monitor, a data terminal, and a printer for collecting and storing data characteristics of all ten individual fingerprint images as desired on a standard booking or applicant card.

The Schiller patent (U.S. Pat. No. 4,544,267) discloses a finger identification unit that includes a fingerprint scanning apparatus using a collimated beam of light to interrogate the fingerprint of a finger placed against a platen so that successive scan positions produce signals containing fingerprint information.

The Fishbine et al. patent (U.S. Pat. No. 5,222,152) discloses a portable fingerprint scanning apparatus for optically scanning and recording fingerprint images and wirelessly transmitting such images to a mobile processing unit for verification and background checking.

The Lougheed et al. patent (U.S. Pat. No. 5,233,404) discloses an optical scanning apparatus that uses a linear charge coupled device (CCD) for recording the image of a fingerprint on the viewing surface.

The Groger et al. patent (U.S. Pat. No. 5,766,956) discloses a diode laser based sensor for undertaking optical, chemical, immunological or nucleic acid-based assay or other chemical analysis.

The Feldman patent (U.S. Pat. No. 5,938,706) discloses a multi element security system for preventing the unauthorized use of an automotive vehicle, and which includes numerous locking and control features interconnected to an onboard cpu.

The Bowker et al. patent (U.S. Pat. No. 5,963,657) discloses a safety access control for doors, handles, locks, etc., wherein the surface relief of a finger is read and verified to either allow or prevent access by the individual to the door, handle, lock, etc.

The Bonder et al. patent (U.S. Pat. No. 6,078,265) discloses a fingerprint identification security system wherein a key lock operated security system utilizes the fingerprint of the individual to control user access to the security system, such as the ignition system of an automotive vehicle.

The Anzai et al. patent (U.S. Pat. No. 6,271,745 B1) discloses a keyless authorization system for use of a motor vehicle that includes fingerprint reading units located on the exterior or interior of the motor vehicle and which are

3

coupled to a control unit for scanning, comparing and matching fingerprints to allow or disallow access to the motor vehicle.

The Hwang patent (U.S. Pat. No. 6,374,652 B1) discloses a fingerprint-activated doorknob in which a detecting sensor for a fingerprint is placed on the doorknob for measuring and searching the fingerprint against previously stored fingerprint inputs to control access to the door.

The Vor Keller et al. patent (U.S. Pat. No. 6,588,635 B2) discloses a safety holster for a firearm that includes a pivotally mounted retaining member and a fingerprint sensor for scanning fingerprint information so that only authorized users can withdraw the firearm from the holster.

The Cordery et al. patent (U.S. Pat. No. 6,613,571 B2) discloses a method and system for detecting biological and chemical hazards in the mail that includes sensors placed within the mail box for sampling and testing ambient air and so that mail can be safely transported through the mail system.

The Nagata patent (U.S. Pat. No. 6,628,213 B2) discloses a coding method for digital signal coding and decoding that includes a CMI (code-marked inversion) method of signal coding.

Nonetheless, despite the ingenuity of the above devices, methods, and systems, there remains a need for a multi-detector and disabling lock system for use with various types of products collected together by common characteristics into product groupings for detecting chemical, biological and radiological agents and compounds and for selectively disabling and activating the product locks thereby preventing unauthorized entry and further contamination and preventing and thwarting terrorist activities.

## SUMMARY

The present invention comprehends a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping 1 include, but are not limited to, cargo containers, shipping containers, tractor trailers, mail carriers, mail boxes and lockers; while the products grouped into what may be referred to as Product grouping 2 include, but are not limited to, chemical, biological, radiological, and nuclear detectors, motion sensors and door sensors. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

The multi sensor detection and lock disabling system includes a detector case sized to fit in, upon or adjacent any of the aforedescribed products for detecting harmful and dangerous chemical, biological, and radiological agents, compounds and elements. In addition, the multi sensor detection and lock disabling system is capable of transmitting a signal to lock or disable a lock on the product, and is also capable of transmitting signals to a monitoring computer terminal or PC so that appropriate defensive and safeguarding actions can be undertaken and an authorized individual can disarm and reset the locking system and the

4

multi sensor detection system. The detector case includes a power source (battery or electrical), interior compartments, Internet and GPS connections and a cpu interconnected with the Internet and GPS connections, and also interconnected with one or more off site monitoring computer terminals or PCs. The detector case includes one or more light alarm indicators that are externally visible and that light up when the chemical, biological, or radiological agent or compound is detected, and the light alarm indicators (which can be indicator lights or panels on the front of the detector case) can be color coded for denoting the specific agent or compound detected, i.e., separate and distinct colors for indicating detection of the chemical, biological, or radiological agent or compound.

The detector case is designed to hold within the interior compartments one or more interchangeable detectors, and each detector is adapted and set up to sample a specific compound or agent. Each detector includes a sound alarm, a sensor, a light alarm, and a readings panel, and is electrically interconnected (either by wire or wirelessly) to the cpu of the detector case so that information regarding the detection of the particular agent or compound can be conveyed from the detectors to the detector case cpu. Each detector can also be used as a manual, stand-alone hand held scanner.

The multi sensor detection and lock disabling system can be interconnected to a surveillance watchtower, as well as monitoring computer terminals or PCs, with the watchtower scanning shipping and cargo crates and containers being prepared for shipment or sitting for extended periods of time on a dock or at a port, at a railway site, or at an industrial storage facility. The watchtower will scan the cargo and shipping crates and containers for the light alarm indicators on detector cases that are mounted in or upon the crates and containers, and thus continuous security surveillance of the crates and containers can be maintained.

An enhanced version of the multi sensor detection and lock disabling system can be employed to prevent car and vehicle bombings. Coupling the multi sensor detection and lock disabling system with satellite service will enable the detection system to detect explosives and transmit an alert signal by satellite to monitoring equipment at a monitoring site. Upon receiving the alert signal at the monitoring site the monitoring equipment activates a stall-to-stop process for disabling the air, fuel, electrical and/or computer system of the vehicle. Moreover, upon receiving the alert signal at the monitoring site the car or vehicle will be locked by transmission of a satellite signal that disables the vehicle's electrical and ignition system thereby preventing escape of the terrorist.

It is an objective of the present invention to provide a multi sensor detection and disabling lock system for securing news racks and vending machines in order to prevent theft, unauthorized use and terrorist activity.

It is another objective of the present invention to provide a multi sensor detection and disabling lock system for preventing terrorist activity by using products grouped together by common features in several product groupings such as design similarity, similarity in the presentation of security problems and similarity with regard to the presentation of solutions to preventing terrorist solutions.

It is still yet another objective of the present invention to provide a multi sensor detection and disabling lock system that is capable of disabling an existing lock or activating a lock inside any of the products of the product grouping lists when a detector or sensor of the system is activated.

It is still yet a further objective of the present invention to provide a multi sensor detection and disabling lock system

wherein the disabling lock system prevents the unauthorized entry, access and further contamination of the products included in the several product groupings.

A still further objective of the present invention is to provide a multi sensor detection and lock disabling system that utilizes a multi-task device for preventing terrorist activity to vulnerable products that are collected or arranged by product grouping categories.

Yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system to secure cargos and containers, especially cargo and shipping containers, against chemical, biological, radiological and nuclear terrorist activity.

Still another objective of the present invention is to provide a multi sensor detection and disabling lock system capable of detecting chemical, biological and radiological agents and compounds.

Still yet another objective of the present invention is to provide a multi sensor detection and disabling lock system that includes interchangeable detectors that operate in conjunction to detect chemical, biological and radiological agents and compounds.

Still yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system that can be implemented by business or government at a minimum cost by organizing the products to be protected into product grouping categories.

Another objective of the present invention is to provide a multi sensor detection and disabling lock system that accurately and reliably detects harmful agents, compounds and elements, and prevents the placement and storage of weapons and bombs in the range of storage containers and facilities currently available.

Still another objective of the present invention is to provide a multi sensor detection and disabling lock system wherein the interchangeable detectors that comprise part of the system can be used as stand-alone scanners.

These and other objects, features, and advantages will become apparent to those skilled in the art upon a perusal of the following detailed description read in conjunction with the accompanying drawing figures and appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the primary features of the system which include a detector case, several interchangeable detectors, an automatic/mechanical lock disabler and a fingerprint biometric lock with disabler;

FIG. 2 is a front elevational view of the multi sensor detection and lock disabling system of the present invention illustrating one of the interchangeable detectors first shown in FIG. 1;

FIG. 3a is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one lock disabler to the lock of a product, such as a container, and disengaged from the lock of the container;

FIG. 3b is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the engagement of the lock disabler to the lock of the product for locking or disabling the lock of the product so that unauthorized access is prevented;

FIG. 4 is a side elevational view of the multi sensor detection and lock disabling system of the present invention

illustrating the detector case mounted to the product, such as the container, with the light alarm indicators externally visible;

FIG. 5 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of detector cases with a surveillance watchtower and a monitoring PC terminal;

FIG. 6 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the placement of detector cases upon containers different from the containers of FIG. 5, and wherein the detectors case are interconnected to a surveillance watchtower and a monitoring PC terminal;

FIG. 7 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one automatic/mechanical lock disabler to the lock of a standalone news rack;

FIG. 8 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating one interchangeable detector placed within the standalone news rack;

FIG. 9 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the detector case having color coded front panels for specifically indicating the agents, compounds or elements that have been detected;

FIG. 10 is a rear elevational view of the multi sensor detection and lock disabling system of the present invention illustrating the GPS, Internet and power source connections;

FIG. 11 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector with the detector case and the steps undertaken by the system when an agent or compound is detected;

FIG. 12 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the sequence of steps undertaken by one detector when functioning as a stand alone scanner for detecting an agent or compound;

FIG. 13 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector case with the automatic/mechanical lock disabler for activating the lock disabler upon detection by the system of an agent or compound;

FIG. 14 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating interconnection of the detector case with the fingerprint biometric lock with disabler for engaging and disengaging the fingerprint biometric lock as part of the process of detection and safeguarding the public upon detection of the agent or compound;

FIG. 15 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the system with a surveillance watchtower and a monitoring PC or computer terminal for monitoring containers, such as shipping or cargo containers, that may sit for extended time periods on docks, at rail yards, and at industrial storage facilities;

FIG. 16 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the integration of the detection system with a satellite and monitoring equipment at a monitoring site for detecting explosives placed in a vehicle and then transmitting signals to the satellite and then to the monitoring site for disabling and locking the vehicle;

FIG. **17** is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone and cell phone case;

FIG. **18** is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of a GPS satellite, a monitoring site and a cell phone tower for communicating to and with an electronic device such as a laptop computer or a cell phone for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt; and

FIG. **19** is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the use of a GPS satellite in conjunction with the monitoring site and monitoring equipment to relay commands and signals to the cpu or transceiver of the vehicle for stopping or locking the vehicle in response to a signal that a certain type of event (detection of a bomb, engine failure or malfunction or unauthorized use) has occurred or is in process.

DETAILED DESCRIPTION OF
REPRESENTATIVE EMBODIMENTS

Illustrated in FIGS. **1-19** is a multi sensor detection and lock disabling system **10** for preventing terrorist activity by monitoring, detecting, and securing those critical areas; sites, and facilities vulnerable to terrorist activity. The first step is the identification of critical areas, sites, locations and facilities that are vulnerable to terrorist activity as convenient places to store and plant explosives and bombs and spread biological, chemical or radiological agents and compounds, followed by the disposition of the multi sensor detection and lock disabling system **10** for monitoring, detecting, and securing the particular location or site. Vulnerable sites, locations, facilities and areas are nearly limitless in their variety; in order to categorize the protection the present invention provides an anti-terrorist product grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design, and products presenting the same or similar security problems are grouped together with the multi sensor detection and lock disabling system **10** for preventing terrorist activity. For example, two preferred product groupings can be Product Grouping I: cargo containers, shipping containers, cargo planes, freight train cars, tractor trailers, mail carriers (UPS, FedEx), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans and utility vehicles. Product Grouping II: chemical detectors, biological detectors, radiological detectors, nuclear detectors, motion sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems. In addition to grouping products together by features, designs and materials, the multi sensor detection system **10** includes a lock disabling capability for disabling an existing lock or activating a lock on or inside any of the aforementioned products when a detector or sensor of the system is activated. The lock disabling feature is a crucial component of the invention in so far as it prevents unauthorized, unequipped or untrained individuals from gaining access and entry to the site and causing further contamination of the site.

As shown in FIGS. **1-10**, the multi sensor detection and lock disabling system **10** includes at least one—and preferably many—detector case **12** that can be placed in, on, upon or adjacent the product, such as the shipping containers **14** of FIGS. **4** and **5** resting upon a platform **16** or the cargo container **18** of FIG. **6** sitting upon a seaport dock or pier **20**. The detector case **12** includes a top **22**, a bottom **24**, a pair of opposed sides **26** and a front side or panel **28** and an opposite rear or back side **30**. The rear side **30** has connections or contacts that can include an Internet connection **32**, a GPS connection **34** and a power connection **36** for a power source. The power source for the detector system **10** can be any conventional battery or electrical source. The detector case **12** includes an interior chamber divided into a number of compartments **38** for holding therein agent or compound detection means hereinafter further described. A cpu **40** is mounted within the detector case **12** and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates with a monitoring site and monitoring equipment. The front side **28** of the detector case **12** includes indicator means for visually indicating that a specific agent, compound or element has been detected. The indicator means can include color coded indicator lights **42** in panel form, as shown in FIG. **9**, with each indicator light panel **42** lighting up with a specific color corresponding to the detection of a specific agent or compound; or color coded indicator lights **44**, as shown FIG. **1**, that correspond to and individually light up on the detection of a specific agent or compound (chemical, biological, or radiological).

As shown in FIGS. **1**, **2** and **9-13**, the multi sensor detection and lock disabling system **10** includes a plurality of detectors **46** with each detector **46** adapted for and set up to sample for a specific agent or compound (biological, chemical, or radiological); and the detectors **46** are interchangeable for adapting to the needs and demands of future technology. The detectors **46** can also be used as stand alone scanners. In the preferred embodiment of the invention, at least three detectors **46** are placed within the detector case **12** with one detector **46** for specifically sampling biological agents or compounds, one detector **46** for sampling chemical agents or compounds, and one detector **46** for sampling radiological agents or compounds. The detectors **46** are interconnected to the cpu **40** of the detection system **10** by conventional connections that can be wire or wireless for transmitting the appropriate signals to the cpu **40** upon detection of the particular agent or compound. As shown in FIG. **2**, each detector **46** includes on its front plate or facing surface a sound alarm indicator **48**, a readings panel **50** comprising a plastic shield and LED lights for displaying the various read-out messages, a sensor **52** for detecting the specific agent, element or compound, and a light alarm indicator **54** that can be color coded for each specific agent and which is externally visible when the detector **46** is used as a stand alone scanner. Each detector **46** includes a conventional microprocessor for controlling the various functions and generating the appropriate signals for transmission to the cpu **40** of the detector case **12**.

As shown in FIGS. **1**, **3a**, **3b**, **9**, and **13-15**, used in conjunction with the multi sensor detection and lock disabling system **10** is at least one automatic/mechanical lock disabler **56**—and depending upon the number of products being monitored there can be one lock disabler **56** for each product. The automatic/mechanical lock disabler **56** is physically connected to the detector case **12** by a wire or cable **58** for receiving signals therefrom for disabling an existing lock or activating a lock inside a product to prevent

access to the product. By way of example, FIG. 3*a* shows the automatic/mechanical lock disabler **56** mounted—by any conventional means—to the lock **60** of the shipping container **14** shown in FIGS. **4** and **5** and connected by wire **58** to the cpu **40** of the detector case **12**. The lock disabler **56** is in the non-activated or disengaged state in FIG. 3*a*. FIG. 3*b* shows the automatic/mechanical lock disabler **56** mounted to the lock **60** of the shipping container **14** and in the activated or engaged state after detection of an agent or compound by the system **10** thereby for locking or disabling the lock **60** of the shipping container **14** and preventing unauthorized entry and access by unauthorized, untrained and unequipped individuals. In FIGS. 3*a* and 3*b* the lock **60** secures doors of the shipping container **14** that can be slidably or pivotally opened and closed.

In addition to the automatic/mechanical lock disabler **56**, the multi sensor detection and lock disabling system **10** can also utilize a fingerprint biometric lock with disabler **62** as shown in FIGS. **1** and **14**. The fingerprint biometric lock with disabler **62** is interconnected to the cpu **40** of the detector case **12** for receiving transmissions therefrom after detection of an agent or compound has occurred so that the lock on the product can be locked or disabled. Moreover, resetting of the fingerprint biometric lock with disabler **62** occurs when the fingerprint of the individual is placed on the fingerprint-matching pad **64**, and if a match occurs with a known fingerprint stored by the cpu **40**, then the individual can reset the fingerprint biometric lock with disabler **56** by turning the manual lock disabler **66**. The fingerprint biometric lock with disabler **62** is mounted to the lock of the product in a manner similar to the mounting of the automatic/mechanical lock disabler **56** that is shown in FIGS. **3** and 3*b*.

FIGS. **4** and **5** show one manner of disposition or placement of the detector case **12** in relation to the product, i.e., the shipping container **14**, with the color coded indicator lights **42** externally viewable; FIG. **5** shows a number of shipping containers **14** each equipped with a detector case **12** and integrated with elements hereinafter further described for continuously monitoring the shipping containers **14** as they sit for an extended period of time on the truck or rail platform **16**. FIG. **6** illustrates several cargo containers **18** sitting on the shipping dock or pier **20**, with each cargo container **18** having a detector case **12** mounted thereon and integrated with and monitored by elements shown in FIG. **5** and hereinafter further described.

FIG. **7** illustrates a typical product from product grouping 1 that is monitored by the multi sensor detection and lock disabling system **10** of the present invention; specifically, FIG. **7** shows a news rack **68** with one automatic/mechanical lock disabler **56** mounted to and interconnected with the locking mechanism of the news rack **68**. As long as there is no detection of any agent or compound, the lock disabler **56** is in the disengaged state, and the individual can deposit the coin amount in the chute and then freely open the glass panel **70** by the handle **72** for removing a paper. However, the lock disabler **56** would be activated upon detection of the harmful agent or compound and receipt of a signal from the cpu **40** for locking or disabling the locking mechanism thereby denying access to the interior of the news rack **68** from all untrained, unauthorized and unequipped individuals.

FIG. **8** illustrates one detector **46** disposed within the news rack **68** and which is visible through the panel **70** for detecting one specific agent, compound or element. The detector **46** functions as a stand-alone scanner and can be wirelessly interconnected to off site monitoring equipment.

FIG. **11** illustrates a representative schematic **74** for describing the signal transmission process from the detector **46** to the cpu **40** of the detector case **12**. The external stimulus **76** would be the chemical, biological or radiological agent or compound. If there is no detection of the agent or compound, the detector **46** will stay in the sensing mode **78**. However, detection of the specific agent will trigger the sound alarm **80** and the light alarm **82**, and instant transmittal of a signal to the cpu **40**. The readings **84** can be stored by the cpu **40** for verification and future review and evaluation. After all the appropriate corrective and preventative measures have been undertaken by the trained and authorized personal, and the site has been cleansed of the contamination, authorized and equipped personal can then reset **86** the system **10**.

FIG. **12** illustrates a representative schematic **88** for the detector **46** when used as stand-alone scanner. The detector **46** undergoes the same essential steps as illustrated in FIG. **11**, with the exception of the signal transmission to the cpu **40**. The detector **46** remains in detection mode **78** until an agent is detected, and then the various functions-light alarm **82**, sound alarm **80**, storage of readings **84**, and, after the appropriate security and safety steps have been carried out by authorized personal, detector reset **90** by authorized personal can occur thereby placing the detector **46** back in detection or sensing mode **78**.

FIG. **13** is a representative schematic **92** that illustrates the steps undertaken by the system **10** to lock or disable a lock, such as the lock **60** for the shipping container **14** shown in FIGS. 3*a* and 3*b*. Upon detection of the agent (chemical, biological, radiological) the alarm light indicators **42** or **44** will light up providing external indication that an agent has been detected. In addition, the system **10**—the cpu **40**—will transmit a lock/disable lock signal **94** to the automatic/mechanical lock disabler **56** to lock or disable the lock on the product, such as the lock **60** on the shipping container **14** of FIGS. 3*a*-**5**. This prevents unauthorized, unequipped, or untrained individuals from entering or gaining access to the product for which a dangerous and perhaps lethal agent has been detected. After the proper authorities and authorized personal have been notified and all the appropriate security, preventative and clean up measures have been undertaken, the authorized individual can perform the disarm and reset function **96** for the system **10** placing the system **10** in back in the detection mode **98**.

FIG. **14** is a representative schematic **100** illustrating the use of the fingerprint biometric lock with disabler **62** with the system **10**. Upon detection of the agent or compound by the detector, the various alarms would sound and light up (shown in previous figures), and the cpu **40** would then transmit a signal to the fingerprint biometric lock with disabler **62** to lock or disable the lock on the product, such as the lock **60** on the shipping containers **14** shown in FIGS. 3*a*-**5**. The shipping containers **60** would remain locked and in an access denied mode **101** should an attempt be made to gain access to the container **60** by opening the lock **60** with an unauthorized fingerprint. However, a fingerprint that matches stored and authorized fingerprints **102** would indicate an authorized individual, and would allow the individual to disable and disarm **104** the lock **60** of the shipping container **14**. The fingerprint biometric lock with disabler **62** would then be reset **106** after the appropriate safety, cleanup, and protection measures are completed, and the system **10** would be reset and placed back in the detection mode **108**.

FIG. **15** is a schematic representation **110** that illustrates the integration of a surveillance watchtower **112** and a monitoring terminal or PC **114** for monitoring products such

as the shipping containers **14** or cargo containers **16** that sit for extended periods of time of docks, piers **20**, truck terminals, rail yards, shipping platforms **16** and industrial sites as shown in FIGS. **5** and **6**. The watchtower **112** would maintain continuous surveillance over a number of shipping containers **60**, for example, with detector cases **12** mounted in or on each container **14** and set in detection mode **116** with one or more detectors **46** disposed in each detector case **12**. The watchtower **112** would continuously scan for light alarm indicators **42** and **44** on the products, such as the containers **14** or **18**, and the watchtower **112** would be interconnected and integrated with the monitoring terminal or PC **114**. Upon detection **118** of an agent or compound in one or more of the shipping containers **14**, the appropriate light alarm indicators **42** or **44** would light providing visible confirmation of the detection of the specific agent or compound. The cpu **40** would transmit a lock/disable signal **120** to the lock **60** on each respective shipping container **14** to lock or disable the lock **60** thus preventing access to that respective shipping container **14**. In addition, signal transmissions would be sent to the monitoring terminal or PC **114** (which could be off site) thereby alerting authorized security personal of the contamination event. With the information received at the monitoring terminal **114**, authorized personal would then be notified and dispatched to the area to undertake the appropriate safety and cleanup measures **122**. Such measures would also include disarming the lock disabling system in order to gain access to the shipping container **14**. After all the cleanup and security measures are completed by the trained and properly equipped authorities, the detection system and the lock disabling feature would reset **124** and the detection system would again be placed in detection mode **116**.

FIG. **16** is a schematic representation **126** that illustrates an enhanced version of the multi sensor detection and lock disabling system **10** for preventing car and vehicle attacks and bombings. The lock disabling system **10** would be interconnected to the locking system and mechanism **128** of the vehicle **130**. In addition, a stall to stop disabling link **132** can be made with the fuel, air, and electrical system **134** of the vehicle **130**. The enhanced version incorporates a satellite **136** for signal receipt and transmission from the vehicle **130** in which the detector system **10** is placed to a monitoring site and monitoring equipment **138**. As shown in FIG. **16**, a detection signal **140** would be sent to the satellite **136** by the detection system **10** upon detection of a bomb or explosive **142** hidden in the vehicle **130**. The satellite **136** would then transmit an alert signal **144** to the monitoring site **138** with the signal **144** containing the relevant data to evaluate the nature of the threat. The monitoring site **138** would then transmit a stall to stop signal **146** to the detection system **10** to lock the vehicle **130** and/or disable the electrical system of the vehicle **130** thereby disabling the vehicle **130**, preventing access to the vehicle **130** by locking the vehicle **130**, and preventing any terrorist in the vehicle **130** from escaping.

The detector case **12** can be modified and adapted for inclusion with cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, suitcases; and briefcases. In addition, the basic monitoring terminal or PC **114**, as shown in FIGS. **5** and **15**, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring.

The system **10** and the watchtower **112**, along with the satellite **136** and the monitoring site **138** can be adapted or incorporated with cell phone towers and satellites for use with satellite communication and/or a cell tower, wi-fi, wi-max, broadband, GPS, navigation, radio frequency interconnected to a central processing unit (cpu), such as cpu **40**, or a transceiver and monitoring equipment to include but not to be limited to computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals therebetween. The aforementioned telecommunication and radio communication means can be interactive with any type of motive vehicle that includes but is not limited to cars, trucks, vans, SUVs, trains, subways, boats, ships and airplanes, and which is reported stolen, experiences a loss of brakes, or a bomb, explosives or other types of chemical, biological, radiological, or nuclear agents are detected within, upon, affixed or mounted to the vehicle and which detection causes an automatic signal transmission or a signal transmission is activated when a call is made to the monitoring station by an authorized person. The authorized individual includes but is not limited to the owner, pilot, conductor, captain, police highway patrol, security guard and military personnel to the monitoring equipment for activating a vehicle slowdown or stall-to-stop disabling system that similar to the disabling system **126** shown in FIG. **16**, or incorporating features of the system **126** shown in FIG. **16**, from the monitoring equipment to the vehicle. The activation of the stall-to-stop disabling means or the vehicle slowdown disables or engages the computer, electrical, fuel and air systems of the vehicle or a combination of the computer, electrical, fuel and air systems that include but are not limited to the brakes, foot peddle, lights, speed controls, ignition, steering, transmission, and the horsepower of the motor.

In addition, the basic stall-to-stop disabling means or the vehicle slowdown means and device can be adapted, modified or designed to include: an open bust or open platform for integrating any new and innovative technology; warning lights indicators; sound alarm indicators; voice alarm indicators; a cell phone to transmit to the vehicle a signal for slowing and halting the vehicle; and a lock disabling system or means to lock a thief or terrorist inside the vehicle after a transmission is received or sent. Open bust or open platform also refers to the compatibility of the detector case **12**, or the incorporation of its features in cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, briefcases, and suitcases, etc., with other communication, transmission and surveillance systems whereupon the detector case **12**, and its features, can be seamlessly integrated with other new and emerging systems and technologies.

Thus, as shown more specifically in FIG. **17**, by way of a representative example the features and elements of the detector case **12** are shown as being incorporated into cell phone detector case **150** and associated cell phone monitor **152**. The cell phone monitor **152** includes the standard keypad functions **154** and more specialized system use (ring tone, email, photos, texting) functions **156** as well as a viewing screen **158**. The cell phone detector case **150** includes a recharging cradle or seat **160**, a front side **162**, a top **164**, a bottom **166**, and a pair of opposed sides **168**. At the back of the cell phone detector case **150** are connections, contacts, and ports for at least an Internet connection **170**, a GPS connection **172**, and a contact, plug, or port for a power source **174**. The power source for the cell phone detector case **150** can be any conventional rechargeable battery source or standard electrical power from a standard electrical receptacle or outlet.

As shown in FIG. **17**, the cell phone detector case **150** includes one or more sensor/detector units, cells, or com-

ponents **176** built into and incorporated into the case **150**. The detector **176** includes generally disposed at the front **162** of the case **150** the following types of indicators: a sound alarm indicator **178**, a readings panel **180**, a sensor **182** for detecting one or more specific types of agents, elements, chemicals, compounds, etc., and a light alarm indicator **184**. The sensor/detector **176** will be interconnected to the power source **174**. In addition, mounted on and externally visible on the sides **168** or front **162** of the case **150** are a plurality of color coded indicator lights **186** with each light **186** corresponding to a specific agent, element, chemical, compound, etc., and lighting up when that agent is detected by the sensor/detector **176**. The color coded indicator lights **186** will be electrically interconnected to the sensor/detectors **176** via any standard microprocessor. The cell phone detector case **150** and cell phone monitor **152** thus comprise a hand-held, easily portable and transportable detection means that is both effective and unobtrusive in its disposition and use.

FIGS. **18** and **19** illustrate representative examples of the integration of portable electronic communication or tele-communcation devices such as a cell phone **187a** and/or a laptop computer **187b** with the monitoring equipment **138** located at a predesignated monitoring site **188**, and operating in conjunction with either a satellite and/or a cell phone tower **190** to transmit and receive signals and commands among each other and to a vehicle **192**, such as a truck, as part of a stall-to-stop disabling system for slowing and stopping the vehicle **192** and locking a thief, terrorist, or unauthorized individual in the vehicle **192** if needed. A wide range of events can trigger and initiate the stall-to-stop system and the locking or lock disabling system and mechanism, and the event doesn't have to be limited to the detection of a bomb or a chemical, biological, or radiological agent, element, or compound. The events can include, but is not limited to, detection of an engine problem to engine failure to the unauthorized use (stealing) of the vehicle **192**. The vehicle **192** includes an electromotive system **194** that comprises, among other components, an onboard computer(s), electrical, fuel and air systems, as well as brakes, ignition, steering, and transmission. Also integrated with and capable of communicating with the vehicle's **192** electromotive system **194** is a stall-to-stop system while a lock disabling mechanism **196** is able to engage and disengage or disable the vehicle's **192** locking system **198** upon receipt of the appropriate commands via a lock disabling communication channel or link **200**. This link **200** can also accommodate the stall-to-stop system commands and signals, and thus is a multi-channel communication link. A CPU or a transceiver **202** is programmed to receive signals from the cell phone tower **190** and/or to a GPS satellite **204** and is interconnected with the stall-to-stop system and the lock disabling system **196** via link **200** for engaging the electromotive system **194** and actuating the lock disabling system **196** to stop the vehicle **192** and lock inside the vehicle **192** anyone such as a thief, terrorist or other unauthorized individual.

A representative example for stopping, disabling, and locking the vehicle **192** that utilizes the cell phone tower **190** wherein the activation and/or distress signal **206** originates from the cell phone **187a** or the laptop **187b** and such activation signal **206** travels to the cell phone tower **190** that is nearest the current location of the vehicle **192**. A signal **208** is then transmitted to the monitoring site **188** and specific monitoring equipment **138** that can also include but is not limited to cell phones, laptops, desktop PC's, notebook PC's and LCD monitors. The monitoring site **138** then

communicates by signal **210** to the GPS satellite **204** that an original or activation signal has been received and then the GPS satellite **204** locates and communicates by multiplex signal **212** with the CPU or transceiver **202** on the vehicle **192** and exchanges information on the type of problem, situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **214** to the cell phone tower **190** that communicates with the transceiver **202** and/or CPU of the vehicle **192** to initiate or execute any commands that will actuate the stall-to-stop disabling link **200** and lock disabling system **196** for bringing the vehicle **192** to a halt and actuating the vehicle's **192** locking mechanism **198** for locking the thief, terrorist, or other unauthorized person inside the vehicle **192** if needed.

FIG. **19** illustrates a representative example wherein the stall-to-stop system and the lock disabling system **196** are utilized in conjunction with the GPS satellite **204**. In FIG. **19** a signal has traveled to the satellites nearest the vehicle's **192** current location and then the signal **218** has traveled to the monitoring equipment **138** and monitoring site **188** which can include but is not limited to satellite cell phones, satellite monitors, cell phones, laptops, desktop PC's, notebook PC's, and LCD monitors. The GPS satellite **204** then locates and communicates with the CPU and/or transceiver **202** on the vehicle **192** via a multiplex (two-way) signal **220** in order to exchange information on such distress and danger event parameters as the specific problem situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **222** back to the GPS satellite **204** that in turn communicates via another signal **224** with the CPU and/or transceiver **202** to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's **192** electromotive system **194** for bringing the vehicle **192** to a halt and for actuating the lock disabling system **196** to direct the lock disabling link **200** to actuate the locking mechanism **198** thereby locking the vehicle **192** and anyone inside the vehicle **192**.

The present invention comprehends a chemical/biological/radiological/nuclear/explosive/human/contraband detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping 1 (storage & transportation) include, but are not limited to, cargo containers, shipping containers, tractor trailers, mail carriers, mail boxes, airplanes, subways, cargo planes, freight train cars, United Parcel Services™ (UPS™), Federal Express™ (FedEx™), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans, unmanned aerial vehicles (UAVs), unmanned ground vehicles (UGVs), and utility vehicles; the products grouped into what may be referred to as Product grouping 2 (sensors) include, but are not limited to, chemical, biological, radiological, explosive and nuclear detectors, motion sensors, door sensors, speed sensors, biometric sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems, detection of humans, detection of contraband, temperature, and shock levels; the products grouped into what may be referred to as Product grouping 3 (detector case; modified and adapted) include, but are not limited to, cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases,

PDA cases, carry-on cases, suitcases, eyeglass, briefcases, detector cases of locks, detector cases of tags, detector cases that is mounted to, detector cases that is affixed to, detector cases that is outside of, detector cases that is inside of, and detector cases that is adjacent to; the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite cell phones, cell phones, Universal Mobile Telecommunications System (UMTS) phones, personal digital assistants (PDAs), liquid crystal display (LCD) monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds; the products grouped into what may be referred to as Product grouping 5 (communication methods) include, but are not limited to, Bluetooth, Wi-Fi, Wi-Max, Internet, Ethernet, Broadband, Network Bandwidth, Wireless, Wired, Text Messaging, Cellular, Satellite, Telematics, Wide Area Network (WAN), Wireless Wide Area Network (WWAN), Local Area Network (LAN), Radio Frequency (RF), Broadband Wireless Access (BWA), Global Positioning System (GPS), General Packet Radio Services (GPRS), Global System for Mobile (GSM), Wideband Code Division Multiple Access (W-CDMA), Universal Mobile Telecommunications System (UMTS), Short Message Service (SMS); the products grouped into what may be referred to as Product grouping 6 (biometrics) include, but are not limited to, fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature. the products grouped into what may be referred to as Product grouping 7 (authorized person) include, but are not limited to, owner, pilot, conductor, captain, drivers of vehicles identified as high security, airport security, police, highway patrol, security guard, military personnel, hazardous material (HAZMAT) personnel, the Central Intelligence Agency (CIA), the Federal Bureau of Investigation (FBI), Secret Service, port security personnel, border security personnel, first responders, monitoring sites and terminal personnel. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside or outside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

While the invention has been shown and described in a preferred embodiment, it will be apparent to those skilled in the art that numerous alterations, modifications, and variations will possible and practicable without departing from the spirit and scope of the invention as set forth by the appended claims.

What is claimed:

**1**. Monitoring equipment that is at least one of products grouped together by common features of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone interconnected to a lock for communication therebetween; the monitoring equipment comprising:

at least one of a central processing unit (CPU), a network processor, or a front end processor for communication between the monitoring equipment and the lock;

a transmitter for transmitting signals and messages to at least one of a remote lock, an electrical lock, a mechanical lock, or automatic lock;

a receiver for receiving signals from at least one of a remote lock, an electrical lock, a mechanical lock, or automatic lock;

a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) the monitoring equipment after a specific number of tries;

a short-range radio frequency (RF) connection that is near-field communication (NFC);

at least one of the satellite connection, Bluetooth connection, WiFi connection, Internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection that is capable of signal communication with the transmitter or the receiver;

at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature recognition system; and

the monitoring equipment being capable of sending signals to engage (lock), disengage (unlock), or disable (make unavailable) at least one of a remote lock, an electrical lock, a mechanical lock, or automatic lock, whereupon a signal is sent to the receiver of the monitoring equipment from at least one of the remote lock, electrical lock, mechanical lock, or automatic lock, the signal comprising at least one of location data or lock status data to be sent to the monitoring equipment.

**2**. Monitoring equipment that is at least one of products grouped together by common features of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone interconnected to at least one of a home lock, a building lock, or a cargo container lock for communication therebetween; the monitoring equipment comprising:

at least one of a central processing unit (CPU), a network processor, or a front end processor for communication between the monitoring equipment and the lock;

a transmitter for transmitting signals and messages to at least one of a home lock, a building lock, or a cargo container lock;

a receiver for receiving signals from at least one of a home lock, a building lock, or a cargo container lock;

a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) the monitoring equipment after a specific number of tries;

a short-range radio frequency (RE) connection that is near-field communication (NFC);

at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RE) connection, or GPS connection that is capable of signal communication with the transmitter or the receiver;

at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature recognition system; and

the monitoring equipment being capable of sending signals to engage (lock), disengage (unlock), or disable (make unavailable) at least one of a home lock, a building lock, or a cargo container lock whereupon a

17 | 18

signal is sent to the receiver of the monitoring equipment from at least one of the home lock, building lock, or cargo container lock, the signal comprising at least one of location data or lock status data to be sent to the monitoring equipment.

3. Monitoring equipment that is at least one of products grouped together by common features of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal, digital assistant (PDA) or smart phone interconnected to a vehicle lock for communication therebetween; the monitoring equipment comprising:

  at least one of a central processing unit (CPU), a network processor, or a front end processor for communication between the monitoring equipment and the lock;

  a transmitter for transmitting signals and messages to at least one of a manned or unmanned aerial vehicle lock, a manned or unmanned ground vehicle lock, or a manned or unmanned sea vehicle lock;

  a receiver for receiving signals from at least one of a manned or unmanned aerial vehicle lock, a manned or unmanned ground vehicle lock, or a manned or unmanned sea vehicle lock;

  a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) the monitoring equipment after a specific number of tries;

  a short-range radio frequency (RF) connection that is near-field communication (NFC);

  at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection that is capable of signal communication with the transmitter or the receiver;

  at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature recognition system; and

  the monitoring equipment being capable of sending signals to engage (lock), disengage (unlock), or disable (make unavailable) at least one of a manned or unmanned aerial vehicle lock, a manned or unmanned ground vehicle lock, or a manned or unmanned sea vehicle lock, whereupon a signal is sent to the receiver of the monitoring equipment from at least one of the manned or unmanned aerial vehicle lock, manned or unmanned ground vehicle lock, or manned or unmanned sea vehicle lock, the signal comprising at least one of location data or lock status data to be sent to the monitoring equipment.

4. A communication device comprising:

  at least one central processing unit (CPU);

  at least one motion sensor in communication with the at least one CPU;

  at least one viewing screen for monitoring in communication with the at least one CPU;

  at least one global positioning system (GPS) connection in communication with the at least one CPU;

  at least one of an internet connection Wi-Fi connection in communication with the at least one CPU;

  at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU;

  at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication

device, disengage (unlock) the communication device, or disable (make unavailable) the communication device;

  at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device;

  at least one biometric sensor in communication with the at least one CPU for providing biometric authentication to access the communication device;

  at least one or more detectors in communication with the art least one CPU for detecting at least one of a chemical, biological, radiological, or explosive agents;

  at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU; and

  at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

5. A monitoring device, comprising:

  at least one central processing unit (CPU);

  at least one temperature sensor in communication with the at least one CPU for monitoring temperature;

  at least one motion sensor in communication with the at least one CPU;

  at least one viewing screen for monitoring in communication with the at least one CPU;

  at least one global positioning system (GPS) connection in communication with the at least one CPU;

  at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU;

  at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU;

  at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device;

  at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device;

  at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device;

  at least one sensor for chemical, biological, or human detection in communication with the at least one CPU;

  one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents;

  at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU; and

  at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to

19

detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

**6**. A monitoring equipment, comprising:

at least one central processing unit (CPU);

at least one motion sensor in communication with the at least one CPU;

at least one light indicator in communication with the at least one CPU;

at least one viewing screen for monitoring in communication with the at least one CPU;

at least one global positioning system (GPS) connection in communication with the at least one CPU;

at least one of an internet connection Wi-Fi connection in communication with the at least one CPU;

at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU;

at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device;

20

at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device;

at least one biometric sensor in communication with the at least one CPU for providing biometric authentication to access the communication device;

at least one or more detectors in communication with the art least one CPU for detecting at least one of a chemical, biological, radiological, or explosive agents;

at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU; and

at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

* * * * *



US009589439B2

(12) **United States Patent**
Golden

(10) **Patent No.:** **US 9,589,439 B2**
(45) **Date of Patent:** *Mar. 7, 2017

(54) **MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM**

(71) Applicant: **Larry Golden**, Mauldin, SC (US)

(72) Inventor: **Larry Golden**, Mauldin, SC (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 81 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **14/806,988**

(22) Filed: **Jul. 23, 2015**

(65) **Prior Publication Data**

US 2016/0027273 A1 Jan. 28, 2016

**Related U.S. Application Data**

(60) Continuation of application No. 14/021,693, filed on Sep. 9, 2013, now Pat. No. 9,096,189, which is a
(Continued)

(51) **Int. Cl.**
| | |
|---|---|
| *B60R 25/102* | (2013.01) |
| *G08B 13/24* | (2006.01) |
| *B60R 25/01* | (2013.01) |
| *B60R 25/04* | (2013.01) |
| *G07C 9/00* | (2006.01) |
(Continued)

(52) **U.S. Cl.**
CPC ........ *G08B 13/2491* (2013.01); *B60R 25/018* (2013.01); *B60R 25/04* (2013.01); *B60R 25/102* (2013.01); *G07C 9/00912* (2013.01); *G08B 15/00* (2013.01); *G08B 21/12* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .... G08B 15/00; G08B 15/001; G08B 15/004;

G08B 25/009; B60R 25/102; B60R 25/01; B60R 25/018; B60R 25/04; B60R 25/0405; B60R 25/0415; B60R 25/10
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,385,469 A 5/1983 Scheuerpflug
4,544,267 A 10/1985 Schiller
(Continued)

OTHER PUBLICATIONS

United States Department of Homeland Security; Petition for Inter Partes Review of U.S. Pat. No. Re. 43,990 Under 35 U.S.C. §312 and 37 C.F.R. §42.104; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-57; copy enclosed (57 pages)
(Continued)

*Primary Examiner* — Van Trieu

(57) **ABSTRACT**

A multi sensor detection and disabling lock system includes detector cases for holding interchangeable detectors that sample for chemical, biological and radiological compounds, agents and elements, with each detector case disposed in or upon the monitored product. The detector case transmits detection information to a monitoring computer terminal and transmits a signal to a lock disabler engaged to the product to lock or disable the product's lock thereby preventing untrained, unauthorized and unequipped individual's from gaining access and entry to the product, and also preventing further contamination of the area. The detection system can be interconnected to surveillance towers scanning detector cases disposed at seaport docks, freight depots and rail terminals for monitoring containers being prepared for shipment or sitting on docks for long periods of time.

**23 Claims, 13 Drawing Sheets**



## Related U.S. Application Data

continuation of application No. 13/288,065, filed on Nov. 3, 2011, now Pat. No. 8,531,280, which is a division of application No. 12/802,001, filed on May 27, 2010, now Pat. No. 8,334,761, which is a continuation of application No. 12/657,356, filed on Jan. 20, 2010, now Pat. No. 8,106,752, which is a continuation of application No. 12/155,573, filed on Jun. 6, 2008, now Pat. No. 7,636,033, which is a continuation-in-part of application No. 11/397,118, filed on Apr. 5, 2006, now Pat. No. 7,385,497.

(51) **Int. Cl.**
G08B 15/00 (2006.01)
G08B 21/12 (2006.01)

(52) **U.S. Cl.**
CPC ... B60R 2325/205 (2013.01); B60R 2325/304 (2013.01); G07C 2009/0092 (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,586,441 A | 5/1986 | Zekich |
| 4,792,226 A | 12/1988 | Fishbine |
| 5,222,152 A | 6/1993 | Fishbine |
| 5,223,844 A | 6/1993 | Mansell et al. |
| 5,233,404 A | 8/1993 | Lougheed |
| 5,557,254 A | 9/1996 | Johnson |
| 5,682,133 A | 10/1997 | Johnson |
| 5,766,956 A | 6/1998 | Groger |
| 5,938,706 A | 8/1999 | Feldman |
| 5,959,529 A | 9/1999 | Kail, IV |
| 5,963,657 A | 10/1999 | Bowker |
| 5,986,543 A | 11/1999 | Johnson |
| 5,990,785 A | 11/1999 | Suda |
| 6,049,269 A | 4/2000 | Byrd |
| 6,078,265 A | 6/2000 | Bonder |
| 6,262,656 B1 | 7/2001 | Byrd |
| 6,271,745 B1 | 8/2001 | Arizal |
| 6,374,652 B1 | 4/2002 | Hwang |
| 6,411,887 B1 | 6/2002 | Martens |
| 6,470,260 B2 | 10/2002 | Martens |
| 6,542,076 B1 | 4/2003 | Joao |
| 6,542,077 B2 | 4/2003 | Joao |
| 6,588,635 B2 | 7/2003 | Vor Keller |
| 6,610,977 B2 | 8/2003 | Megerie |
| 6,613,571 B2 | 9/2003 | Cordery |
| 6,628,813 B2 | 9/2003 | Scott |
| 6,647,328 B2 | 11/2003 | Walker |
| 6,738,697 B2 | 5/2004 | Breed |
| 6,923,509 B1 | 8/2005 | Barnett |
| 6,980,092 B2 | 12/2005 | Turnbull |
| 6,988,026 B2 | 1/2006 | Breed et al. |
| 7,005,982 B1 | 2/2006 | Frank |
| 7,034,677 B2 | 4/2006 | Steinthal et al. |
| 7,034,683 B2 | 4/2006 | Ghazarian |
| 7,103,460 B1 | 9/2006 | Breed |
| 7,109,859 B2 | 9/2006 | Peeters |
| 7,116,798 B1 | 10/2006 | Chawla |
| 7,148,484 B2 | 12/2006 | Craig et al. |
| 7,164,117 B2 | 1/2007 | Breed et al. |
| 7,171,312 B2 | 1/2007 | Steinthal et al. |
| 7,243,945 B2 | 7/2007 | Breed et al. |
| 7,339,469 B2 | 3/2008 | Braun |
| 7,346,439 B2 | 3/2008 | Bodin |
| 7,385,497 B2 | 6/2008 | Golden |
| 7,397,363 B2 | 7/2008 | Joao |
| 7,636,033 B2 | 12/2009 | Golden |
| 7,647,180 B2 | 1/2010 | Breed |
| 7,844,505 B1 | 11/2010 | Arneson et al. |
| 7,868,912 B2 | 1/2011 | Venetianer et al. |
| 7,872,575 B2 | 1/2011 | Tabe |
| 7,880,767 B2 | 2/2011 | Chinigo |

| | | | |
|---|---|---|---|
| 7,961,094 B2 | 6/2011 | Breed |
| 8,274,377 B2 | 9/2012 | Smith et al. |
| 8,531,521 B2 | 9/2013 | Romanovich |
| 8,564,661 B2 | 10/2013 | Lipton |
| 2002/0145666 A1 | 10/2002 | Scaman |
| 2003/0063004 A1 | 4/2003 | Anthony et al. |
| 2003/0137426 A1 | 7/2003 | Anthony et al. |
| 2003/0206102 A1 | 11/2003 | Joao |
| 2004/0107028 A1 | 6/2004 | Catalano |
| 2004/0222092 A1 | 11/2004 | Musho |
| 2005/0195069 A1 | 9/2005 | Dunand |
| 2006/0164239 A1 | 7/2006 | Loda |
| 2006/0176169 A1 | 8/2006 | Doolin et al. |
| 2006/0181413 A1 | 8/2006 | Mostov |
| 2006/0250235 A1 | 11/2006 | Astrin |
| 2007/0171042 A1 | 7/2007 | Metes et al. |
| 2008/0045156 A1 | 2/2008 | Sakhpara |
| 2008/0122595 A1 | 5/2008 | Yamamichi |
| 2008/0234907 A1 | 9/2008 | Labuhn |
| 2010/0159983 A1 | 6/2010 | Golden |
| 2011/0178655 A1 | 7/2011 | Golden |

OTHER PUBLICATIONS

United States Department of Homeland Security; Declaration of Dr. Sriram Vishwanath; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-44; copy enclosed (44 pages).

Richard R Brooks and S.S. Iyengar; Multi-Sensor Fusion Fundamentals and Applications with Software; published 1998; Copyright Prentice Hall PTR; Upper Saddle River, New Jersey, USA; pp. 1-20; copy enclosed (20 pages).

Ramanarayanan Viswanathan and Pramod K Varshney; Distriubted Detection with Multiple Sensors: Part 1—Fundamentals; Proceedings of the IEEE; Jan. 1, 1997; pp. 1-11; vol. 85; No. 1; Southern Illinois University Carbondale OpenSIUC; Illinois, USA; pp. 1-11; copy enclosed (11 pages).

Blum; Distributed Detection with Multiple Sensors: Part II—Advanced Topics; Proceedings of the IEEE; Jan. 1, 1997; pp. 1-16; vol. 85, No. 1; Southern Illinois University Carbondale OpenSIUC; Illinois, USA; pp. 1-11; copy enclosed (16 pages).

Victor Lesser; Distributed Sensor Networks a Multiagent Perspective; 2003; pp. 1, 2, 5, 6, 22, 26, 27, 36, 275, 320; copyright 2003 Kluwer Academic Publishers; AH Dordrecht, The Netherlands; copy enclosed (10 pages).

Samuel Blackman and Robert Popoli; Design and Analysis of Modern Tracking Systems; 1999; pp. 1, 2, 6, 472; copyright 1999 Artech House; Norwood, Massachusetts, USA; copy enclosed (4 pages).

Jean-Francois Chamberland; Decentralized Detection in Sensor Networks; 2003; pp. 407-416; IEEE Transactions on Signal Processing; vol. 51, No. 2; Urbana, Illinois, USA; copy enclosed (10 pages).

Oleg Kachirski and Ratan Guha; Effective Intrusion Detection Using Multiple Sensors in Wireless Ad Hoc Networks; pp. 1-8; Proceedings of the 36th Hawaii International Conference on System Sciences; copyright 2003; Orlando, Florida, USA; copy enclosed (8 pages).

Lawrence A Klein; Sensor and Data Fusion A Tool for Information Assessment and Decision Making; 2004; pp. 1-4, 6, 81, 87-89; copyright 2004 The Society of Photo-Optical Instrumentation Engineers; Publisher is SPIE—the International Society for Optical Engineering; Bellingham, Washington, USA; copy enclosed (12 pages).

Dale Ferriere and Khrystyna Pysareva and Andrzej Rucinski; Using Technology to Bridge Maritime Security Gaps; Aug. 1, 2005; Sea Technology; pp. 1-6; copyright Compass Publications, Inc. Jan. 2009; Portsmouth, New Hampshire, USA; copy enclosed (6 pages).

Corie Lok; Cargo Security; MIT Technology Review; Jun. 2004; No. 107; pp. 74-75; publisher is Massachusetts Institute of Technology; Cambridge, Massachusetts, USA; copy enclosed (2 pages).

Thomas C Chen; RFID and Sensor-based Container Content Visibility and Seaport Security Monitoring system; Proceedings of SPIE, vol. 5778; pp. 151-159; Mar. 28, 2005; Publisher is SPIE—

(56) **References Cited**

OTHER PUBLICATIONS

the International Society for Optical Engineering; Bellingham, Washington, USA; copy enclosed (10 pages).

United States Department of Homeland Security; The University of Texas at Austin College of Engineering Standard Resume of Sriram Vishwanath; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-21; copy enclosed (21 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 11/397,118; mailed Nov. 14, 2007; Alexandria, Virginia, USA; pp. 1-12; parent U.S. Appl. No. 13/288,065 (12 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/155,573; mailed Apr. 9, 2009; Alexandria, Virginia, USA; pp. 1-7; parent U.S. Appl. No. 13/288,065 (7 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/155,573; mailed Jul. 30, 2009; Alexandria, Virginia, USA; pp. 1-9; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. Appl. No. 12/155,573; mailed Oct. 28, 2009; Alexandria, Virginia, USA; pp. 1-5; parent U.S. Appl. No. 13/288,065 (5 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/657,356; mailed Jul. 12, 2010; Alexandria, Virginia, USA; pp. 1-14; parent U.S. Appl. No. 13/288,065 (14 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. Appl. No. 12/657,356; mailed Mar. 10, 2011; Alexandria, Virginia, USA; pp. 1-4; parent U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 13/065,837; mailed Jul. 18, 2011; Alexandria, Virginia, USA; pp. 1-9; parent U.S. Appl. No. 13/288,065 (9 pages).

A newspaper article of Mr. Melvin Sullivan and his family that references the date, Mar. 6, 2001; parent U.S. Appl. No. 13/288,065.

A letter of response Mr. Sullivan received from Pfeiffer & Gantt, PA, dated Sep. 16, 2002; parent U.S. Appl. No. 13/288,065.

A "Certificate of Existance" Bright Idea Inventor, LLC. Nov. 6, 2002; parent U.S. Appl. No. 13/288,065.

Operating Agreement of Bright Idea Inventor, LLC received from Pfeiffer & Gantt, PA, dated Nov. 13, 2002; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Congressman from Maryland, Elijah E. Cummings, dated Dec. 16, 2002; parent U.S. Appl. No. 13/288,065.

A newspaper article of Mr. Melvin Sullivan and Mr. Larry Golden, dated, Feb. 27-Mar. 5, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated May 21, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Office of the Vice President, Dick Cheney, dated Jun. 3, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated Oct. 1, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Lindsey O. Graham, dated Oct. 21, 2003; parent U.S. Appl. No. 13/288,065.

A letter sent to the President of the United States George W Bush, the President's Cabinet, the United States Senate and the Congressional Black Caucus, dated May 23, 2005; parent U.S. Appl. No. 13/288,065.

On Nov. 17, 2005, an "Inventor's Official Record of Invention", was filed in my name (Golden) at "The Law Office of David P. Gaudio, P.C.; the Inventors Network."; parent U.S. Appl. No. 13/288,065.

On Aug. 23, 2005, the "Disclosure Document Registration"; parent U.S. Appl. No. 13/288,065.

On Apr. 5, 2006, the "Patent Application" was filed in my name (Golden) at the United Staets Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

On Jun. 6, 2008, the "Continuation-In-Part, (CIP) Application" was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

On Jan. 20, 2010, a "Continuation Application" (U.S. Appl. No. 12/657,356) was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

Reissue of U.S. Pat. No. 7,636,033;"Swear Back"; in accordance to Title 37—Code of Federal Regulations Patents, Trademarks, and Copyrights; Apr. 8, 2011; parent U.S. Appl. No. 13/288,065.

Reissue of U.S. Pat. No. 7,636,033; "Swearback—History of Work"; Apr. 8, 2011; parent U.S. Appl. No. 13/288,065.

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; mailed Apr. 14, 2011; Alexandria, Virginia, USA; pp. 1-16; parent U.S. Appl. No. 13/288,065 (16 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; mailed Oct. 20, 2011; Alexandria, Virginia, USA; pp. 1-5; parent U.S. Appl. No. 13/288,065 (5 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; mailed May 27, 2011; Alexandria, Virginia, USA; pp. 1-14; parent U.S. Appl. No. 13/288,065 (14 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 12/802 001; copyright and mailing date Dec. 12, 2011, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Dec. 2, 2011, pp. 1-27, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (27 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Nov. 1, 2011, pp. 1-18, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (18 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and mailing date Jan. 13, 2012, pp. 1-34, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (34 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 12/802,001; copyright and mailing date Mar. 26, 2012, pp. 1-12, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (12 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and mailing date Feb. 22, 2012, pp. 1-38, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (38 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Feb. 22, 2012, pp. 1-25, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (25 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Aug. 24, 2012, pp. 1-4, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Nov. 28, 2012, pp. 1-11, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (11 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Apr. 16, 2013, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and mailing date Apr. 20, 2015, pp. 1-20, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 14/021,693 (20 pages).

(56) **References Cited**

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and mailing date Jan. 20, 2015, pp. 1-17, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 14/021,693 (17 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 14/021,693; copyright and mailing date Sep. 5, 2015, pp. 1-12, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 14/021,693 (12 pages).



Fig. 1

Fig. 2



**Fig. 3a**



**Fig. 3b**



**Fig. 4**



**Fig. 5**



**Fig. 6**

**Fig. 7**



**Fig. 8**



**Fig. 9**



**Fig. 10**

26
38
22
12
30
26
32  34  36
38  24

76 AGENT DETECTED?    NO

YES

80  SOUND ALARM

82  LIGHT ALARM

74

40  CPU

84  READINGS

86  RESET

78

SENSING MODE

**Fig. 11**

STOP



Fig. 12

Fig. 13



**Fig. 14**

**Fig. 15**



**Fig. 16**



Fig. 17



**Fig. 18**



**Fig. 19**

1

# MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM

This application is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 14/021,693 titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Sep. 9, 2013 that issued on Aug. 4, 2015 as U.S. Pat. No. 9,096,189, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. Pat. No. 9,096,189 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 13/288,065 titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Nov. 3, 2011 and that issued on Sep. 10, 2013 as U.S. Pat. No. 8,531,280, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. patent application Ser. No. 13/288,065 that will issue as U.S. Pat. No. 8,531,280 is a divisional application and claims the filing date and benefit of U.S. patent application Ser. No. 12/802,001 titled "Multi Sensor Detection, Stall to Stop, and Lock Disabling System" filed on May 27, 2010, now U.S. Pat. No. 8,334,761, the entire contents and complete subject matter of which are incorporated by reference herein in their entirety for all purposes. U.S. patent application Ser. No. 12/802,001 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 12/657,356 titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Jan. 20, 2010, now U.S. Pat. No. 8,106,752 and incorporates the entire contents and complete subject matter therein by reference in their entirety for all purposes. U.S. Pat. No. 8,106,752 is a continuation and claims priority to U.S. Pat. No. 7,636,033. U.S. Pat. No. 7,636,033 is a continuation-in-part of and claims priority to U.S. Pat. No. 7,385, 497. U.S. patent application Ser. No. 13/288,065 that issued as U.S. Pat. No. 8,531,280 also claims the filing date and benefit of and incorporates the entire contents of U.S. patent application Ser. No. 12/657,356, now U.S. Pat. No. 8,106, 752 herein by reference for all purposes. The present application also claims the filing date and benefit of and incorporates the entire contents of U.S. Pat. Nos. 8,531,280; 8,334,761; 8,106,752; 7,636,033; and 7,385,497 by reference herein in their entireties for all purposes.

## FIELD OF THE INVENTION

The present invention pertains to anti-terrorist detection and prevention systems, and more particularly pertains to a disabling lock mechanism combined with a chemical/biological/radiological detection system for use with products grouped together by similar characteristics in order to prevent unauthorized entry, contamination and terrorist activity.

## BACKGROUND OF THE INVENTION

Terrorist activity is a continuous, daily, worldwide threat to the stability, prosperity, security and peace within nations and between and among nations. Its danger lies in its arbitrary destructiveness as much as in its unpredictability, and the constant threat of terrorist activity compels measures and actions that cause strain and contention in free, democratic societies as security concerns and civil liberty concerns must be balanced so that both public safety and civil liberties are maintained. Safety and security concerns can be addressed through numerous proactive steps and measures, many of which cause only minimal interference with and disruption of the daily routines of work, travel, commerce

2

and entertainment. However, because modern industrial societies afford almost limitless places, locations, and opportunities for terrorist activities, no safety measure or security protocol will be foolproof, but many security measures, systems and protocols can be implemented that greatly minimize specific threats through fingerprint identification procedures, chemical, biological, and radiological hazard detections, bomb and explosive detection, and controlling the access to everything from shipping containers to school lockers. Thus, the prior art discloses a wide range of security measures and systems.

For example, the Fishbine et al. patent (U.S. Pat. No. 4,792,226) discloses an optical fingerprinting system that includes an optics/processor unit, a video monitor, a data terminal, and a printer for collecting and storing data characteristics of all ten individual fingerprints for printing demographic information and fingerprint images as desired on a standard booking or applicant card.

The Schiller patent (U.S. Pat. No. 4,544,267) discloses a finger identification unit that includes a fingerprint scanning apparatus using a collimated beam of light to interrogate the fingerprint of a finger placed against a platen so that successive scan positions produce signals containing fingerprint information.

The Fishbine et al, patent (U.S. Pat. No. 5,222,152) discloses a portable fingerprint scanning apparatus for optically scanning and recording fingerprint images and wirelessly transmitting such images to a mobile processing unit for verification and background checking.

The Lougheed at al. patent (U.S. Pat. No. 5,233,404) discloses an optical scanning apparatus that uses a linear charge coupled device (CCD) for recording the image of a fingerprint on the viewing surface.

The Groger et al. patent (U.S. Pat. No. 5,766,956) discloses a diode laser based sensor for undertaking optical, chemical, immunological or nucleic acid-based assay or other chemical analysis.

The Feldman patent (U.S. Pat. No. 5,938,706) discloses a multi element security system for preventing the unauthorized use of an automotive vehicle, and which includes numerous locking and control features interconnected to an onboard cpu.

The Bowker et al. patent (U.S. Pat. No. 5,963,657) discloses a safety access control for doors, handles, locks, etc., wherein the surface relief of a finger is read and verified to either allow or prevent access by the individual to the door, handle, lock, etc.

The Bonder et al. patent (U.S. Pat. No. 6,078,265) discloses a fingerprint identification security system wherein a key lock operated security system utilizes the fingerprint of the individual to control user access to the security system, such as the ignition system of an automotive vehicle.

The Anzai et al. patent (U.S. Pat. No. 6,271,745 B1) discloses a keyless authorization system for use of a motor vehicle that includes fingerprint reading units located on the exterior or interior of the motor vehicle and which is coupled to a control unit for scanning, comparing and matching fingerprints to allow or disallow access to the motor vehicle.

The Hwang patent (U.S. Pat. No. 6,374,652 B1) discloses a fingerprint-activated doorknob in which a detecting sensor for a fingerprint is placed on the doorknob for measuring and searching the fingerprint against previously stored fingerprint inputs to control access to the door.

The Vor Keller et al. patent (U.S. Pat. No. 6,588,635 B2) discloses a safety holster for a firearm that includes a pivotally mounted retaining member and a fingerprint sensor

3

for scanning fingerprint information so that only authorized users can withdraw the firearm from the holster.

The Cordery et al. patent (U.S. Pat. No. 6,613,571 B2) discloses a method and system for detecting biological and chemical hazards in the mail that includes sensors placed within the mail box for sampling and testing ambient air and so that mail can be safely transported through the mail system.

The Nagata patent (U.S. Pat. No. 6,628,213 B2) discloses a coding method for digital signal coding and decoding that includes a CMI (code-marked inversion) method of signal coding.

Nonetheless, despite the ingenuity of the above devices, methods, and systems, there remains a need for a multi-detector and disabling lock system for use with various types of products collected together by common characteristics into product groupings for detecting chemical, biological and radiological agents and compounds and for selectively disabling and activating the product locks thereby preventing unauthorized entry and further contamination and preventing and thwarting terrorist activities.

SUMMARY OF THE INVENTION

The present invention comprehends a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping 1 include, but are not limited to, cargo containers, shipping containers, tractor trailers, snail carriers, mail boxes and lockers; while the products grouped into what may be referred to as Product grouping 2 include, but are not limited to, chemical, biological, radiological, and nuclear detectors, motion sensors and door sensors. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

The multi sensor detection and lock disabling system includes a detector case sized to fit in, upon or adjacent any of the aforedescribed products for detecting harmful and dangerous chemical, biological, and radiological agents, compounds and elements. In addition, the multi sensor detection and lock disabling system is capable of transmitting a signal to lock or disable a lock on the product, and is also capable of transmitting signals to a monitoring computer terminal or PC so that appropriate defensive and safeguarding actions can be undertaken and an authorized individual can disarm and reset the locking system and the multi sensor detection system. The detector case includes a power source (battery or electrical), interior compartments, Internet and GPS connections and a cpu interconnected with the Internet and GPS connections, and also interconnected with one or more off site monitoring computer terminals or PCs. The detector case includes one or more light alarm indicators that are externally visible and that light up when the chemical, biological, or radiological agent or compound is detected, and the light alarm indicators (which can be indicator lights or panels on the front of the detector case) can be color coded for denoting the specific agent or

4

compound detected, i.e., separate and distinct colors for indicating detection of the chemical, biological, or radiological agent or compound.

The detector case is designed to hold within the interior compartments one or more interchangeable detectors, and each detector is adapted and set up to sample a specific compound or agent. Each detector includes a sound alarm, a sensor, a light alarm, and a readings panel, and is electrically interconnected (either by wire or wirelessly) to the cpu of the detector case so that information regarding the detection of the particular agent or compound can be conveyed from the detectors to the detector case cpu. Each detector can also be used as a manual, stand-alone hand held scanner.

The multi sensor detection and lock disabling system can be interconnected to a surveillance watchtower, as well as monitoring computer terminals or PCs, with the watchtower scanning shipping and cargo crates and containers being prepared for shipment or sitting for extended periods of time on a dock or at a port, at a railway site, or at an industrial storage facility. The watchtower will scan the cargo and shipping crates and containers for the light alarm indicators on detector cases that are mounted in or upon the crates and containers, and thus continuous security surveillance of the crates and containers can be maintained.

An enhanced version of the multi sensor detection and lock disabling system can be employed to prevent car and vehicle bombings. Coupling the multi sensor detection and lock disabling system with satellite service will enable the detection system to detect explosives and transmit an alert signal by satellite to monitoring equipment at a monitoring site. Upon receiving the alert signal at the monitoring site the monitoring equipment activates a stall-to-stop process for disabling the air, fuel, electrical and/or computer system of the vehicle. Moreover, upon receiving the alert signal at the monitoring site the car or vehicle will be locked by transmission of a satellite signal that disables the vehicle's electrical and ignition system thereby preventing escape of the terrorist.

It is an objective of the present invention to provide a multi sensor detection and disabling lock system for securing news racks and vending machines in order to prevent theft, unauthorized use and terrorist activity.

It is another objective of the present invention to provide a multi sensor detection and disabling lock system for preventing terrorist activity by using products grouped together by common features in several product groupings such as design similarity, similarity in the presentation of security problems and similarity with regard to the presentation of solutions to preventing terrorist solutions.

It is still yet another objective of the present invention to provide a multi sensor detection and disabling lock system that is capable of disabling an existing lock or activating a lock inside any of the products of the product grouping lists when a detector or sensor of the system is activated.

It is still yet a further objective of the present invention to provide a multi sensor detection and disabling lock system wherein the disabling lock system prevents the unauthorized entry, access and further contamination of the products included in the several product groupings.

A still further objective of the present invention is to provide a multi sensor detection and lock disabling system that utilizes a multi-task device for preventing terrorist activity to vulnerable products that are collected or arranged by product grouping categories.

Yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system

5

to secure cargos and containers, especially cargo and shipping containers, against chemical, biological, radiological and nuclear terrorist activity.

Still another objective of the present invention is to provide a multi sensor detection and disabling lock system capable of detecting chemical, biological and radiological agents and compounds.

Still yet another objective of the present invention is to provide a multi sensor detection and disabling lock system that includes interchangeable detectors that operate in conjunction to detect chemical, biological and radiological agents and compounds.

Still yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system that can be implemented by business or government at a minimum cost by organizing the products to be protected into product grouping categories.

Another objective of the present invention is to provide a multi sensor detection and disabling lock system that accurately and reliably detects harmful agents, compounds and elements, and prevents the placement and storage of weapons and bombs in the range of storage containers and facilities currently available.

Still, another objective of the present invention is to provide a multi sensor detection and disabling lock system wherein the interchangeable detectors that comprise part of the system can be used as stand-alone scanners.

These and other objects, features, and advantages will become apparent to those skilled in the art upon a perusal of the following detailed description read in conjunction with the accompanying drawing figures and appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the primary features of the system which include a detector case, several interchangeable detectors, an automatic/mechanical lock disabler and a fingerprint biometric lock with disabler;

FIG. 2 is a front elevation view of the multi sensor detection and lock disabling system of the present invention illustrating one of the interchangeable detectors first shown in FIG. 1;

FIG. 3a is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one lock disabler to the lock of a product, such as a container, and disengaged from the lock of the container;

FIG. 3b is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the engagement of the lock disabler to the lock of the product for locking or disabling the lock of the product so that unauthorized access is prevented;

FIG. 4 is a side elevation view of the multi sensor detection and lock disabling system of the present invention illustrating the detector case mounted to the product, such as the container, with the light alarm indicators externally visible;

FIG. 5 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of detector cases with a surveillance watchtower and a monitoring PC terminal;

FIG. 6 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the placement of detector cases upon containers different

6

from the containers of FIG. 5, and wherein the detectors case are interconnected to a surveillance watchtower and a monitoring PC terminal;

FIG. 7 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one automatic/mechanical lock disabler to the lock of a standalone news rack;

FIG. 8 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating one interchangeable detector placed within the standalone news rack;

FIG. 9 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the detector case having color coded front panels for specifically indicating the agents, compounds or elements that have been detected;

FIG. 10 is a rear elevation view of the multi sensor detection and lock disabling system of the present invention illustrating the GPS, Internet and power source connections;

FIG. 11 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector with the detector case and the steps undertaken by the system when an agent or compound is detected;

FIG. 12 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the sequence of steps undertaken by one detector when functioning as a standalone scanner for detecting an agent or compound;

FIG. 13 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector case with the automatic/mechanical lock disabler for activating the lock disabler upon detection by the system of an agent or compound;

FIG. 14 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating interconnection of the detector case with the fingerprint biometric lock with disabler for engaging and disengaging the fingerprint biometric lock as part of the process of detection and safeguarding the public upon detection of the agent or compound;

FIG. 15 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the system with a surveillance watchtower and a monitoring PC or computer terminal for monitoring containers, such as shipping or cargo containers, that may sit for extended time periods on docks, at rail yards, and at industrial storage facilities;

FIG. 16 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the integration of the detection system with a satellite and monitoring equipment at a monitoring site for detecting explosives placed in a vehicle and then transmitting signals to the satellite and then to the monitoring site for disabling and locking the vehicle;

FIG. 17 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone and cell phone case;

FIG. 18 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of a OPS satellite, a monitoring site and a cell phone tower for communicating to and with an electronic device such as a laptop computer or a cell phone

7

8

for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt; and

FIG. **19** is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the use of a GPS satellite in conjunction with the monitoring site and monitoring equipment to relay commands and signals to the cpu or transceiver of the vehicle for stopping or locking the vehicle in response to a signal that a certain type of event (detection of a bomb, engine failure or malfunction or unauthorized use) has occurred or is in process

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENT

Illustrated in FIGS. **1-19** is a multi sensor detection and lock disabling system **10** for preventing terrorist activity by monitoring, detecting, and securing those critical areas, sites, and facilities vulnerable to terrorist activity. The first step is the identification of critical areas, sites, locations and facilities that are vulnerable to terrorist activity as convenient places to store and plant explosives and bombs and spread biological, chemical or radiological agents and compounds, followed by the disposition of the multi sensor detection and lock disabling system **10** for monitoring, detecting, and securing the particular location or site. Vulnerable sites, locations, facilities and areas are nearly limitless in their variety; in order to categorize the protection the present invention provides an anti-terrorist product grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design, and products presenting the same or similar security problems are grouped together with the multi sensor detection and lock disabling system **10** for preventing terrorist activity. For example, two preferred product groupings can be Product Grouping I: cargo containers, shipping containers, cargo planes, freight train cars, tractor trailers, mail carriers (UPS, FedEx), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans and utility vehicles. Product Grouping II: chemical detectors, biological detectors, radiological detectors, nuclear detectors, motion sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems. In addition to grouping products together by features, designs and materials, the multi sensor detection system **10** includes a lock disabling capability for disabling an existing lock or activating a lock on or inside any of the aforementioned products when a detector or sensor of the system is activated. The lock disabling feature is a crucial component of the invention in so far as it prevents unauthorized, unequipped or untrained individuals from gaining access and entry to the site and causing further contamination of the site.

As shown in FIGS. **1-10**, the multi sensor detection and lock disabling system **10** includes at least one—and preferably many—detector case **12** that can be placed in, on, upon or adjacent the product, such as the shipping containers **14** of FIGS. **4** and **5** resting upon a platform **16** or the cargo container **18** of FIG. **6** sitting upon a seaport dock or pier **20**. The detector case **12** includes a top **22**, a bottom **24**, a pair of opposed sides **26** and a front side or panel **28** and an opposite rear or back side **30**. The rear side **30** has connections or contacts that can include an Internet connection **32**,

a GPS connection **34** and a power connection **36** for a power source. The power source for the detector system **10** can be any conventional battery or electrical source. The detector case **12** includes an interior chamber divided into a number of compartments **38** for holding therein agent or compound detection means hereinafter further described. A cpu **40** is mounted within the detector case **12** and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates with a monitoring site and monitoring equipment. The front side **28** of the detector case **12** includes indicator means for visually indicating that a specific agent, compound or element has been detected. The indicator means can include color coded indicator lights **42** in panel form, as shown in FIG. **9**, with each indicator light panel **42** lighting up with a specific color corresponding to the detection of a specific agent or compound; or color coded indicator lights **44**, as shown FIG. **1**, that correspond to and individually light up on the detection of a specific agent or compound (chemical, biological, or radiological).

As shown in FIGS. **1**, **2** and **9-13**, the multi sensor detection and lock disabling system **10** includes a plurality of detectors **46** with each detector **46** adapted for and set up to sample for a specific agent or compound (biological, chemical, or radiological); and the detectors **46** are interchangeable for adapting to the needs and demands of future technology. The detectors **46** can also be used as standalone scanners. In the preferred embodiment of the invention, at least three detectors **46** are placed within the detector case **12** with one detector **46** for specifically sampling biological agents or compounds, one detector **46** for sampling chemical agents or compounds, and one detector **46** for sampling radiological agents or compounds. The detectors **46** are interconnected to the cpu **40** of the detection system **10** by conventional connections that can be wire or wireless for transmitting the appropriate signals to the cpu **40** upon detection of the particular agent or compound. As shown in FIG. **2**, each detector **46** includes on its front plate or facing surface a sound alarm indicator **48**, a readings panel **50** comprising a plastic shield and LED lights for displaying the various read-out messages, a sensor **52** for detecting the specific agent, element or compound, and a light alarm indicator **54** that can be color coded for each specific agent and which is externally visible when the detector **46** is used as a stand alone scanner. Each detector **46** includes a conventional microprocessor for controlling the various functions and generating the appropriate signals for transmission to the cpu **40** of the detector case **12**.

As shown in FIGS. **1**, **3a**, **3b**, **9**, and **13-15**, used in conjunction with the multi sensor detection and lock disabling system **10** is at least one automatic/mechanical lock disabler **56**—and depending upon the number of products being monitored there can be one lock disabler **56** for each product. The automatic/mechanical lock disabler **56** is physically connected to the detector case **12** by a wire or cable **58** for receiving signals therefrom for disabling an existing lock or activating a lock inside a product to prevent access to the product. By way of example, FIG. **3a** shows the automatic/mechanical lock disabler **56** mounted—by any conventional means—to the lock **60** of the shipping container **14** shown in FIGS. **4** and **5** and connected by wire **58** to the cpu **40** of the detector case **12**. The lock disabler **56** is in the non-activated or disengaged state in FIG. **3a**. FIG. **3b** shows the automatic/mechanical lock disabler **56** mounted to the lock **60** of the shipping container **14** and in the activated or engaged state after detection of an agent or compound by the system **10** thereby for locking or disabling

US 9,589,439 B2

9

the lock 60 of the shipping container 14 and preventing unauthorized entry and access by unauthorized, untrained and unequipped individuals. In FIGS. 3a and 3b the lock 60 secures doors of the shipping container 14 that can be slidably or pivotably opened and closed.

In addition to the automatic/mechanical lock disabler 56, the multi sensor detection and lock disabling system 10 can also utilize a fingerprint biometric lock with disabler 62 as shown in FIGS. 1 and 14. The fingerprint biometric lock with disabler 62 is interconnected to the cpu 40 of the detector case 12 for receiving transmissions therefrom after detection of an agent or compound has occurred so that the lock on the product can be locked or disabled. Moreover, resetting of the fingerprint biometric lock with disabler 62 occurs when the fingerprint of the individual is placed on the fingerprint-matching pad 64, and if a match occurs with a known fingerprint stored by the cpu 40, then the individual can reset the fingerprint biometric lock with disabler 62 by turning the manual lock disabler 66. The fingerprint biometric lock with disabler 62 is mounted to the lock of the product in a manner similar to the mounting of the automatic/mechanical lock disabler 56 that is shown in FIGS. 3 and 3b.

FIGS. 4 and 5 show one manner of disposition or placement of the detector case 12 in relation to the product, i.e., the shipping container 14, with the color coded indicator lights 42 externally viewable; FIG. 5 shows a number of shipping containers 14 each equipped with a detector case 12 and integrated with elements hereinafter further described for continuously monitoring the shipping containers 14 as they sit for an extended period of time on the truck or rail platform 16. FIG. 6 illustrates several cargo containers 18 sitting on the shipping dock or pier 20, with each cargo container 18 having a detector case 12 mounted thereon and integrated with and monitored by elements shown in FIG. 5 and hereinafter further described.

FIG. 7 illustrates a typical product from product grouping 1 that is monitored by the multi sensor detection and lock disabling system 10 of the present invention; specifically, FIG. 7 shows a news rack 68 with one automatic/mechanical lock disabler 56 mounted to and interconnected with the locking mechanism of the news rack 68. As long as there is no detection of any agent or compound, the lock disabler 56 is in the disengaged state, and the individual can deposit the coin amount in the chute and then freely open the glass panel 70 by the handle 72 for removing a paper. However, the lock disabler 56 would be activated upon detection of the harmful agent or compound and receipt of a signal from the cpu 40 for locking or disabling the locking mechanism thereby denying access to the interior of the news rack 68 from all untrained, unauthorized and unequipped individuals.

FIG. 8 illustrates one detector 46 disposed within the news rack 68 and which is visible through the panel 70 for detecting one specific agent, compound or element. The detector 46 functions as a stand-alone scanner and can be wirelessly interconnected to offsite monitoring equipment.

FIG. 11 illustrates a representative schematic 74 for describing the signal transmission process from the detector 46 to the cpu 40 of the detector case 12. The external stimulus 76 would be the chemical, biological or radiological agent or compound. If there is no detection of the agent or compound, the detector 46 will stay in the sensing mode 78. However, detection of the specific agent will trigger the sound alarm 80 and the light alarm 82, and instant transmittal of a signal to the cpu 40. The readings 84 can be stored by the cpu 40 for verification and future review and evaluation. After all the appropriate corrective and preventative

10

measures have been undertaken by the trained and authorized personal, and the site has been cleansed of the contamination, authorized and equipped personal can then reset 86 the system 10.

FIG. 12 illustrates a representative schematic 88 for the detector 46 when used as stand-alone scanner. The detector 46 undergoes the same essential steps as illustrated in FIG. 11, with the exception of the signal transmission to the cpu 40. The detector 46 remains in detection mode 78 until an agent is detected, and then the various functions—light alarm 82, sound alarm 80, storage of readings 84, and, after the appropriate security and safety steps have been carried out by authorized personal, detector reset 90 by authorized personal can occur thereby placing the detector 46 back in detection or sensing mode 78.

FIG. 13 is a representative schematic 92 that illustrates the steps undertaken by the system 10 to lock or disable a lock, such as the lock 60 for the shipping container 14 shown in FIGS. 3a and 3b. Upon detection of the agent (chemical, biological, radiological) the alarm light indicators 42 or 44 will light up providing external indication that an agent has been detected. In addition, the system 10—the cpu 40—will transmit a lock/disable lock signal 94 to the automatic/mechanical lock disabler 56 to lock or disable the lock on the product, such as the lock 60 on the shipping container 14 of FIGS. 3a-5. This prevents unauthorized, unequipped, or untrained individuals from entering or gaining access to the product for which a dangerous and perhaps lethal agent has been detected. After the proper authorities and authorized personal have been notified and all the appropriate security, preventative and clean up measures have been undertaken, the authorized individual can perform the disarm and reset function 96 for the system 10 placing the system 10 in back in the detection mode 98.

FIG. 14 is a representative schematic 100 illustrating the use of the fingerprint biometric lock with disabler 62 with the system 10. Upon detection of the agent or compound by the detector, the various alarms would sound and light up (shown in previous figures), and the cpu 40 would then transmit a signal to the fingerprint biometric lock, with disabler 62 to lock or disable the lock on the product, such as the lock 60 on the shipping containers 14 shown in FIGS. 3a-5. The shipping containers 60 would remain locked and in an access denied mode 101 should an attempt be made to gain access to the container 60 by opening the lock 60 with an unauthorized fingerprint. However, a fingerprint that matches stored and authorized fingerprints 102 would indicate an authorized individual, and would allow the individual to disable and disarm 104 the lock 60 of the shipping container 14. The fingerprint biometric lock with disabler 62 would then be reset 106 after the appropriate safety, cleanup, and protection measures are completed, and the system 10 would be reset and placed back in the detection mode 108.

FIG. 15 is a schematic representation 110 that illustrates the integration of a surveillance watchtower 112 and a monitoring terminal or PC 114 for monitoring products such as the shipping containers 14 or cargo containers 16 that sit for extended periods of time of docks, piers 20, truck terminals, rail yards, shipping platforms 16 and industrial sites as shown in FIGS. 5 and 6. The watchtower 112 would maintain continuous surveillance over a number of shipping containers 60, for example, with detector cases 12 mounted in or on each container 14 and set in detection mode 116 with one or more detectors 46 disposed in each detector case 12. The watchtower 112 would continuously scan for light alarm indicators 42 and 44 on the products, such as the containers 14 or 18, and the watchtower 112 would be interconnected

Appx0061

and integrated with the monitoring terminal or PC 114. Upon detection 118 of an agent or compound in one or more of the shipping containers 14, the appropriate light alarm indicators 42 or 44 would light providing visible confirmation of the detection of the specific agent or compound. The cpu 40 would transmit a lock/disable signal 120 to the lock 60 on each respective shipping container 14 to lock or disable the lock 60 thus preventing access to that respective shipping container 14. In addition, signal transmissions would be sent to the monitoring terminal or PC 114 (which could be off site) thereby alerting authorized security personal of the contamination event. With the information received at the monitoring terminal 114, authorized personal would then be notified and dispatched to the area to undertake the appropriate safety and cleanup measures 122. Such measures would also include disarming the lock disabling system in order to gain access to the shipping container 14. After all the cleanup and security measures are completed by the trained and properly equipped authorities, the detection system and the lock disabling feature would reset 124 and the detection system would again be placed in detection mode 116.

FIG. 16 is a schematic representation 126 that illustrates an enhanced version of the multi sensor detection and lock disabling system 10 for preventing car and vehicle attacks and bombings. The lock disabling system 10 would be interconnected to the locking system and mechanism 128 of the vehicle 130. In addition, a stall to stop disabling link 132 can be made with the fuel, air, and electrical system 134 of the vehicle 130. The enhanced version incorporates a satellite 136 for signal receipt and transmission from the vehicle 130 in which the detector system 10 is placed to a monitoring site and monitoring equipment 138. As shown in FIG. 16, a detection signal 140 would be sent to the satellite 136 by the detection system 10 upon detection of a bomb or explosive 142 hidden in the vehicle 130. The satellite 136 would then transmit an alert signal 144 to the monitoring site 138 with the signal 144 containing the relevant data to evaluate the nature of the threat. The monitoring site 138 would then transmit a stall to stop signal 146 to the detection system 10 to lock the vehicle 130 and/or disable the electrical system of the vehicle 130 thereby disabling the vehicle 130, preventing access to the vehicle 130 by locking the vehicle 130, and preventing any terrorist in the vehicle 130 from escaping.

The detector case 12 can be modified and adapted for inclusion with cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, suitcases, and briefcases. In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring.

The system 10 and the watchtower 112, along with the satellite 136 and the monitoring site 138 can be adapted or incorporated with cell phone towers and satellites for use with satellite communication and/or a cell tower, wi-fi, wi-max, broadband, GPS, navigation, radio frequency interconnected to a central processing unit (cpu), such as cpu 40, a transceiver and monitoring equipment to include but not to be limited to computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals therebetween. The aforementioned telecommunication and radio communication means can be interactive with any type of motive vehicle that includes but is not limited to cars, trucks, vans, SUVs, trains, subways, boats, ships and airplanes, and which is reported stolen, experiences a loss of brakes, or a

bomb, explosives or other types of chemical, biological, radiological, or nuclear agents are detected within, upon, affixed or mounted to the vehicle and which detection causes an automatic signal transmission or a signal transmission is activated when a call is made to the monitoring station by an authorized person. The authorized individual includes but is not limited to the owner, pilot, conductor, captain, police highway patrol, security guard and military personnel to the monitoring equipment for activating the vehicle slowdown or stall-to-stop disabling system that similar to the disabling system 126 shown in FIG. 16, or incorporating features of the system 126 shown in FIG. 16, from the monitoring equipment to the vehicle. The activation of the stall-to-stop disabling means or the vehicle slowdown disables or engages the computer, electrical, fuel and air systems of the vehicle or a combination of the computer, electrical, fuel and air systems that include but are not limited to the brakes, foot peddle, lights, speed controls, ignition, steering, transmission, and the horsepower of the motor.

In addition, the basic stall-to-stop disabling means or the vehicle slowdown means and device can be adapted, modified or designed to include: an open bust or open platform for integrating any new and innovative technology; warning lights indicators; sound alarm indicators; voice alarm indicators; a cell phone to transmit to the vehicle a signal for slowing and halting the vehicle; and a lock disabling system or means to lock a thief or terrorist inside the vehicle after a transmission is received or sent. Open bust or open platform also refers to the compatibility of the detector case 12, or the incorporation of its features in cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, briefcases, and suitcases, etc., with other communication, transmission and surveillance systems whereupon the detector case 12, and its features, can be seamlessly integrated with other new and emerging systems and technologies.

Thus, as shown more specifically in FIG. 17, by way of a representative example the features and elements of the detector case 12 are shown as being incorporated into cell phone detector case 150 and associated cell phone monitor 152. The cell phone monitor 152 includes the standard keypad functions 154 and more specialized system use (ring tone, email, photos, texting) functions 156 as well as a viewing screen 158. The cell phone detector case 150 includes a recharging cradle or seat 160, a front side 162, a top 164, a bottom 166, and a pair of opposed sides 168. At the back of the cell phone detector case 150 are connections, contacts, and ports for at least an Internet connection 170, a GPS connection 172, and a contact, plug, or port for a power source 174. The power source for the cell phone detector case 150 can be any conventional rechargeable battery source or standard electrical power from a standard electrical receptacle or outlet.

As shown in FIG. 17, the cell phone detector case 150 includes one or more sensor/detector units, cells, or components 176 built into and incorporated into the case 150. The detector 176 includes generally disposed at the front 162 of the case 150 the following types of indicators: a sound alarm indicator 178, a readings panel 180, a sensor 182 for detecting one or more specific types of agents, elements, chemicals, compounds, etc., and a light alarm indicator 184. The sensor/detector 176 will be interconnected to the power source 174. In addition, mounted on and externally visible on the sides 168 or front 162 of the case 150 are a plurality of color coded indicator lights 186 with each fight 186 corresponding to a specific agent, element, chemical, compound, etc., and lighting up when that agent

13

is detected by the sensor/detector **176**. The color coded indicator lights **186** will be electrically interconnected to the sensor/detectors **176** via any standard microprocessor. The cell phone detector case **150** and cell phone monitor **152** thus comprise a hand-held, easily portable and transportable detection means that is both effective and unobtrusive in its disposition and use.

FIGS. **18** and **19** illustrate representative examples of the integration of portable electronic communication or telecommunication devices such as a cell phone **187**a and/or a laptop computer **187**b with the monitoring equipment **138** located at a predesignated monitoring site **188**, and operating in conjunction with either a satellite and/or a cell phone tower **190** to transmit and receive signals and commands among each other and to a vehicle **192**, such as a truck, as part of a stall-to-stop disabling system for slowing and stopping the vehicle **192** and locking a thief, terrorist, or unauthorized individual in the vehicle **192** if needed. A wide range of events can trigger and initiate the stall-to-stop system and the locking or lock disabling system and mechanism, and the event doesn't have to be limited to the detection of a bomb or a chemical, biological, or radiological agent, element, or compound. The events can include, but is not limited to, detection of an engine problem to engine failure to the unauthorized use (stealing) of the vehicle **192**. The vehicle **192** includes an electromotive system **194** that comprises, among other components, an onboard computer(s), electrical, fuel and air systems, as well as brakes, ignition, steering, and transmission. Also integrated with and capable of communicating with the vehicle's **192** electromotive system **194** is a stall-to-stop system while a lock disabling mechanism **196** is able to engage and disengage or disable the vehicle's **192** locking mechanism **198** upon receipt of the appropriate commands via a lock disabling communication channel or link **200**. This link **200** can also accommodate the stall-to-stop system commands and signals, and thus is a multi-channel communication link. A CPU or a transceiver **202** is programmed to receive signals from the cell phone tower **190** and/or to a GPS satellite **204** and is interconnected with the stall-to-stop system and the lock disabling system **196** via link **200** for engaging the electromotive system **194** and actuating the lock disabling system **196** to stop the vehicle **192** and lock inside the vehicle **192** anyone such as a thief, terrorist or other unauthorized individual.

A representative example for stopping, disabling, and locking the vehicle **192** that utilizes the cell phone tower **190** wherein the activation and/or distress signal **206** originates from the cell phone **187**a or the laptop **187**b and such activation signal **206** travels to the cell phone tower **190** that is nearest the current location of the vehicle **192**. A signal **208** is then transmitted to the monitoring site **188** and specific monitoring equipment **138** that can also include but is not limited to cell phones, laptops, desktop PC's, notebook PC's and LCD monitors. The monitoring site **138** then communicates by signal **210** to the GPS satellite **204** that an original or activation signal has been received and then the GPS satellite **204** locates and communicates by multiplex signal **212** with the CPU or transceiver **202** on the vehicle **192** and exchanges information on the type of problem, situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **214** to the cell phone tower **190** that communicates with the transceiver **202** and/or CPU of the vehicle **192** to initiate or execute any commands that will actuate the stall-to-stop disabling link **200** and lock disabling system **196** for bringing the vehicle **192** to a halt and actuating the vehicle's **192** locking mechanism **198** for

14

locking the thief, terrorist, or other unauthorized person inside the vehicle **192** if needed.

FIG. **19** illustrates a representative example wherein the stall-to-stop system and the lock disabling system **196** are utilized in conjunction with the GPS satellite **204**. In FIG. **19** a signal has traveled to the satellites nearest the vehicle's **192** current location and then the signal **218** has traveled to the monitoring equipment **138** and monitoring site **188** which can include but is not limited to satellite cell phones, satellite monitors, cell phones, laptops, desktop PC's, notebook PC's, and LCD monitors. The UPS satellite **204** then locates and communicates with the CPU and/or transceiver **202** on the vehicle **192** via a multiplex (two-way) signal **220** in order to exchange information on such distress and danger event parameters as the specific problem situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **222** back to the GPS satellite **204** that in turn communicates via another signal **224** with the CPU and/or transceiver **202** to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's **192** electromotive system **194** for bringing the vehicle **192** to a halt and for actuating the lock disabling system **196** to direct the lock disabling link **200** to actuate the locking mechanism **198** thereby locking the vehicle **192** and anyone inside the vehicle **192**.

The present invention comprehends a chemical/biological/radiological/nuclearlexplosive/human/contraband detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping **1** (storage & transportation) include, but are not limited to, cargo containers, shipping containers, tractor trailers, mail carriers, mail boxes, airplanes, subways, cargo planes, freight train cars, United Parcel Services™ (UPS™), Federal Express™ (FedEx™), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans, unmanned aerial vehicles (UAVs), unmanned ground vehicles (UGVs), and utility vehicles; the products grouped into what may be referred to as Product grouping **2** (sensors) include, but are not limited to, chemical, biological, radiological, explosive and nuclear detectors, motion sensors, door sensors, speed sensors, biometric sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems, detection of humans, detection of contraband, temperature, and shock levels; the products grouped into what may be referred to as Product grouping **3** (detector case; modified and adapted) include, but are not limited to, cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, suitcases, eyeglass, briefcases, detector cases of locks, detector cases of tags, detector cases that is mounted to, detector cases that is affixed to, detector cases that is outside of, detector cases that is inside of, and detector cases that is adjacent to; the products grouped into what may be referred to as Product grouping **4** (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), note-

US 9,589,439 B2

15

book personal computers (PCs), laptops, satellite cell phones, cell phones, Universal Mobile Telecommunications System (UMTS) phones, personal digital assistants (PDAs), liquid crystal display (LCD) monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds; the products grouped into what may be referred to as Product grouping **5** (communication methods) include, but are not limited to, Bluetooth, Wi-Fi, Wi-Max, Internet, Ethernet, Broadband, Network Bandwidth, Wireless, Wired, Text Messaging, Cellular, Satellite, Telematics, Wide Area Network (WAN). Wireless Wide Area Network (WWAN), Local Area Network (LAN), Radio Frequency (RF), Broadband Wireless Access (BWA), Global Positioning System (GPS), General Packet Radio Services (GPRS). Global System for Mobile (GSM), Wideband Code Division Multiple Access (W-CDMA), Universal Mobile Telecommunications System (UMTS), Short Message Service (SMS); the products grouped into what may be referred to as Product grouping **6** (biometrics) include, but are not limited to, fingerprint recognition, voice recognition, face recognition, band geometry, retina scan, iris scan and signature, the products grouped into what may be referred to as Product grouping **7** (authorized person) include, but are not limited to, owner, pilot, conductor, captain, drivers of vehicles identified as high security, airport security, police, highway patrol, security guard, military personnel, hazardous material (HAZMAT) personnel, the Central Intelligence Agency (CIA), the Federal Bureau of Investigation (FBI), Secret Service, port security personnel, border security personnel, first responders, monitoring sites and terminal personnel. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside or outside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

While the invention has been shown and described in a preferred embodiment, it will be apparent to those skilled in the art that numerous alterations, modifications, and variations will possible and practicable without departing from the spirit and scope of the invention as set forth by the appended claims.

The invention claimed is:

**1**. A multi sensor detection system capable of identifying, monitoring, detecting, and securing those critical areas (e.g., U.S. borders), sites, locations and facilities vulnerable to terrorist activity that can be integrated with and interconnected to watchtowers to form a network, comprising:

at least one of an integrated watchtower, a fixed watchtower, a surveillance watchtower, a watchtower capable of scanning, a watchtower capable of monitoring, a watchtower equipped with sensors or a watchtower interconnected to a central monitoring terminal for sending signals thereto and receiving signals therefrom;

wherein the at least one watchtower is equipped with a remote video surveillance camera that provides at least one night vision means of surveillance or an infrared human detection means of surveillance capability and is integrated into a watchtower's remotely controlled system that can monitor, detect, track, and identify humans;

a communication device of at least one of a mobile communication device, a mobile communication unit, a

16

portable communication device, portable communication equipment, a wired communication device, a wireless communication device, a monitoring site, a monitoring terminal, a web server, a desktop personal computer (PC), a notebook personal computer (PC), a laptop, a satellite phone, a smart phone, a cell phone, a Universal Mobile Telecommunications System (UMTS) phone, a personal digital assistant (PDA), a liquid crystal display (LCD) monitor, a satellite, or a handheld, interconnected to a monitoring equipment for sending signals thereto and receiving signals therefrom;

a communication method of at least one of a Bluetooth, Wi-Fi, Wi-Max, Internet, Ethernet, Broadband, Network Bandwidth, Wireless, Wired, Text Messaging, Cellular, Satellite, Telematics, Wide Area Network (WAN), Wireless Wide Area Network (WWAN), Local Area Network (LAN), Radio Frequency (RF), Broadband Wireless Access (BWA), Global Positioning System (GPS), or central processing unit (CPU), used to interconnect the communication device to the monitoring equipment for sending signals thereto and receiving signals therefrom;

a plurality of sensors for detecting or sensing humans that is at least one of a chemical human sensor, biological human sensor, radiological human sensor, infrared human detector, motion human detector, or image human detector, interconnected to or disposed within the multi-sensor detection system for sending signals thereto and receiving signals therefrom;

a mobile multi-sensor detection device that is at least one of a ground surveillance sensor, a surveillance radar sensor, a surveillance camera, or a stand-alone surveillance scanner, that is mounted in, on, or upon at least one of a car, a truck, a camper, a bus, a van, an unmanned aerial vehicle (UAV), an unmanned ground vehicle (UGV), or a utility vehicle, interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom;

a hand-held multi-sensor detection device that is capable of at least one of thermal imaging or infrared imaging for monitoring, detecting, tracking and identifying humans, that is controlled or operated by at least one authorized person who is an owner, pilot, conductor, captain, drivers of vehicles identified as high security, airport security, police, highway patrol, security guard, military personnel, hazardous material (HAZMAT) personnel, Central Intelligence Agency (CIA), Federal Bureau of Investigation (FBI), Secret Service, port security personnel, border security personnel, first responders, or monitoring site and terminal personnel, interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom, wherein the authorized person manually initiates the signal to the monitoring equipment to alert upon the monitoring, detecting, tracking and identifying of the human;

whereupon, detection by the mobile multi-sensor detection device causes an automatic signal transmission to be sent to, or received from, any products in product grouping categories of storage and transportation, sensors, detector case; modified and adapted, monitoring and communication devices, communication methods, biometrics;

whereupon, detection of an unauthorized vehicle, an unauthorized driver or operator of a vehicle or mobile

17

unit, a signal is sent from the communication device to the vehicle or mobile unit to stop, stall or slowdown the vehicle;

wherein, a communication device of at least one of a mobile communication device, a mobile communication unit, a portable communication device, portable communication equipment, a wired communication device, a wireless communication device, a monitoring site, a monitoring terminal, a web server, a desktop PC, a notebook PC, a laptop, a satellite phone, a smart phone, a cell phone, a UMTS phone, a PDA, a LCD monitor, a satellite, or a handheld, interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom, comprising a lock disabling mechanism that is able to engage (lock), and disengage (unlock) and disable (make unavailable) after a specific number of tries.

**2**. The multi sensor detection system of claim **1**, capable of identifying, monitoring, detecting, and securing those critical areas (e.g., U.S. borders), sites, locations and facilities, further includes the identifying, monitoring, and detecting of terrorist, that is at least one of an illegal, radical, fanatic, activist, revolutionist or rebel.

**3**. The multi-sensor detection system of claim **1**, further includes a global positioning system (GPS) receiver adapted for communication with at least one satellite.

**4**. The multi-sensor detection system of claim **1**, further includes a navigation system adapted for communication with at least one of the surveillance watchtowers.

**5**. The multi-sensor detection system of claim **1**, capable of forming a wired or wireless sensor network.

**6**. The multi-sensor detection system of claim **1**, capable of forming a mesh network for redundancy.

**7**. The multi-sensor detection system of claim **1**, capable of transmitting identification data, location data, power source data, and sensor data.

**8**. The multi-sensor detection system of claim **1**, capable of being embedded into; placed in, on, or adjacent to at least one of the products in the product grouping categories or an area targeted for monitoring.

**9**. The multi-sensor detection system of claim **1**, capable of sending signals thereto and receiving signals therefrom to engage (lock), disengage (unlock) and disable (make unavailable) a lock after a specific number of tries that is interconnected to the multi sensor detection system or monitoring equipment.

**10**. The multi-sensor detection system of claim **1**, capable of transmitting biometric and authentication data include, but is not limited to, at least one of fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, heart rate, pulse and signature.

**11**. The multi-sensor detection system of claim **1**, interconnected with a camera to view the environment in real-time or to store the data for transmission and review at a later time.

**12**. The multi-sensor detection system of claim **1**, interconnected with a camera; light and video sensors to allow the user to view the environment from at least one of a cell phone, smart phone, PDA, handheld, laptop, desktop, workstation or monitoring site.

**13**. A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising:

at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor,

18

or a radiological sensor; that is wired or wireless, capable of being disposed within, on, upon or adjacent the communication device;

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;

a receiver for receiving signals, data or messages from at least one of the multi-sensor detection device, the maritime cargo container, the cell phone detection device, or the locking device;

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection;

the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock locking devices, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems;

wherein the communication device receives a signal via any of one or more products in any product grouping categories;

wherein the at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, or short range radio frequency (RF) connection is capable of signal communication with the transmitter, the receiver of the communication device, or transceivers of the products;

wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use;

wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency (RF), and short range radio frequency (RF).

**14**. Monitoring equipment of at least one of products grouped together by common features in a product groupings category of design similarity comprising a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone interconnected to a product for communication therebetween, the monitoring equipment comprising:

19

at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor; that is wired or wireless, capable of being disposed within, on, upon or adjacent the monitoring equipment;

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of a multi-sensor detection device, a maritime cargo container, a cell phone detection device;

a receiver for receiving signals, data or messages from at least one of the multi-sensor detection device, maritime cargo container, the cell phone detection device;

a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) a product's lock, wherein the lock disabling mechanism disables the product's lock after a specific number of tries by an unauthorized user to disengage the lock by maintaining the product's lock in the current state of the product's lock regardless of input entered to change the state of the product's lock by the unauthorized user;

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection;

monitoring equipment of at least a fixed, portable or mobile monitoring equipment interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the monitoring equipment, is interconnected to a product equipped to receive signals from or send signals to the lock disabling mechanism that is able to engage, disengage, or disable the lock, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems;

wherein the monitoring equipment is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity;

wherein the at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, or short range radio frequency (RF) connection is in signal communication with the transmitter, the receiver of the monitoring equipment, or transceivers of the products.

15. Monitoring equipment of at least one of the products grouped together by common features in a product groupings category of design similarity comprising a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone interconnected to a product for communication therebetween, the monitoring equipment comprising:

at least one of a central processing unit (CPU), a network processor, or a microprocessor for executing and carrying out the instructions of a computer program or application which is specifically targeted at the networking application domain, for communication between the monitoring equipment and at least one of

20

a multi-sensor detection device, a maritime cargo container device, or a locking device;

a transmitter for transmitting signals and messages to at least one of the multi-sensor detection device, the maritime cargo container device, or the locking device;

a receiver for receiving signals, data or messages from at least one of the multi-sensor detection device, the maritime cargo container device or the locking device, wherein the signals, data or messages are of agents of an item of interest (IOI);

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, or GPS connection;

the monitoring equipment is at least a fixed, portable or mobile monitoring equipment interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the monitoring equipment, is capable of the activation or deactivation of at least one of the multi-sensor detection device, the maritime cargo container device or the locking device;

wherein the at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, for signal communication with the transmitter, the receiver of the monitoring equipment, or transceivers of the products;

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of a chemical agent, a biological agent, a radiological agent, a nuclear agent, or an explosive agent which allows radio frequency (RF) data to be at least one of received or transmitted between the tag and the monitoring equipment.

16. A built-in, embedded multi sensor detection system for monitoring products with a plurality of sensors detecting at least two agents selected from the group consisting of chemical, biological, radiological, explosive, human, and contraband agents;

comprising a built-in sensor array or fixed detection device into the product that detects agents by means of two or more sensors combined from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor;

comprising a communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal for monitoring products, interconnected to a built-in sensor array or fixed detection device for communication therebetween;

wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use;

wherein the built-in embedded multi-sensor detection device receives a signal via any of one or more products in any product grouping categories; and

wherein, when an alarm occurs, the built-in, embedded multi sensor detection system communicates the alarm by way of at least one of the products grouped together

by common features in a product groupings category of design similarity comprising at least one of product-to-product, product-to-satellite, product-to-cellular, product-to-long range radio frequency, product-to-short range radio frequency, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop for communication therebetween;

wherein the built-in embedded multi-sensor detection device is implemented by business or government at a minimum cost by products grouped together by common features in at least one of the several product groupings of design similarity.

17. A built-in multi sensor detection system for monitoring products with a plurality of sensors detecting at least two agents selected from the group consisting of chemical, biological, radiological, explosive, human, and contraband agents, comprising:

a built-in sensor array or fixed detection device into the product that detects agents by means of two or more sensors combined from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor;

monitoring equipment of at least one of products grouped together by common features in a product groupings category of design similarity comprising at least one of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for the receipt and transmission of signals therebetween;

wherein the built-in multi-sensor detection device is built in any of one or more products comprising a maritime cargo container, a lock, or the monitoring equipment;

wherein the built-in multi-sensor detection device is implemented by business or government by products grouped together by common features in at least one of several product groupings of design similarity;

a light alarm indicator that has a plurality of colored lights that correspond to specific agents of the at least two agents;

wherein, when the light alarm indicator lights to indicate an alarm occurs, the built-in multi sensor detection system communicates the alarm by way of at least one of the products grouped together by common features in the product groupings category of design similarity comprising at least one of product-to-product, product-to-satellite, product-to-cellular, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop for at least one of a receipt or transmission of signals therebetween.

18. A built-in multi sensor detection system for detecting at least two items selected from the group consisting of chemical agent, biological agent, radiological agent, explosive agent, human agent, contraband agent, motion, perimeter, temperature, tampering, theft, or breach, comprising:

a built-in sensor array or fixed detection device into a product that detects items by means of at least two sensors from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor;

monitoring equipment of at least one of the products grouped together by common features in a product groupings category of design similarity comprising at least one of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for the receipt and transmission of signals therebetween;

wherein the built-in, multi-sensor detection device is built in any of one or more products comprising a maritime cargo container, a lock, or the monitoring equipment;

wherein, when an alarm occurs, the built-in multi sensor detection system communicates the alarm by way of at least one of the products grouped together by common features in a product groupings category of design similarity comprising at least one of product-to-product, product-to-satellite, product-to-cellular, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop for the receipt and transmission of signals therebetween;

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of the chemical agent, the biological agent, the radiological agent, the explosive agent, the human agent, the contraband agent, the motion, the perimeter, the temperature, the tampering, the theft, and the breach which allows radio frequency (RF) data to be received and/or transferred between the tag and the monitoring equipment.

19. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device;

monitoring equipment comprising at least one of a computer, personal computer (PC), laptop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone for at least one of a receipt or transmission of signals therebetween;

at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment;

at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment;

whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short range radio frequency or a long range radio frequency; causes a signal to be sent to the monitoring equipment that includes at least one of location data or sensor data;

wherein the monitoring equipment or multi-sensor detection device receives a signal via any of one or more products of any product grouping categories;

wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection,

radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short range radio frequency (RF) connection is capable of signal communication with the transmitter, a receiver of the monitoring equipment, the multi-sensor detection device, or transceivers of the products;

wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan or signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use;

wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, long range radio frequency, and short range radio frequency (RF).

20. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agents or compound, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device;

monitoring equipment of at least one of products grouped together by common features in a product groupings category of design similarity comprising at least one of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA), or smart phone for at least one of a receipt or transmission of signals therebetween,

wherein the monitoring equipment is equipped with a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (to make unavailable) a product's lock, wherein the lock disabling mechanism disables the product's lock after a specific number of tries by an unauthorized user to disengage the lock by maintaining the product's lock in the current state of the product's lock regardless of input entered to change the state of the product's lock by the unauthorized user;

at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom; or at least one satellite capable of transmitting signals to the monitoring equipment;

at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment; and

whereupon a signal sent to a receiver of the multi-sensor detection device from a satellite; or to a cell phone tower; or through at least one of a short range radio frequency or a long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and/or sensor data;

wherein the multi-sensor detection device is implemented by business or government by products grouped together by common features in at least one of several product groupings of design similarity;

wherein the multi-sensor detection device is for any of one or more products comprising a maritime cargo container, a lock, or the monitoring equipment;

wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency connection, or short range radio frequency connection is in signal communication with a transmitter and a receiver of the monitoring equipment or multi-sensor detection device and transceivers of the products.

21. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human, or contraband agent or compound, capable of being disposed within, on, upon or adjacent a multi-sensor detection device, wherein at least one of the sensors is capable of detecting agents of an item of interest (IOI);

monitoring equipment of at least one of the products grouped together by common features in a product groupings category of design similarity comprising at least one of a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA), or smart phone for at least one of a receipt or transmission of signals therebetween;

at least one satellite or at least one cell phone tower capable of signal communication between the multi-sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi-sensor detection device and the monitoring equipment;

whereupon a signal sent to a receiver of the multi-sensor detection device for detecting the agents of the item of interest causes a signal that includes at least one of location data or sensor data to be sent to the monitoring equipment;

wherein the multi-sensor detection device for any of one or more products comprising a maritime cargo container, a lock, or the monitoring equipment;

wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, or broadband connection, is in signal communication with a transmitter, a receiver of the monitoring equipment, or transceivers of the products;

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of the explosive agent, the nuclear agent, the contraband agent, the chemical agent, the biological agent, the human agent, or the radiological agent which allows radio frequency (RF) data to be received and/or transferred between the tag and the monitoring equipment.

22. A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal, comprising:

at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor; that is wired or wireless, capable of being disposed within, on, upon or adjacent the communication device;

at least one of a central processing unit (CPU), a network processor, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of a multi-sensor detection device, a cell phone detection device, or a locking device;

a receiver for receiving signals, data or messages from at least one of a multi-sensor detection device, a cell phone detection device, or a locking device;

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, cellular connection, long and/or short range radio frequency (RF) connection, or GPS connection;

the communication device being at least a fixed, portable or mobile communication device, equipped with at least one wired or wireless sensor for the detection of humans;

the communication device being equipped to receive signals from or send signals to engage (lock), disengage (unlock), or disable (make unavailable) locks;

the communication device being equipped with biometrics that incorporates at least one of a fingerprint recognition or a face recognition to at least one of gain access to the device or to prevent unauthorized use;

the communication device being capable of wireless near-field communication (NFC) which allows radio frequency (RF) data to be at least one of received or transferred between the communication device and at least one tag that is read by the communication device;

whereupon a signal sent to the receiver of at least one of a multi-sensor detection device, a cell phone detection device, or a locking device from a satellite or a cell phone tower or through at least one of a Bluetooth connection, a WiFi connection, an internet connection, a cellular connection, a GPS connection, a short range radio frequency (RF) connection, or a long range radio frequency (RF) connection, causes a signal that includes at least one of location data or sensor data to be sent to the communication device; and

wherein at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, cellular connection, long range radio frequency (RF) connection, or short range radio frequency (RF) connection, capable of signal communication with the transmitter of the communication device, the receiver of the communication device, or the central processing unit (CPU).

**23**. A cell phone comprising:

a central processing unit (CPU) for executing and carrying out the instructions of a computer program;

a transmitter for transmitting signals and messages to a cell phone detection device;

a receiver for receiving signals from the cell phone detection device;

at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection;

the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and

whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device;

at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone;

wherein at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection is capable of signal communication with the transmitter or the receiver;

wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and

whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone.

\* \* \* \* \*



US009096189B2

(12) **United States Patent**　　　(10) **Patent No.:**　　**US 9,096,189 B2**

Golden　　　　　　　　　　　　　　　(45) **Date of Patent:**　　　**Aug. 4, 2015**

(54) **MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM**

(71) Applicant: **Larry Golden**, Mauldin, SC (US)

(72) Inventor: **Larry Golden**, Mauldin, SC (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/021,693**

(22) Filed: **Sep. 9, 2013**

(65) **Prior Publication Data**

US 2014/0071274 A1　　Mar. 13, 2014

**Related U.S. Application Data**

(60) Continuation of application No. 13/288,065, filed on Nov. 3, 2011, now Pat. No. 8,531,280, which is a division of application No. 12/802,001, filed on May 27, 2010, now Pat. No. 8,334,761, which is a continuation of application No. 12/657,356, filed on Jan. 20, 2010, now Pat. No. 8,106,752.

(51) **Int. Cl.**

| | |
|---|---|
| *B60R 25/10* | (2013.01) |
| *B60R 25/102* | (2013.01) |
| *B60R 25/01* | (2013.01) |
| *B60R 25/04* | (2013.01) |
| *G07C 9/00* | (2006.01) |
| *G08B 15/00* | (2006.01) |
| *G08B 21/12* | (2006.01) |

(52) **U.S. Cl.**

CPC ............. *B60R 25/102* (2013.01); *B60R 25/018* (2013.01); *B60R 25/04* (2013.01); *G07C 9/00912* (2013.01); *G08B 15/00* (2013.01); *G08B 21/12* (2013.01); *B60R 2325/205* (2013.01); *B60R 2325/304* (2013.01); *G07C 2009/0092* (2013.01)

(58) **Field of Classification Search**

CPC ... B60R 2325/00; G08B 21/12; G08B 25/009

USPC ............... 340/539.1, 539.11, 539.13, 539.16, 340/539.17, 539.22, 539.25, 539.26, 540, 340/573.1, 574; 348/143; 380/228, 229, 380/232; 382/103, 115; 702/32

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,385,469 | A | 5/1983 | Scheuerpflug |
| 4,544,267 | A | 10/1985 | Schiller |
| 4,586,441 | A | 5/1986 | Zekich |
| 4,792,226 | A | 12/1988 | Fishbine |
| 5,222,152 | A | 6/1993 | Fishbine |

(Continued)

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 11/397,118; mailed Nov. 14, 2007; Alexandria, Virginia, USA; pp. 1-12; parent U.S. Appl. No. 13/288,065 (12 pages).

(Continued)

*Primary Examiner* — Van Trieu

(57) **ABSTRACT**

A multi sensor detection and disabling lock system includes detector cases for holding interchangeable detectors that sample for chemical, biological and radiological compounds, agents and elements, with each detector case disposed in or upon the monitored product. The detector case transmits detection information to a monitoring computer terminal and transmits a signal to a lock disabler engaged to the product to lock or disable the product's lock thereby preventing untrained, unauthorized and unequipped individual's from gaining access and entry to the product, and also preventing further contamination of the area. The detection system can be interconnected to surveillance towers scanning detector cases disposed at seaport docks, freight depots and rail terminals for monitoring containers being prepared for shipment or sitting on docks for long periods of time.

**9 Claims, 13 Drawing Sheets**



(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,223,844 A | 6/1993 | Mansell et al. | |
| 5,233,404 A | 8/1993 | Lougheed | |
| 5,557,254 A | 9/1996 | Johnson | |
| 5,682,133 A | 10/1997 | Johnson | |
| 5,766,956 A | 6/1998 | Groger | |
| 5,938,706 A | 8/1999 | Feldman | |
| 5,959,529 A | 9/1999 | Kail, IV | |
| 5,963,657 A | 10/1999 | Bowker | |
| 5,986,543 A | 11/1999 | Johnson | |
| 5,990,785 A * | 11/1999 | Suda | 340/426.21 |
| 6,049,269 A | 4/2000 | Byrd | |
| 6,078,265 A | 6/2000 | Bonder | |
| 6,262,656 B1 | 7/2001 | Byrd | |
| 6,271,745 B1 | 8/2001 | Arizal | |
| 6,374,652 B1 | 4/2002 | Hwang | |
| 6,411,887 B1 | 6/2002 | Martens | |
| 6,470,260 B2 | 10/2002 | Martens | |
| 6,542,076 B1 | 4/2003 | Joao | |
| 6,542,077 B2 | 4/2003 | Joao | |
| 6,588,635 B2 | 7/2003 | Vor Keller | |
| 6,610,977 B2 | 8/2003 | Megerle | |
| 6,613,571 B2 | 9/2003 | Cordery | |
| 6,628,813 B2 | 9/2003 | Scott | |
| 6,647,328 B2 | 11/2003 | Walker | |
| 6,738,697 B2 | 5/2004 | Breed | |
| 6,923,509 B1 | 8/2005 | Barnett | |
| 6,980,092 B2 | 12/2005 | Turnbull | |
| 6,988,026 B2 | 1/2006 | Breed et al. | |
| 7,005,982 B1 | 2/2006 | Frank | |
| 7,034,677 B2 * | 4/2006 | Steinthal et al. | 340/539.12 |
| 7,034,683 B2 | 4/2006 | Ghazarian | |
| 7,103,460 B1 | 9/2006 | Breed | |
| 7,109,859 B2 | 9/2006 | Peeters | |
| 7,116,798 B1 | 10/2006 | Chawla | |
| 7,148,484 B2 | 12/2006 | Craig et al. | |
| 7,164,117 B2 | 1/2007 | Breed et al. | |
| 7,171,312 B2 * | 1/2007 | Steinthal et al. | 702/32 |
| 7,243,945 B2 | 7/2007 | Breed et al. | |
| 7,339,469 B2 | 3/2008 | Braun | |
| 7,346,439 B2 | 3/2008 | Bodin | |
| 7,385,497 B2 | 6/2008 | Golden | |
| 7,397,363 B2 | 7/2008 | Joao | |
| 7,636,033 B2 | 12/2009 | Golden | |
| 7,647,180 B2 | 1/2010 | Breed | |
| 7,844,505 B1 | 11/2010 | Arneson et al. | |
| 7,868,912 B2 * | 1/2011 | Venetianer et al. | 348/143 |
| 7,872,575 B2 | 1/2011 | Tabe | |
| 7,880,767 B2 * | 2/2011 | Chinigo | 348/143 |
| 7,961,094 B2 | 6/2011 | Breed | |
| 8,274,377 B2 | 9/2012 | Smith et al. | |
| 8,531,521 B2 * | 9/2013 | Romanowich | 348/143 |
| 8,564,661 B2 * | 10/2013 | Lipton et al. | 348/143 |
| 2002/0145666 A1 * | 10/2002 | Scaman et al. | 348/148 |
| 2003/0063004 A1 * | 4/2003 | Anthony et al. | 340/574 |
| 2003/0137426 A1 * | 7/2003 | Anthony et al. | 340/574 |
| 2003/0206102 A1 | 11/2003 | Joao | |
| 2004/0107028 A1 | 6/2004 | Catalano | |
| 2004/0222092 A1 | 11/2004 | Musho | |
| 2005/0195069 A1 | 9/2005 | Dunand | |
| 2006/0164239 A1 | 7/2006 | Loda | |
| 2006/0176169 A1 * | 8/2006 | Doolin et al. | 340/521 |
| 2006/0181413 A1 | 8/2006 | Mostov | |
| 2006/0250235 A1 | 11/2006 | Astrin | |
| 2007/0171042 A1 | 7/2007 | Metes et al. | |
| 2008/0045156 A1 | 2/2008 | Sakhpara | |
| 2008/0122595 A1 | 5/2008 | Yamamichi | |
| 2008/0234907 A1 | 9/2008 | Labuhn | |
| 2010/0159983 A1 | 6/2010 | Golden | |
| 2011/0178615 A1 | 7/2011 | Golden | |

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action from U.S. 12/155,573; mailed Apr. 9, 2009; Alexandria, Virginia, USA; pp. 1-7; parent U.S. Appl. No. 13/288,065 (7 pages).

United States Patent and Trademark Office; Office Action from U.S. 12/155,573; mailed Jul. 30, 2009; Alexandria, Virginia, USA; pp. 1-9; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. 12/155,573; mailed Oct. 28, 2009; Alexandria, Virginia, USA; pp. 1-5; parent U.S. Appl. No. 13/288,065 (5 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/657,356; mailed Jul. 12, 2010; Alexandria, Virginia, USA; pp. 1-14; parent U.S. Appl. No. 13/288,065 (14 pages).

United States Patent and Trademark Office; Notice of Allowability from U.S. 12/657,356; mailed Mar. 10, 2011; Alexandria, Virginia, USA; pp. 1-4; parent U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 13/065,837; mailed Jul. 18, 2011; Alexandria, Virginia, USA; pp. 1-9; parent U.S. Appl. No. 13/288,065 (4 pages).

A newspaper article of Mr. Melvin Sullivan and his family that references the date, Mar. 6, 2001; parent U.S. Appl. No. 13/288,065.

A letter of response Mr. Sullivan received from Pfeiffer & Gantt, PA, dated Sep. 16, 2002; parent U.S. Appl. No. 13/288,065.

A "Certificate of Existance" Bright Idea Inventor, LLC. Nov. 6, 2002; parent U.S. Appl. No. 13/288,065.

Operating Agreement of Bright Idea Inventor, LLC received from Pfeiffer & Gantt, PA, dated Nov. 13, 2002; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Congressman from Maryland, Elijah E. Cummings, dated Dec. 16, 2002; parent U.S. Appl. No. 13/288,065.

A newspaper article of Mr. Melvin Sullivan and Mr. Larry Golden, dated, Feb. 27-Mar. 5, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated May 21, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Office of the Vice President, Dick Cheney, dated Jun. 3, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Ernest F. Hollings, dated Oct. 1, 2003; parent U.S. Appl. No. 13/288,065.

A letter of response Golden received from the Honorable Senator from South Carolina, Lindsey O. Graham, dated Oct. 21, 2003; parent U.S. Appl. No. 13/288,065.

A letter sent to the President of the United States George W Bush, the President's Cabinet, the United States Senate and the Congressional Black Caucus, dated May 23, 2005; parent U.S. Appl. No. 13/288,065.

On Nov. 17, 2005, an "Inventor's Official Record of Invention", was filed in my name (Golden) at "The Law Office of David P. Gaudio, P.C.; the Inventors Network"; parent U.S. Appl. No. 13/288,065.

On Aug. 23, 2005, the "Disclosure Document Registration"; parent U.S. Appl. No. 13/288,065.

On Apr. 5, 2006, the "Patent Application" was filed in my name (Golden) at the United Staets Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

On Jun. 6, 2008, the "Continuance-In-Part, (CIP) Application" was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

On Jan. 20, 2010, a "Continuation Application" (U.S. Appl. No. 12/657,356) was filed in my name (Golden) at the United States Patent & Trademark Office in Washington, D.C.; parent U.S. Appl. No. 13/288,065.

Reissue of U.S. Pat. No. 7,636,033, "Swear Back"; in accordance to Title 37—Code of Federal Regulations Patents, Trademarks, and Copyrights; Apr. 8, 2011; parent U.S. Appl. No. 13/288,065

Reissue of U.S. Pat. No. 7,636,033; "Swearback—History of Work"; Apr. 8, 2011; parent U.S. Appl. No. 13/288,065.

United States Patent and Trademark Office; Office Action from U.S. 12/802,001; mailed Apr. 14, 2011; Alexandria, Virginia, USA; pp. 1-16; parent U.S. Appl. No. 13/288,065 (16 pages).

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; mailed Oct. 20, 2011; Alexandria, Virginia, USA; pp. 1-5; parent U.S. Appl. No. 13/288,065 (5 pages).

(56) **References Cited**

OTHER PUBLICATIONS

United States Patent and Trademark Office; Office Action from U.S. Appl. No. 12/802,001; mailed May 27, 2011; Alexandria, Virginia, USA; pp. 1-14; parent U.S. Appl. No. 13/288,065 (14 pages)

United States Patent and Trademark Office; Office Action, Office Action from U.S. Appl. No. 12/802,001; copyright and mailing date Dec. 12, 2011, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Patent and Trademark Office; Office Action, Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Dec. 2, 2011, pp. 1-27, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (27 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Nov. 1, 2011, pp. 1-18, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (18 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and mailing date Jan. 13, 2012, pp. 1-34, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (34 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 12/802,001; copyright and mailing date Mar. 26, 2012, pp. 1-12, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (12 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/199,853; copyright and mailing date Feb. 22, 2012, pp. 1-38, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (38 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/065,837; copyright and mailing date Feb. 22, 2012, pp. 1-25, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (25 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Aug. 24, 2012, pp. 1-4, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (4 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Nov. 28, 2012, pp. 1-11, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (11 pages).

United States Patent and Trademark Office; Office Action; Office Action from U.S. Appl. No. 13/288,065; copyright and mailing date Apr. 16, 2013, pp. 1-9, publisher United States Patent and Trademark Office, Alexandria, Virginia, USA; parent U.S. Appl. No. 13/288,065 (9 pages).

United States Department of Homeland Security; Petition for Inter Partes Review of U.S. Pat. No. Re. 43,990 Under 35 U.S.C. §312 and 37 C.F.R. §42.104; Case IP2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-57; (57 pages).

United States Department of Homeland Security; Declaration of Dr. Sriram Vishwanath; Case IPR2014-00714 for U.S. Pat No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-44; (44 pages).

Richard R Brooks and S.S. Iyengar; Multi-Sensor Fusion Fundamentals and Applications with Software; published 1998; Copyright Prentice Hall PTR; Upper Saddle River, New Jersey, USA; pp. 1-20; (20 pages).

Ramanarayanan Viswanathan and Pramod K Varshney; Distributed Detection with Multiple Sensors; Part 1—Fundamentals; Proceedings of the IEEE; Jan. 1, 1997; pp. 1-11; vol. 85; No. 1; Southern Illinois University Carbondale OpenSIUC; Illinois, USA; pp. 1-11; (11 pages).

Blum; Distributed with Multiple Sensors: Part II—Advanced Topics; Proceedings of the IEEE; Jan. 1, 1997; pp. 1-16; vol. 85, No. 1; Southern Illinois University Carbondale Open SIUC; Illinois, USA, pp. 1-11; (16 pages).

Victor Lesser; Distributed Sensor Networks a Multiagent Perspective; 2003; pp. 1, 2, 5, 6, 22, 26, 27, 36, 275, 320; copyright 2003 Kluwer Academic Publishers: AH Dordrecht, The Netherlands; (10 pages).

Samuel Blackman and Robert Popoli; Design and Analysis of Modern Tracking Systems; 1999; pp. 1, 2, 6, 472; copyright 1999 Artech House; Norwood, Massachusetts, USA; (4 pages).

Jean-Francois Chamberland; Decentralized Detection in Sensor Networks; 2003; pp. 407-416; IEEE Transactions on SIgnal Processingl vol. 51, No. 2; Urbana, Illinois, USA; (10 pages).

Oleg Kachirski and Ratan Guha; Effective instrusion Detection Using Multiple Sensors in Wireless Ad Hoc Networks; pp. 1-8; Proceedings of the 36th Hawaii International Conference on System Sciences; copyright 2003; Orlando, Florida, USA; (8 pages).

Lawrence A Klein; Sensor and Data Fusion a Tool for Information Assessment and Decision Making; 2004; pp. 1-4, 6, 81, 87-89; copyright 2004 The Society of Photo-Optical Instrumentation Engineers; Publisher is SPIE—the International Society for Optical Engineering; Bellingham, Washington, USA; (12 pages).

Dale Ferriere and Khrystyna Pysareva and Andrzej Rucinski; Using Technology to Bridge Maritime Security Gaps; Aug. 1, 2005; Sea Technology; pp. 1-6; copyright Compass Publications, Inc. Jan. 2009; Portsmouth, New Hampshire, USA; (6 pages).

Corie Lok; Cargo Security; MIT Technology Review; Jun. 2004; No. 107; pp. 74-75; publisher is Massachusetts Institute of Technology; Cambridge, Massachusetts, USA; (2 pages).

Thomas C Chen; RFID and Sensor-based Container Content Visibility and Seaport Monitoring system; Proceedings of SPIE, vol. 5778; pp. 151-159; Mar. 28, 2005; Publisher is SPIE—the International Society for Optical Engineering; Bellingham, Washington, USA; (10 pages).

United States Department of Homeland Security; The University of Texas at Austin College of Engineering Standard Resume of Sriram Vishwanath; Case IPR2014-00714 for U.S. Pat. No. Re. 43,990; Filed Apr. 30, 2014; Washington, D.C., USA; pp. 1-21; (21 pages).

* cited by examiner



Fig. 1

Fig. 2



**Fig. 3a**



**Fig. 3b**



**Fig. 4**



POWER
SOURCE

**Fig. 5**



**Fig. 6**

**Fig. 7**



**Fig. 8**



**Fig. 9**



**Fig. 10**



**Fig. 11**



76

88

AGENT
DETECTED?          **NO**

**YES**

82 — LIGHT ALARM

80 — SOUND ALARM

84 — READINGS

90 — DETECTOR RESET

78 — SENSING MODE

**STOP**

**Fig. 12**

76

46 — DETECTOR

40

12 — CASE

92

94 — LOCK/DISABLE
LOCK SIGNAL

96 — DISARM AND
RESET

98 — DETECTION MODE

**Fig. 13**



**Fig. 14**

**Fig. 15**



**Fig. 16**



**Fig. 17**



**Fig. 18**



**Fig. 19**

1

# MULTI SENSOR DETECTION, STALL TO STOP AND LOCK DISABLING SYSTEM

This application is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 13/288,065 titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Nov. 3, 2011 and that will issue on Sep. 10, 2013 as U.S. Pat. No. 8,531,280, the entire contents of which are incorporated by reference herein in their entirety for all purposes. U.S. patent application Ser. No. 13/288,065 that will issue as U.S. Pat. No. 8,531,280 is a divisional application and claims the filing date and benefit of U.S. patent application Ser. No. 12/802,001 titled "Multi Sensor Detection, Stall to Stop, and Lock Disabling System" filed on May 27, 2010, now U.S. Pat. No. 8,334,761, the entire contents and complete subject matter of which is are incorporated by reference herein in their entirety for all purposes. U.S. patent application Ser. No. 12/802,001 is a continuation application and claims the filing date and benefit of U.S. patent application Ser. No. 12/657,356 titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System" filed on Jan. 20, 2010, now U.S. Pat. No. 8,106,752 and incorporates the entire contents and complete subject matter therein by reference in their entirety for all purposes. U.S. patent application Ser. No. 13/288,065 that will issue as U.S. Pat. No. 8,531,280 also claims the filing date and benefit of and incorporates the entire contents of U.S. patent application Ser. No. 12/657,356, now U.S. Pat. No. 8,106,752 herein by reference for all purposes. The present application also claims the filing date and benefit of and incorporates the entire contents of U.S. patent application Ser. No. 12/802,001, now U.S. Pat. No. 8,334,761 by reference herein for all purposes. The present application also claims the filing date and benefit of and incorporates the entire contents of U.S. patent application Ser. No. 12/657,356, now U.S. Pat. No. 8,106,752 herein by reference for all purposes.

## FIELD OF THE INVENTION

The present invention pertains to anti-terrorist detection and prevention systems, and more particularly pertains to a disabling lock mechanism combined with a chemical/biological/radiological detection system for use with products grouped together by similar characteristics in order to prevent unauthorized entry, contamination and terrorist activity.

## BACKGROUND OF THE INVENTION

Terrorist activity is a continuous, daily, worldwide threat to the stability, prosperity, security and peace within nations and between and among nations. Its danger lies in its arbitrary destructiveness as much as in its unpredictability, and the constant threat of terrorist activity compels measures and actions that cause strain and contention in free, democratic societies as security concerns and civil liberty concerns must be balanced so that both public safety and civil liberties are maintained. Safety and security concerns can be addressed through numerous proactive steps and measures, many of which cause only minimal interference with and disruption of the daily routines of work, travel, commerce and entertainment. However, because modern industrial societies afford almost limitless places, locations, and opportunities for terrorist activities, no safety measure or security protocol will be foolproof, but many security measures, systems and protocols can be implemented that greatly minimize specific threats through fingerprint identification procedures, chemical, biological, and radiological hazard detections, bomb and

2

explosive detection, and controlling the access to everything from shipping containers to school lockers. Thus, the prior art discloses a wide range of security measures and systems.

For example, the Fishbine et al. patent (U.S. Pat. No. 4,792, 226) discloses an optical fingerprinting system that includes an optics/processor unit, a video monitor, a data terminal, and a printer for collecting and storing data characteristics of all ten individual fingerprints for printing demographic information and fingerprint images as desired on a standard booking or applicant card.

The Schiller patent (U.S. Pat. No. 4,544,267) discloses a finger identification unit that includes a fingerprint scanning apparatus using a collimated beam of light to interrogate the fingerprint of a finger placed against a platen so that successive scan positions produce signals containing fingerprint information.

The Fishbine et al. patent (U.S. Pat. No. 5,222,152) discloses a portable fingerprint scanning apparatus for optically scanning and recording fingerprint images and wirelessly transmitting such images to a mobile processing unit for verification and background checking.

The Lougheed et al. patent (U.S. Pat. No. 5,233,404) discloses an optical scanning apparatus that uses a linear charge coupled device (CCD) for recording the image of a fingerprint on the viewing surface.

The Groger et al. patent (U.S. Pat. No. 5,766,956) discloses a diode laser based sensor for undertaking optical, chemical, immunological or nucleic acid-based assay or other chemical analysis.

The Feldman patent (U.S. Pat. No. 5,938,706) discloses a multi element security system for preventing the unauthorized use of an automotive vehicle, and which includes numerous locking and control features interconnected to an onboard cpu.

The Bowker et al. patent (U.S. Pat. No. 5,963,657) discloses a safety access control for doors, handles, locks, etc., wherein the surface relief of a finger is read and verified to either allow or prevent access by the individual to the door, handle, lock, etc.

The Bonder et al. patent (U.S. Pat. No. 6,078,265) discloses a fingerprint identification security system wherein a key lock operated security system utilizes the fingerprint of the individual to control user access to the security system, such as the ignition system of an automotive vehicle.

The Anzai et al. patent (U.S. Pat. No. 6,271,745 B1) discloses a keyless authorization system for use of a motor vehicle that includes fingerprint reading units located on the exterior or interior of the motor vehicle and which is coupled to a control unit for scanning, comparing and matching fingerprints to allow or disallow access to the motor vehicle.

The Hwang patent (U.S. Pat. No. 6,374,652 B1) discloses a fingerprint-activated doorknob in which a detecting sensor for a fingerprint is placed on the doorknob for measuring and searching the fingerprint against previously stored fingerprint inputs to control access to the door.

The Vor Keller et al. patent (U.S. Pat. No. 6,588,635 B2) discloses a safety holster for a firearm that includes a pivotally mounted retaining member and a fingerprint sensor for scanning fingerprint information so that only authorized users can withdraw the firearm from the holster.

The Cordery et al. patent (U.S. Pat. No. 6,613,571 B2) discloses a method and system for detecting biological and chemical hazards in the mail that includes sensors placed within the mail box for sampling and testing ambient air and so that mail can be safely transported through the mail system.

3

The Nagata patent (U.S. Pat. No. 6,628,213 B2) discloses a coding method for digital signal coding and decoding that includes a CMI (code-marked inversion) method of signal coding.

Nonetheless, despite the ingenuity of the above devices, methods, and systems, there remains a need for a multi-detector and disabling lock system for use with various types of products collected together by common characteristics into product groupings for detecting chemical, biological and radiological agents and compounds and for selectively disabling and activating the product locks thereby preventing unauthorized entry and further contamination and preventing and thwarting terrorist activities.

SUMMARY OF THE INVENTION

The present invention comprehends a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping 1 include, but are not limited to, cargo containers, shipping containers, tractor trailers, mail carriers, mail boxes and lockers; while the products grouped into what may be referred to as Product grouping 2 include, but are not limited to, chemical, biological, radiological, and nuclear detectors, motion sensors and door sensors. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

The multi sensor detection and lock disabling system includes a detector case sized to fit in, upon or adjacent any of the aforedescribed products for detecting harmful and dangerous chemical, biological, and radiological agents, compounds and elements. In addition, the multi sensor detection and lock disabling system is capable of transmitting a signal to lock or disable a lock on the product, and is also capable of transmitting signals to a monitoring computer terminal or PC so that appropriate defensive and safeguarding actions can be undertaken and an authorized individual can disarm and reset the locking system and the multi sensor detection system. The detector case includes a power source (battery or electrical), interior compartments, Internet and GPS connections and a cpu interconnected with the Internet and GPS connections, and also interconnected with one or more off site monitoring computer terminals or PCs. The detector case includes one or more light alarm indicators that are externally visible and that light up when the chemical, biological, or radiological agent or compound is detected, and the light alarm indicators (which can be indicator lights or panels on the front of the detector case) can be color coded for denoting the specific agent or compound detected, i.e., separate and distinct colors for indicating detection of the chemical, biological, or radiological agent or compound.

The detector case is designed to hold within the interior compartments one or more interchangeable detectors, and each detector is adapted and set up to sample a specific compound or agent. Each detector includes a sound alarm, a sensor, a light alarm, and a readings panel, and is electrically interconnected (either by wire or wirelessly) to the cpu of the detector case so that information regarding the detection of

4

the particular agent or compound can be conveyed from the detectors to the detector case cpu. Each detector can also be used as a manual, stand-alone hand held scanner.

The multi sensor detection and lock disabling system can be interconnected to a surveillance watchtower, as well as monitoring computer terminals or PCs, with the watchtower scanning shipping and cargo crates and containers being prepared for shipment or sitting for extended periods of time on a dock or at a port, at a railway site, or at an industrial storage facility. The watchtower will scan the cargo and shipping crates and containers for the light alarm indicators on detector cases that are mounted in or upon the crates and containers, and thus continuous security surveillance of the crates and containers can be maintained.

An enhanced version of the multi sensor detection and lock disabling system can be employed to prevent car and vehicle bombings. Coupling the multi sensor detection and lock disabling system with satellite service will enable the detection system to detect explosives and transmit an alert signal by satellite to monitoring equipment at a monitoring site. Upon receiving the alert signal at the monitoring site the monitoring equipment activates a stall-to-stop process for disabling the air, fuel, electrical and/or computer system of the vehicle. Moreover, upon receiving the alert signal at the monitoring site the car or vehicle will be locked by transmission of a satellite signal that disables the vehicle's electrical and ignition system thereby preventing escape of the terrorist.

It is an objective of the present invention to provide a multi sensor detection and disabling lock system for securing news racks and vending machines in order to prevent theft, unauthorized use and terrorist activity.

It is another objective of the present invention to provide a multi sensor detection and disabling lock system for preventing terrorist activity by using products grouped together by common features in several product groupings such as design similarity, similarity in the presentation of security problems and similarity with regard to the presentation of solutions to preventing terrorist solutions.

It is still yet another objective of the present invention to provide a multi sensor detection and disabling lock system that is capable of disabling an existing lock or activating a lock inside any of the products of the product grouping lists when a detector or sensor of the system is activated.

It is still yet a further objective of the present invention to provide a multi sensor detection and disabling lock system wherein the disabling lock system prevents the unauthorized entry, access and further contamination of the products included in the several product groupings.

A still further objective of the present invention is to provide a multi sensor detection and lock disabling system that utilizes a multi-task device for preventing terrorist activity to vulnerable products that are collected or arranged by product grouping categories.

Yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system to secure cargos and containers, especially cargo and shipping containers, against chemical, biological, radiological and nuclear terrorist activity.

Still another objective of the present invention is to provide a multi sensor detection and disabling lock system capable of detecting chemical, biological and radiological agents and compounds.

Still yet another objective of the present invention is to provide a multi sensor detection and disabling lock system that includes interchangeable detectors that operate in conjunction to detect chemical, biological and radiological agents and compounds.

Still yet a further objective of the present invention is to provide a multi sensor detection and disabling lock system that can be implemented by business or government at a minimum cost by organizing the products to be protected into product grouping categories.

Another objective of the present invention is to provide a multi sensor detection and disabling lock system that accurately and reliably detects harmful agents, compounds and elements, and prevents the placement and storage of weapons and bombs in the range of storage containers and facilities currently available.

Still another objective of the present invention is to provide a multi sensor detection and disabling lock system wherein the interchangeable detectors that comprise part of the system can be used as stand-alone scanners.

These and other objects, features, and advantages will become apparent to those skilled in the art upon a perusal of the following detailed description read in conjunction with the accompanying drawing figures and appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the primary features of the system which include a detector case, several interchangeable detectors, an automatic/mechanical lock disabler and a fingerprint biometric lock with disabler;

FIG. 2 is a front elevation view of the multi sensor detection and lock disabling system of the present invention illustrating one of the interchangeable detectors first shown in FIG. 1;

FIG. 3a is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one lock disabler to the lock of a product, such as a container, and disengaged from the lock of the container;

FIG. 3b is a top plan view of the multi sensor detection and lock disabling system of the present invention illustrating the engagement of the lock disabler to the lock of the product for locking or disabling the lock of the product so that unauthorized access is prevented;

FIG. 4 is a side elevation view of the multi sensor detection and lock disabling system of the present invention illustrating the detector case mounted to the product, such as the container, with the light alarm indicators externally visible;

FIG. 5 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of detector cases with a surveillance watchtower and a monitoring PC terminal;

FIG. 6 is a schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the placement of detector cases upon containers different from the containers of FIG. 5, and wherein the detectors case are interconnected to a surveillance watchtower and a monitoring PC terminal;

FIG. 7 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the mounting of one automatic/mechanical lock disabler to the lock of a standalone news rack;

FIG. 8 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating one interchangeable detector placed within the standalone news rack;

FIG. 9 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the detector case having color coded front panels for specifically indicating the agents, compounds or elements that have been detected;

FIG. 10 is a rear elevation view of the multi sensor detection and lock disabling system of the present invention illustrating the GPS, Internet and power source connections;

FIG. 11 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector with the detector case and the steps undertaken by the system when an agent or compound is detected;

FIG. 12 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the sequence of steps undertaken by one detector when functioning as a standalone scanner for detecting an agent or compound;

FIG. 13 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the interconnection of the detector case with the automatic/mechanical lock disabler for activating the lock disabler upon detection by the system of an agent or compound;

FIG. 14 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating interconnection of the detector case with the fingerprint biometric lock with disabler for engaging and disengaging the fingerprint biometric lock as part of the process of detection and safeguarding the public upon detection of the agent or compound;

FIG. 15 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the system with a surveillance watchtower and a monitoring PC or computer terminal for monitoring containers, such as shipping or cargo containers, that may sit for extended time periods on docks, at rail yards, and at industrial storage facilities;

FIG. 16 is a representative schematic view of the multi sensor detection and lock disabling system of the present invention illustrating the integration of the detection system with a satellite and monitoring equipment at a monitoring site for detecting explosives placed in a vehicle and then transmitting signals to the satellite and then to the monitoring site for disabling and locking the vehicle;

FIG. 17 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone and cell phone case;

FIG. 18 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the incorporation of a GPS satellite, a monitoring site and a cell phone tower for communicating to and with an electronic device such as a laptop computer or a cell phone for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt; and

FIG. 19 is a perspective view of the multi sensor detection and lock disabling system of the present invention illustrating the use of a GPS satellite in conjunction with the monitoring site and monitoring equipment to relay commands and signals to the cpu or transceiver of the vehicle for stopping or locking the vehicle in response to a signal that a certain type of event (detection of a bomb, engine failure or malfunction or unauthorized use) has occurred or is in process

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Illustrated in FIGS. 1-19 is a multi sensor detection and lock disabling system 10 for preventing terrorist activity by monitoring, detecting, and securing those critical areas, sites, and facilities vulnerable to terrorist activity. The first step is

the identification of critical areas, sites, locations and facilities that are vulnerable to terrorist activity as convenient places to store and plant explosives and bombs and spread biological, chemical or radiological agents and compounds, followed by the disposition of the multi sensor detection and lock disabling system 10 for monitoring, detecting, and securing the particular location or site. Vulnerable sites, locations, facilities and areas are nearly limitless in their variety; in order to categorize the protection the present invention provides an anti-terrorist product grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design, and products presenting the same or similar security problems are grouped together with the multi sensor detection and lock disabling system 10 for preventing terrorist activity. For example, two preferred product groupings can be Product Grouping I: cargo containers, shipping containers, cargo planes, freight train cars, tractor trailers, mail carriers (UPS, FedEx), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans and utility vehicles. Product Grouping II: chemical detectors, biological detectors, radiological detectors, nuclear detectors, motion sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems. In addition to grouping products together by features, designs and materials, the multi sensor detection system 10 includes a lock disabling capability for disabling an existing lock or activating a lock on or inside any of the aforementioned products when a detector or sensor of the system is activated. The lock disabling feature is a crucial component of the invention in so far as it prevents unauthorized, unequipped or untrained individuals from gaining access and entry to the site and causing further contamination of the site.

As shown in FIGS. 1-10, the multi sensor detection and lock disabling system 10 includes at least one—and preferably many—detector case 12 that can be placed in, on, upon or adjacent the product, such as the shipping containers 14 of FIGS. 4 and 5 resting upon a platform 16 or the cargo container 18 of FIG. 6 sitting upon a seaport dock or pier 20. The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30. The rear side 30 has connections or contacts that can include an Internet connection 32, a GPS connection 34 and a power connection 36 for a power source. The power source for the detector system 10 can be any conventional battery or electrical source. The detector case 12 includes an interior chamber divided into a number of compartments 38 for holding therein agent or compound detection means hereinafter further described. A cpu 40 is mounted within the detector case 12 and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates with a monitoring site and monitoring equipment. The front side 28 of the detector case 12 includes indicator means for visually indicating that a specific agent, compound or element has been detected. The indicator means can include color coded indicator lights 42 in panel form, as shown in FIG. 9, with each indicator light panel 42 lighting up with a specific color corresponding to the detection of a specific agent or compound; or color coded indicator lights 44, as shown FIG. 1, that correspond to and individually light up on the detection of a specific agent or compound (chemical, biological, or radiological).

As shown in FIGS. 1, 2 and 9-13, the multi sensor detection and lock disabling system 10 includes a plurality of detectors 46 with each detector 46 adapted for and set up to sample for a specific agent or compound (biological, chemical, or radiological); and the detectors 46 are interchangeable for adapting to the needs and demands of future technology. The detectors 46 can also be used as standalone scanners. In the preferred embodiment of the invention, at least three detectors 46 are placed within the detector case 12 with one detector 46 for specifically sampling biological agents or compounds, one detector 46 for sampling chemical agents or compounds, and one detector 46 for sampling radiological agents or compounds. The detectors 46 are interconnected to the cpu 40 of the detection system 10 by conventional connections that can be wire or wireless for transmitting the appropriate signals to the cpu 40 upon detection of the particular agent or compound. As shown in FIG. 2, each detector 46 includes on its front plate or facing surface a sound alarm indicator 48, a readings panel 50 comprising a plastic shield and LED lights for displaying the various read-out messages, a sensor 52 for detecting the specific agent, element or compound, and a light alarm indicator 54 that can be color coded for each specific agent and which is externally visible when the detector 46 is used as a stand alone scanner. Each detector 46 includes a conventional microprocessor for controlling the various functions and generating the appropriate signals for transmission to the cpu 40 of the detector case 12.

As shown in FIGS. 1, 3a, 3b, 9, and 13-15, used in conjunction with the multi sensor detection and lock disabling system 10 is at least one automatic/mechanical lock disabler 56—and depending upon the number of products being monitored there can be one lock disabler 56 for each product. The automatic/mechanical lock disabler 56 is physically connected to the detector case 12 by a wire or cable 58 for receiving signals therefrom for disabling an existing lock or activating a lock inside a product to prevent access to the product. By way of example, FIG. 3a shows the automatic/mechanical lock disabler 56 mounted—by any conventional means—to the lock 60 of the shipping container 14 shown in FIGS. 4 and 5 and connected by wire 58 to the cpu 40 of the detector case 12. The lock disabler 56 is in the non-activated or disengaged state in FIG. 3a. FIG. 3b shows the automatic/mechanical lock disabler 56 mounted to the lock 60 of the shipping container 14 and in the activated or engaged state after detection of an agent or compound by the system 10 thereby for locking or disabling the lock 60 of the shipping container 14 and preventing unauthorized entry and access by unauthorized, untrained and unequipped individuals. In FIGS. 3a and 3b the lock 60 secures doors of the shipping container 14 that can be slidably or pivotably opened and closed.

In addition to the automatic/mechanical lock disabler 56, the multi sensor detection and lock disabling system 10 can also utilize a fingerprint biometric lock with disabler 62 as shown in FIGS. 1 and 14. The fingerprint biometric lock with disabler 62 is interconnected to the cpu 40 of the detector case 12 for receiving transmissions therefrom after detection of an agent or compound has occurred so that the lock on the product can be locked or disabled. Moreover, resetting of the fingerprint biometric lock with disabler 62 occurs when the fingerprint of the individual is placed on the fingerprint-matching pad 64, and if a match occurs with a known fingerprint stored by the cpu 40, then the individual can reset the fingerprint biometric lock with disabler 56 by turning the manual lock disabler 66. The fingerprint biometric lock with disabler 62 is mounted to the lock of the product in a manner

similar to the mounting of the automatic/mechanical lock disabler **56** that is shown in FIGS. **3** and **3**b.

FIGS. **4** and **5** show one manner of disposition or placement of the detector case **12** in relation to the product, i.e., the shipping container **14**, with the color coded indicator lights **42** externally viewable; FIG. **5** shows a number of shipping containers **14** each equipped with a detector case **12** and integrated with elements hereinafter further described for continuously monitoring the shipping containers **14** as they sit for an extended period of time on the truck or rail platform **16**. FIG. **6** illustrates several cargo containers **18** sitting on the shipping dock or pier **20**, with each cargo container **18** having a detector case **12** mounted thereon and integrated with and monitored by elements shown in FIG. **5** and hereinafter further described.

FIG. **7** illustrates a typical product from product grouping 1 that is monitored by the multi sensor detection and lock disabling system **10** of the present invention; specifically, FIG. **7** shows a news rack **68** with one automatic/mechanical lock disabler **56** mounted to and interconnected with the locking mechanism of the news rack **68**. As long as there is no detection of any agent or compound, the lock disabler **56** is in the disengaged state, and the individual can deposit the coin amount in the chute and then freely open the glass panel **70** by the handle **72** for removing a paper. However, the lock disabler **56** would be activated upon detection of the harmful agent or compound and receipt of a signal from the cpu **40** for locking or disabling the locking mechanism thereby denying access to the interior of the news rack **68** from all untrained, unauthorized and unequipped individuals.

FIG. **8** illustrates one detector **46** disposed within the news rack **68** and which is visible through the panel **70** for detecting one specific agent, compound or element. The detector **46** functions as a stand-alone scanner and can be wirelessly interconnected to offsite monitoring equipment.

FIG. **11** illustrates a representative schematic **74** for describing the signal transmission process from the detector **46** to the cpu **40** of the detector case **12**. The external stimulus **76** would be the chemical, biological or radiological agent or compound. If there is no detection of the agent or compound, the detector **46** will stay in the sensing mode **78**. However, detection of the specific agent will trigger the sound alarm **80** and the light alarm **82**, and instant transmittal of a signal to the cpu **40**. The readings **84** can be stored by the cpu **40** for verification and future review and evaluation. After all the appropriate corrective and preventative measures have been undertaken by the trained and authorized personal, and the site has been cleansed of the contamination, authorized and equipped personal can then reset **86** the system **10**.

FIG. **12** illustrates a representative schematic **88** for the detector **46** when used as stand-alone scanner. The detector **46** undergoes the same essential steps as illustrated in FIG. **11**, with the exception of the signal transmission to the cpu **40**. The detector **46** remains in detection mode **78** until an agent is detected, and then the various functions—light alarm **82**, sound alarm **80**, storage of readings **84**, and, after the appropriate security and safety steps have been carried out by authorized personal, detector reset **90** by authorized personal can occur thereby placing the detector **46** back in detection or sensing mode **78**.

FIG. **13** is a representative schematic **92** that illustrates the steps undertaken by the system **10** to lock or disable a lock, such as the lock **60** for the shipping container **14** shown in FIGS. **3**a and **3**b. Upon detection of the agent (chemical, biological, radiological) the alarm light indicators **42** or **44** will light up providing external indication that an agent has been detected. In addition, the system **10**—the cpu **40**—will

transmit a lock/disable lock signal **94** to the automatic/mechanical lock disabler **56** to lock or disable the lock on the product, such as the lock **60** on the shipping container **14** of FIGS. **3**a-**5**. This prevents unauthorized, unequipped, or untrained individuals from entering or gaining access to the product for which a dangerous and perhaps lethal agent has been detected. After the proper authorities and authorized personal have been notified and all the appropriate security, preventative and clean up measures have been undertaken, the authorized individual can perform the disarm and reset function **96** for the system **10** placing the system **10** in back in the detection mode **98**.

FIG. **14** is a representative schematic **100** illustrating the use of the fingerprint biometric lock with disabler **62** with the system **10**. Upon detection of the agent or compound by the detector, the various alarms would sound and light up (shown in previous figures), and the cpu **40** would then transmit a signal to the fingerprint biometric lock with disabler **62** to lock or disable the lock on the product, such as the lock **60** on the shipping containers **14** shown in FIGS. **3**a-**5**. The shipping containers **60** would remain locked and in an access denied mode **101** should an attempt be made to gain access to the container **60** by opening the lock **60** with an unauthorized fingerprint. However, a fingerprint that matches stored and authorized fingerprints **102** would indicate an authorized individual, and would allow the individual to disable and disarm **104** the lock **60** of the shipping container **14**. The fingerprint biometric lock with disabler **62** would then be reset **106** after the appropriate safety, cleanup, and protection measures are completed, and the system **10** would be reset and placed back in the detection mode **108**.

FIG. **15** is a schematic representation **110** that illustrates the integration of a surveillance watchtower **112** and a monitoring terminal or PC **114** for monitoring products such as the shipping containers **14** or cargo containers **16** that sit for extended periods of time at docks, piers **20**, truck terminals, mil yards, shipping platforms **16** and industrial sites as shown in FIGS. **5** and **6**. The watchtower **112** would maintain continuous surveillance over a number of shipping containers **60**, for example, with detector cases **12** mounted in or on each container **14** and set in detection mode **116** with one or more detectors **46** disposed in each detector case **12**. The watchtower **112** would continuously scan for light alarm indicators **42** and **44** on the products, such as the containers **14** or **18**, and the watchtower **112** would be interconnected and integrated with the monitoring terminal or PC **114**. Upon detection **118** of an agent or compound in one or more of the shipping containers **14**, the appropriate light alarm indicators **42** or **44** would light providing visible confirmation of the detection of the specific agent or compound. The cpu **40** would transmit a lock/disable signal **120** to the lock **60** on each respective shipping container **14** to lock or disable the lock **60** thus preventing access to that respective shipping container **14**. In addition, signal transmissions would be sent to the monitoring terminal or PC **114** (which could be off site) thereby alerting authorized security personal of the contamination event. With the information received at the monitoring terminal **114**, authorized personal would then be notified and dispatched to the area to undertake the appropriate safety and cleanup measures **122**. Such measures would also include disarming the lock disabling system in order to gain access to the shipping container **14**. After all the cleanup and security measures are completed by the trained and properly equipped authorities, the detection system and the lock disabling feature would reset **124** and the detection system would again be placed in detection mode **116**.

FIG. **16** is a schematic representation **126** that illustrates an enhanced version of the multi sensor detection and lock disabling system **10** for preventing car and vehicle attacks and bombings. The lock disabling system **10** would be interconnected to the locking system and mechanism **128** of the vehicle **130**. In addition, a stall to stop disabling link **132** can be made with the fuel, air, and electrical system **134** of the vehicle **130**. The enhanced version incorporates a satellite **136** for signal receipt and transmission from the vehicle **130** in which the detector system **10** is placed to a monitoring site and monitoring equipment **138**. As shown in FIG. **16**, a detection signal **140** would be sent to the satellite **136** by the detection system **10** upon detection of a bomb or explosive **142** hidden in the vehicle **130**. The satellite **136** would then transmit an alert signal **144** to the monitoring site **138** with the signal **144** containing the relevant data to evaluate the nature of the threat. The monitoring site **138** would then transmit a stall to stop signal **146** to the detection system **10** to lock the vehicle **130** and/or disable the electrical system of the vehicle **130** thereby disabling the vehicle **130**, preventing access to the vehicle **130** by locking the vehicle **130**, and preventing any terrorist in the vehicle **130** from escaping.

The detector case **12** can be modified and adapted for inclusion with cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, suitcases, and briefcases. In addition, the basic monitoring terminal or PC **114**, as shown in FIGS. **5** and **15**, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring.

The system **10** and the watchtower **112**, along with the satellite **136** and the monitoring site **138** can be adapted or incorporated with cell phone towers and satellites for use with satellite communication and/or a cell tower, wi-fi, wi-max, broadband, GPS, navigation, radio frequency interconnected to a central processing unit (cpu), such as cpu **40**, a transceiver and monitoring equipment to include but not to be limited to computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals therebetween. The aforementioned telecommunication and radio communication means can be interactive with any type of motive vehicle that includes but is not limited to cars, trucks, vans, SUVs, trains, subways, boats, ships and airplanes, and which is reported stolen, experiences a loss of brakes, or a bomb, explosives or other types of chemical, biological, radiological, or nuclear agents are detected within, upon, affixed or mounted to the vehicle and which detection causes an automatic signal transmission or a signal transmission is activated when a call is made to the monitoring station by an authorized person. The authorized individual includes but is not limited to the owner, pilot, conductor, captain, police highway patrol, security guard and military personnel to the monitoring equipment for activating a vehicle slowdown or stall-to-stop disabling system that similar to the disabling system **126** shown in FIG. **16**, or incorporating features of the system **126** shown in FIG. **16**, from the monitoring equipment to the vehicle. The activation of the stall-to-stop disabling means or the vehicle slowdown disables or engages the computer, electrical, fuel and air systems of the vehicle or a combination of the computer, electrical, fuel and air systems that include but are not limited to the brakes, foot peddle, lights, speed controls, ignition, steering, transmission, and the horsepower of the motor.

In addition, the basic stall-to-stop disabling means or the vehicle slowdown means and device can be adapted, modified or designed to include: an open bust or open platform for integrating any new and innovative technology; warning lights indicators; sound alarm indicators; voice alarm indica-

tors; a cell phone to transmit to the vehicle a signal for slowing and halting the vehicle; and a lock disabling system or means to lock a thief or terrorist inside the vehicle after a transmission is received or sent. Open bust or open platform also refers to the compatibility of the detector case **12**, or the incorporation of its features in cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, briefcases, and suitcases, etc., with other communication, transmission and surveillance systems whereupon the detector case **12**, and its features, can be seamlessly integrated with other new and emerging systems and technologies.

Thus, as shown more specifically in FIG. **17**, by way of a representative example the features and elements of the detector case **12** are shown as being incorporated into cell phone detector case **150** and associated cell phone monitor **152**. The cell phone monitor **152** includes the standard keypad functions **154** and more specialized system use (ring tone, email, photos, texting) functions **156** as well as a viewing screen **158**. The cell phone detector case **150** includes a recharging cradle or seat **160**, a front side **162**, a top **164**, a bottom **166**, and a pair of opposed sides **168**. At the back of the cell phone detector case **150** are connections, contacts, and ports for at least an Internet connection **170**, a GPS connection **172**, and a contact, plug, or port for a power source **174**. The power source for the cell phone detector case **150** can be any conventional rechargeable battery source or standard electrical power from a standard electrical receptacle or outlet.

As shown in FIG. **17**, the cell phone detector case **150** includes one or more sensor/detector units, cells, or components **176** built into and incorporated into the case **150**. The detector **176** includes generally disposed at the front **162** of the case **150** the following types of indicators: a sound alarm indicator **178**, a readings panel **180**, a sensor **182** for detecting one or more specific types of agents, elements, chemicals, compounds, etc., and a light alarm indicator **184**. The sensor/detector **176** will be interconnected to the power source **174**. In addition, mounted on and externally visible on the sides **168** or front **162** of the case **150** are a plurality of color coded indicator lights **186** with each light **186** corresponding to a specific agent, element, chemical, compound, etc., and lighting up when that agent is detected by the sensor/detector **176**. The color coded indicator lights **186** will be electrically interconnected to the sensor/detectors **176** via any standard microprocessor. The cell phone detector case **150** and cell phone monitor **152** thus comprise a hand-held, easily portable and transportable detection means that is both effective and unobtrusive in its disposition and use.

FIGS. **18** and **19** illustrate representative examples of the integration of portable electronic communication or telecommunication devices such as a cell phone **187**a and/or a laptop computer **187**b with the monitoring equipment **138** located at a predesignated monitoring site **188**, and operating in conjunction with either a satellite and/or a cell phone tower **190** to transmit and receive signals and commands among each other and to a vehicle **192**, such as a truck, as part of a stall-to-stop disabling system for slowing and stopping the vehicle **192** and locking a thief, terrorist, or unauthorized individual in the vehicle **192** if needed. A wide range of events can trigger and initiate the stall-to-stop system and the locking or lock disabling system and mechanism, and the event doesn't have to be limited to the detection of a bomb or a chemical, biological, or radiological agent, element, or compound. The events can include, but is not limited to, detection of an engine problem to engine failure to the unauthorized use (stealing) of the vehicle **192**. The vehicle **192** includes an electromotive system **194** that comprises, among other com-

13

ponents, an onboard computer(s), electrical, fuel and air systems, as well as brakes, ignition, steering, and transmission. Also integrated with and capable of communicating with the vehicle's **192** electromotive system **194** is a stall-to-stop system while a lock disabling mechanism **196** is able to engage and disengage or disable the vehicle's **192** locking mechanism **198** upon receipt of the appropriate commands via a lock disabling communication channel or link **200**. This link **200** can also accommodate the stall-to-stop system commands and signals, and thus is a multi-channel communication link. A CPU or a transceiver **202** is programmed to receive signals from the cell phone tower **190** and/or to a GPS satellite **204** and is interconnected with the stall-to-stop system and the lock disabling system **196** via link **200** for engaging the electromotive system **194** and actuating the lock disabling system **196** to stop the vehicle **192** and lock inside the vehicle **192** anyone such as a thief, terrorist or other unauthorized individual.

A representative example for stopping, disabling, and locking the vehicle **192** that utilizes the cell phone tower **190** wherein the activation and/or distress signal **206** originates from the cell phone **187**a or the laptop **187**b and such activation signal **206** travels to the cell phone tower **190** that is nearest the current location of the vehicle **192**. A signal **208** is then transmitted to the monitoring site **188** and specific monitoring equipment **138** that can also include but is not limited to cell phones, laptops, desktop PC's, notebook PC's and LCD monitors. The monitoring site **138** then communicates by signal **210** to the GPS satellite **204** that an original or activation signal has been received and then the GPS satellite **204** locates and communicates by multiplex signal **212** with the CPU or transceiver **202** on the vehicle **192** and exchanges information on the type of problem, situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **214** to the cell phone tower **190** that communicates with the transceiver **202** and/or CPU of the vehicle **192** to initiate or execute any commands that will actuate the stall-to-stop disabling link **200** and lock disabling system **196** for bringing the vehicle **192** to a halt and actuating the vehicle's **192** locking mechanism **198** for locking the thief, terrorist, or other unauthorized person inside the vehicle **192** if needed.

FIG. **19** illustrates a representative example wherein the stall-to-stop system and the lock disabling system **196** are utilized in conjunction with the GPS satellite **204**. In FIG. 19 a signal has traveled to the satellites nearest the vehicle's **192** current location and then the signal **218** has traveled to the monitoring equipment **138** and monitoring site **188** which can include but is not limited to satellite cell phones, satellite monitors, cell phones, laptops, desktop PC's, notebook PC's, and LCD monitors. The OPS satellite **204** then locates and communicates with the CPU and/or transceiver **202** on the vehicle **192** via a multiplex (two-way) signal **220** in order to exchange information on such distress and danger event parameters as the specific problem situation, location, and vehicle speed. The monitoring equipment **138** then transmits a signal **222** back to the GPS satellite **204** that in turn communicates via another signal **224** with the CPU and/or transceiver **202** to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's **192** electromotive system **194** for bringing the vehicle **192** to a halt and for actuating the lock disabling system **196** to direct the lock disabling link **200** to actuate the locking mechanism **198** thereby locking the vehicle **192** and anyone inside the vehicle **192**.

While the invention has been shown and described in a preferred embodiment, it will be apparent to those skilled in the art that numerous alterations, modifications, and varia-

14

tions will possible and practicable without departing from the spirit and scope of the invention as set forth by the appended claims.

The present invention comprehends a chemical/biological/radiological/nuclear/explosive/human/contraband detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons. The products grouped into what may be referred to as Product grouping 1 (storage & transportation) include, but are not limited to, cargo containers, shipping containers, tractor trailers, mail carriers, mail boxes, airplanes, subways, cargo planes, freight train cars, (UPS, FedEx), airport lockers, news racks (coin and non-coin operated), mail drop boxes, cluster mail boxes, keyed mail boxes, min-storage houses and buildings, bicycle lockers, stadium lockers, school lockers, cars, trucks, campers, buses, vans, UAVs, UGVs, and utility vehicles; the products grouped into what may be referred to as Product grouping 2 (sensors) include, but are not limited to, chemical, biological, radiological, explosive and nuclear detectors, motion sensors, door sensors, speed sensors, biometric sensors, glass break sensors, plastic film on glass, high security locks, tampering labels, door sensors, disabling locking systems, vehicle detectors and satellite disabling locking systems, detection of humans, detection of contraband, temperature, and shock levels; the products grouped into what may be referred to as Product grouping 3 (detector case; modified and adapted) include, but are not limited to, cell phone cases, satellite cell phone cases, laptop cases, notebook PC cases, PDA cases, carry-on cases, suitcases, eyeglass, briefcases, detector cases of locks, detector cases of tags, detector cases that is mounted to, detector cases that is affixed to, detector cases that is outside of, detector cases that is inside of, and detector cases that is adjacent to; the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop PCs, notebook PCs, laptops, satellite cell phones, cell phones, UMTS phones, PDAs, LCD monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds; the products grouped into what may be referred to as Product grouping 5 (communication methods) include, but are not limited to, Bluetooth, Wi-Fi, Wi-Max, Internet, Ethernet, Broadband, Network Bandwidth, Wireless, Wired, Text Messaging, Cellular, Satellite, Telematics, Wide Area Network (WAN), Wireless Wide Area Network (WWAN), Local Area Network (LAN), Radio Frequency (RF), Broadband Wireless Access (BWA), Global Positioning System (GPS), General Packet Radio Services (GPRS), Global System for Mobile (GSM), Wideband Code Division Multiple Access (W-CDMA), Universal Mobile Telecommunications System (UMTS), Short Message Service (SMS); the products grouped into what may be referred to as Product grouping 6 (biometrics) include, but are not limited to, fingerprint recognition, voice recognition, face recognition, band geometry, retina scan, iris scan and signature. the products grouped into what may be referred to as Product grouping 7 (authorized person) include, but are not limited to, owner, pilot, conductor, captain, drivers of vehicles identified as high security, airport security, police, highway patrol, security guard, military personnel, HAZMAT, CIA, FBI, Secret Service, port security personnel,

15

16

border security personnel, first responders, monitoring sites and terminal personnel. The multi sensor detection system includes the capability to disable an existing lock or activate a lock located inside or outside any of the products named in the product grouping categories upon activation of a sensor or detector included in the system. This is a significant feature for the multi sensor detection system as it prevents unauthorized, unequipped and untrained entry and access to the product thus preventing further contamination of the site and to individuals in the area.

The invention claimed is:

**1**. A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising:

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;

a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;

at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection, or GPS connection;

the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems;

wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories;

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products;

wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use;

wherein the only type or types of communication with the transmitter and the receiver of the communication

device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short range radio frequency (RF).

**2**. Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween, comprising:

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device;

a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device;

a lock disabling mechanism that is able to engage (lock) and disengage (unlock) and disable (make unavailable) a product's lock, wherein the lock disabling mechanism disables the product's lock after a specific number of tries by an unauthorized user to disengage the lock by maintaining the product's lock in the current state of the product's lock regardless of input entered to change the state of the product's lock by the unauthorized user;

at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection, or GPS connection;

monitoring equipment of at least a fixed, portable or mobile monitoring equipment interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the monitoring equipment, is interconnected to a product equipped to receive signals from or send signals to the lock disabling mechanism that is able to engage and disengage or disable the lock, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems;

wherein the monitoring equipment is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity;

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, or long and short range radio frequency (RF) connection is in signal communication with the transmitter and the receiver of the monitoring equipment and transceivers of the products.

**3**. Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween, comprising:

US 9,096,189 B2

17

at least one of a central processing unit (CPU), a network processor, or a microprocessor for executing and carrying out the instructions of a computer program or application which is specifically targeted at the networking application domain, for communication between the monitoring equipment and any of a plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container device, or a locking device;

a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container device, or a locking device;

a receiver for receiving signals, data or messages from at least one of plurality of product groups based on the categories of a multi-sensor detection device, a maritime cargo container device or a locking device, wherein the signals, data or messages are of agents of an item of interest (IOI);

at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, or GPS connection;

the monitoring equipment is at least a fixed, portable or mobile monitoring equipment interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the monitoring equipment, is capable of the activation or deactivation of at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container device or a locking device;

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, for signal communication with the transmitter and the receiver of the monitoring equipment and transceivers of the products;

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of a chemical agent, a biological agent, a radiological agent, a nuclear agent, or an explosive agent which allows radio frequency (RF) data to be received and transferred between the tag and the monitoring equipment.

4. A built-in, embedded multi sensor detection system for monitoring products with a plurality of sensors detecting at least two agents selected from the group consisting of chemical, biological, radiological, explosive, human, and contraband agents;

comprising a built-in sensor array or fixed detection device into the product that detects agents by means of two or more sensors combined from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, and a radiological sensor;

comprising a communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a built-in sensor array or fixed detection device for communication therebetween,

wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the hand-

18

held, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use;

wherein the built-in embedded multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; and

wherein, when an alarm occurs, the built-in, embedded multi sensor detection system communicates the alarm by way of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. product-to-product, product-to-satellite, product-to-cellular, product-to-long or short range radio frequency, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop) for communication therebetween;

wherein the built-in embedded multi sensor detection device is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity.

5. A built-in multi sensor detection system for monitoring products with a plurality of sensors detecting at least two agents selected from the group consisting of chemical, biological, radiological, explosive, human, and contraband agents, comprising:

a built-in sensor array or fixed detection device into the product that detects agents by means of two or more sensors combined from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, and a radiological sensor;

monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) for the receipt and transmission of signals therebetween;

wherein the built-in multi sensor detection device is built in any of one or more products listed in any of the plurality of product grouping categories to include but not limited to a maritime cargo container, a lock, or monitoring equipment (i.e., a computer terminal, personal computer (PC), a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop);

wherein the built-in multi sensor detection device is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity;

a light alarm indicator that has a plurality of colored lights that correspond to specific ones of the at least two agent;

wherein, when the light alarm indicator lights to indicate an alarm occurs, the built-in multi sensor detection system communicates the alarm by way of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. product-to-product, product-to-satellite, product-to-cellular, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop) for the receipt and transmission of signals therebetween.

19

20

6. A built-in multi sensor detection system for detecting at least two items selected from the group consisting of chemical agent, biological agent, radiological agent, explosive agent, human agent, contraband agent, motion, perimeter, temperature, tampering, theft, and breach, comprising:

a built-in sensor array or fixed detection device into a product that detects items by means of at least two sensors from the following list of sensors: a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, and a radiological sensor;

monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) for the receipt and transmission of signals therebetween;

wherein the built-in, multi sensor detection device is built in any of one or more products listed in any of the plurality of product grouping categories to include but not limited to a maritime cargo container, a lock, or monitoring equipment (i.e., a computer terminal, personal computer (PC), a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop);

wherein, when an alarm occurs, the built-in multi sensor detection system communicates the alarm by way of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. product-to-product, product-to-satellite, product-to-cellular, product-to-radio frequency (RF), product-to-internet, product-to-broadband, product-to-smartphone or cell phone, product-to-computer at monitoring site, product-to-WiFi, product-to-handheld, or product-to-laptop or desktop) for the receipt and transmission of signals therebetween,

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of the chemical agent, the biological agent, the radiological agent, the explosive agent, the human agent, the contraband agent, the motion, the perimeter, the temperature, the tampering, the theft, and the breach which allows radio frequency (RF) data to be received and transferred between the tag and the monitoring equipment.

7. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device;

monitoring equipment comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, cell phone, PDA or smart phone for the receipt and transmission of signals therebetween;

at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom or at least one satellite capable of transmitting signals to the monitoring equipment;

at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment;

whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data;

wherein the monitoring equipment or multi sensor detection device receives a signal via any of one or more products listed in any of the plurality of product grouping categories;

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products;

wherein the monitoring equipment is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the monitoring device that is at least one of the computer, the laptop, the notebook, the PC, the handheld, the cell phone, the PDA, or the smart phone is locked by the biometric lock disabler to prevent unauthorized use;

wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group consisting of satellite, Bluetooth, WiFi, internet, radio frequency (RF), cellular, broadband, and long and short range radio frequency (RF).

8. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device;

monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) for the receipt and transmission of signals therebetween, wherein the monitoring equipment is equipped with a lock disabling mechanism that is able to engage (lock) and disengage (unlock) and disable (to make unavailable) a product's lock, wherein the lock disabling mechanism disables the product's lock after a specific number of tries by an unauthorized user to disengage the lock by maintaining the product's lock in the current state of the product's lock regardless of input entered to change the state of the product's lock by the unauthorized user;

at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom; or at least one satellite capable of transmitting signals to the monitoring equipment;

at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment; and

whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or to a cell phone tower; or through short and/or long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data;

wherein the multi sensor detection device is implemented by business or government at a minimum cost by products grouped together by common features in at least one of several product groupings of design similarity;

wherein the multi sensor detection device for any of one or more products listed in any of the plurality of product grouping categories to include but not limited to a maritime cargo container, a lock, or monitoring equipment (i.e., a computer terminal, personal computer (PC), a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop);

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, or long and short range radio frequency (RF) connection is in signal communication with the transmitter and the receiver of the monitoring equipment or multi sensor detection device and transceivers of the products.

9. A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device, wherein at least one of the sensors is capable of detecting agents of an item of interest (IOI);

monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e. computer

terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) for the receipt and transmission of signals therebetween;

at least one satellite or at least one cell phone tower capable of signal communication between the multi sensor detection device and the monitoring equipment;

at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment;

whereupon a signal sent to a receiver of the multi sensor detection device from a satellite; or from a cell phone tower; or through short and/or long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data;

wherein the multi sensor detection device for any of one or more products listed in any of the plurality of product grouping categories to include but not limited to a maritime cargo container, a lock, or monitoring equipment (i.e., a computer terminal, personal computer (PC), a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop);

wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, or broadband connection, is in signal communication with the transmitter and the receiver of the monitoring equipment and transceivers of the products;

at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication to achieve detection of at least one of the explosive agent, the nuclear agent, the contraband agent, the chemical agent, the biological agent, the human agent, or the radiological agent which allows radio frequency (RF) data to be received and transferred between the tag and the monitoring equipment.

* * * * *

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

Phone (864) 288-5605

Email: atpg-tech@charter.net

**F I L E D**  #14

JAN 05 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CIVIL CASE NO: **C 23    00048**

**WHO**

---

LARRY GOLDEN,

        Plaintiff,

        V.

SAMSUNG ELECTRONICS
AMERICA, INC.

        Defendants.

**JURY TRIAL DEMANDED**

**(Direct Patent Infringement), (Induced
and Contributory Patent Infringement),
(Joint Patent Infringement)**

January 02, 2023

---

## COMPLAINT FOR PATENT INFRINGEMENT

1.     The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process". **Exhibit A**

2.     The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

3.    This is an action of alleged patent infringement, in which plaintiff Larry Golden ("Golden", "Plaintiff" or "Patent Owner"), hereby asserts the following claims for alleged patent infringement of United States Patents-in-suit Nos. 10,163,287 ('287 Patent), 9,589,439 ('439 Patent), and 9,096,189 ('189 Patent) ("patents-in-suit"), attached hereto as—**Exhibits B-D**—is filed against Defendant SAMSUNG ELECTRONICS AMERICA, INC ("Samsung" or "Defendant"), and alleges as follows:

4.    This current complaint against Samsung "mirrors" the complaint against Google submitted for review at the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 — that was "vacated and remanded" back to the District Court after the Circuit reviewed the case under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The panel's "DISCUSSION in *Golden v. Google LLC*; CAFC Case No. 22-1267 states:

> "Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 ... [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) ... this court has explained that a plaintiff ... must plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

5.    Samsung allegedly uses the same Android open-source architecture as Google; the same chipset provider (Qualcomm) for the USA as Google; the same allegedly infringing CPUs, or equivalent designed, manufactured for the smartphone as Google; the same standard smartphone sensors, or equivalent designed, manufactured for biosensor detection as Google; the same hazard-awareness-and-response tools (the Android Team Awareness Kit, ATAK), for chemical, biological, radiological, and nuclear (CBRN) plug-ins as Google; and, Samsung's

2

smartphones are allegedly infringing the same patent claims and patents-in-suit asserted in the

Google case (claim 5 of the '287 patent, claim 23 of the '439 patent, and claim 1 of the '189

patent).

6.      The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 opinion

on the relevant patents and claim charts:

> "[I]n the Google case, the district court again concluded that Mr. Golden's complaint was
> frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart
> mapping features of an accused product, the Google Pixel 5 Smartphone, to independent
> claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,096,189. The district court
> discounted this claim chart because it 'contains the exact same language as the claim
> charts previously rejected by the Federal Circuit [in the 2019 case], although Google
> Pixel 5 Smartphone appears in the far-left column instead of Apple.' But to the extent
> that the chart includes the 'exact same language' as previously rejected charts, it is
> simply the language of the independent claims being mapped to. The key column
> describing the infringing nature of the accused products is not the same as the complaint
> held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim
> limitations to infringing product features, and it does so in a relatively straightforward
> manner …"

> "We conclude that the district court's decision in the Google case is not correct with
> respect to at least the three claims mapped out in the claim chart. Mr. Golden has made
> efforts to identify exactly how the accused products meet the limitations of his claims in
> this chart. On remand, the district court should allow the complaint to be filed and request
> service of process. Our decision does not preclude subsequent motions to dismiss by the
> defendant for failure to state a claim or for summary judgment. We express no opinion as
> to the adequacy of the complaint or claim chart except that it is not facially frivolous."

## NATURE OF ACTION

7.      This is an action for patent infringement of United States Patent Nos. 10,163,287

('287 Patent), 9,589,439 ('439 Patent), and 9,096,189 ('189 Patent) ("patents-in-suit"), arising

under the patent laws of the United States of America, Title 35 of the United States Code, and

seeking damages and other relief under 35 U.S.C. § 271.

3

8.    Upon information and belief, Plaintiff alleges the patents-in-suit, that were issued with the presumption of validity, under 35 U.S. Code § 282 – "Presumption of validity; (a) In General": is Plaintiff's evidence that Plaintiff owns the patent rights for a Communicating, Monitoring, Detecting, and Controlling (CMDC) device, that includes the smartphones of Samsung, alleged in this case as infringing Plaintiff's patents.

9.    On information and belief, Samsung and/or their affiliates, have directly infringed each Asserted Claims of the '287, '439, and '189 patents, by making, using, selling and offering to sell, and by inducing and contributing to others' infringement through their sales, offers for sale, and use of Samsung Galaxy smartphones such as Galaxy S8, S8+, Note 8, S7, S7 Edge, and the latest Samsung Galaxy models such as Galaxy S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and other products depicted on Defendants' websites and sold on third party websites ("the Accused Products") within the United States, such as the Galaxy S21 5G, and S21+ 5G; all without authorization or license from Plaintiff within the United States, less than six years before the filing of this Complaint, and prior to the April 05, 2026 expiration date of the '287, '439, and '189 patents (the "Relevant Time Period").

## THE PARTIES

10.    Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business and residence at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

11.    Defendant SAMSUNG ELECTRONICS AMERICA, INC. (referred to individually herein as "SEA") is a New York corporation, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA was

formed in 1977 as a subsidiary of Samsung Electronics Corporation ("SEC") and markets, sells, and/or offers for sale a variety of consumer electronics.

12.    On information and belief, within Samsung's Information Technology & Mobile Communications ("IM") business division, SEA operates an office in Mountain View, California, located at 665 Clyde Avenue, as depicted below. On information and belief, within the IM business division, SEA imports into the United States, and distributes, markets, and sells mobile devices in the United States, including smartphones that operate on cellular networks in the United States.



13.    On information and belief, there may be other corporate affiliates of Samsung who participated in the infringing acts complained of herein. The identities of such affiliates are currently unknown, because publicly available information does not permit the identification of

5

each affiliate who participated in the infringing acts. Plaintiff expects the identities of such affiliates to be revealed in discovery. Plaintiff reserves the right to amend this Complaint to name such affiliates, if necessary, once they have been revealed.

14.    Samsung's Information Technology & Mobile Communications ("IM") business division is responsible for the design, manufacture, and sale of mobile devices, including smartphones that operate on cellular networks in the United States. According to Samsung, it "is one of the largest manufacturers of wireless communications devices in the world and has long focused on the United States as a critical market for its products." *See In the Matter of Certain Wireless Communications Equipment and Articles Therein*, USITC Inv. No. 337-TA-866, Complaint at ¶ 9 (Dec. 21, 2012)

## STANDARD FOR REVIEW

15.    IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA GREENVILLE DIVISION *Larry Golden, Plaintiff, vs. Apple Inc.; **Samsung Electronics USA**; LG Electronics USA, Inc.; Qualcomm Inc., Motorola Solutions, Inc.; Panasonic Corporation; AT&T Inc.; Verizon Corporation Service Group; Sprint Corporation; T-Mobile USA, Inc.; Ford Global Technologies, LLC; Fairway Ford Lincoln of Greenville; General Motors Company; Kevin Whitaker Chevrolet; FCA US LLC; Big 'O' Dodge Chrysler Jeep Ram, Defendants*. No.: 6:20-cv-04353-JD-KFM Date Filed 11/02/21 Entry 26.

16.    "Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation as modified and incorporates it herein. IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is <u>dismissed without prejudice</u> and without the issuance of service of process."

6

**Dismissal "Without Prejudice"**

17.     Dismissal "without prejudice" occurs when a court dismisses a claim but leaves the plaintiff free to bring a subsequent suit based on the same grounds as the dismissed claim. *In Semtek Intern. Inc. v. Lockheed Martin Corp.*, the Supreme Court pointed out that one of the main features of dismissal without prejudice is that it does not prevent refiling of the claim... "a case that is dismissed "without prejudice" is only dismissed temporarily. This temporary dismissal means that the plaintiff is allowed to re-file charges, alter the claim, or bring the case to another court."

## JURISDICTION AND VENUE

18.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§§ 1331, 1332(a) and 1338(a).

19.     On May 22, 2017, the U.S. Supreme Court narrowed the scope of proper venue for patent infringement actions for domestic corporations. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, No. 16-341 (May 22, 2017). The *TC Heartland* decision reverses the approach to venue previously adopted by the U.S. Court of Appeals for the Federal Circuit, which had held for 27 years that a domestic corporation can be sued for patent infringement anywhere that corporation was subject to personal jurisdiction.

20.     The special venue statute for patent infringement actions, 28 U.S.C. § 1400(b), has two provisions permitting venue: "[1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."

7

21.     Since the enactment of that statute, the Supreme Court consistently has interpreted Section 1400(b)'s first provision of proper venue — "where the defendant resides". *E.g., Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957). As a result, a domestic corporation may now be sued for patent infringement only in its state of incorporation or where it has committed acts of infringement and has a regular and established place of business.

22.     Venue is proper over the Defendant in this judicial district under 28 U.S.C. §§1391 and/or 1400(b). Venue is proper within this District under 28 U.S.C. § 1391(b) and (c) because Samsung transacts business within this District and offers for sale in this District products that infringe the patents-in-suit. In addition, a substantial part of the events giving rise to the claims occurred in this District. Thus, venue is proper over Samsung under 28 U.S.C. § 1400(b), because Samsung resides in this district, has committed acts of infringement in this district, and has regular and established places of business in this district.

## INTRADISTRICT ASSIGNMENT

23.     This case is a patent infringement dispute that is appropriate for district-wide assignment. Assignment to the San Jose Division is appropriate because a substantial part of the events that gave rise to the claims asserted in this Complaint occurred in Santa Clara County.

## NOTICE OF RELATED CASES

24.     Pursuant to the California Rules of Court; Rule 3.300. Related cases: This pending civil case is related to two other pending cases [*Larry Golden v. Google LLC*, Case No. 4:22-cv-05246-HSG, and *Larry Golden v. Qualcomm, Inc.* 4:22-cv-03283-HSG] filed in the U.S. District Court for the Northern District of California.

25.     All three cases involve the same Plaintiff and are based on the same or similar

claims; arose from the same or substantially identical transactions, incidents, or events requiring

the determination of the same or substantially identical questions of law or fact; involve claims

of infringement, and damages to the same patents; and, are likely to require substantial

duplication of judicial resources if heard by different judges.

## STANDARD FOR REVIEW

26.     The Rules of the COFC ("RCFC") provide contractors at least two avenues for

being heard at court. First, RCFC 14(b) allows parties to formally notify any interested third-

party, such as an indemnitor, of the § 1498(a) complaint. A noticed party "may file an

appropriate pleading setting forth the person's interest in the subject matter of the litigation."

RCFC 14(c)(1)(a). Second, RCFC 24 allows interested parties to proactively intervene,

permissively or by right.

27.     In the COFC case *Larry Golden v. USA*; Case 1:13-cv-00307-EGB Document 224

Filed 03/31/21 Page 2 of 4; Samsung Electronics of America, Inc. was provided notice to appear

to protect any interest Samsung may have in the case (**Exhibit E**). Samsung failed to appear to

protect its interest. Claiming an interest in this current case is an indication Samsung deliberately

defaulted on its responsibility to appear and defend any interest Samsung may have had in the

case. It is a waste of judicial resources to allow Samsung the opportunity to defend against

Plaintiff's current claims of infringement; especially after the Federal Circuit's decision in *Larry

Golden v. Google LLC* Case No. 22-1267.

28.     Under Rule 14(b) of the Rules of the United States Court of Federal Claims

(RCFC), the court "may notify any person with the legal capacity to sue or to be sued who is

alleged to have an interest in the subject matter of the suit." Further, a "person served with a notice issued . . . may file an appropriate pleading setting forth the person's interest in the subject matter of the litigation."

29.     In resolving a petition for mandamus, the Federal Circuit held in *In re* UUSI, LLC, that a third party's potential obligation to indemnify the government for any patent infringement liability provides "sufficient interest in litigation to offer evidence and advance legal arguments appropriate to protect its own interests. As the USCFC held in *Bowser, Inc. v. United States*:

> "We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party, who had a "possible" interest in the case in this court but who failed to appear and protect his interest after timely notice or summons had been served upon him." 420 F.2d 1057, 1060 (Ct. Cl. 1970).

## COUNT I

### (Infringement of the '287 Patent)

30.     Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-29.

31.     On information and belief, Samsung is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 4, 5, and 6 of the '287 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

32.     As set forth in Golden's preliminary infringement contentions, Samsung's making, using, offering for sale, selling and/or importing Plaintiff's patented devices, have at a minimum directly infringed the '287 patent and Samsung is thereby liable for infringement of the

'287 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

33.     The alleged infringement Golden has identified to this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT II
### (Infringement of the '439 Patent)

34.     Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-33.

35.     On information and belief, Samsung is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least independent claims 13, 14, 15, and 23 of the '439 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

36.     As set forth in Golden's preliminary infringement contentions, Samsung's making, using, offering for sale, selling and/or importing Plaintiff's patented devices, have at a minimum directly infringed the '439 patent and Samsung is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

37.     The alleged infringement Golden has identified to this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

Appx0107

## COUNT III

### (Infringement of the '189 Patent)

38.     Golden realleges and incorporates herein the allegations set forth in ¶¶ 1-37.

39.     On information and belief, Samsung is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing claims 1, 2 & 3 of the '189 patent. The alleged infringing products are: Samsung Galaxy S8, S8+, Note 8, S7, S7 Edge, S22, S22+, S22 Ultra, Note 20, S20, S20+, S20 Ultra, and Galaxy S21 5G, and S21+ 5G.

40.     As set forth in Golden's preliminary infringement contentions, Samsung's making, using, offering for sale, selling and/or importing Plaintiff's patented devices, have at a minimum directly infringed the '189 patent and Samsung is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

41.     The alleged infringement Golden has identified to this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## ALLEGED INDUCED AND CONTRIBUTORY INFRINGEMENT

**Plaintiff's Owns the Patent Rights on the CPUs Samsung uses with its Smartphones. The CPUs are Described as the "Brains" of the Smartphone.**

42.     The Central Processing Unit (CPU) is the programmable device capable of general-purpose computation. It is the engine of logic, as with the "brain", and the core piece of hardware in the Patent Owner's Communication, Monitoring Detecting, and Controlling

Appx0108

(CMDC) devices (i.e., new, improved upon, and useful desktop PCs, laptops, tablets, cell phones [smartphone], etc.)

43.     The Patent Owner's CPU is capable of arithmetic operations such as add and divide and flow control operations such as conditionals. The Patent Owner's central processing unit (CPU) is the electronic circuitry within the CMDC device that is vital and essential to processing and executing program instructions.

44.     The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs).

45.     To operate, the CPU "reads" input data from connected field devices through the use of its input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the "brain" of computers, smartphones and tablets because of the central role they play in the functioning of the devices.

46.     All of the different components that make up a computer's processor have to be condensed to fit in devices, such as a laptops and tablets, where they exist as a mobile application processor, Chipset, or a System-on-a-Chip (SoC). Mobile application processors are found in mobile devices, such as smartphones.

47.     A core, or CPU core, is the "brain" of a CPU. It receives instructions, and performs calculations, or operations, to satisfy those instructions. A CPU can have multiple

13

cores. A CPU (processor) with two cores is called a dual-core processor; with four cores, a quad-core; six cores, hexa-core; eight cores, octa-core. https://www.computer

hope.com/jargon/c/core.htm#:~:text

48.   Plaintiff owns the patent rights to a new, improved upon, and useful cell phone; smartphone; and central processing unit designed specifically for Plaintiff's CMDC device (i.e., new, improved upon, and useful cell phone; smartphone, etc.).

49.   Plaintiff filed his first Disclosure Document (No. 565732) with the USPTO on November 26, 2004; and his first patent application on April 05, 2006.

50.   Following is a list of apparatuses, mechanisms, devices, and products (GPS, open-source architecture, internal sensor for C/B detection, external detector for CBRNE, fingerprint scanner, NFC), Samsung allegedly used for the assembly of their smartphones (i.e., Plaintiff's CMDC—smartphone—device); and, which antedates the same used by Samsung.

**Samsung's First Smartphone Global Positioning System (GPS). (2007)**

51.   "Samsung's i550 mobile phone is seen in an undated handout image, released to Reuters on October 17, 2007. Mobile phone maker Samsung Electronics Co Ltd said on Tuesday it would launch its first-ever phone incorporating a Global Positioning System (GPS). The phone—called the i550will use the operating software of Britain's Symbian …" REUTERS/ Samsung/ Handout. TECHNOLOGY NEWS, (2007, Oct. 16). *Samsung to launch its first-ever GPS phone* https://www.reuters.com/article/us-samsung-phone/samsung-to-launch-its-first-ever-gps-phone-idUSL1664279020071017

**Samsung's First "Product Grouping" Platform for Smartphones (2007)**

52.   In late 2007, the Open Handset Alliance (OHA) announced its formation. The OHA was a coalition of more than 30 hardware, software and telecom-munications companies,

including Google, Qualcomm, Broadcom, HTC, Intel, Samsung, Motorola, Sprint, Texas

Instruments and Japanese wireless carriers KDDI and NTT DoCoMo. The alliance's goal was to

contribute to the develop-ment of the first open-source platform for mobile devices. Google

released the public beta version of Android 1.0 for developers around the same time of the

alliance's announcement, in November 2007. *Android OS* https://www.techtarget.

com/searchmobilecomputing/definition/Android-OS. [*Product Grouping*: products grouped

together by common features and design similarities].

53.     The Samsung GT-I7500 Galaxy is a smartphone manufactured by Samsung that

uses the open-source Android operating system. It was announced on 27 April 2009, [*"Samsung*

*launches I7500, the company's first Android-powered mobile phone". Innovator.samsungmobile*

*.com. Archived from the original on 2012-05-02. Retrieved 2010-12-16*] and was released on 29

June 2009 as the first Android-powered device from Samsung Mobile, [*"Samsung Galaxy full*

*specs – Phone Arena". PhoneArena. Retrieved 2017-04-26*] and the first in what would become

the long-running Galaxy series. It is succeeded by the Samsung Galaxy S.

**Samsung's First "built-in" Smartphone Sensor for Chemical and/or Biological Detection (2008)**

54.     Samsung's camera lens in smartphones with microfluidic lens functions as

cameras; "uses microscope to focus on a chemical sensor … [a] megapixel camera captures the

image from the array of nanopores uses fluid rather than bulky moving parts. The sensors

contained in one array is determined by the pixel resolution phone camera. Megapixel resolution

in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors*

*tucked into cell phones could map airborne toxins in real time*. Source: https://

www.understanding nano.com/cell-phone-sensors-toxins.html

15

**Samsung's First "remote" Smartphone Detectors for CBRNE Detection (2010)**

55.     Initially created in 2010 by the Air Force Research Laboratory: Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK)*. ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. As of 2020, ATAK has a growing base of 250,000 military and civilian users across numerous public safety agencies and US partner nations, and has seen the addition of 15 United States Department of Defense programs. *"ATAK Improves Situational Awareness for California Fire Department"*. Samsung Business Insights. 2019-10-16. Retrieved 2019-10-19.

**Samsung's First Smartphone Fingerprint Scanner (2010)**

56.     "The mid-2010s was when fingerprint scanners on smartphones really took off. The technology became a common feature for flagship smartphones. Apple's first phone with the technology was the iPhone 5s, and Samsung's was the Galaxy Note4." *Fingerprint Scanners On Modern Smartphones*" https://www.makeuseof .com/fingerprint-scanners-evolution/

**Samsung's First Smartphone 'Lock Disabling Mechanism' that is Interconnected to the Fingerprint Scanner (2010)**

57.     "Samsung devices come with a range of security options, so that you can prevent unauthorized users from accessing your device. You can also set additional security measures that stop unauthorized users from resetting your device and its security methods … [i]f you are locked out of your device and have not set up a remote unlock method, you will need to perform

16

a factory reset …[t]here are several screen lock options available on Samsung devices. These
will vary depending on your specific devices but can include: Swipe; Pattern; PIN; Password;
Facial recognition; and Fingerprint recognition … [i]f you can unlock your device using your
biometric method (fingerprint or face recognition) but can't change your screen lock type
because you've forgotten your PIN, pattern or password, use Find My Mobile to reset the unlock
methods. This will remove all unlock data including PIN, pattern, password and biometric
methods so that you can reset them again." *I can't unlock my Samsung phone & Remote unlock
is off* https://www.samsung.com/uk/support/mobile-devices/i-cant-unlock-my-device/

**Samsung's First Central Processing Unit (Chipset / System-on-a-chip) for the Smartphone
(2010)**

58.      "Wanting to cement its position as a bonafide competitor in the SoC arena,
Samsung started working on designing custom CPUs from scratch. It set up the Samsung Austin
R&D Center (SARC) in 2010 and staffed it with chip industry veterans from the likes of Intel,
AMD and ARM. Under Samsung's LSI division, the SARC was tasked with developing high-
performance, low-power complex CPU architectures and designs … Announced in November
2015, the Exynos 8 Octa 8890 was Samsung's first premium chipset with a custom-designed
CPU and embedded LTE modem. It featured Mongoose 1 (M1) cores, the first in-house high-
performance low-power ARM microarchitecture from Samsung. The company followed an
aggressive 3-year design schedule for the custom CPU …" *Samsung begins designing custom
CPUs from scratch* https://www.sammobile. com/samsung/exynos/#:~:text=Samsung%20
introduced%20the%20industry%27s%20first,5%20Octa%205410%2C%20in%202013.

**Samsung's First Radio Frequency Near-Field Communication (NFC) for Smartphones
(2010)**

17

59.     In 2010, the Samsung NEXUS S became the first Android with NFC support.
The ***Nexus S 4G is a smartphone co-developed by Google and Samsung and manufactured***
***by Samsung Electronics*** for release in 2010. It first appeared in September 2011 in the U.S. on
the Nexus S smartphone over the Sprint wireless network. The Samsung Galaxy S III launched
in 2012 with NFC and S Beam (built on Android Beam) for data sharing. Samsung also launched
tiny NFC TecTile tags in 2012 that can be programmed and rewritten by NFC devices. *The*
*Evolution of Near Field Communication (NFC)* https://www.techpats.com/evolution-near-field-
communication-nfc/#:~:text=In%202010%2C%20the%20Samsung%20NEXUS,
first%20Android%20with%20NFC%20support.

**Samsung's First Internet Mobile Web Browser for Smartphones (2012)**

60.     Samsung Internet replaced the stock Android browser as the default on Samsung
Galaxy devices in 2012 "*Samsung Internet Overview*", Samsung Developers. Retrieved 2018-04-
08. Around early 2013, it was decided to base the browser on Chromium, and the first
Chromium-based version was shipped with an S4 model later that year "*Samsung Internet*
*browser will get 'Smart Go Next' for better form navigation, also coming to Chrome*". Android
Police. 10 October 2017. Retrieved 2018-04-08.

61.     Samsung Internet is a mobile web browser for smartphones and tablets developed
by Samsung Electronics. It is based on the open-source Chromium project. It comes pre-installed
on Samsung Galaxy devices. Since 2015, it has been available for download from Google Play
"*Introducing Samsung Internet v6.2 stable*", Samsung Developers. Retrieved 2018-04-08; "*Get*
*Samsung's Internet Browser on Almost Any Android Device*", Gadget Hacks. Retrieved 2018-04-
08; … Samsung estimated that it had around 400 million monthly active users in 2016.

18

## Samsung Galaxy S21 "mirrors" Google Pixel 5: "Literal Infringement"

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Claim 5 of the '287 Patent | Claim 23 of the '439 Patent | Claim 1 of the '189 Patent |
|---|---|---|---|---|
|  |  | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: |
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G. OS: Android 11, upgradable to Android 13 | CPU: Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) - USA/China. System-on-a-chip: Qualcomm SM8350 Snapdragon 888 5G (5 nm) - USA/China. OS: Android 11, upgradable to Android 13 | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X |

19

| | | | | |
|---|---|---|---|---|
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | at least one motion sensor in communication with the at least one CPU; | X | X |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.2 inches flexible OLED display at 421 ppi | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; |

20

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of... WiFi connection, internet connection, radio frequency (RF) connection, cellular connection... capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a... Bluetooth connection, WiFi connection, internet connection... cellular connection... short range radio frequency (RF) connection, or GPS connection; | X |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | The Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Samsung Smart Doorlock - Apps on Google Play. Google Nest ×Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X |

21

| | | | | |
|---|---|---|---|---|
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | Samsung USB-C Cable lets you charge your USB-C device as well as sync your data to your smartphone | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use |

22

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

23

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Samsung Smart Doorlock - Apps on Google Play. Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; |

24

| | | | | |
|---|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Samsung Smart Doorlock - Apps on Google Play. Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; |

25

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X |

62.    To avoid infringing Plaintiff's patents, Samsung must do the following: 1) discontinue using the open-source Android operating system; 2) block all software applications that are specific to integrating CBRNE sensors with Samsung's mobile devices; 3) design mobile devices that does not include a port for CBRNE plug-ins; 4) design mobile devices that does not include cameras for CBRNE detecting; 5) design mobile devices that does not include the nine standard sensors illustrated in *Figure 4* below that are used as biosensors; or 6) settle previous damages with Plaintiff and negotiate a licensing agreement.

63.    The devices, and products listed in the above "ALLEGED INDUCED AND CONTRIBUTORY INFRINGING PRODUCTS" section of this document are all included as limitations of claim 5 of the '287 patent (see claim chart above). Amendment is reserved.

*Figure 1* shows the integration requirement of the three patent claims [5, 23, & 1] of the three patents ['287, '439, & '189] asserted in this case.

| Claim 5 of the 10,163,287 Patent | Claim 23 of the 9,589,439 Patent | Claim 1 of the 9,096,189 Patent |
|---|---|---|
| A monitoring device, comprising:<br><br>at least one sensor for chemical, biological, or human detection in communication with the at least one CPU;<br><br>one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents | A cell phone comprising:<br><br>at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone;<br><br>… the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes [] location data [] sent to the cell phone. | A communication device of [] a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal [] comprising:<br><br>a transmitter for transmitting signals and messages to at least one of [] a multi-sensor detection device, [] a cell phone detection device…;<br><br>a receiver for receiving signals, data or messages from at least one of [] a multi-sensor detection device, [] a cell phone detection device…; |

*Figure 1*

The patents' written support can be found in Plaintiff's patent specifications. Detector case is considered the "genus" to a group of products that represent the "species". Included in the group are CBRNE-H sensors.

> … detector cases that is mounted to, detector cases that is affixed to, detector cases that is outside of, detector cases that is inside of, and detector cases that is adjacent to; the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, [] cell phones, [] personal digital assistants (PDAs), [], handhelds.

27

*Figure 2* shows how the smartphone cameras satisfies the requirements of the three patent claims [5, 23, & 1]. The camera is an addition or an alternative to the ATAK.

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|---|
| *Google Pixel 5: Dual - 12.2 MP (megapixel), OIS 16 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understandingnano.com/cell-phone-sensors-toxins.html | *Samsung Galaxy S21: 12 MP (megapixel), Dual Pixel PDAF OIS 64 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understandingnano.com/cell-phone-sensors-toxins.html | *Claim 5 limitation of the '287 Patent* one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | *Claim 23 limitation of the '439 Patent* at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | *Claim 1 limitation of the '189 Patent* a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device … a cell phone detection device … a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device … a cell phone detection device |

*Figure 2*

Appx0124

*Figure 3* is a visual display of different ways the smartphone camera [1][2] can be used for detecting Chem/Bio agents. For each different way used, it qualifies as an alternative to the ATAK.



*Figure 3*

---

**1**     The camera captures the image from the array of nanopores that uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the resolution phone camera. The resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time*. Source: https:// www.understanding nano.com/cell-phone-sensors-toxins.html

**2**     Hyperspectral imaging scans for light frequencies that humans can't see in order to identify the unique chemical signatures of different substances. They say their device, which can be mass produced, is compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of

29

*Figure 4* describes how at least nine (9) standard sensors for the smartphone can be used as "biosensors". For each different way used, it qualifies as an alternative to the ATAK.



*Figure 4*

The Smartphones Biosensors:

1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens

2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols

3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers

4. Microfluidic cassette: Interchangeable cassettes with varying assays

5. VIS-NIR spectrometer: Food freshness; Melanoma

6. NNAP Electrodes: Toxic metals and Organic pollutants in water

7. Optical Waveguide: Pathogens in water and food

8. Back and front camera: Colorimetric analysis; Image analysis

9. Microphone: Voice recording stress levels

Appx0126

*Figure 5* list some of the same standard sensors illustrated in Figure 4. The port on the smartphone below is used for the CBRN *plug-ins* included in ATAK.



*Figure 5*

ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) *plug-ins*.

Just having a plug-in is not all that's involved. There has to be an app specific software to sync the chemical, biological, radiological, and nuclear sensors to the smartphone plus the Google Android Operating System.

31

## PRAYER FOR RELIEF

Wherefore, Golden respectfully requests that this Court enter:

      A.      A judgment in favor of Golden that the defendant has infringed at least one or more claims of the '287 Patent, the '439 Patent, and the '189 Patent as aforesaid;

      B.      A permanent injunction enjoining the defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert or privity therewith from direct, indirect and/or joint infringement of the '287, '439, and '189 patents as aforesaid pursuant to 35 U.S.C. § 283;

      C.      A judgment and order requiring the defendant to pay Golden its damages with pre- and post-judgment interest thereon pursuant to 35 U.S.C. § 284;

      D.      As set forth in Golden's preliminary infringement contentions that the Defendant in this case is making, using, offering for sale, selling and/or importing the aforementioned alleged infringing devices that have at a minimum, directly infringed the '287, '439, and '189 patents. The Defendant is thereby liable for infringement of the '287, '439, and '189 patents pursuant to 35 U.S.C. § 271. The Defendant has caused damage to Golden, which infringement and damage will continue unless and until the Defendant is enjoined.

      E.      Any and all further relief to which the Court may deem Golden entitled.

## DEMAND FOR JURY TRIAL

Golden requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38. A right guaranteed under the Seventh Amendment of the United States Constitution.

Respectfully submitted,

S/ *Larry Golden*          Date: 01 /02/2023

Larry Golden, Petitioner, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605 / (M) 864-992-7104

atpg-tech@charter.net

33

Robert T. Haslam (Bar No. 71134)
rhaslam@cov.com
Hyun S. Byun (Bar No. 281753)
hbyun@cov.com
Michael R. Morey (Bar No. 313003)
mmorey@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Richard L. Rainey (*pro hac vice* forthcoming)
rrainey@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Counsel for Samsung Electronics America, Inc.*
*(additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendant | Civil Case No.: 3:23-cv-00048-WHO<br><br>Judge William H. Orrick<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:** March 29, 2023<br>**Time:** 2:00 p.m.<br>**Ctrm:** Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................. 1

STATEMENT OF RELIEF REQUESTED .................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.      Introduction ...................................................................................................... 1

II.     Statement of Facts ............................................................................................ 2

        A.      Golden's Asserted Patents ..................................................................... 2

        B.      Golden's Multiple Prior Failed Litigations ........................................... 3

                1.      Golden Loses at the Court of Federal Claims ............................ 3

                2.      Golden Loses in the District of South Carolina ........................ 5

                3.      Golden Loses in the Northern District of California ................. 6

        C.      Golden's Woefully Deficient Infringement Allegations ....................... 7

III.    Legal Standard ................................................................................................. 10

IV.     Argument ......................................................................................................... 10

        A.      Golden Is Precluded from Re-litigating His Claims of Infringement of the
                Asserted Patents Against Samsung ...................................................... 11

        B.      Golden Fails to State Claims of Direct and Indirect Infringement by Samsung .. 12

                1.      Golden Fails to State a Claim of Direct Infringement by Samsung ......... 12

                2.      Golden Fails to State a Claim of Indirect Infringement by Samsung ....... 13

                3.      The Court Should Dismiss the Complaint With Prejudice ...................... 14

V.      Conclusion ...................................................................................................... 16

1

2

**<u>TABLE OF AUTHORITIES</u>**

3
**Page(s)**

4
**Cases**

5
*Adaptix, Inc. v. Amazon.com, Inc.*,
6
    No. 5:14-cv-01379-PSG, 2016 WL 948960 (N.D. Cal. Mar. 14, 2016)...............................12

7
*Arsus, LLC v. Tesla Motors, Inc.*,
    No. 20-cv-00313-RS, 2020 WL 5552868 (N.D. Cal. Aug. 14, 2020).................................10

8
*Arunachalam v. Apple, Inc.*,
9
    No. 18-1250, 2018 WL 5023378 (N.D. Cal. Oct. 16, 2018) ..............................................10

*Ashcroft v. Iqbal*,
10
    556 U.S. 662 (2009)........................................................................................................10, 13

11
*Bates v. City of San Jose*,
12
    No. 20-cv-07609-BLF, 2021 WL 3727073 (N.D. Cal. Aug. 23, 2021) .......................14, 15

13
*Bell Atl. Corp. v. Twombly*,
14
    550 U.S. 544 (2007)........................................................................................................10, 13

15
*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995) ...............................................................................................16
16
*Brain Life, LLC v. Elekta Inc.*,
17
    746 F.3d 1045 (Fed. Cir. 2014)..........................................................................................11

18
*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
19
    287 F.3d 1108 (Fed. Cir. 2002)..........................................................................................13

20
*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)..........................................................................................14
21
*Gavin v. City & Cnty. of San Francisco*,
22
    No. 15-cv-05202-EMC, 2015 WL 7272678 (N.D. Cal. Nov. 18, 2015) .......................14, 15

23
*Ghazali v. Moran*,
24
    46 F.3d 52(9th Cir. 1995)  ..................................................................................................10

25
*Golden v. Apple Inc.*,
    No. 2022-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022) ........................................6, 15
26
*Golden v. Apple Inc.*,
27
    No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022)....................................................6

28

ii

*Golden v. Apple Inc.*,
    819 F. App'x 930 (Fed. Cir. 2020) .................................................................5

*Golden v. Apple Inc.*,
    No. 6:19-cv-02557, 2020 WL 415896 (D.S.C. Jan. 27, 2020) ............................5

*Golden v. Apple Inc.*,
    No. 6:20-cv-02270, 2021 WL 4260782 (D.S.C. Sept. 20, 2021) ........................6

*Golden v. Apple Inc.*,
    No. 6:20-cv-04353, 2021 WL 5074739 (D.S.C. Nov. 2, 2021)...........................6

*Golden v. Google, LLC*,
    No. 6:21-cv-00244, 2021 WL 5083804 (D.S.C. Nov. 2, 2021)...........................6

*Golden v. Google, LLC*,
    No. 21-2318, 2021 WL 8566191 (4th Cir. Dec. 7, 2021) ...................................6

*Golden v. Intel Corp.*,
    No. 5:22-cv-03828, 2022 WL 17735388 (N.D. Cal. Nov. 22, 2022)..............7, 15

*Golden v. U.S.*,
    156 Fed. Cl. 623 (2021) ................................................................................4, 12

*Golden v. U.S.*,
    955 F.3d 981 (Fed. Cir. 2020).............................................................................5

*Golden v. U.S.*,
    No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022) .........................2, 5

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ...........................................................................13

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...........................................................................10

*In re PersonalWeb Techs. LLC*,
    961 F.3d 1365 (Fed. Cir. 2020)..........................................................................11

*Linear Tech Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed Cir. 2004) ..........................................................................13

*Mosaic Brands, Inc. v. The Ridge Wallet LLC*,
    No. 2:20-cv-04556-AB-JCx, 2020 WL 5640233 (C.D. Cal. Sept. 3, 2020)......13

*Mylviya v. City of San Jose*,
    No. 5-5427, 2006 WL 2529511 (N.D. Cal. Aug. 31, 2006) ..............................10

*Nalco Company v. Chem-Mod, LLC*,
    883 F.3d 1337 (2018)........................................................................................14

*Novitaz, Inc. v. inMarket Media, LLC,*
No. 16-cv-06795-EJD, 2017 WL 2311407 (N.D. Cal. May 26, 2017) ...........................13

*Nystrom v. Trex Co.,*
580 F.3d 1281 (Fed. Cir. 2009) ..........................................................................12

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.,*
No. 12-4070, 2013 WL 3462078 (N.D. Cal. Jul. 8, 2013) ...................................13

*SpeedTrack, Inc. v. Amazon.com, Inc.,*
No. 09-cv-04479-JSW, 2017 WL 5598679 (N.D. Cal. Nov. 21, 2017) ..................11

*SpeedTrack, Inc. v. Off. Depot, Inc.,*
791 F.3d 1317 (Fed. Cir. 2015) ..........................................................................11

*Taylor v. Sturgell,*
553 U.S. 880 (2008) .......................................................................................12

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
247 F.3d 1316 (Fed. Cir. 2001)........................................................................2, 13

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
659 F.3d 1376 (Fed. Cir. 2011).........................................................................13

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
718 F.3d 1006 (9th Cir. 2013)) .........................................................................10

*XpertUniverse, Inc. v. Cisco Sys., Inc.,*
No. 17-cv-03848-RS, 2019 WL 3413309 (N.D. Cal. July 29, 2019) .....................11

*Zeiny v. United States,*
No. 19-5806, 2020 WL 496076 (N.D. Cal. Jan. 30, 2020)...................................10

**Rules**

Fed. R. Civ. P. 8(a) ..........................................................................................10

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 10

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on March 29, 2023 at 2:00 p.m., or as soon thereafter as the motion may be heard, in the courtroom of the Honorable William H. Orrick, located at the San Francisco Courthouse, Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Samsung Electronics America, Inc. ("Samsung") will and hereby does move the Court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, with prejudice, and enter judgment in favor of Samsung and against Plaintiff Larry Golden ("Golden"), on the grounds that Golden's claims are precluded and Golden's Complaint for Patent Infringement (Dkt. 1) ("Complaint") fails to state a claim upon which relief can be granted. The motion is based upon this Notice, the Memorandum of Points and Authorities submitted herewith, the pleadings, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented.

## STATEMENT OF RELIEF REQUESTED

Samsung requests that this Court dismiss Golden's Complaint pursuant to Rule 12(b)(6), with prejudice, and enter judgment in favor of Samsung and against Golden.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

This lawsuit is Golden's eleventh case involving the same patents, against multiple defendants, in multiple forums. Samsung's products have already been accused in four of the eleven cases. All four cases have been dismissed, and all four dismissals have been affirmed by the appellate courts. Having failed in other jurisdictions, Golden now turns to the Northern District of California. But Judge Chhabria and Judge Cousins have already considered and dismissed similar complaints against other defendants. This Court should do the same.

*First*, Golden's allegations here are barred by preclusion and application of the *Kessler* Doctrine. One of those prior cases by Golden was against Samsung's customer, the United States. In that case, Golden asserted the same patents at issue here against Samsung products also accused here. The Court of Federal Claims allowed Golden to amend the complaint no less than *six* times before concluding that Golden "has had eight years to come up with a plausible theory of infringement," and failed. Golden

repeatedly failed to describe how the accused products, including Samsung products, included key elements of his claims. Among those key elements were sensor/detector and locking limitations. The court also found that the remaining limitations were "almost entirely deficient as well." The Court of Federal Claims thus dismissed Golden's case "with prejudice" pursuant to Rule 41(b) of the Rules of the Court of Federal Claims. The Federal Circuit affirmed. *Golden v. U.S.*, No. 2022-1196, 2022 WL 4103287, at *1– 2 (Fed. Cir. Sept. 8, 2022). Under well settled law, this "with prejudice" dismissal operates as a judgment on the merits of Golden's infringement claims and affords Samsung a trade right which bars Golden's case here. This is precisely the result reached by Judge Chhabria just a few months ago in Golden's case against Apple. This Court should follow suit and enter judgment for Samsung.

**Second**, Golden's allegations here are yet again fatally deficient. For this additional reason, the Court should dismiss his case, and such dismissal should be with prejudice. As for direct infringement, Golden's allegations (just as in the Court of Federal Claims) fail to describe how Samsung's accused products, without modification, satisfy key claim limitations. For example, he alleges that modifying Samsung's products by adding a third-party software product meets several limitations of the asserted patents, including the sensor/detector limitations. As courts have repeatedly found, however, alleging "that a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) (citation omitted). For indirect infringement, Golden pleads **zero** factual allegations concerning the requirements of induced and contributory infringement claims.

The time has come for Golden's vexatious litigation campaign against Samsung to come to an end. He has already accused Samsung's products in four cases, and failed. And yet here again his complaint is wholly deficient and precluded. Under these circumstances, this Court should dismiss this case and do so with prejudice.

## II.    Statement of Facts

### A.    Golden's Asserted Patents

Golden asserts the following patents against Samsung in this case: United States Patent Nos. 9,096,189 (the "'189 patent"), 9,589,439 (the "'439 patent"), and 10,163,287 (the "'287 patent") (collectively, the "Asserted Patents" or the "Patents-in-Suit"). Compl. at ¶ 3. The Asserted Patents share

the same specification and are each titled "Multi Sensor Detection, Stall to Stop and Lock Disabling System." According to their shared specification, the Asserted Patents address "anti-terrorist detection and prevention systems," specifically, "a chemical/biological/radiological detector unit with a disabling locking system for protecting products that can be grouped into several product groupings, from terrorist activity, and also for preventing unauthorized access to and tampering with the storage and transport of ordnance and weapons." '189 patent at 1:40-45, 3:16-22; '439 patent at 1:47-52, 3:25-30; '287 patent at 1:57-63, 3:35-41. The Asserted Patents disclose a "multi sensor detection and disabling lock system" that includes "detectors that sample for chemical, biological and radiological compounds, agents and elements" and can be connected to "surveillance towers scanning detector cases disposed at seaport docks, freight depots and rail terminals for monitoring containers being prepared for shipment or sitting on docks for long periods of time." '189 patent at Abstract; '439 patent at Abstract; '287 patent at Abstract.

**B.    Golden's Multiple Prior Failed Litigations**

For the last 10 years, Golden has pursued an unsuccessful litigation campaign involving the Patents-in-Suit and related patents against multiple parties, including Samsung and Apple, in three different forums.

**1.    Golden Loses at the Court of Federal Claims**

Golden began his litigation campaign in May 2013 by filing a complaint pursuant to 28 U.S.C. § 1498(a) in the U.S. Court of Federal Claims, alleging that the federal government infringed U.S. Reissue Patent No. RE43,990 and seeking $90 billion in damages. Complaint, *Golden v. U.S.*, No. 1:13-cv-00307 (Fed. Cl. May 1, 2013), Dkt. 1 ("*Golden I*") (Exhibit 1 to Declaration of Michael R. Morey in Support of Samsung's Request for Judicial Notice in Support of Motion to Dismiss ("Morey Decl.")). Over the course of eight years, the case did not proceed past the pleading stage. Instead, Golden filed a total of six amended complaints, after receiving opportunity after opportunity to fix his deficient allegations of infringement. Golden's Sixth Amended Complaint (hereafter, the "CFC Complaint") against the government accused, *inter alia*, products of several of the government's purported contractors, including Samsung and Apple, of infringing claims 1–9 of the '189 patent, claims 13–23 of the '439 patent, and claims 4–6 of the '287 patent. CFC Complaint at 8, *Golden I*, Dkt. 195 (Morey Decl. Ex. 2); Corrected Infringement Contentions against Samsung at A0672, *Golden I*, Dkt. 240-1 (Morey Decl. Ex. 3). The accused Samsung products

1    included Samsung's "Galaxy S8, Galaxy Note 8, Galaxy S9, S10, S20, & S21," as well as "Samsung['s]

2    Gear S3 Classic, Galaxy Watch Active 2 & Galaxy Watch 3." Corrected Infringement Contentions against

3    Samsung at A0672, *Golden I*, Dkt. 240-1 (Morey Decl. Ex. 3).

4           The Court of Federal Claims dismissed Golden's CFC Complaint with prejudice on November 10,

5    2021 pursuant to Rule 41(b) of the Rules of the Court of Federal Claims. *Golden v. U.S.*, 156 Fed. Cl. 623,

6    632 (2021). In dismissing the CFC Complaint with prejudice, the court explained that:

7               [Golden] has had eight years to come up with a plausible theory of
8               infringement against the United States and the third parties whose products
                he alleges were made at the behest of the government. Mr. Golden has
9               amended his complaint six times in response to the government's objections
                to the shortcomings in his pleadings. As we warned earlier, failure to
10              produce a sufficiently detailed claim chart would cause the court to assume
                that it cannot be done. That has happened. Enough time and resources have
11              been expended by the court and the Department of Justice dealing with these
                allegations.
12

13   *Id.* More particularly, the court determined that Golden's infringement contentions for his CFC Complaint

14   "illustrate the painfully obvious problem with plaintiff's case: he has not, and at this point in the litigation

15   we must presume cannot, credibly allege what component of the accused Apple, or Samsung . . . , devices

16   infringe literally, or is even equivalent to, hazard detectors or sensors claimed in his patents." *Id.* at 629;

17   *see also id.* at 630 ("Plaintiff's preliminary infringement contentions fail to identify a sensor or detector

18   in the accused products as claimed by his patents."). The court further held that Golden's infringement

19   contentions "fail[ed] to identify in the accused devices any locking mechanism or function as claimed by

20   the" asserted patents. *Id*; *see also id.* at 631. Specifically, the court explained that "[t]he limitations claimed

21   in the ['189 and '439] patents for a locking function claim a capability to lock the device itself or some of

22   its subsystems, such as the sensors, not a device external to the CMDC [Communication, Monitoring,

23   Detecting, and Controlling Device]," and that Golden's "corrected contentions fail to identify where in

24   the accused devices a locking mechanism is present.' *Id.* at 631. Further, the court reasoned that Golden's

25   "['287] patent clearly claims an independent component part of the CMDC that is a locking mechanism.

26   Such a component is wholly missing from the claim chart." *Id.* The court also found that "[t]he remaining

27   limitations of the claim chart are almost entirely deficient as well." *Id.*

28

On September 8, 2022, the Federal Circuit affirmed the dismissal of Golden's CFC Complaint with prejudice. *Golden v. U.S.*, No. 2022-1196, 2022 WL 4103287, at *1–2. In affirming the dismissal, the Federal Circuit held that "[d]espite having eight years to develop his case and two chances to provide infringement contentions compliant with Patent Rule 4, Mr. Golden failed to identify in the accused products at least two key elements claimed in his patents: the sensor and locking limitations." *Id.* at *2. The Federal Circuit also noted that the "Claims Court expressly identified deficiencies regarding both the sensor and locking limitations in Mr. Golden's contentions for . . . claim 23 of the '439 patent, and claim 5 of the '287 patent," as well as "the locking limitation for claim 2 of the '189 patent." *Id.* at *2 n.2.

While Golden's first suit in the Court of Federal Claims was pending, Golden filed a second suit, alleging a "Fifth Amendment Taking" claim against the government of property including the Patents-in-Suit. Complaint, *Golden v. U.S.*, No. 1:19-cv-00104 (Fed. Cl. Jan. 17, 2019), Dkt. 1 (Morey Decl. Ex. 4). The court dismissed that suit as well, *id.*, Dkt. 12 (Morey Decl. Ex. 5), and the Federal Circuit affirmed, *Golden v. U.S.*, 955 F.3d 981, 990 (Fed. Cir. 2020).

## 2. Golden Loses in the District of South Carolina

In parallel with the cases in the Court of Federal Claims, Golden filed a case in the U.S. District Court for the District of South Carolina, alleging that sixteen defendants including Samsung[1] and Apple infringed the Patents-in-Suit. Amended Complaint, *Golden v. Apple Inc.*, 6:19-cv-02557 (D.S.C. Oct. 15, 2019), Dkt. 16 (Morey Decl. Ex. 6). The court dismissed the complaint without prejudice and without issuance of service of process *sua sponte*. *Golden v. Apple Inc.*, No. 6:19-cv-02557, 2020 WL 415896, at *3 (D.S.C. Jan. 27, 2020), *aff'd*, 819 F. App'x 930 (Fed. Cir. 2020). The Federal Circuit affirmed, noting that the complaint did not have "any nonfrivolous allegations of infringement." *Golden v. Apple Inc.*, 819 F. App'x at 931.

Golden then filed an antitrust case against seven defendants, including Samsung and Apple. Complaint, *Golden v. Apple Inc.*, 6:20-cv-02270 (D.S.C. June 16, 2020), Dkt. 1 (Morey Decl. Ex. 7). The court dismissed the complaint without prejudice and without the issuance of service of process, adopting

---

[1] Based on the allegations set forth in the South Carolina complaints and solely for purposes of this motion, Samsung assumes Golden erroneously named Samsung Electronics, USA, a non-existent entity, when he intended to name Samsung Electronics America, Inc.

the Magistrate Judge's report because "*inter alia* Plaintiff's antitrust claims [were] premised on unsuccessful patent infringements claims that have been adjudicated." *Golden v. Apple Inc.*, No. 6:20-cv-02270, 2021 WL 4260782, at *2 (D.S.C. Sept. 20, 2021), *aff'd*, No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022). The Fourth Circuit affirmed. *Golden v. Apple Inc.*, 2022 WL 986984, at *1.

Golden filed yet another case, alleging again that sixteen defendants, including Samsung and Apple, infringed the Patents-in-Suit. Complaint, *Golden v. Apple Inc.*, 6:20-cv-04353, (D.S.C. Jan. 5, 2021), Dkt. 10 (Morey Decl. Ex. 8). The court dismissed the complaint without prejudice and without issuance of service of process because the complaint was frivolous. *Golden v. Apple Inc.*, No. 6:20-cv-04353, 2021 WL 5074739, at *3 (D.S.C. Nov. 2, 2021), *aff'd*, No. 2022-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022). The Federal Circuit affirmed, noting that "the docketed complaint is nothing more than a list of patent claims and accused products." *Golden v. Apple Inc.*, 2022 WL 4103285, at *2.

Golden also filed a separate case against Google, asserting the Patents-in-Suit. Complaint, *Golden v. Google LLC*, 6:21-cv-00244 (D.S.C. Jan. 26, 2021), Dkt. 1 (Morey Decl. Ex. 9). The court dismissed the complaint with prejudice and without issuance of service of process because the complaint was frivolous. *Golden v. Google, LLC*, No. 6:21-cv-00244, 2021 WL 5083804, at *3 (D.S.C. Nov. 2, 2021), *appeal dismissed*, No. 21-2318, 2021 WL 8566191 (4th Cir. Dec. 7, 2021), *and vacated and remanded sub nom. Golden v. Apple Inc.*, 2022 WL 4103285. This time, the Federal Circuit vacated and remanded, noting that the complaint included a claim chart. *Golden v. Apple Inc.*, 2022 WL 4103285, at *2. The Federal Circuit also noted, however, that "[its] decision does not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment." *Id.*

### 3.   Golden Loses in the Northern District of California

After failing to get traction in the District of South Carolina, Golden filed additional suits in this District. Golden asserted the Patents-in-Suit against Apple. Complaint, *Golden v. Apple Inc.*, No. 3:22-cv-04152 (N.D. Cal. July 15, 2022), Dkt. 1 (Morey Decl. Ex. 10). Judge Chhabria dismissed the complaint without leave to amend. *Id.*, Dkt. 29 (Morey Decl. Ex. 11). Judge Chhabria noted that "[t]he claims asserted in the complaint are frivolous" and that "[e]ven if they were not frivolous, Golden's patent infringement claims against Apple are barred by issue preclusion because they have been fully litigated and decided" in Golden's original suit against the United States in the Court of Federal Claims. *Id.* Judge

1    Chhabria also noted that "Golden has been pressing these frivolous claims (or some variation thereof) for

2    nearly 10 years in multiple jurisdictions" and that "[t]his is the rare case where dismissal without leave to

3    amend is appropriate at the outset." *Id.* The decision is pending appeal. *Id.*, Dkt. 31 (Morey Decl. Ex. 12).

4      Golden also asserted the Patents-in-Suit against Intel. Complaint, *Golden v. Intel Corp.*, 5:22-cv-

5    03828 (N.D. Cal. June 28, 2022), Dkt. 1 (Morey Decl. Ex. 13). Judge Cousins dismissed the complaint

6    without leave to amend because it would be futile. *Golden v. Intel Corp.*, No. 5:22-cv-03828, 2022 WL

7    17735388, at *4 (N.D. Cal. Nov. 22, 2022). The decision is pending appeal. *Golden v. Intel Corp.*, 5:22-

8    cv-03828, Dkt. 33 (Morey Decl. Ex. 14).

9      Golden then asserted the Patents-in-Suit against Google and Qualcomm. Complaint, *Golden v.*

10    *Google LLC*, No. 4:22-cv-05246 (N.D. Cal. Sept. 14, 2022), Dkt. 1 (Morey Decl. Ex. 15); Complaint,

11    *Golden v. Qualcomm Inc.*, No. 4:22-cv-03283 (N.D. Cal. June 6, 2022), Dkt. 1 (Morey Decl. Ex. 17).

12    Google and Qualcomm have each moved to dismiss. *Golden v. Google LLC*, No. 4:22-cv-05246, Dkt. 11

13    (Morey Decl. Ex. 16); *Golden v. Qualcomm, Inc.*, No. 4:22-cv-03283, Dkt. 6 (Morey Decl. Ex. 18). Their

14    motions are still pending.

15      **C. Golden's Woefully Deficient Infringement Allegations**

16      Golden filed his Complaint against Samsung on January 5, 2023. Compl. at 1. Just like his

17    dismissed-with-prejudice CFC Complaint, Golden's Complaint here again accuses certain Samsung

18    Galaxy devices of infringing claims 1–3 of the '189 patent, claims 13–15 and 23 of the '439 patent, and

19    claims 4–6 of the '287 patent. *See id.* at ¶¶ 31, 35, and 39. Indeed, as with the CFC Complaint, Golden's

20    Complaint accuses Samsung's Galaxy S8, S20, S21, and Note 8 products of infringing the Asserted

21    Patents. *See* Compl. at ¶¶ 9, 31, 35, and 39; *Golden I*, Dkt. 240-1, at A0672 (Morey Decl. Ex. 3). Golden

22    also adds Samsung's Galaxy S7, S7 Edge, S8+, S20+, S20 Ultra, S21 5G, S21+ 5G, S22, S22+, S22 Ultra,

23    and Note 20 to his list of accused products in this case.[2] Compl. at ¶¶ 9, 31, 35, and 39.

24      As both the Court of Federal Claims and the Federal Circuit found was fatal to Golden's CFC

25    Complaint, Golden's Complaint here fails to contend that the accused Samsung Galaxy devices meet all

26

27    ——————————————————

28    [2] Golden does not identify any differences among the accused Samsung Galaxy devices regarding their
purported infringement of the Asserted Patents.

NOTICE OF MOTION AND MEMORANDUM OF P&A ISO MOTION TO DISMISS   Civil Case No. 3:23-CV-00048-WHO

limitations of the Asserted Patents. Instead, Golden alleges that the accused devices **could** infringe the Asserted Patents if a user adds another application, called the Android Team Awareness Kit ("ATAK"), to them. In particular, Golden's Complaint concedes that the U.S. military—not Samsung—created the ATAK application, which is allegedly available to civilians:

> Initially created in 2010 by the Air Force Research Laboratory: Through collaboration and innovation, the Defense Threat Reduction Agency has integrated its powerful, hazard-awareness-and-response tools into the *Android Tactical Assault Kit (or the Android Team Awareness Kit, ATAK).* ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat - on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. As of 2020, ATAK has a growing base of 250,000 military and civilian users across numerous public safety agencies and US partner nations, and has seen the addition of 15 United States Department of Defense programs.

Compl. at ¶ 55 (emphasis in original). Golden thus does not allege that Samsung makes or sells ATAK, or makes or sells any devices with ATAK installed. Instead, Golden admits that ATAK (1) was created by the Air Force Research Laboratory and the "Defense Threat Reduction Agency," an agency of the U.S. Government; (2) is available to "military and civilian users"; and (3) is "[b]uilt on the Android operating system"—as all Android applications are, whether or not made by Samsung. *Id.*

Similar to Golden's deficient infringement contentions in support of his CFC Complaint, the claim chart in Golden's Complaint points to a non-Samsung feature (here, the ATAK application) as the sole functionality allegedly satisfying several limitations of the Patents-in-Suit. For example, the Complaint's claim chart identifies the ATAK application for the following limitations of the Asserted Patents:

| Google Pixel 5 Smartphone | Samsung Galaxy S21 Smartphone | Claim 5 of the '287 Patent | Claim 23 of the '439 Patent | Claim 1 of the '189 Patent |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween... |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |

9

Appx0143

Compl. at 23; *see also id.* at 25 ('189 and '439 patents), 26 ('439 patent). Each time the claim chart references ATAK, it repeats that ATAK is "built on the Android operating system," and thus not provided with any Samsung Galaxy device. *See id.* Golden's Complaint itself alleges that infringement requires the addition of the ATAK application to Samsung's accused Galaxy devices, and concedes that Samsung neither makes or sells ATAK nor any Galaxy devices equipped with ATAK.

### III.   Legal Standard

Under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court must "draw on its judicial experience and common sense." *Id.* at 679. In considering Rule 12(b)(6) motions, Courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "[D]ismissal under Rule 12(b)(6) may be based on either the 'lack of a cognizable legal theory' or on 'the absence of sufficient facts alleged' under a cognizable legal theory." *Arsus, LLC v. Tesla Motors, Inc.*, No. 20-cv-00313-RS, 2020 WL 5552868, at *1 (N.D. Cal. Aug. 14, 2020) (quoting *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013)).

"[P]ro se litigants are bound by the rules of procedure," which "require a short and plain statement of the claim showing that the pleader is entitled to relief." *Zeiny v. United States*, No. 19-5806, 2020 WL 496076, at *2 (N.D. Cal. Jan. 30, 2020) (quoting *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) and Fed. R. Civ. P. 8(a)). "Although complaints filed by a *pro se* plaintiff are held to less stringent standards than formal pleadings drafted by lawyers, [Golden] is not excused from alleging sufficient facts on which a recognized legal claim could be based." *Arunachalam v. Apple, Inc.*, No. 18-1250, 2018 WL 5023378, at *2 (N.D. Cal. Oct. 16, 2018), *aff'd*, 806 F. App'x 977 (Fed. Cir. 2020) (citing *Mylviya v. City of San Jose*, No. 5-5427, 2006 WL 2529511, at *2 (N.D. Cal. Aug. 31, 2006)).

### IV.   Argument

As a threshold issue, the Court should dismiss the Complaint because the Court of Federal Claim's dismissal with prejudice of Golden's CFC Complaint precludes Golden from re-litigating infringement of

the Asserted Patents in this Court. Moreover, the Court should dismiss Golden's Complaint for failure to state a claim of direct and indirect infringement, with prejudice.

### A.   Golden Is Precluded from Re-litigating His Claims of Infringement of the Asserted Patents Against Samsung

In this action, Golden accuses the same Samsung Galaxy products of infringing the Asserted Patents as he did in his CFC Complaint, which the Court of Federal Claims dismissed with prejudice in 2021 after eight years of litigation that did not proceed past the pleading stage. Golden also accuses some additional Samsung Galaxy models of infringement without differentiating them from the previously accused Galaxy devices. The Court of Federal Claim's dismissal of Golden's CFC Complaint with prejudice precludes Golden from re-litigating his current infringement claims against Samsung in this Court under the *Kessler* doctrine, as well as the doctrine of issue preclusion.

The *Kessler* doctrine "allow[s] an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) (emphasis in original). Indeed, the *Kessler* doctrine grants a "'limited trade right' that attaches to the product itself" and "extends to protect any products as to which the manufacturer established a right not to be sued for infringement." *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1378–79 (Fed. Cir. 2020) (quoting *SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1323 (Fed. Cir. 2015)). "Similarly, new products that are 'essentially the same' as the product in the prior suit acquires the status of a non-infringing device." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS, 2019 WL 3413309, at *5 (N.D. Cal. July 29, 2019) (citing *Brain Life*, 746 F.3d at 1057).

Once the Court of Federal Claims dismissed with prejudice Golden's CFC Complaint accusing Samsung's Galaxy devices of infringing the Patents-in-Suit, Samsung received a trade right protecting those Galaxy devices from future suits by Golden alleging infringement of the Patents-in-Suit. This *Kessler* trade right also protects the additional Galaxy models accused by Golden because Golden does not differentiate these newly-added Galaxy models from the accused Galaxy devices in the Court of Federal Claims case at all, much less in regard to the Patents-in-Suit. *See, e.g.*, *SpeedTrack, Inc. v. Amazon.com, Inc.*, No. 09-cv-04479-JSW, 2017 WL 5598679, at *5 (N.D. Cal. Nov. 21, 2017) ("Colorable changes in an infringing device or changes unrelated to the limitations in the claim of the

1  patent would not present a new cause of action.") (quoting *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285

2  (Fed. Cir. 2009)).

3       Golden is also precluded from litigating his infringement claims under the doctrine of issue

4  preclusion, which "bars 'successive litigation of an issue of fact or law actually litigated and resolved in

5  a valid court determination essential to the prior judgment.'" *Adaptix, Inc. v. Amazon.com, Inc.*, No. 5:14-

6  cv-01379-PSG, 2016 WL 948960, at *2 (N.D. Cal. Mar. 14, 2016) (quoting *Taylor v. Sturgell*, 553 U.S.

7  880, 892 (2008)). As summarized above, in dismissing Golden's CFC Complaint with prejudice, the Court

8  of Federal Claims held that his infringement contentions failed to identify anything in the accused

9  Samsung Galaxy devices to meet the sensor/detector and locking limitations required by the Asserted

10  Patents, despite having "eight years to come up with a plausible theory of infringement." *Golden v. U.S.*,

11  156 Fed. Cl. at 628–32. The Court of Federal Claim's dismissal with prejudice following briefing on the

12  merits is therefore a final adjudication following actual litigation of Golden's infringement claims and

13  precludes Golden's deficient Complaint here. *See, e.g.*, *Adaptix*, 2016 WL 948960, at *9. Indeed, on

14  October 20, 2022, Judge Chhabria dismissed, without leave to amend, Golden's complaint against Apple

15  attempting to re-litigate the Asserted Patents in this District on the basis of issue preclusion in view of the

16  Court of Federal Claim's dismissal with prejudice of the CFC Complaint. Order Granting Motion to

17  Dismiss, *Golden v. Apple Inc.*, No. 3:22-cv-04152 (N.D. Cal. October 20, 2022), Dkt. 29 (Morey Decl.

18  Ex. 11). This Court should do the same.

19      **B.**    **Golden Fails to State Claims of Direct and Indirect Infringement by Samsung**

20       Golden fails to state claims of direct and indirect infringement. Given the unusual history of prior

21  litigation, the Court should dismiss the Complaint with prejudice rather than allow amendment.

22      **1.**    **Golden Fails to State a Claim of Direct Infringement by Samsung**

23       Golden accuses certain Samsung Galaxy devices of directly infringing the Asserted Patents. At the

24  same time, however, he concedes that a non-Samsung application, ATAK, created by the U.S. military

25  and allegedly available to civilians, must be added to the accused Galaxy devices to make them allegedly

26  infringing. Golden's allegations of direct infringement fail under *Twombly/Iqbal* and should be dismissed,

27  as they confirm that Samsung's accused products, without modification, do not infringe the Patents-in-

28  Suit.

12

1    In pleading a claim of direct patent infringement, "a complaint does not satisfy the standards of

2    *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices

3    every element of at least one exemplary claim." *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-

4    EJD, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017); *see also Mosaic Brands, Inc. v. The Ridge*

5    *Wallet LLC*, No. 2:20-cv-04556-AB-JCx, 2020 WL 5640233, at *3 (C.D. Cal. Sept. 3, 2020) (a plausible

6    claim of direct infringement must, at a minimum, "provide factual content indicating that the accused

7    product infringes each limitation of at least one claim of the patent in suit").

8    The Complaint alleges that the accused Samsung Galaxy devices **could** infringe the asserted claims

9    **only if** another application, ATAK, which Golden admits that Samsung does not make or sell, is added.

10   Accordingly, rather than alleging that Samsung makes or sells infringing products, Golden merely asserts

11   that **someone else could modify** the accused Galaxy devices to be allegedly infringing by adding the

12   ATAK application, which the Complaint concedes is created by the U.S. military. Doing so is fatal to

13   Golden's claim of direct infringement, because, as Courts have repeatedly found, alleging "that a device

14   is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a

15   finding of infringement." *Telemac*, 247 F.3d at 1330 (citation omitted); *see also Typhoon Touch Techs.,*

16   *Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380 (Fed. Cir. 2011) (rejecting infringement claim where accused

17   product is "merely capable of being modified in a manner that infringes the claims of a patent"); *Fantasy*

18   *Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117–18 (Fed. Cir. 2002); *High Tech Med.*

19   *Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[A] device does

20   not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent

21   claim.").

## 2.    Golden Fails to State a Claim of Indirect Infringement by Samsung

23   The Complaint also asserts claims of induced and contributory infringement of the Patents-in-Suit

24   against Samsung. As summarized above, however, Golden has failed to state a claim of direct infringement

25   against Samsung, and therefore the Court should also dismiss his claims of indirect infringement. *See,*

26   *e.g.*, *Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*, No. 12-4070, 2013 WL 3462078, at *4 (N.D.

27   Cal. Jul. 8, 2013) ("There can be no inducement or contributory infringement without an underlying act

28

1    of direct infringement.") (quoting *Linear Tech Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed

2    Cir. 2004)).

3            Further, even if Golden stated a claim for direct infringement, his Complaint fails to assert a single

4    factual allegation concerning the other required elements of induced and contributory infringement. For

5    example, to state a claim of induced infringement, the "complaint must plead facts plausibly showing that

6    the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other

7    party]'s acts constituted infringement.'" *Nalco Company v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (2018).

8    Similarly, to state a claim of contributory infringement, the complaint must plausibly allege: "1) that there

9    is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component

10   has no substantial noninfringing uses, and 4) that the component is a material part of the invention."

11   *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Here, Golden's Complaint has **zero**

12   factual allegations concerning these requirements of plausible induced and contributory infringement

13   claims, which alone warrants dismissal under *Twombly/Iqbal*.

14           **3.      The Court Should Dismiss the Complaint With Prejudice**

15           Although Samsung recognizes that this is an unusual request, especially against a *pro se* plaintiff,

16   Samsung respectfully submits that under the circumstances of this case, the Court should dismiss Golden's

17   Complaint with prejudice because (1) Golden's prior litigation history asserting the Patents-in-Suit

18   demonstrates futility of amendment, and (2) Golden's theory of direct infringement, which requires the

19   addition of the non-Samsung ATAK application to the accused Galaxy devices, confirms that amendment

20   would be futile.

21           Courts have granted requests for dismissal against *pro se* plaintiffs who have repeatedly filed

22   unsuccessful claims, as Golden has. *See, e.g.*, *Gavin v. City & Cnty. of San Francisco*, No. 15-cv-05202-

23   EMC, 2015 WL 7272678, at *3 (N.D. Cal. Nov. 18, 2015); *Bates v. City of San Jose*, No. 20-cv-07609-

24   BLF, 2021 WL 3727073, at *5–6, 9 (N.D. Cal. Aug. 23, 2021). In *Gavin*, the suit at issue was the tenth in

25   a series of suits filed by a *pro se* plaintiff. *Gavin*, 2015 WL 7272678, at *1. Judge Chen dismissed the

26   complaint with prejudice, holding that, "[w]hile *pro se* litigants are generally given the opportunity to

27   amend deficient pleadings, leave may be denied where amendment would be futile." *Id.* "Given the legal

28   deficiency in the vast majority of Plaintiff's claims, as well as Plaintiff's problematic history of litigation

in this district, the Court [found] that dismissal with prejudice [was] warranted." *Id.* Similarly, in *Bates*, Judge Freeman dismissed the complaint with prejudice, reasoning that leave to amend would be futile because another judge had "examined and rejected Plaintiff's arguments multiple times" and "the Ninth Circuit has repeatedly stated that Plaintiff's claims are 'insubstantial' and not worthy of further examination." *Bates*, 2021 WL 3727073, at *5.

Similar to the plaintiffs in *Gavin* and *Bates*, here Golden has unsuccessfully asserted the Patents-in-Suit and related patents against Samsung and other defendants in multiple forums for nearly a decade. These prior suits have resulted in dismissal after dismissal, despite Golden's many opportunities to file amended complaints. For example, the Court of Federal Claims finally dismissed with prejudice Golden's ***sixth*** amended complaint against the government—which asserted the Patents-in-Suit against many of the same accused Galaxy devices accused in Golden's Complaint—after finding that Golden's infringement allegations were incurably deficient. The Federal Circuit affirmed the dismissal with prejudice. After the Court of Federal Claims dismissed Golden's CFC Complaint with prejudice, the District of South Carolina dismissed Golden's four subsequent lawsuits involving the Patents-in-Suit, where, in three of the cases, Golden sued Samsung and Apple as defendants. The Federal Circuit and the Fourth Circuit affirmed the dismissals for all three cases against Samsung and Apple.[3]

Undeterred from the dismissals in the Court of Federal Claims and the District of South Carolina, Golden now asserts the Patents-in-Suit in this District against Samsung, as well as other parties Golden has sued in the past, like Apple. However, courts in this District have already started reaching the same conclusion that the courts in the District of South Carolina did. For example Judge Chhabria dismissed, without leave to amend, Golden's similar claims against Apple for alleged infringement of the Asserted Patents, noting that "[t]his is the rare case where dismissal without leave to amend is appropriate at the outset." Order Granting Motion to Dismiss, *Golden v. Apple Inc.*, No. 3:22-cv-04152 (N.D. Cal. October 20, 2022), Dkt. 29 (Morey Decl. Ex. 11). Judge Cousins also dismissed, without leave to amend, Golden's similar claims against Intel of alleged infringement of the Asserted Patents. *Golden v. Intel Corp.*, 2022

---

[3] The Federal Circuit vacated and remanded the dismissal in a case against Google, but explicitly noted that "[its] decision does not preclude subsequent motions to dismiss." *Golden v. Apple*, 2022 WL 4103285, at *2.

1    WL 17735388, at *4. Accordingly, as demonstrated by the prior courts' repeated dismissals of Golden's

2    complaints since he began his litigation campaign in 2013, Golden's defective Complaint against Samsung

3    for alleged infringement of the Asserted Patents cannot be cured by further amendment.

4            Additionally, as summarized above, Golden's theory of direct infringement in the Complaint itself

5    demonstrates that any amendment would be futile. The Complaint alleges that Samsung's accused Galaxy

6    devices, ***only when modified to include the non-Samsung ATAK application***, infringe the Asserted

7    Patents. The Complaint therefore concedes that the accused Galaxy devices themselves do not infringe.

8    Accordingly, Golden's Complaint is not defective due to drafting deficiencies. Instead, Golden's theory

9    of direct infringement has a fundamental flaw that cannot be fixed with future amendment. *See, e.g.*, *Bonin*

10   *v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of

11   a motion for leave to amend.").

12           Under these circumstances, the Court should dismiss the Complaint with prejudice.

13   **V.    <u>Conclusion</u>**

14           For the foregoing reasons, Samsung respectfully requests that this Court dismiss Golden's

15   Complaint, with prejudice, and enter judgment in favor of Samsung and against Golden.

16   Dated: February 21, 2023              Respectfully submitted,

17

18                                         <u>*/s/ Robert T. Haslam*</u>

19                                         Robert T. Haslam (Bar No. 71134)

20                                         rhaslam@cov.com
                                           Hyun S. Byun (Bar No. 281753)
21                                         hbyun@cov.com
                                           Michael R. Morey (Bar No. 313003)
22                                         mmorey@cov.com
                                           COVINGTON & BURLING LLP
23                                         3000 El Camino Real, 10th Floor
                                           5 Palo Alto Square
24                                         Palo Alto, California 94306-2112
25                                         Telephone: + 1 (650) 632-4700
                                           Facsimile: + 1 (650) 632-4800
26

27                                         Richard L. Rainey (*pro hac vice* forthcoming)
                                           rrainey@cov.com
28                                         COVINGTON & BURLING LLP

NOTICE OF MOTION AND MEMORANDUM OF P&A ISO MOTION TO DISMISS          Civil Case No. 3:23-CV-00048-WHO

One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Brian G. Bieluch (Bar No. 331167)
     (N.D. Cal. Admission Pending)
bbieluch@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

*Counsel for Samsung Electronics America, Inc.*

17

# Exhibit 1



**ATPG Technology, LLC**

*(Anti-Terrorism Product Grouping)*

**FILED**

**MAY 1 2013**

U.S. COURT OF
FEDERAL CLAIMS

Larry Golden, CEO

740 Woodruff Road, #1102, Greenville, SC 29607

E-mail: atpg-tech@charter.net

Bus. 864-288-5605 / Mobile: 864-992-7104

13-307 C

April 30, 2013

United States Court of Federal Claims

Howard T. Markey National Courts Bldg

717 Madison Place, N.W.

Washington, DC 20439

Re: Department of Homeland Security -- Infringement

Chief Judge Emily C. Hewitt:

The three solicitations released by the Department of Homeland Security that infringes Golden's [US RE43,990] patent are:

1. The Department of Homeland Security CELL-ALL Ubiquitous Biological and Chemical Sensing Solicitation Number: BAA07-10 released October 2007 and is referred to throughout this document as "Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors".

2. The Department Of Homeland Security SBIR / STTR Miniature and Reliable Chemical Sensors for Cell Phones Solicitation No: Reference-Number-DHSSBIRFY081 released December 2007 and is referred to throughout this document as "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors".

3. The Department Of Homeland Security SBIR Phase 12.1 Smart Phone App(s) for Radioisotope Identification Device (RIID) and Spectroscopic Personal Radiation Detector (SPRD) Reachback Solicitation No.HSHQDC-12-R-00052 released May 2012 and is referred to throughout this document as "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors".

The three solicitations of "Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors", "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors", "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" are combined for the purpose of illustrating the development of, the use or manufacture of, the making of, the offer for sale of, and the sale of, a product or parts of a product; a device or parts of a device that infringes Golden's [US RE43,990] patent independent claim 11 (emphasis on the communication device that is the monitoring equipment integrated and interconnected to the cell phone detection device), independent claim 81 (emphasis on the cell phone detection device that is integrated and interconnected to the communication device that is the monitoring equipment and the sensors used for detection), and, independent claim 74 (emphasis on the sensors used for detection that is integrated and interconnected to the cell phone detection device).

The Department Of Homeland Security and the twelve companies (e.g. Samsung, LG, Apple, Qualcomm, Seacoast Science, NASA, Rhevision, Synkera, Boston MicroSystems, QuantaSpec, Spectral Labs, Creative Electron) that received awards and contracts for research and development of a cell phone detection device and the companies that received cooperative agreements from the Department Of Homeland Security in response to the three solicitations of  Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors", "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors", "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" are combined for the purpose of illustrating the development of, the use or manufacture of, the making of, the offer for sale of, and the sale of, a product or parts of a product; a device or parts of a device that infringes Golden's [US RE43,990] patent independent claim 11 (emphasis on the communication device that is the monitoring equipment integrated and interconnected to the cell phone detection device), independent claim 81 (emphasis on the cell phone detection device that is integrated and interconnected to the communication device that is the monitoring equipment and the sensors used for detection), and, independent claim 74 (emphasis on the sensors used for detection that is integrated and interconnected to the cell phone detection device).

The Department Of Homeland Security and the twelve companies (e.g. Samsung, LG, Apple, Qualcomm, Seacoast Science, NASA, Rhevision, Synkera, Boston MicroSystems, QuantaSpec, Spectral Labs, Creative Electron) that received awards and contracts for research and development of a cell phone detection device and the companies that received cooperative agreements from the Department Of Homeland Security in response to the three solicitations of  Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors", "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors", "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" are combined for the purpose of illustrating, showing and proving **direct infringement** (occurs when a person without authorization makes, uses, offers to sell or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent), **infringement by equivalents** (a claim may be infringed under the doctrine of equivalents if some other element of the accused device or process performs substantially the same function, in substantially the same way, to achieve substantially the same result), **contributory infringement** (is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."), **inducement infringement** (covers situations where one actively induces the infringement of a patent by encouraging, aiding, or otherwise causing another person or entity to infringe a patent. A potential inducer must actually be aware of the patent and intend for their actions to result in a third party infringing that patent).

The color coded claims analysis included in this in a document of Golden's [US RE43,990] patent independent claims 11, 81, and 74 are illustrated in a green print color and breaks down each element included in each of the independent claims 11, 81, and 74, (the purple print color represents the dependent claims of independent claim 81).

The color coded claims analysis included in this document has a break-down of each element requested by the Department of Homeland Security in the three solicitations of "Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors", "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors", "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors", illustrated in the rust print color.

The color coded analysis included in this document has also a universal interpretation, explanation, usage or definition of terms of:

- the communication device (system) that is the monitoring equipment of Golden's [US RE43,990] patent independent claim 11 and the DHS request for a communication device (system)
- the cell phone detection device (system) of Golden's [US RE43,990] patent independent claim 81 and the DHS request for a cell phone detection device (system)
- the sensor device (system) of Golden's [US RE43,990] patent independent claim 74 and the DHS request for a sensor device (system), and

is in blue print color and the interpretation, explanation, usage or definition of terms are parallel the like elements of both Golden's [US RE43,990] patent and the DHS solicitations for a cell phone detection device.

Enclosed in this document is a section of articles, product data sheets, agreements, award data sheets and documents with pictures and photographs that validate the "use or manufacture, make, develop, sell or offer for sell a patented product without the consent of the patent owner".

> On March 14, 2012, in an en banc decision, the Court of Appeals for the Federal Circuit reversed both itself and the Court of Federal Claims ("COFC") in holding that the government is subject to liability when a product using a patented process is used in, or imported into the United States by or for the United States government, even when part of the patented process occurred overseas. Zoltek Corp. v. United States, No. 2009-5135. The Federal Circuit reinstated the patent holder's 28 U.S.C. § 1498(a) claim against the United States and barred the plaintiff's pursuit of a further patent infringement claim against the contractor in district court. The Zoltek decision is good news for government contractors because it precludes separate contractor liability for patent infringement arising out of work performed on behalf of the United States. The decision also confirms that all such infringement claims must be brought for "reasonable and entire compensation" in the COFC against the United States.

The Department of Homeland Security and the Department of Homeland Security awarded companies are infringing Golden's [US RE43,990] patent. The infringement is defined under **direct infringement** (occurs when a person without authorization makes, uses, offers to sell or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent), **infringement by equivalents** (a claim may be infringed under the doctrine of equivalents if some other element of the accused device or process performs substantially the same function, in substantially the same way, to achieve substantially the same result) and **contributory infringement** (is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States or imports into

the United States a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."). The supportive documents are:

_Article; Awards; and Cooperative Research and Development Agreements (CRADA):_ "Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors" cooperative agreement companies are Qualcomm, LG, Apple, and Samsung. The awarded companies are Qualcomm, Seacoast Science, Rhevision Technology and the Center for Nanotechnology at NASA Ames Research Center. _Article:_ "Homeland Security Backs Cell Phone Sensors to 'Crowdsource' Detection of Deadly Chemicals".

_Award Information Sheets:_ "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors" awarded companies are Synkera Technologies, Inc., Boston Microsystems, Inc., and QuantaSpec Inc.

_Article; Award Information Sheets; and Product Photo Data Sheets:_ "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" awarded companies are Spectral Labs Incorporated and Creative Electron. _Article:_ "Apple's nex-gen iPhone power amp; NASA chemical sensor app".

_Article of Product Demonstration:_ Demonstration companies are NASA's Center for Nanotechnology at Ames, Qualcomm Inc., and Synkera Technologies Inc. _Article:_ "NASA science unveils new chemical detection technology", October 3, 2011 by Cathy Weselby and John Verrico.

_Article of Product Development:_ Development companies are NASA's Ames Research Center. _Article:_ "NASA brings chemical sensor to iPhone", November 10, 2009 by Michael Cooney, Network World.

_Product Development White Paper of An Integrated Sensing System:_ Title; "Nanosensor – Cellphone Integration for Extended Chemical Sensing Network", by Jing Li, Ph.D. and Principal Investigator for the NASA Ames Research Center. The product was developed in partnership with the U.S. Department of Homeland Security Science & Technology Directorate.

*Data Sheet for a Chemical (Temperature) Sensor:* "Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors" awarded company Synkera Technologies Inc. data sheet includes a photo picture of the Synkera Ultrakera carbon monoxide (CO) chemical (temperature) sensor.

*Data Sheet; Picture of Product; and Product sale price ($199.00) without the iPhone:* "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" awarded company Creative Electron and the cooperative agreement company Apple Inc. is offering for sale a Radiation/Nuclear Smart Phone Detection Device. The data sheet is titled; "iRad Geiger for Apple iOS Devices".

*Data Sheet; Picture of Product; and Product sale price ($299.00) without the iPhone:* "Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors" awarded company Creative Electron and the cooperative agreement company Apple Inc. is offering for sale a Radiation/Nuclear Smart Phone Detection Device. The data sheet is titled; "iRad Alpha for Apple iOS Devices".

Enclosed in this document is a section of appendixes of documents that discloses Golden's patent or patent pending "Multi Sensor Detection and Cell Phone Detection" technology and the documents were submitted to the Department of Homeland Security of Golden's developmental capabilities:

*On 31 August, 2012, the United States Court of Appeals for the Federal Circuit released its highly anticipated en banc decision in the case of Akamai Technologies, Inc. v. Limelight Networks, Inc., 692 F.3d 1301 (Fed. Cir. 2012). At issue was whether inducement to infringe a method patent claim under 35 U.S.C. § 271(b) required a single entity to perform all of the steps or whether liability could still be found where multiple actors performed the steps collectively.*

*The Federal Circuit overturned previous case law which required a plaintiff alleging induced infringement to show that the defendant induced a single entity to perform all of the steps of the claimed method. Under Akamai, inducement now includes those who induce multiple parties to infringe different steps of the claimed method so that the infringing conduct is split among more than one entity.*

*Under the new rule, inducement liability exists where the accused infringer (1) knew of the patent; (2) induced performance of the steps of the method; and (3) those steps were actually performed. It follows also that the accused infringer will also be liable if it performs some of the steps of the method and then actively induces performance of the other steps.*

*This decision is important because it closes a major loophole that has allowed some entities to knowingly and intentionally take advantage of a patented invention while avoiding the need to take a license.*

The Department of Homeland Security and the Department of Homeland Security awarded companies are infringing Golden's [US RE43,990] patent. The infringement is defined under **contributory infringement** (is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."), **inducement infringement** (covers situations where one actively induces the infringement of a patent by encouraging, aiding, or otherwise causing another person or entity to infringe a patent. A potential inducer must actually be aware of the patent and intend for their actions to result in a third party infringing that patent). The Appendixes are:

Appendix I: On **09/21/2006**, an e-mail correspondence and a proposal were submitted to the Department of Homeland Security/HSARPA to the attention of the Program Manager, Lisa Sobolewski.

Appendix II: On **09/25/2007**, a "White Paper" was submitted to the DHS S&T Directorate, to the attention of Margo Graves, Team Lead / Contracting Officer; Team Lead / Contracting Officer; Borders and Maritime Division in response to the RFI solicitation; SAFECON.

Appendix III: On **11/28/2007**, a "White Paper" was submitted to the Department of Homeland Security, to the attention of Margo L. "Margo" Graves, Team Lead / Contracting Officer Margaret L. Office of Procurement Operations / Science & Technology Acquisitions Division in response to Broad Agency Announcement CELL-ALL Ubiquitous Biological and Chemical Sensing Solicitation Number: (BAA07-10)

Appendix IV: On **01/18/2008**, a "Read Ahead" document was submitted to the DHS S&T Directorate, and to the attention of Edward Turner; Program Manager. Reference was made to the "General description & Solutions alignment for "Cargo Containers, Cell Phones & Vehicles":

Appendix V: On **05/22/2008**, a "White Paper" that included the capability for the development of a Cell phone detection device was submitted to the DHS; S&T Directorate, to the attention of David Newton,

Acting Division Head, Borders and Maritime, S&T-BordersMaritime@dhs.gov; in response to solicitation "Long Range Broad Agency Announcement (BAA08-01)".

Appendix VI: On **01/06/2009**, a "White Paper" was submitted to the DHS; S&T Directorate, to the attention of Emily Graham, Contract Specialist; Office of the Chief Procurement Officer in response to the TRUST solicitation RFI.

Appendix VII: On **09/03/2009**, an e-mail correspondence and a proposal were submitted to the attention of Stephen Dennis, Program Manager for the *"Cell-All Project"*, Department of Homeland Security (DHS); Science and Technology (S&T) Directorate.

Appendix VIII: On **11/07/2009**, a "Full Proposal" was submitted to the DHS; S&T Directorate, to the attention of the Director of Innovation, in response to the Broad Agency Announcement (BAA) 09-17, "Time Recorded Ubiquitous Sensor Technologies" (TRUST).

Appendix IX: On **09/01/2010**, a "White Paper" was submitted to the DHS; S&T Directorate, to the attention of SandT-BordersMaritime@dhs.gov; in response to solicitation "Long Range Broad Agency Announcement (BAA10-01)"; title of proposal: "Integrated Systems for Border and Maritime Security".

" Section 1498(a) further provides that whenever a patented invention "is used or manufactured by or for the United States without license of the owner thereof . . . the owner's remedy shall be by action against the United States in the [CFC] for the recovery of his reasonable and entire compensation for such use or manufacture."

*An applicant, his successors, assigns, or legal representatives, whose patent is withheld as herein provided, shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance, or February 1, 1952, whichever is later, and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure. The right to compensation for use shall begin on the date of the first use of the invention by the Government. The head of the department or agency is authorized, upon the presentation of a claim, to enter into an agreement with the applicant, his successors, assigns, or legal representatives, in full settlement for the damage and/or use. This settlement agreement shall be conclusive for all purposes notwithstanding any other provision of law to the contrary.*

*If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant, his successors, assigns, or legal representatives, a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use.*

Below is a quote taken from the "CELL-ALL Ubiquitous Biological and Chemical Sensing Solicitation Number: (BAA07-10)". The information contained will be used as a guide in determining the reasonable and entire compensation:

"If **biological and chemical sensors** could be effectively integrated into common cell phone devices and made available to the American public on a voluntary basis, the Nation could potentially benefit from a sensor network with **more than 240M sensors....** Through this BAA, HSARPA is seeking to accelerate advances in miniaturized biological and chemical sensing (e.g. laboratories on a chip) with integration into common device(s) **and a communication systems concept for large scale multi-sensor networks....** This proof of concept should be capable of detecting hazardous biological and/or chemical materials **with eventual expansion to the detection of explosive and eventually radiological materials...."**

Sol. 1; 2007; BAA; Cell Phone Chem/Bio Sensors
      120 million chemical sensors
      120 million biological sensors

Sol. 2; 2007; SBIR; Cell Phone Chemical Sensors
      120 million chemical sensors

Sol. 3; 2012; SBIR; Smart Phone Rad/Nuc Sensors
      120 million radiation sensors
      120 million nuclear sensors

Total number of sensors for Sol. 1, Sol. 2, and Sol. 3
      600 million sensors

*Note:* 600 million sensors will be used for calculating reasonable compensation for Independent claims 11, 81, and 74.

Golden's [US RE43,990] patent claim 11:  600 million sensors to come on line for monitoring, servicing, and data transfer. The communication system is handled by the service providers (e.g., Apple, Qualcomm, LG, and Samsung). 600 million sensors @ $1 dollar monthly service fee = $600 million dollars per/mth.  $600 million dollars per/mth @ 12 months per/yr = $7.2 billion dollars per/yr.  $7.2 billion dollars per/yr. for 10 of the remaining years of the patent = **$72 billion dollars over 10 years**.

Golden's [US RE43,990] patent claim 81:  600 million cell/smart phones that includes the software application (the support for the software application is in the 2nd item of claim 74 but is not being used here as a separate calculation for compensation) for integrating the detection capability. The average high-end smart phone is $250 dollars. $250 dollars @ 2% = $5 dollars. 600 million cell/smart phones that includes the software application @ $5 dollars each = **$3 billion dollars**.

Golden's [US RE43,990] patent claim 74: 600 million sensors/detectors. Creative Electron is selling two smart phone sensor/detector devices for radiation and nuclear detection that's priced @ $299 dollars and $199 dollars (the smart phone is not included in the price). The average price is $250 rounded. $250 dollars @ 10% royalty = $25 dollars. (the 10% royalty is used because Golden's ATPG TECHNOLOGY, LLC had an opportunity to be the lead company in developing the sensor/detector for sell). 600 million sensors/detectors @ $25 dollars each in royalties = **$15 billion dollars in royalties**.

$72 billion dollars plus $3 billion dollars plus $15 billion dollars = **$90 billion dollars total**

Apple announces Q1 2013 earnings: record $54.5 billion in revenue, 47.8 million iPhones and 22.9 million iPads sold **(estimated $200 billion for 2013).**

Qualcomm Inc., the wireless technology giant said 2013 first quarter revenue increased 24 percent to $6.12 billion **(estimated $24 billion for 2013).**

LG Electronics 2013 revenues in the first quarter rose 6.8 percent year-over-year 13.01 billion mainly due to the improved performance of the mobile business **(estimated $52 billion for 2013).**

Samsung Electronics, the world's No.1 smart phone vendor. Samsung's hot streak continues in 2013 Q1: Record $7.7B profit on $45.9B in sales **(estimated $180 billion for 2013).**

# CONCLUSION

Below is an article that supports Golden's [US RE43,990] patent independent claim 11 of; "A communication device of at least one of a cell phone.... or a computer terminal at a monitoring site for monitoring products, interconnected to a product for communication therebetween". The cell phone, and the monitoring site, and the product for communication therebetween, all work as a functional unit. The cell phone detection system must include all of the above components. The "product for communication therebetween" (e.g. cell tower, cell site or base station) is defined in the items of claim 11. If the Department of Homeland Security wants to argue the merits of claim 11, they should be mindful of the fact that the cell tower, cell site or base station can be considered a "tag-along" to recover damages for the loss profits.

> *"The patentee may also seek to recover damages for the lost profits he would have made on accessory items that typically are purchased with the patented item. For these tag-along or convoyed sales, the Rite-Hite court held that those damages may also be recoverable. For such recovery, however, all of the components (patented item and the tag-along items) must work as a functional unit. If the tag-along items and the patented item can function as stand-alone products, then this type of damages may not be recoverable" Wikibooks.org*

## How do Cell Phone Towers Work?

Cell phone towers are also known as **cell site or base stations**, and are made up of radios, computerized switching equipment, and antennas for receiving and transmitting radio frequency (RF) signals. They are usually mounted atop or on the side of tall buildings, water tanks, etc.

A signal cell phone tower will host single or multiple mobile operators, serving different air interface technology, such as CDMA or GSM. Part of the electromagnetic spectrum, cell phones and cell phone towers operate at the radio frequency, and emit non-ionizing radiation, similar to the one's used by microwave, AM and FM radio waves, and are too low on energy, to enter DNA tissues.

The operating mechanics of a cell phone are quite simple. When a call is made through a cellular phone, a signal is sent out from the cell phone's antenna to the base station antenna. It radios the nearest cell phone tower, **which is particular to your service provider or a collaborator of your service provider.**

# Exhibit 2

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

        Plaintiff,

        V.

UNITED STATES,

        Defendant.

1:13-cv-307-EGB

Senior Judge Eric G. Bruggink

July 6, 2020

## AMENDED COMPLANT FOR REDUCED PLEADINGS

Plaintiff is seeking to have the "Stay" lifted in CFC Case No. 13-307C. A final decision on Plaintiff's petition was issued on 06/25/2020. Plaintiff is also seeking leave from this Court to file an Amended Complaint. Nine of the ten remaining infringement allegations reference the Plaintiff's Reissue Patent No. [RE43,891]. Plaintiff is seeking to drop the nine allegations relating to the '891 patent, and continue forward with the one remaining infringement allegation that reference Plaintiff's 7,385,497 ('497) patent. Plaintiff's '891 patent has been asserted in two pending cases: CAFC: Case No. 20-1508 (Infringement); and, S.C. District Court—Greenville: Case No. 6:20-cv-2270 (Antitrust Law Violation).

## PARTIES

1.      Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

2. The United States is the Defendant to this action based upon the actions and conduct of its agents, including at least the following agencies: Department of Homeland Security (DHS); Department of Homeland Security Science & Technology Directorate (DHS/S&T); Homeland Security Advanced Research Project Agency (HSARPA); and, National Aeronautics and Space Administration (NASA), and all other Government Agencies and personnel named in this pleadings.

## JURISDICTION

3. The jurisdiction of this Court is based on the provisions of 28 U.S.C. § 1498(a). Under 28 U.S.C. §**1498**, whenever the **government** uses or manufactures an invention covered by a patent of the United States, without a license from the owner, the owner may only bring an action against the United States in the United States Court of Federal Claims.

4. This is a claim pursuant to 28 U.S.C. § 1498(a) for recovery of Plaintiff's reasonable and entire compensation for the unlicensed use or manufacture, for or by the United States, of inventions described in and covered by United States Patent Numbers: 7,385,497; 8,106,752; 9,096,189; 9,589,439; and, 10,163,287. Pending applications 16/350,683 and 16/350,874 are asserted in this complaint for claim construction and entry upon issue.

5. 28 U.S.C. § 1498(a): "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture".

2

## DESCRIPTION AND TECHNICAL RATIONAL OF A CMDC DEVICE

**Plaintiff and Defendants' Communicating, Monitoring, Detecting, and Controlling (CMDC) Devices-------(Exhibit 1: CD Video of the DHS CMDC device)**

6.     The Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) device is commercialized in the form of an improved cell phone, smartphone, smartwatch, laptop, or tablet. The specifications and capabilities of the CMDC devices that were developed for, manufactured and commercialized by third-party government contractors, Apple, Samsung, and LG, are significantly the same as the Plaintiff's CMDC device(s) as illustrated below:

- Communication: at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, cellular connection, long and/or short-range radio frequency (RF) connection, or GPS connection was "taken" for the benefit of the Government and for Government "use".

- Monitoring: at least one of a viewing screen for monitoring in real time, viewing screen monitoring for CBRNE-H signal alerts, viewing screen monitoring for CBRNE-H color coded indicator lights, or viewing screen monitoring for tracking, alerts, and heart rate.

- Detecting: at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor; that is wired or wireless, capable of being disposed within, on, upon or adjacent the CMDC device.

- Controlling: at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween, for sending signals to at least lock or unlock doors, stall, stop, or slowdown vehicles, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems.

- Central Processing Unit (CPU): is the programmable device capable of general-purpose computation. It is the engine of logic, as with the brain, and the core piece of hardware in the Patent Owner's CMDC device (i.e. communication devices, monitoring device; monitoring equipment). The Patent Owner's CPU is capable of arithmetic operations such as add and divide and flow control operations such as conditionals. The Patent

3

Owner's central processing unit (CPU) is the electronic circuitry within the CMDC
device that executes instructions that make up a computer program.

- Biometrics: that incorporates at least one of a fingerprint recognition, voice recognition,
face recognition, hand geometry, retina scan, iris scan and or signature or a face
recognition to at least gain access to the CMDC device or to prevent unauthorized use of
the CMDC device.

- Lock, Unlock, Disabling Lock: the CMDC device being equipped to receive signals from
or send signals to engage (lock), disengage (unlock), or disable (make unavailable) locks
after a certain number of failed attempts to unlock.

- Near-Field Communication: Near Field Communication or NFC is a short-range
communication channel. The purpose for this technology is to simplify first-time
connections to other wireless technologies, like Wi-Fi and Bluetooth. Near Field
Communication in a CMDC device can be used as part of a two-factor access control
system for unlocking a door. Biometric Fingerprint recognition is used for authentication
and NFC is used to transmit authentication information to a computer controlling the
door. NFC is preferred over RFID because RFID has a frequency vulnerable for
detonating bombs.

- Location and Tracking: The CMDC tracking is a process for identifying the location of
the device, whether stationary or moving. Localization may be affected by a number
of technologies, such as using multi literation of radio signals between (several)
cell towers of the network and the device, or simply using GPS. Some GPS CMDC
devices use wireless-assisted GPS to determine the user's location. In wireless-assisted
systems, the device uses the orbiting GPS satellites in conjunction with information about
the device's signal. Sometimes called enhanced GPS, wireless-assisted GPS can often get
a fix on the user's location faster than a GPS-only receiver. Some wireless-assisted
systems can work inside buildings, under dense foliage and in city areas where traditional
receivers cannot receive signals. GPS-enabled CMDC devices with view screens can
often display turn-by-turn directions as well as announce them through the device's
speaker. A database of maps is used to provide the directions. The CMDC device locator
provides GPS coordinates and can dial emergency CMDC device numbers. The

4

Government, parents and caregivers can track the device's location by device or online and can receive notification if it leaves a designated "safe area."

The communicating, monitoring, detecting, and controlling (CMDC) device is also referred to as a "communication device", "monitoring device", "monitoring equipment", "cell phone detection device", multi-sensor detection device", multi-sensor detection system", "cell phone", "smart phone", "desktop", "handheld", "personal digital assistant" (PDA), "laptop", "computer terminal", or "smartwatch", because all can be *grouped together by common features of design similarities*.

| Defendants CMDC Devices | Patent #: 10,163,287; Independent Claim 4, 5 & 6 | Patent #: 9,589,439; Independent Claim 22 & 23 | Patent #: 9,096,189; Independent Claim 1 | Patent #: 8,106,752; Independent Claim 10 | Patent #: 7,385,497; Independent Claim 1 |
|---|---|---|---|---|---|
| DHS; S&T "Cell-All" initiative. Develop CMDC device to detect deadly chemicals". Stephen Dennis; PM: Contracts to Qualcomm, LG, Apple, and Samsung. Sensors will integrate with 261 million CMDC devices (i.e. smartphones) | Claim 4: A communication device, comprising: Claim 5: A monitoring device, comprising: Claim 6: Monitoring equipment, comprising: | Claim 22: A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal, comprising: Claim 23: A cell phone comprising: | Claim 1: A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: | Claim 10: A multi-sensor detection and lock disabling system for monitoring products and for detecting explosive, nuclear, contraband, chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: | Claim 1: A multi sensor detection and lock disabling system for monitoring products and for detecting chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: |

## THE DEFENDANT'S INCIDENTAL USE OF PLAINTIFF'S CLAIMED

## CMDC DEVICES

5

7.    The Government cannot claim "incidental use" of Plaintiff's CMDC devices when the Government accepted information describing the CMDC device from the Plaintiff; the Government appropriated funding for a CMDC device to the DHS and other government agencies; the DHS and other government agencies issued solicitations (i.e. request for proposals) for the development of a CMDC device (**Exhibit 2**: DHS *Cell-All* solicitation; **Exhibit 3**: Plaintiff's proposal in response to the *Cell-All* solicitation); the Government awards and funds third-party government contractors for research and development, manufacture, and commercialization of Plaintiff's CMDC devices (**Exhibits 4 & 5**: DHS *Cell-All* third-party government contractors); and, the Government continues to appropriated funding, issue solicitations, award and fund third-party government contractors for research and development, manufacture, and commercialization of Plaintiff's CMDC devices through various government agencies (**Exhibit 6**).

8.    Use "for" the government can be present even where the "primary" beneficiary is a private party. *See Advanced Software*, 583 F.3d at 1378 (finding government use, despite the fact that the primary benefits accrued to private banks, because the use also served national interests (i.e. Apple, Samsung, and LG's CMDC devices that monitors and detects for CBRN&Es).

## VIOLATION ALLEGED

### Claim for Relief

### (Violation of Section 28 U.S.C. § 1498(a): Government Infringement)

9.    Plaintiffs incorporate and reallege, as through fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

6

10.     Upon information and belief, the United States has infringed, and continues to infringe, at least claims 1 of the '497 Patent, claim 10 of the '752 Patent, claim 1 of the '189 Patent, claim 23 of the '439 Patent, and claim 5 of the '287 Patent, as a current manufacturer, consumer, and/or user of the "Cell-All": Synkera MikroKera Ultra: Synkera presented the MikroKera Ultra Module at the Department of Homeland Security S&T "Cell-All" demonstration in Los Angeles on September 28, 2011. Synkera offers a general-purpose digital module for evaluation and use of MikroKera Ultra chemical sensors. Synkera Technologies has been funded by DHS to develop sensors that are suitable for integration into cell phones and other ubiquitous electronic devices carried by first responders and the public at large. The DHS S&T "Cell-All" project goal is to develop sensors that can detect life-threatening gases to be incorporated into cell phones. One feature of the Synkera MikroKera Ultra is: available with or without case. The monitoring equipment for this "Cell-All" project is at least a Samsung Galaxy smartphone that has an Android operating system (O/S).

11.     The Department of Homeland Security's (DHS) Science and Technology Directorate (S&T), Cell-All aims "to equip your cell phone (e.g. Apple iPhone) with a sensor capable of detecting deadly chemicals", says Stephen Dennis, Cell-All's program manager. S&T pursued cooperative agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung. Jing Li, a physical scientist at NASA's Ames Research Center, developed new technology that would bring compact, low-cost, low-power, high-speed nanosensor-based chemical sensing chip which consists of 64 nanosensors and plugs into an Apple iTouch 30-pin dock connector. The new device is able to detect and identify chemicals in the air using a "sample jet" and sends detection data to another phone (e.g. Apple iPhone) or a computer via telephone communication network or Wi-Fi.

7

12.  As a result of contracts with the U.S. Department of Homeland Security (DHS), Synkera Technologies Inc., and NASA's Ames Research Center; cooperative agreements with LG Electronics, Apple Inc., and Samsung Electronics; the Government has development, manufacture, and commercialized a "*Cell-All*" CMDC device for the Government. The United States has funded the development of a "*Cell-All*" CMDC device to be used by or for the Government; authorized the use of the CMDC device for both its personnel and the public, without license or legal right, Plaintiff's claimed inventions of a CMDC device described in, and covered by at least that of Plaintiff's '497, '752, '189, '439 and '287 Patents (**Exhibit 7**: Amended Claim Chart)

## ALL INDEPENDENT CLAIMS FOR THE PLAINTIFF'S '497, '752, '189, '439 & '287
## PATENTS LISTED BELOW ARE AVAILABLE FOR CLAIM CONSTRUCTION

| Pat. # 7,385,497 | Pat. # 8,106,752 | Pat. # 9,096,189 | Pat. # 9,589,439 | Pat. # 10,163,287 | App. # 16/350,683 | Reissue App. # 16/350,874 |
|---|---|---|---|---|---|---|
| Claim 1 of the '497 Patent | Claim 10 of the '752 Patent | Claims 1, 2, 3, 4, 5, 6, 7, 8, & 9 of the '189 Patent | Claims 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, & 23 of the '439 Patent | Claims 1, 2, 3, 4, 5, & 6 of the '287 Patent | Claims 1 & 11 of the [683] Patent Application | Claims 13, 14, 15, 22, 23, 64, 74, 75, & 76 of the [874] Reissue Patent Application |

## PRAYER

WHEREFORE, Plaintiff respectfully requests judgment in its favor against the United States granting Plaintiff the following relief:

8

A.    Entry of judgment that the inventions set forth in the '497, '752, '189, '439 and '287 patents have been used and manufactured by and for the United States without license or lawful right within the meaning of 28 U.S.C. § 1498(a);

B.    Reasonable and entire compensation for the unlicensed use or manufacture by or for the United States, of patented devices covered by and described in the '497, '752, '189, '439 and '287 patents under 28 U.S.C. § 1498(a), in an amount to be determined at trial;

C.    Plaintiff's reasonable fees for expert witnesses and attorneys, plus its costs in accordance with 28 U.S.C. § 1498(a);

D.    Pre-judgment and post-judgment interest on Plaintiff's award; and

E.    All such other relief that the Court deems just and proper.

Respectfully submitted,

s/ *(signature)*

Larry Golden

Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of July, 2020, a true and correct copy of the

foregoing AMENDED COMPLANT FOR REDUCED PLEADINGS was served upon the

following defendant by Priority "Express" Mail:


David A. Foley, Jr.

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

David.a.foley@usdoj.gov

202-307-0346


s/ Larry Golden

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

10

# EXHIBIT 7

# Claim Charts for the DHS; S&T "*Cell-All*" Initiative: Included is Synkera's MikroKera Ultra

Appx0262

Synkera presented the MikroKera Ultra Module at the Department of Homeland Security S&T "Cell-All" demonstration in Los Angeles on September 28, 2011. The aim of the project is to develop sensors that can detect life-threatening gases to be incorporated into cellphones as a crowd-sourced monitoring device. The success of the Synkera Bluetooth module and its fit into the Cell-All project headed by the Department of Homeland Security has been featured on numerous local and national news sites.





2



Sensors
Membranes
Nanocomposites
Microcomponents

## Security and Defense

Synkera specializes in solid-state sensors that feature excellent performance and reliability, all in a small form factor to enable simple chemical analysis. A key advantage of our technology is the ability to detect a wide range of dangerous chemicals including:

- Explosives
- Toxic Industrial Chemicals (TIC)
- Chemical Warfare Agents (CWA)
- Nerve Agents

Synkera's sensor technology enables better protection of warfighters and key infrastructure, providing the ability to produce situational awareness and actionable intelligence in real-time, via tracking of dangerous levels of hazardous chemicals that are very accessible to asymmetric threats.

Our **ProKera™** product line is an excellent choice for fixed monitoring applications, while our newest **MikroKera™** product line is pushing the boundaries on miniaturization and power consumption to enable distributed wireless sensor networks. The United States Department of Defense (DoD) and Department of Homeland Security (DHS) have repeatedly awarded grants to develop Synkera's sensor technology, and products are now being commercialized to meet the critical needs of these organizations.

©2011 Synkera Technologies, Inc. | Contact Us | Privacy Policy
2605 Trade Centre Avenue. Suite C. Longmont, CO 80503
(720) 494-8401

3

# DHS S&T, California First Responders, Demonstrate Smart Phone-Based Chem Sensors

The Department of Homeland Security (DHS) and several agencies in California have demonstrated second-generation prototype chemical sensors that work with smart phones to detect the presence of toxic chemical compounds and provide alerts to first responders and emergency authorities to improve situational awareness of potentially hazardous events and terrorist attacks, thus enabling smarter decisions and faster response times.

The recent demonstration and training exercise included the DHS Science and Technology branch, the Los Angeles Fire and Police Departments and the California Environmental Protection Agency, as part of a response to a carbon monoxide leak in a hotel room. The demonstration of the Cell-All technology included two sensor prototypes, one developed by NASA's Ames Research Center and the other by the small firm Synkera Technologies and wireless technology company Qualcomm [QCOM].

The ultimate goal of Cell-All is the development of very low cost and very low power sensors that can be integrated directly into commercial smart phones such as a Blackberry, iPhone or Droid, that are in use by hundreds of millions of people. Such a vast deployment of sensors, which could be heavily concentrated in areas given the common use of smart phones, could enable the creation of a sensor network that warns of hazardous chemical events…
The sensor developed by Synkera and Qualcomm is about palm-size and also continuously sends real-time data to a smart phone while it is detecting an event.
https://www.defensedaily.com/dhs-st-california-first-responders-demonstrate-smart-phone-based-chem-sensors-2/uncategorized/

4

Appx0265

DHS; S&T Directorate; "Cell-All" Request: Adding the 1st Ind. claim of the 1st Patent ('497) issued to the Plaintiff (filed 04-05-06), illustrates infringement of Plaintiff's claimed invention the same as: Ind. claim 10 of the ('752) Patent; Ind. claim 1 of the ('189) Patent; Ind. claim 23 of the ('439) Patent; and, Ind. claim 5 of the ('287) Patent. An example of the infringement is demonstrated below in a claim chart using the specifications of LG Electronics (i.e. LG is representative of the specifications of Apple and Samsung) for the development, manufacture, and commercialization of a Cell-All "WMD Electronic Detection Device". The *Synkera "MikroKera Ultra"* integration with the CMDC Detection Device is also added.

5

| LG Electronics: Electronic Detection Device | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 | Patent #: 8,106,752; Independent Claim 10 | Patent #: 7,385,497; Independent Claim 1 |
|---|---|---|---|---|---|
| DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to Qualcomm, LG, Apple, and Samsung. Sensors will integrate with 261 million electronic devices (i.e. cell phones) | A monitoring device, comprising: | A cell phone comprising:<br><br>*Note: This claim 23 of the '439 patent covers the 'new and improved' cell phone (utility patent requirement) the DHS requested in its Cell-All solicitation* | A communication device of at least one of a cell phone, a smart phone, a desktop, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: | A multi-sensor detection and lock disabling system for monitoring products and for detecting explosive, nuclear, contraband, chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: | A multi sensor detection and lock disabling system for monitoring products and for detecting chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: |
| The performance of LG's electronic detection devices: CPU that's at the core of the chipset is vital for the daily user experience and the general computing performance of the electronic detection devices (i.e. smartphone). | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; | at least one cell phone detector case having a front side, a rear side, a power source, and a Central processing unit (cpu); | a detector case including a front side, a rear side, a power source and a Central Processing Unit (cpu); |

6

Appx0267

| | | | | | |
|---|---|---|---|---|---|
| LG electronic detection devices has an internal temperature sensor which monitors the CPU and battery temperature of device | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X | X | X |
| LG electronic detection devices, starting with LG G2, you can calibrate the motion sensor by going to Settings > General tab > Motion. | at least one motion sensor in communication with the at least one CPU; | X | X | X | X |
| LG's electronic detection devices: Thin Q has "the brightest" screen of any smartphone, thanks to its Super Bright Display technology. | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X | each detector case including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor; | each detector including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor |
| LG's electronic detection devices: GPS with A-GPS, GLONASS, and BDS | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |

7

Appx0268

| | | | | | |
|---|---|---|---|---|---|
| LG's electronic detection devices: Wi-Fi, Wi-Fi Direct | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of… WiFi connection, internet connection, radio frequency (RF) connection, cellular connection… capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group… of satellite, Bluetooth, WiFi… | X | X |
| LG's electronic detection devices: cellular connection; Bluetooth | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a… Bluetooth connection, WiFi connection, internet connection… cellular connection… short range radio frequency (RF) connection, or GPS connection; | X | X | X |
| After multiple unsuccessful attempts, the LG electronic detection will automatically perform a factory data reset and all of the personal files will be erased. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a lock on a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained, and unequipped individuals; and | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a lock on a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained and unequipped individuals; and |

8

Appx0269

| | | | | | |
|---|---|---|---|---|---|
| Battery Charging Specification, is power drawn from a USB port for charging. Three different sources of power: Standard downstream port (SDP), charging downstream port (CDP), and dedicated charging port (DCP). Wireless charging | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |
| LG's electronic detection device features include sensors for face/smile detection, iris scanner, and fingerprint recognition. | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use | X | X |

9

Case 3:23-cv-00608-XXXX Document 199-3 Filed 02/03/26 Page 104 of 160

| | | | | | |
|---|---|---|---|---|---|
| **Cell-All:** A wireless, wearable, mobile, device detects and identify chemicals in the air and sends detection data to another phone or a computer<br><br>LG Watch Sport Smartwatch wireless, wearable, mobile, electronic detection device for chem / bio / human heart rate detection and monitoring at rest or active | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… | a plurality of interchangeable cell phone sensors for detecting the chemical, biological, and radiological agents and compounds and capable of being disposed within the detector case; | a plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case; |
| **Cell-All:** The device detects and identify chemicals in the air and sends detection data to another phone (e.g. LG Smartphone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of at least one specific chemical, biological and radiological agent or compound; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of one specific chemical, biological and radiological agent and compound; |

10

| | | | | | |
|---|---|---|---|---|---|
| The LG electronic detection device, NFC is a short-range high frequency wireless communication technology; enables the exchange of data between devices; share content between digital devices. | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X | X | X |
| Voice Mate (i.e. Quick Voice; Q Voice) built-in application for various LG electronic detection devices (i.e. smartphone); automatic activation features; when car engine is started; lock and unlock doors, activate and deactivate security systems. LG SmartThinQ® app for smart home appliances built on an open platform, so it will work with evolving smart technologies and devices for years to come. *Cell-All*: The device detects and identify chemicals; sends to another phone | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and sends out a signal to another cell phone case, a handheld, a computer terminal located at a monitoring site, followed by and communicating with the cpu of the multi-sensor detection and automatic/mechanical lock disabler for exchanging information. | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and initiates signal transmission from the cpu to the automatic/mechanical lock disabler to lock or disable the lock of the product thereby preventing further contamination about the product and denying access to the product by unauthorized, untrained and unequipped individuals. |

11

Case 3:23-cv-00608-RGBD Document 1993 Filed 02/03/20 Page 106 of 160

| | | | | |
|---|---|---|---|---|
| Voice Mate (i.e. Quick Voice; Q Voice) built-in application for various LG electronic detection devices (i.e. smartphone); automatic activation features; when car engine is started; lock and unlock doors, activate and deactivate security systems. LG SmartThinQ® app for smart home appliances built on an open platform, so it will work with evolving smart technologies and devices… | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems | X | X |
| LG's electronic detection devices (i.e. at least LG G5 & LG V10 smartphones, and LG Watch Sport Smartwatch | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; | X | X |

12

Case 3:23-cv-00068-TKW-ZGHD Document 199 Filed 02/03/26 Page 108 of 160

| | | | | | |
|---|---|---|---|---|---|
| **Cell-All:** The device detects and identify chemicals in the air and sends detection data to another phone (e.g. LG Smartphone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X | X | X |

13

DHS; S&T Directorate; "Cell-All" Request: Adding the 1st Ind. claim of the 1st Patent ('497) issued to the Plaintiff (filed 04-05-06), illustrates infringement of Plaintiff's claimed invention the same as: Ind. claim 10 of the ('752) Patent; Ind. claim 1 of the ('189) Patent; Ind. claim 23 of the ('439) Patent; and, Ind. claim 5 of the ('287) Patent. An example of the infringement is demonstrated below in a claim chart using the specifications of Apple Inc. (i.e. Apple is representative of the specifications of LG and Samsung) for the development, manufacture, and commercialization of a Cell-All "WMD Electronic Detection Device". The *Synkera "MikroKera Ultra"* integration with the CMDC Detection Device is also added.

14

| Apple Inc.: Electronic Detection Device | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 | Patent #: 8,106,752; Independent Claim 10 | Patent #: 7,385,497; Independent Claim 1 |
|---|---|---|---|---|---|
| DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to Qualcomm, LG, Apple, and Samsung. Sensors will integrate with 261 million electronic devices (i.e. cell phones) | A monitoring device, comprising: | A cell phone comprising:<br><br>*Note: This claim 23 of the '439 patent covers the 'new and improved' cell phone (utility patent requirement) the DHS requested in its Cell-All solicitation* | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: | A multi-sensor detection and lock disabling system for monitoring products and for detecting explosive, nuclear, contraband, chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: | A multi sensor detection and lock disabling system for monitoring products and for detecting chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: |
| The performance of Apple's electronic detection devices: CPU that's a part of the chipset is vital for the daily user experience and the general computing performance of the electronic detection devices (i.e. smartphone). | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices; | at least one cell phone detector case having a front side, a rear side, a power source, and a Central processing unit (cpu); | a detector case including a front side, a rear side, a power source and a Central Processing Unit (cpu); |

15

Case 3:23-cv-00008-TKW-EMD   Document 199   Filed 02/03/20   Page 109 of 160

| | | | | | |
|---|---|---|---|---|---|
| Apple Files Patent for a new Temperature Sensor tied to a new Interactive Battery Indicator | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X | X | X |
| Apple's electronic detection devices: Apple M-series coprocessors are motion coprocessors used by Apple Inc. in their mobile devices. | at least one motion sensor in communication with the at least one CPU; | X | X | X | X |
| Apple's electronic detection devices: Highest color accuracy; full screen brightness & contrast; contrast ratio; lowest screen reflectance; smallest brightness variation | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X | each detector case including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor; | each detector including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor |
| Apple's electronic detection device: GPS with A-GPS, GLONASS | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |

16

| | | | | | |
|---|---|---|---|---|---|
| Apple's electronic detection device: Wi-Fi, dual-band, hotspot | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of... WiFi connection, internet connection, radio frequency (RF) connection, cellular connection... capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the communication device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... | X | X |
| Apple's electronic detection device: cellular connection; Bluetooth | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a... Bluetooth connection, WiFi connection, internet connection... cellular connection... short range radio frequency (RF) connection, or GPS connection; | X | X | X |
| Apple's electronic detection device includes a feature on that disables and erases all of the devices data after 10 failed passcode attempts. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained, and unequipped individuals; and | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained, and unequipped individuals; and |

17

Appx0278

| | | | | | |
|---|---|---|---|---|---|
| Apple's electronic detection device batteries and wall chargers which employ USB PD have the ability to charge devices up to 100W output using a USB-C connector | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |
| Apple's electronic detection device features include sensors for face/smile detection, and fingerprint recognition. | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal is locked by the biometric lock disabler to prevent unauthorized use | X | X |

18

| | | | | | |
|---|---|---|---|---|---|
| *Cell-All:* A wireless, wearable, mobile, device detects and identify chemicals in the air and sends detection data to another phone or a computer<br><br>Apple Watch Series 3 electronic detection device for chem / bio / human heart rate detection and monitoring at rest or active | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… | a plurality of interchangeable cell phone sensors for detecting the chemical, biological, and radiological agents and compounds and capable of being disposed within the detector case; | a plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case; |
| *Cell-All:* The device detects and identify chemicals in the air and sends detection data to another phone (e.g. Apple iPhone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of at least one specific chemical, biological and radiological agent or compound; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of one specific chemical, biological and radiological agent and compound; |

19

Appx0280

| | | | | | |
|---|---|---|---|---|---|
| The Apple electronic detection device, NFC is a short-range high frequency wireless communication technology; enables the exchange of data between devices; share content between digital devices. | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X | X | X |
| Apple's Viper SmartStart: Start, locate and control your car with your iPhone, or Apple Watch. "Nice": Manages the gate and garage door from your iPhone or Apple Watch using the Home app (i.e. voice) Siri. Apple HomeKit is a system that controls smart home devices. Viper system in your car so you can start, lock and unlock your car<br><br>*Cell-All:* The device detects and identify chemicals in the air sends detection data to another phone | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and sends out a signal to another cell phone case, a handheld, a computer terminal located at a monitoring site, followed by and communicating with the cpu of the multi-sensor detection and automatic/mechanical lock disabler for exchanging information. | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and initiates signal transmission from the cpu to the automatic/mechanical lock disabler to lock or disable the lock of the product thereby preventing further contamination about the product and denying access to the product by unauthorized, untrained and unequipped individuals. |

20

Case 3:23-cv-00048-VAB Document 1993 Filed 02/03/20 Page 118 of 160

| | | | | | |
|---|---|---|---|---|---|
| Apple's Viper SmartStart: Start, locate and control your car with your iPhone, or Apple Watch. "Nice": Manages the gate and garage door from your iPhone or Apple Watch using the Home app (i.e. voice) Siri. Apple HomeKit is a system that controls smart home devices. Viper system in your car so you can start, lock and unlock your car | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems | X | X |
| Apple electronic detection devices (i.e. at least iPhone 7 & iPhone 8 smartphones, and Apple Watch Series 3 | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection... short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; | X | X |

21

| | | | | | |
|---|---|---|---|---|---|
| **Cell-All:** The device detects and identify chemicals in the air and sends detection data to another phone (e.g. Apple Smartphone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X | X | X |

22

Appx0283

DHS; S&T Directorate; "Cell-All" Request: Adding the 1st Ind. claim of the 1st Patent ('497) issued to the Plaintiff (filed 04-05-06), illustrates infringement of Plaintiff's claimed invention the same as: Ind. claim 10 of the ('752) Patent; Ind. claim 1 of the ('189) Patent; Ind. claim 23 of the ('439) Patent; and, Ind. claim 5 of the ('287) Patent. An example of the infringement is demonstrated below in a claim chart using the specifications of Samsung Electronics (i.e. Samsung is representative of the specifications of LG and Apple) for the development, manufacture, and commercialization of a Cell-All "WMD Electronic Detection Device". The *Synkera "MikroKera Ultra"* integration with the CMDC Detection Device is also added.

23

Appx0284

| Samsung: Electronic Detection Device | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Independent Claim 23 | Patent #: 9,096,189; Independent Claim 1 | Patent #: 8,106,752; Independent Claim 10 | Patent #: 7,385,497; Independent Claim 1 |
|---|---|---|---|---|---|
| DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to Qualcomm, LG, Apple, and Samsung. Sensors will integrate with 261 million electronic devices (i.e. cell phones) | A monitoring device, comprising: | A cell phone comprising:<br><br>*Note: This claim 23 of the '439 patent covers the 'new and improved' cell phone (utility patent requirement) the DHS requested in its Cell-All solicitation* | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising: | A multi-sensor detection and lock disabling system for monitoring products and for detecting explosive, nuclear, contraband, chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: | A multi sensor detection and lock disabling system for monitoring products and for detecting chemical, biological, and radiological agents and compounds so that terrorist activity can be prevented, comprising: |
| The performance of Samsung's electronic detection devices: CPU that's a part of the chipset is vital for the daily user experience and the general computing performance of the electronic detection devices (i.e. smartphone). | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front-end processor for communication between a host computer and other devices; | at least one cell phone detector case having a front side, a rear side, a power source, and a Central processing unit (cpu); | a detector case including a front side, a rear side, a power source and a Central Processing Unit (cpu); |

24

Appx0285

| | | | | | |
|---|---|---|---|---|---|
| Samsung's electronic detection device has various sensors like the temperature sensor for the battery and the CPU or processor. | at least one temperature sensor in communication with the at least one CPU for monitoring temperature; | X | X | X | X |
| Samsung's electronic detection devices accelerometers handle axis-based motion sensing—reason why the smartphone can track steps without a separate wearable. | at least one motion sensor in communication with the at least one CPU; | X | X | X | X |
| Samsung's electronic detection device has set the bar with the highest-rated smartphone displays. With a panel produced by Samsung, and optimized by Apple | at least one viewing screen for monitoring in communication with the at least one CPU; | X | X | each detector case including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor; | each detector including a sound alarm indicator, a readings panel, a light alarm indicator and a sensor |
| Samsung's electronic detection device: GPS with A-GPS, GLONASS, BDS, GALILEO | at least one global positioning system (GPS) connection in communication with the at least one CPU; | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; | at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long and short-range radio frequency (RF) connection, or GPS connection; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |

25

| | | | | | |
|---|---|---|---|---|---|
| Samsung's electronic detection device: Wi-Fi, dual-band, Wi-Fi Direct, hotspot | at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU; | wherein at least one of... WiFi connection, internet connection, radio frequency (RF) connection, cellular connection... capable of signal communication with the transmitter or the receiver; | wherein the only type or types of communication with the transmitter and the receiver of the... device and transceivers of the products is a type or types selected from the group... of satellite, Bluetooth, WiFi... | X | X |
| Samsung's electronic detection device: cellular connection; Bluetooth | at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | at least one of a... Bluetooth connection, WiFi connection, internet connection... cellular connection... short range radio frequency (RF) connection, or GPS connection; | X | X | X |
| Samsung's electronic detection device: After several unsuccessful log-in attempts using a passcode or fingerprint, a Samsung device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. | at least one locking mechanism in communication with the at least one CPU for locking the communication device, the at least one locking mechanism configured to at least one of engage (lock) the communication device, disengage (unlock) the communication device, or disable (make unavailable) the communication device; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; | X | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a lock on a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained, and unequipped individuals; and | an automatic/mechanical lock disabler interconnected to the cpu and which is mounted to a lock on a product for receiving transmission from the cpu to lock or disable the lock on the product to prevent access to the product by unauthorized, untrained and unequipped individuals; and |

26

Appx0287

| | | | | | |
|---|---|---|---|---|---|
| Samsung's electronic detection devices Fast Charge power bank has a capacity of 5,100mAh and can provide up to 1.5 charges for the majority of smartphones. The power bank has an LED power indicator; comes with a micro USB cable and a micro USB to USB Type-C adapter. | at least one power source comprising at least one of a battery, electrical connection, or wireless connection, to provide power to the communication device; | X | X | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; | an Internet connection, a GPS connection, and a power connection located on the rear side and which are interconnected with the cpu; |
| Samsung's electronic detection devices allows fingerprints to set-up the fingerprint scanner for easy log-in and lock-out. Face unlock uses the front-facing camera to identify the user and unlock the device. Iris scanning uses special sensors on front of phone to identify and unlock the device. | at least one biometric sensor in communication with the at least once CPU for providing biometric authentication to access the communication device; | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop… is locked by the biometric lock disabler to prevent unauthorized use | X | X |

27

Case 3:23-cv-00068-TAD-KDM   Document 1-93   Filed 02/03/26   Page 122 of 160

| | | | | | |
|---|---|---|---|---|---|
| ***Cell-All***: wireless, wearable, mobile, device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone or a computer<br><br>Samsung S3 Classic electronic detection device for chem / bio / human heart rate detection and monitoring at rest or active | at least one sensor for chemical, biological, or human detection in communication with the at least one CPU; | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and | the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween… | a plurality of interchangeable cell phone sensors for detecting the chemical, biological, and radiological agents and compounds and capable of being disposed within the detector case; | a plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case; |
| ***Cell-All***: The device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone (e.g. Samsung Smartphone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents; | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of at least one specific chemical, biological and radiological agent or compound; | a plurality of indicator lights located on the front side with each indicator light corresponding to and indicating the detection of one specific chemical, biological and radiological agent and compound; |

28

Appx0289

| | | | | | |
|---|---|---|---|---|---|
| Samsung's electronic detection device, near-field communication (NFC) Ring can unlock the device. The NFC Ring has two NFC tag inlays inside the ring and can be used to unlock & control mobile devices | at least one radio-frequency near-field communication (NFC) connection in communication with the at least one CPU… | X | X | X | X |
| The Samsung SmartThings contains: one SmartThings Hub, two SmartThings Multipurpose Sensors, one SmartThings Motion Sensor, and one SmartThings Outlet. Connects to appliances, lights, locks, cameras, thermostats, sensors. Get alerts on smartphone if motion in the home. BMW Digital Key to lock/unlock; and start it up with Samsung phones only. *Cell-All*: The device detects and identify chemicals in the air using a "sample jet" sends detection data to another phone | at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to control components of a building, or… detect at least one of a chemical biological… agent such that the communication device is capable of communicating, monitoring, detecting, and controlling. | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device;<br><br>a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, a cell phone detection device, or a locking device; | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and sends out a signal to another cell phone case, a handheld, a computer terminal located at a monitoring site, followed by and communicating with the cpu of the multi-sensor detection and automatic/mechanical lock disabler for exchanging information. | whereupon detection of specific chemical, biological, or radiological agents or compounds by the detectors causes the lighting of the corresponding indicator light for visual confirmation of the detection and initiates signal transmission from the cpu to the automatic/mechanical lock disabler to lock or disable the lock of the product thereby preventing further contamination about the product and denying access to the product by unauthorized, untrained and unequipped individuals. |

29

Case 3:23-cv-00608-WHO   Document 1-3   Filed 02/03/26   Page 124 of 160

| | | | | | |
|---|---|---|---|---|---|
| The Samsung SmartThings Home Monitoring Kit contains: one SmartThings Hub, two SmartThings Multipurpose Sensors, one SmartThings Motion Sensor, and one SmartThings Outlet. Connects to appliances, lights, speakers, locks, cameras, thermostats, sensors. Get alerts on smartphone if there's unexpected entry or motion in the home. | X | X | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems | X | X |
| Samsung electronic detection devices (i.e. at least the Galaxy Note 8 & Galaxy S8 smartphones, and Samsung Gear S3 Classic | X | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; | wherein at least one satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection… short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products; | X | X |

30

Case 3:23-cv-00808-WQH Document 1-99 Filed 02/03/20 Page 128 of 160

| Cell-All: The device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone (e.g. Samsung Smartphone) or a computer "How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.

WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | X | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. | X | X | X |
|---|---|---|---|---|---|

31

# Government Third Party Contractors' CMDC Devices Manufactured *"for"* the Government in the DHS; S&T "*Cell-All*" initiative

32

Appx0293

| LG Electronics: CMDC Device | Apple Inc.: CMDC Device | Samsung: CMDC Device |
|---|---|---|
| DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to LG, Apple, and Samsung. Sensors will integrate with 261 million CMDC devices (i.e. cell phones) | DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to LG, Apple, and Samsung. Sensors will integrate with 261 million CMDC devices (i.e. cell phones) | DHS; S&T "Cell-All" initiative. Develop detection device to detect deadly chemicals". Stephen Dennis; PM: Contracts to LG, Apple, and Samsung. Sensors will integrate with 261 million CMDC devices (i.e. cell phones) |
| The performance of LG's CMDC detection devices: CPU that's at the core of the chipset is vital for the daily user experience and the general computing performance of the CMDC detection devices (i.e. smartphone). | The performance of Apple's CMDC detection devices: CPU that's a part of the chipset is vital for the daily user experience and the general computing performance of the CMDC detection devices (i.e. smartphone). | The performance of Samsung's CMDC detection devices: CPU that's a part of the chipset is vital for the daily user experience and the general computing performance of the CMDC detection devices (i.e. smartphone). |
| LG CMDC detection devices has an internal temperature sensor which monitors the CPU and battery temperature of device | Apple Files Patent for a new Temperature Sensor tied to a new Interactive Battery Indicator | Samsung's CMDC detection devices has various sensors like the temperature sensor for the battery and the CPU or processor. |
| LG CMDC detection devices, starting with LG G2, you can calibrate the motion sensor by going to Settings > General tab > Motion. | Apple's CMDC detection devices: Apple M-series coprocessors are motion coprocessors used by Apple Inc. in their CMDC devices. | Samsung's CMDC detection devices accelerometers handle axis-based motion sensing—reason why the smartphone can track steps without a separate wearable. |

33

| | | |
|---|---|---|
| LG's CMDC detection devices: Thin Q has "the brightest" screen of any smartphone, thanks to its Super Bright Display technology. | Apple's CMDC detection devices: Highest absolute color accuracy; full screen brightness; full screen contrast; contrast ratio; lowest screen reflectance; smallest brightness variation | Samsung's CMDC detection device has set the bar with the highest-rated smartphone displays. With a panel produced by Samsung, and optimized by Apple |
| LG's CMDC detection devices: GPS with A-GPS, GLONASS, and BDS | Apple's CMDC detection device: GPS with A-GPS, GLONASS | Samsung's CMDC detection device: GPS with A-GPS, GLONASS, BDS, GALILEO |
| LG's CMDC detection devices: Wi-Fi, Wi-Fi Direct | Apple's CMDC detection device: Wi-Fi, dual-band, hotspot | Samsung's CMDC detection device: Wi-Fi, dual-band, Wi-Fi Direct, hotspot |
| LG's CMDC detection devices: cellular connection; Bluetooth | Apple's CMDC detection device: cellular connection; Bluetooth | Samsung's CMDC detection device: cellular connection; Bluetooth |

34

| | | |
|---|---|---|
| LG's CMDC detection device. After multiple unsuccessful attempts, the LG CMDC detection device will automatically perform a factory data reset and all of the personal files will be erased. | Apple's CMDC detection device includes a feature on that disables and erases all of the CMDC devices' data after 10 failed passcode attempts. | Samsung's CMDC detection device: After several unsuccessful log-in attempts using a passcode or fingerprint, a Samsung CMDC device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. |
| LG's CMDC detection device. Battery Charging Specification, is power drawn from a USB port for charging. Three different sources of power: Standard downstream port (SDP), charging downstream port (CDP), and dedicated charging port (DCP). Wireless charging | Apple's CMDC detection device batteries and wall chargers which employ USB PD have the ability to charge the CMDC devices up to 100W output using a USB-C connector | Samsung's CMDC detection devices Fast Charge power bank has a capacity of 5,100mAh and can provide up to 1.5 charges for the majority of CMDC devices. The power bank has an LED power indicator; comes with a micro USB cable and a micro USB to USB Type-C adapter. |
| LG's CMDC detection device features include sensors for face/smile detection, iris scanner, and fingerprint recognition. | Apple's CMDC detection device features include sensors for face/smile detection, and fingerprint recognition. | Samsung's CMDC detection devices allows fingerprints to set-up the fingerprint scanner for easy log-in and lock-out. Face unlock uses the front-facing camera to identify the user and unlock the CMDC device. Iris scanning uses special sensors on front of phone to identify and unlock the CMDC device. |

35

| | | |
|---|---|---|
| *Cell-All:* A wireless, wearable, mobile, device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone or a computer<br><br>LG Watch Sport Smartwatch wireless, wearable, mobile CMDC detection device for chem / bio / human heart rate detection and monitoring at rest or active | *Cell-All:* A wireless, wearable, mobile, device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone or a computer<br><br>Apple Watch Series 3 wireless, wearable, mobile CMDC detection device for chem / bio / human heart rate detection and monitoring at rest or active | *Cell-All:* A wireless, wearable, mobile, device detects and identify chemicals in the air using a "sample jet" and sends detection data to another phone or a computer<br><br>Samsung S3 Classic wireless, wearable, mobile CMDC detection device for chem / bio / human heart rate detection and monitoring at rest or active |
| *Cell-All:* The device detects and identify chemicals in the air and sends detection data to another CMDC device (e.g. LG Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | *Cell-All*: The device detects and identify chemicals in the air and sends detection data to another CMDC device (e.g. Apple Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | *Cell-All:* The device detects and identify chemicals in the air using a "sample jet" and sends detection data to another CMDC device (e.g. Samsung Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology |
| The LG CMDC detection device, NFC is a short-range high frequency wireless communication technology; enables the exchange of data between CMDC devices; share content between digital CMDC devices. | The Apple CMDC detection device, NFC is a short-range high frequency wireless communication technology; enables the exchange of data between CMDC devices; share content between digital CMDC devices. | Samsung's CMDC detection device, near-field communication (NFC) Ring can unlock the CMDC device. The NFC Ring has two NFC tag inlays inside the ring and can be used to unlock & control CMDC devices |

36

Appx0297

| | | |
|---|---|---|
| LG's Voice Mate (i.e. Quick Voice; Q Voice) built-in application for various LG CMDC detection devices (i.e. smartphone); automatic activation features; when car engine is started; lock and unlock doors, activate and deactivate security systems. LG SmartThinQ® app for smart home appliances built on an open platform, so it will work with evolving smart technologies and CMDC devices for years to come.<br><br>***Cell-All***: The CMDC device detects and identify chemicals in the air using a "sample jet" sends detection data to another CMDC device | Apple's Viper SmartStart: Start, locate and control your car with your Apple CMDC phone or CMDC watch. "Nice": Manages the gate and garage door from your CMDC phone or CMDC watch using the Home app (i.e. voice) Siri. Apple HomeKit is a system that controls smart home devices. Viper system in your car so you can start, lock and unlock your car<br><br>***Cell-All***: The CMDC device detects and identify chemicals in the air using a "sample jet" sends detection data to another CMDC device | The Samsung SmartThings contains: one SmartThings Hub, two SmartThings Multipurpose Sensors, one SmartThings Motion Sensor, and one SmartThings Outlet. Connects to appliances, lights, locks, cameras, thermostats, sensors. Get alerts on CMDC phone or CMDC watch if motion in the home. BMW Digital Key to lock/unlock; and start it up with Samsung's CMDC devices only.<br><br>***Cell-All***: The CMDC device detects and identify chemicals in the air using a "sample jet" sends detection data to another CMDC device |
| LG's Voice Mate (i.e. Quick Voice; Q Voice) built-in application for various LG CMDC detection devices (i.e. smartphone); automatic activation features; when car engine is started; lock and unlock doors, activate and deactivate security systems. LG SmartThinQ® app for smart home appliances built on an open platform, so it will work with evolving smart technologies and devices… | Apple's Viper SmartStart: Start, locate and control your car with your CMDC Phone, or CMDC Apple Watch. "Nice": Manages the gate and garage door from your CMDC Phone or CMDC Apple Watch using the Home app (i.e. voice) Siri. Apple HomeKit is a system that controls smart home devices. Viper system in your car so you can start, lock and unlock your car | The Samsung SmartThings Home Monitoring Kit contains: one SmartThings Hub, two SmartThings Multipurpose Sensors, one SmartThings Motion Sensor, and one SmartThings Outlet. Connects to appliances, lights, speakers, locks, cameras, thermostats, sensors. Get alerts on CMDC smartphone if there's unexpected entry or motion in the home. |

| | | |
|---|---|---|
| LG's CMDC detection devices (i.e. at least LG G5 & LG V10 smartphones, and LG Watch Sport Smartwatch) | Apple CMDC detection devices (i.e. at least iPhone 7, 8, 9 & 11 smartphones, and Apple Watch Series 3 & 4) | Samsung CMDC detection devices (i.e. at least the Galaxy Note 8 & Galaxy S8 smartphones, and Samsung Gear S3 Classic) |
| *Cell-All:* The CMDC device detects and identify chemicals in the air and sends detection data to another CMDC device (e.g. LG Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | *Cell-All:* The CMDC device detects and identify chemicals in the air and sends detection data to another CMDC device (e.g. Apple Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology | *Cell-All:* The CMDC device detects and identify chemicals in the air using a "sample jet" and sends detection data to another CMDC device (e.g. Samsung Smartphone) or a computer<br>"How does it work?" Shows indicator lights for the monitoring device; relayed over a cellular network to the monitoring center.<br><br>WMD sensor development for the Cell-All Initiative: Qualcomm, NASA, and Rhevision Technology |

38

Appx0299

# Third Party Government Contractor (Apple Inc.) was Issued the *First* Patent for the CMDC Device

39

Appx0300

# DESIGN CHART FOR APPLE'S CMDC DEVICE v. PLAINTIFF'S CMDC DEVICE

| Apple's 1st Patent for the CMDC device (i.e. smartphone; electronic device) ornamental design: First application filing date is January 5, 2007 (App. No: 29/270,887). Patent No: D558756 | Plaintiff's 1st Patent for the CMDC device (i.e. detector Case; electronic device) ornamental design: USPTO Disclosure Document filed Nov. 17, 2004; First application filing date is April 5, 2006 (App. No: 11/397,118). Patent No: 7,385,497 |
|---|---|
| CMDC Device: "The device (i.e. electronic device) which controls the flow of electrons is called electronic device. These devices are the main building blocks of electronic circuits. The various electronic devices are computers, mobile phones, etc." Retrieved from: https://www.physics-and-radio-electronics.com/electronic-devices-and-circuits.html | CMDC Device: The detector case includes a power source (battery or electrical) … A cpu 40 is mounted within the detector case 12 and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates |
| FIG. 1 is a front perspective view of an electronic device in accordance with the present design. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 2 is a rear perspective view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 3 is a front view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |

40

| | |
|---|---|
| FIG. 4 is a rear view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 5 is a top view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 6 is a bottom view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 7 is a left side view for the electronic device; and, | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 8 is a right side view for the electronic device | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| The broken lines depicted in FIGS. 1, 2, and 6 of the inner rectangle, at the center bottom of the electronic device, represent the bounds of the claimed design, while the broken lines inside the rectangle, shown only in FIG. 6, are directed to environment and are for illustrative purposes only; the broken lines from no part of the claimed design. | Fig. 1 is an illustrative drawing of the rectangle design of the detector case; and, Fig. 17 are illustrative drawings of the rectangle design of the cell phone (i.e. smartphone) and the cell phone detector case |

41

| | |
|---|---|
| The article is not limited to the scale shown herein. As indicated in the title, the article of manufacture to which the ornamental design has been applied is an electronic device. Examples of an electronic device are a computer, a portable or hand-held device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item, toy, and/or the like. | FIG. 15 is a representative schematic view of… a monitoring PC or computer terminal. It is another objective of the present invention to provide… products grouped together by common features in several product groupings such as design similarity… product grouping strategy has been developed wherein products… having the same or similar design… [i]n addition to grouping products together by features, designs and materials… FIG. 17 is a perspective view... of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone and cell phone case |
| The first iPhone featured a two-tone back that was mostly made of aluminum — a design element that the company would return to this year with the release of the iPhone 5 with a predominantly metal back. Apple's interim devices opted for different materials: The iPhone 3G and 3GS had plastic backs, while the iPhone 4 and 4S backs were made of glass. Retrieved from: https://appleinsider.com/articles/12/12/18/apple-wins-patent-for-first-iphone-designed-by-jobs-ive | … [P]roduct grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design… [i]n addition to grouping products together by features, designs and materials… the products grouped into what may be referred to as Product grouping 3 (detector case; modified and adapted)… the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include… mobile communication devices… personal computers (PCs), laptops, cell phones, personal digital assistants (PDAs)… handhelds |

42

Case 3:23-cv-00008-TCB-RGV   Document 199   Filed 02/03/26   Page 136 of 160

## Third Party Government Contractors CMDC Designs



**Typical Design Patent**
Mostly solid lines

Apple iPhone
Design patent D558756

Samsung Galaxy S 4G
Competing product

Bezel claimed

Bezel similar
Infringing

Button
not claimed

Back
claimed

Button different
Not relevant

Back different
Not infringing

Figure 1

43



FOLDABLE SMARTPHONE WITH CURVED DISPLAY

44

Appx0305

# Third Party Government Contractor (LG Electronics) Utility Specifications and Capabilities for the CMDC Device

Appx0306



COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

3 — WIRELESS/CELLULAR MODEM
6 — OPERATING SYSTEM (OS)
1 — COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)
5 — GLOBAL POSITIONING SYSTEM (GPS)
7 — INTERNET WiFi
8 — GATEWAY - INTERFACE

9 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS
10 — BIOMETRIC FINGERPRINT FACIAL IRIS
11 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

INTERCONNECTION CAPABILITIES
12
CBRN-E DETECTION DEVICE — 13
INFRARED DETECTION OF HUMANS — 14
BIOMETRIC IDENTIFICATION DEVICE
15 — WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING
16 — SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE
17 — VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE
18 — UNMANNED VEHICLES; LAND, AIR, WATER AUTONOMOUS VEHICLES
19 — HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

RESPONDENT'S MOBILE DEVICE LG V30

26 — OPERATING SYSTEM (OS)
23 — WIRELESS/CELLULAR MODEM
20 — GATEWAY - INTERFACE
21 — RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)
27 — INTERNET WiFi
25 — GLOBAL POSITIONING SYSTEM (GPS)

28 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)
29 — BIOMETRIC FINGERPRINT FACIAL IRIS
30 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-ZCB   Document 192   Filed 02/03/26   Page 140 of 160



COMPLAINANT'S
COMMUNICATION, MONITORING
DETECTING, CONTROLLING (CMDC) DEVICE

3 — WIRELESS/ CELLULAR MODEM
6 — OPERATING SYSTEM (OS)
8 — GATEWAY - INTERFACE
1 — COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)
5 — GLOBAL POSITIONING SYSTEM (GPS)
7 — INTERNET WiFi
9 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS
10 — BIOMETRIC FINGERPRINT FACIAL IRIS
11 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

INTERCONNECTION CAPABILITIES
12
CBRN-E DETECTION DEVICE
13
INFRARED DETECTION OF HUMANS
14
BIOMETRIC IDENTIFICATION DEVICE
15 — WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING
16 — SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE
17 — VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE
18 — UNMANNED VEHICLES; LAND, AIR, WATER AUTONOMOUS VEHICLES
19 — HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

RESPONDENT'S MOBILE DEVICE
LG G6

26 — OPERATING SYSTEM (OS)
23 — WIRELESS/ CELLULAR MODEM
20 — GATEWAY - INTERFACE
21 — RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)
27 — INTERNET WiFi
25 — GLOBAL POSITIONING SYSTEM (GPS)
28 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)
29 — BIOMETRIC FINGERPRINT FACIAL IRIS
30 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW Document 192 Filed 02/03/20 Page 142 of 160



**COMPLIANANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE**

2 — WIRELESS/ CELLULAR MODEM
4 — OPERATING SYSTEM (OS)
6 — GATEWAY - INTERFACE
1 — COMPLIANANT'S CENTRAL PROCESSING UNIT (CPU)
3 — GLOBAL POSITIONING SYSTEM (GPS)
5 — INTERNET WiFi
7 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS
8 — BIOMETRIC FINGERPRINT FACIAL IRIS
9 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 — CELLULAR
14 — SATELLITE

**CBRNE - H DETECTION DEVICE:**
PLACED IN, ON, UPON OR ADJACENT THE COMMUNICATION MONITORING, DETECTING CONTROLLING (CMDC) DEVICE

13 — LOCATION CAPABILITY
15 — LOCATION CAPABILITY
10 — INTERFACE
11 — CPU
16 — SENSORS
17 — C
18 — R
19 — E
20 — B
21 — N
22 — H
24 — INTERFACE
23 — POWER SOURCE

**RESPONDENT'S MOBILE DEVICE LG V30**

26 — OPERATING SYSTEM (OS)
27 — WIRELESS/ CELLULAR MODEM
25 — GATEWAY - INTERFACE
29 — 
RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)
28 — INTERNET WiFi
30 — GLOBAL POSITIONING SYSTEM (GPS)
31 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)
32 — BIOMETRIC FINGERPRINT FACIAL IRIS
33 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-HTC   Document 1-2   Filed 02/03/20   Page 143 of 160



COMPLAINANT'S
COMMUNICATION, MONITORING
DETECTING, CONTROLLING (CMDC) DEVICE

2 — WIRELESS/ CELLULAR MODEM

OPERATING SYSTEM (OS)

1 — COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

6 — GATEWAY - INTERFACE

3 — GLOBAL POSITIONING SYSTEM (GPS)

5 — INTERNET WiFi

7 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

8 — BIOMETRIC FINGERPRINT FACIAL IRIS

9 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 — CELLULAR

CBRNE - H
DETECTION DEVICE:

PLACED IN, ON, UPON OR
ADJACENT THE COMMUNICATION
MONITORING, DETECTING
CONTROLLING (CMDC) DEVICE

13 — LOCATION CAPABILITY

15 — LOCATION CAPABILITY

10 — INTERFACE

11 — CPU

16 — SENSORS

17 — C
18 — R
19 — E
20 — B
21 — N
22 — H

24 — INTERFACE

23 — POWER SOURCE

14 — SATELLITE

RESPONDENT'S MOBILE DEVICE
LG G6

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

25 —

26 — 27 — 29 —

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

28 — INTERNET WiFi

30 — GLOBAL POSITIONING SYSTEM (GPS)

31 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

32 — BIOMETRIC FINGERPRINT FACIAL IRIS

33 — DISABLE LOCK MEC AFTER M FAILED A

Case 3:23-cv-00008-TCB   Document 92   Filed 02/03/20   Page 143 of 160



COMPLIANANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

1 COMPLIANANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

6 GATEWAY - INTERFACE

10 INTERFACE

12 CELLULAR

LG WATCH SPORT

14 SATELLITE

13 CELLULAR

GPS

11 CPU

15

16 OS

17 WiFi

NFC

18

19 CHEM/BIO HEARTRATE SENSORS

20 INTERFACE

21 GATEWAY - INTERFACE

RESPONDENT'S MOBILE DEVICE LG V30

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

22 RESPONDENT'S CENTRAL PROCESSING UNIT (CPU) 23

25

INTERNET WiFi 24

GLOBAL POSITIONING SYSTEM (GPS) 26

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

BIOMETRIC FINGERPRINT FACIAL IRIS 8

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 9

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 27

BIOMETRIC FINGERPRINT FACIAL IRIS 28

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS 29

Case 3:23-cv-00008-TCB Document 199 Filed 02/03/26 Page 148 of 160



COMPLIANANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

2 — WIRELESS/ CELLULAR MODEM

OPERATING SYSTEM (OS)

12

CELLULAR

LG WATCH SPORT

14

SATELLITE

RESPONDENT'S MOBILE DEVICE LG G6

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

6 — GATEWAY - INTERFACE

10 — INTERFACE

13 — CELLULAR

GPS

1 — COMPLIANANT'S CENTRAL PROCESSING UNIT (CPU)

11 — CPU

15

20

16 — OS

17 — WiFi

21 — GATEWAY - INTERFACE

22

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

23

25

3 — GLOBAL POSITIONING SYSTEM (GPS)

INTERNET WiFi — 5

NFC — 18

19 — CHEM/BIO HEARTRATE SENSORS

24 — INTERNET WiFi

26 — GLOBAL POSITIONING SYSTEM (GPS)

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS — 7

BIOMETRIC FINGERPRINT FACIAL IRIS — 8

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) — 9

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) — 27

BIOMETRIC FINGERPRINT FACIAL IRIS — 28

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS — 29

Case 3:23-cv-00008-TCB   Document 199   Filed 02/03/20   Page 145 of 160

# Third Party Government Contractor (Apple Inc.) Utility Specifications and Capabilities for the CMDC Device

Appx0313



COMPLAINANT'S
COMMUNICATION, MONITORING
DETECTING, CONTROLLING (CMDC) DEVICE

3 WIRELESS/ CELLULAR MODEM

6 OPERATING SYSTEM (OS)

8 GATEWAY - INTERFACE

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

5 GLOBAL POSITIONING SYSTEM (GPS)

7 INTERNET WiFi

9 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

10 BIOMETRIC FINGERPRINT FACIAL IRIS

11 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 INTERCONNECTION CAPABILITIES

CBRN-E DETECTION DEVICE — 13

INFRARED DETECTION OF HUMANS — 14

BIOMETRIC IDENTIFICATION DEVICE

15 WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING

16 SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE

17 VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE

18 UNMANNED VEHICLES; LAND, AIR, WATER AUTONOMOUS VEHICLES

19 HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

RESPONDENT'S MOBILE DEVICE
iPhone 7

20 GATEWAY - INTERFACE

26 OPERATING SYSTEM (OS)

23 WIRELESS/ CELLULAR MODEM

21

26 RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

27 INTERNET WiFi

25 GLOBAL POSITIONING SYSTEM (GPS)

28 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

29 BIOMETRIC FINGERPRINT FACIAL IRIS

30 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TCB Document 1992 Filed 02/03/20 Page 148 of 160



### COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

3 — WIRELESS/ CELLULAR MODEM

6 — OPERATING SYSTEM (OS)

8 — GATEWAY - INTERFACE

1 — COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

5 — GLOBAL POSITIONING SYSTEM (GPS)

7 — INTERNET WiFi

9 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

10 — BIOMETRIC FINGERPRINT FACIAL IRIS

11 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

### INTERCONNECTION CAPABILITIES

12

13 — CBRN-E DETECTION DEVICE

14 — INFRARED DETECTION OF HUMANS

15 — BIOMETRIC IDENTIFICATION DEVICE

WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING

16 — SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE

17 — VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE

18 — UNMANNED VEHICLES; LAND, AIR, WATER AUTONOMOUS VEHICLES

19 — HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

### RESPONDENT'S MOBILE DEVICE iPhone 8

20 — GATEWAY - INTERFACE

26 — OPERATING SYSTEM (OS)

23

21 — WIRELESS/ CELLULAR MODEM

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

27 — INTERNET WiFi

25 — GLOBAL POSITIONING SYSTEM (GPS)

28 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

29 — BIOMETRIC FINGERPRINT FACIAL IRIS

30 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-ZACH   Document 1992   Filed 02/03/20   Page 149 of 160



**COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE**

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

6 GATEWAY - INTERFACE

7 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

8 BIOMETRIC FINGERPRINT FACIAL IRIS

9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 CELLULAR

**CBRNE - H DETECTION DEVICE:**

PLACED IN, ON, UPON OR ADJACENT THE COMMUNICATION MONITORING, DETECTING CONTROLLING (CMDC) DEVICE

13 LOCATION CAPABILITY

15 LOCATION CAPABILITY

10 INTERFACE

11 CPU

16 SENSORS

17 C
18 R
19 E
20 B
21 N
22 H

POWER SOURCE

23

14 SATELLITE

24 INTERFACE

25 GATEWAY - INTERFACE

**RESPONDENT'S MOBILE DEVICE iPhone 7**

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

26 ... 27 ... 29

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

28 INTERNET WiFi

30 GLOBAL POSITIONING SYSTEM (GPS)

31 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

32 BIOMETRIC FINGERPRINT FACIAL IRIS

33 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW Document 192   Filed 02/03/20   Page 159 of 160



**COMPLAINANT'S COMMUNICATION, MONITORING, DETECTING, CONTROLLING (CMDC) DEVICE**

- 2 WIRELESS/ CELLULAR MODEM
- 4 OPERATING SYSTEM (OS)
- 6 GATEWAY - INTERFACE
- 1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)
- 3 GLOBAL POSITIONING SYSTEM (GPS)
- 5 INTERNET WiFi
- 7 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS
- 8 BIOMETRIC FINGERPRINT FACIAL IRIS
- 9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

- 12 CELLULAR
- 14 SATELLITE

**CBRNE - H DETECTION DEVICE:**

PLACED IN, ON, UPON OR ADJACENT THE COMMUNICATION MONITORING, DETECTING CONTROLLING (CMDC) DEVICE

- 13 LOCATION CAPABILITY
- 15 LOCATION CAPABILITY
- 10 INTERFACE
- 11 CPU
- 16 SENSORS
- 17 C
- 18 R
- 19 E
- 20 B
- 21 N
- 22 H
- 24 INTERFACE
- 23 POWER SOURCE

**RESPONDENT'S MOBILE DEVICE iPHONE 8**

- OPERATING SYSTEM (OS)
- WIRELESS/ CELLULAR MODEM
- 25 GATEWAY - INTERFACE
- 26 27
- 29
- RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)
- 28 INTERNET WiFi
- 30 GLOBAL POSITIONING SYSTEM (GPS)
- 31 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)
- 32 BIOMETRIC FINGERPRINT FACIAL IRIS
- 33 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-ZCB   Document 199   Filed 02/03/26   Page 150 of 160



COMPLAINANT'S COMMUNICATION, MONITORING, DETECTING, CONTROLLING (CMDC) DEVICE

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

6 GATEWAY - INTERFACE

10 INTERFACE

12 CELLULAR

14 SATELLITE

APPLE WATCH SERIES 3

13 CELLULAR

GPS

11 CPU

15

16 OS

17 WiFi

20 INTERFACE

18 NFC

19 CHEM/BIO HEARTRATE SENSORS

21 GATEWAY - INTERFACE

RESPONDENT'S MOBILE DEVICE iPhone 7

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

22

23

25 RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

24 INTERNET WiFi

26 GLOBAL POSITIONING SYSTEM (GPS)

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

BIOMETRIC FINGERPRINT FACIAL IRIS 8

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 9

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 27

BIOMETRIC FINGERPRINT FACIAL IRIS 28

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS 29



COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

APPLE WATCH SERIES 3

RESPONDENT'S MOBILE DEVICE iPhone 8

CELLULAR

SATELLITE

2 WIRELESS/CELLULAR MODEM

4 OPERATING SYSTEM (OS)

6 GATEWAY - INTERFACE

10 INTERFACE

13 CELLULAR

GPS

11 CPU

15

16 OS

17 WiFi

20

21 GATEWAY - INTERFACE

OPERATING SYSTEM (OS)

WIRELESS/CELLULAR MODEM

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

22 RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

23

25

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

18 NFC

19 CHEM/BIO HEARTRATE SENSORS

24 INTERNET WiFi

26 GLOBAL POSITIONING SYSTEM (GPS)

7 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

8 BIOMETRIC FINGERPRINT FACIAL IRIS

9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

27 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

28 BIOMETRIC FINGERPRINT FACIAL IRIS

29 DISABLING LOCK MECHA AFTER MUL FAILED ATT

12

14

Case 3:23-cv-00608-RGE Document 199 Filed 02/03/26 Page 152 of 160

# Third Party Government Contractor (Apple Inc.) Utility Specifications and Capabilities for the CMDC Device

Appx0320



COMPLIANANT'S
COMMUNICATION, MONITORING
DETECTING, CONTROLLING (CMDC) DEVICE

3 — WIRELESS/ CELLULAR MODEM

6 — OPERATING SYSTEM (OS)

1 — COMPLIANANT'S CENTRAL PROCESSING UNIT (CPU)

5 — GLOBAL POSITIONING SYSTEM (GPS)

7 — INTERNET WiFi

8 — GATEWAY - INTERFACE

9 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

10 — BIOMETRIC FINGERPRINT FACIAL IRIS

11 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 — INTERCONNECTION CAPABILITIES

13 — CBRN-E DETECTION DEVICE

14 — INFRARED DETECTION OF HUMANS

15 — BIOMETRIC IDENTIFICATION DEVICE

16 — WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING

17 — SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE

18 — VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE

UNMANNED VEHICLES; LAND,AIR,WATER AUTONOMOUS VEHICLES

19 — HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

RESPONDENT'S MOBILE DEVICE GALAXY S8

26 — OPERATING SYSTEM (OS)

23 — WIRELESS/ CELLULAR MODEM

20 — GATEWAY - INTERFACE

21 — RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

27 — INTERNET WiFi

25 — GLOBAL POSITIONING SYSTEM (GPS)

28 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

29 — BIOMETRIC FINGERPRINT FACIAL IRIS

30 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-ZCB   Document 1-3   Filed 02/03/20   Page 154 of 160



COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE

3 — WIRELESS/ CELLULAR MODEM

6 — OPERATING SYSTEM (OS)

8 — GATEWAY - INTERFACE

1 — COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

5 — GLOBAL POSITIONING SYSTEM (GPS)

7 — INTERNET WiFi

9 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

10 — BIOMETRIC FINGERPRINT FACIAL IRIS

11 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

INTERCONNECTION CAPABILITIES

12

CBRN-E DETECTION DEVICE — 13

INFRARED DETECTION OF HUMANS — 14

BIOMETRIC IDENTIFICATION DEVICE — 15

WEARABLE MEDICAL DEVICE - CHEM/BIO MONITORING — 16

SMARTWATCH DETECTION CHEM/BIO/HUMAN+HEARTRATE — 17

VEHICLE STALL-STOP-SLOWDOWN, LOCKS, IGNITION, TEMPERATURE — 18

UNMANNED VEHICLES; LAND, AIR, WATER AUTONOMOUS VEHICLES

19

HOME BUILDING MONITORING LOCK, UNLOCK DOOR, ETC

RESPONDENT'S MOBILE DEVICE GALAXY NOTE 8

26 — OPERATING SYSTEM (OS)

23 — WIRELESS/ CELLULAR MODEM

20 — GATEWAY - INTERFACE

21 — RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

27 — INTERNET WiFi

25 — GLOBAL POSITIONING SYSTEM (GPS)

28 — RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

29 — BIOMETRIC FINGERPRINT FACIAL IRIS

30 — DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TCB Document 199 Filed 02/03/20 Page 156 of 160



COMPLAINANT'S COMMUNICATION, MONITORING, DETECTING, CONTROLLING (CMDC) DEVICE

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

6 GATEWAY - INTERFACE

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS 7

BIOMETRIC FINGERPRINT FACIAL IRIS 8

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 9

12 CELLULAR

CBRNE - H DETECTION DEVICE:
PLACED IN, ON, UPON OR ADJACENT THE COMMUNICATION MONITORING, DETECTING CONTROLLING (CMDC) DEVICE

13 LOCATION CAPABILITY

15 LOCATION CAPABILITY

10 INTERFACE

11 CPU

16 SENSORS

17 C
18 R
19 E
20 B
21 N
22 H

23 POWER SOURCE

14 SATELLITE

24 INTERFACE

25 GATEWAY - INTERFACE

RESPONDENT'S MOBILE DEVICE GALAXY S8

OPERATING SYSTEM (OS)

WIRELESS/ CELLULAR MODEM

26    27    29

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

28 INTERNET WiFi

30 GLOBAL POSITIONING SYSTEM (GPS)

RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC) 31

BIOMETRIC FINGERPRINT FACIAL IRIS 32

DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS 33

Case 3:23-cv-00082-TKW-ZCB   Document 199   Filed 02/03/26   Page 158 of 160



**COMPLAINANT'S COMMUNICATION, MONITORING DETECTING, CONTROLLING (CMDC) DEVICE**

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

12 CELLULAR

**CBRNE - H DETECTION DEVICE:**

PLACED IN, ON, UPON OR ADJACENT THE COMMUNICATION MONITORING, DETECTING CONTROLLING (CMDC) DEVICE

14 SATELLITE

**RESPONDENT'S MOBILE DEVICE GALAXY NOTE 8**

6 GATEWAY - INTERFACE

1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

13 LOCATION CAPABILITY

15 LOCATION CAPABILITY

10 INTERFACE

11 CPU

16 SENSORS

17 C
18 R
19 E

20 B
21 N
22 H

24 INTERFACE

23 POWER SOURCE

25 GATEWAY - INTERFACE

26 OPERATING SYSTEM (OS)

27 WIRELESS/ CELLULAR MODEM

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

28 INTERNET WiFi

30 GLOBAL POSITIONING SYSTEM (GPS)

7 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

8 BIOMETRIC FINGERPRINT FACIAL IRIS

9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

31 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

32 BIOMETRIC FINGERPRINT FACIAL IRIS

33 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TKW-ZCB   Document 199   Filed 02/03/20   Page 158 of 160



COMPLIANANT'S
COMMUNICATION, MONITORING
DETECTING, CONTROLLING (CMDC) DEVICE

2 WIRELESS/ CELLULAR MODEM

4 OPERATING SYSTEM (OS)

1 COMPLIANANT'S CENTRAL PROCESSING UNIT (CPU)

3 GLOBAL POSITIONING SYSTEM (GPS)

5 INTERNET WiFi

6 GATEWAY - INTERFACE

10 INTERFACE

7 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

8 BIOMETRIC FINGERPRINT FACIAL IRIS

9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 CELLULAR

14 SATELLITE

SAMSUNG GEAR S3 CLASSIC

13 CELLULAR

GPS

11 CPU

15

16 OS

17 WiFi

18 NFC

19 CHEM/BIO HEARTRATE SENSORS

20

21 GATEWAY - INTERFACE

INTERFACE

RESPONDENT'S MOBILE DEVICE GALAXY S8

22 OPERATING SYSTEM (OS)

23 WIRELESS/ CELLULAR MODEM

25

RESPONDENT'S CENTRAL PROCESSING UNIT (CPU)

24 INTERNET WiFi

26 GLOBAL POSITIONING SYSTEM (GPS)

27 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

28 BIOMETRIC FINGERPRINT FACIAL IRIS

29 DISABLING LOCK MECHANISM AFTER MULTIPLE FAILED ATTEMPTS

Case 3:23-cv-00008-TCB   Document 1992   Filed 02/03/20   Page 159 of 160



COMPLAINANT'S COMMUNICATION, MONITORING ETECTING, CONTROLLING (CMDC) DEVICE

2 WIRELESS/CELLULAR MODEM
4 OPERATING SYSTEM (OS)
1 COMPLAINANT'S CENTRAL PROCESSING UNIT (CPU)
3 GLOBAL POSITIONING SYSTEM (GPS)
5 INTERNET WiFi
6 GATEWAY - INTERFACE

ISABLING K MECHANISM TER MULTIPLE LED ATTEMPTS 7
8 BIOMETRIC FINGERPRINT FACIAL IRIS
9 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)

12 CELLULAR

10 INTERFACE

13 CELLULAR
15 GPS
11 CPU
16 OS
17 WiFi
18 NFC

SAMSUNG GEAR S3 CLASSIC

14 SATELLITE

19 CHEM/BIO HEARTRATE SENSORS

20 INTERFACE
21 GATEWAY - INTERFACE

RESPONDENT'S MOBILE DEVICE GALAXY NOTE 8

OPERATING SYSTEM (OS)
WIRELESS/CELLULAR MODEM 23
22 RESPONDENT'S CENTRAL PROCESSING UNIT (CPU) 25
24 INTERNET WiFi
26 GLOBAL POSITIONING SYSTEM (GPS)

27 RADIO FREQUENCY (RF) NEAR FIELD COMMUNICATION (NFC)
28 BIOMETRIC FINGERPRINT FACIAL IRIS
29 DISABLING LOCK MECHANI AFTER MULTI FAILED ATTEM

Case 3:23-cv-00008-TKW-ZCB Document 192 Filed 02/03/26 Page 169 of 160

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number** 2023-2120

**Short Case Caption** Golden v. Samsung Electronics America, Inc.

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on 09/27/2023

by ☑ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☑ Other: FTP Server

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Larry Golden | 740 Woodruff Road #1102, Greenville, SC 29607<br>Lgolden5605@charter.net |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 09/27/2023

Signature: /s/ Richard L. Rainey

Name: Richard L. Rainey